# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALISHEA KINGDOM, et al.,<br><br>                    Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, et al.,<br><br>                    Defendants. | Case No. 1:25-cv-00691-RCL<br><br>**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION**<br><br>**HEARING REQUESTED** |

Plaintiffs Alishea Kingdom, Solo Nichols, and Jas Kapule, pursuant to Rule 23 of the Federal Rules of Civil Procedure, hereby move the Court for an order certifying the following class pursuant to Federal Rule of Civil Procedure 23(a) and (b)(1) and/or (b)(2):

> All persons who are or will be incarcerated in the custody of BOP who are or will be diagnosed with gender dysphoria or meet the criteria for a gender dysphoria diagnosis and who are receiving, or would receive, gender-affirming health care absent such care being proscribed by EO 14168 and the Implementing Memoranda.

Dkt. 4-1 (hereinafter, "Compl.") ¶ 15.

The proposed class readily satisfies the requirements of Rule 23. Numerosity is present because, according to the BOP, there are approximately 2,000 people identified as transgender who are incarcerated in federal prisons, who are threatened by the challenged actions. Compl. ¶ 17. All class members suffer the same injury: a blanket denial of gender-affirming health care, regardless of their medical need for such care, in violation of the U.S. Constitution and federal law. *Id.* ¶ 19. And the class raises common questions that will generate common answers, including whether the government can categorically prohibit the provision of certain health care to Plaintiffs and class members regardless of their medical need for such care. The individual

named Plaintiffs' legal claims are typical of those persons whom they seek to represent. *Id.* ¶ 20. Plaintiffs will fairly and adequately protect the interests of the class, and they are represented by experienced counsel with significant expertise litigating class actions on behalf of incarcerated people and transgender people. *Id.* ¶ 21-22. The proposed class satisfies Rule 23(b)(1) because separate actions by individual plaintiffs would create a risk of inconsistent standards of conduct for defendants and adjudications that would, as a practical matter, be dispositive of the interests of others not before the court. And the proposed class satisfies Rule 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to the class.

Plaintiffs also respectfully request that the Court appoint Plaintiffs Alishea Kingdom, Solo Nichols, and Jas Kapule as class representatives; and appoint the undersigned as class counsel.

This motion is supported by the attached Memorandum of Points and Authorities; the Declarations of David Fathi, Shawn Thomas Meerkamper, and Michael Perloff; the Declarations of Dr. Dan H. Karasic, Dr. Cathy Thompson, Alishea Kingdom, Solo Nichols, and Jas Kapule; exhibits attached to Dkt. 7, Mot. for Prelim. Inj., filed contemporaneously herewith; the Proposed Order; all pleadings and files of record; and any evidence that the Court may receive at or before any hearing on this motion.

Defendants oppose this motion. Pursuant to LCvR 7(f), Plaintiffs request an oral hearing on the motion.

## MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

### I.    INTRODUCTION

Plaintiffs and the putative class they seek to represent are currently incarcerated in the custody of the Federal Bureau of Prisons ("BOP").  Plaintiffs have been diagnosed with gender dysphoria, a serious medical condition characterized by clinically significant distress resulting from the incongruence between their gender identity and the sex they were designated at birth. Until recently, Plaintiffs had received gender-affirming hormone therapy and accommodations ("gender affirming health care") by BOP health care providers to treat their gender dysphoria. But now Plaintiffs, and those similarly situated to them, have been denied  or face the imminent denial of medically necessary gender-affirming health care because of the BOP's implementation of Executive Order 14168, entitled "Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government," issued by Defendant Trump on January 20, 2025 (hereinafter the "EO 14168" or "the EO").

EO 14168 mandates an across-the-board ban on gender-affirming health care for persons in BOP custody, irrespective of individual medical need or adverse health impacts.  The EO was implemented in February 2025 via two memoranda (hereinafter "Implementing Memoranda") issued by the BOP.  *See* Dkt. 1, Exs. A & B.  As a result of EO 14168 and BOP's Implementing Memoranda, Plaintiffs have had their hormone therapy and/or access to accommodations discontinued or have been told that this withdrawal of care is imminent. This has exacerbated their gender dysphoria and otherwise negatively impacted their physical and mental health.

In this action, Plaintiffs seek injunctive relief that prohibits Defendants from enforcing EO 14168 as applied to BOP medical care and accommodations for individuals in BOP custody, prohibits Defendants from enforcing the Implementing Memoranda, and requires Defendants to

1

provide Plaintiffs and putative class members gender-affirming health care in accordance with

BOP policy and practice immediately prior to EO 14168.  *See* Dkt. 7, Mot. for Prelim. Inj., filed

contemporaneously (hereinafter "Motion").

Plaintiffs respectfully move for an order certifying the following class pursuant to Federal

Rule of Civil Procedure 23(a) and (b)(1) and/or (b)(2):

> All persons who are or will be incarcerated in the custody of BOP who are or will
> be diagnosed with gender dysphoria or meet the criteria for a gender dysphoria
> diagnosis and who are receiving, or would receive, gender-affirming health care
> absent such care being proscribed by EO 14168 and the Implementing
> Memoranda.

Dkt. 4-1 (hereinafter, "Compl.") ¶ 15.

As detailed below, the proposed class readily satisfies the requirements of Rule 23.

Numerosity is present because, according to the BOP, there are approximately 2,000 people

identified as transgender who are incarcerated in federal prisons, who are threatened by the

challenged actions.  All class members suffer the same injury: a blanket denial of gender-

affirming health care, regardless of their medical need for such care, in violation of the U.S.

Constitution and federal law.   And the class raises common questions that will generate common

answers, including whether the government can categorically prohibit the provision of certain

health care to Plaintiffs and class members regardless of their medical need for such care.  The

individual named Plaintiffs' legal claims are typical of those persons whom they seek to

represent.  Plaintiffs will fairly and adequately protect the interests of the class, and they are

represented by experienced counsel with significant expertise litigating class actions on behalf of

incarcerated people and transgender people.  The proposed class satisfies Rule 23(b)(1) because

separate actions by individual plaintiffs would create a risk of inconsistent standards of conduct

for defendants and adjudications that would, as a practical matter, be dispositive of the interests

of others not before the court.  And the proposed class satisfies Rule 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to the class.

Plaintiffs also respectfully request that the Court appoint Plaintiffs Alishea Kingdom, Solo Nichols, and Jas Kapule as class representatives; and appoint the undersigned as class counsel.

Plaintiffs incorporate by reference the Statement of Facts set forth in their Motion, filed contemporaneously.  *See* Dkt. 7.  This motion is supported by the incorporated Statement of Facts and the following argument in support of class certification.

## II.    <u>ARGUMENT</u>

This case challenges EO 14168 and BOP's Implementing Memoranda, as applied to BOP medical care and accommodations, which affect and will continue to affect thousands of transgender adults in BOP custody.  This case is appropriate for class certification pursuant to Federal Rule of Civil Procedure 23(a) and (b)(1)(A), (b)(1)(B), and/or (b)(2).

### A.    <u>Legal Standard for Class Certification.</u>

Rule 23 of the Federal Rules of Civil Procedure sets forth the requirements for class certification.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011); *Garcia v. Johanns*, 444 F.3d 625, 631 (D.C. Cir. 2006).  This Court can certify a class upon a showing of the four Rule 23(a) requirements:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a); *see also Dukes*, 564 U.S. at 349 ("Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate.").

Class certification also requires establishing that the proposed class action fits into one of the three categories listed in Rule 23(b). *See Ross v. Lockheed Martin Corp.*, 267 F. Supp. 3d 174, 190-191 (D.D.C. 2017). Here, class certification is appropriate under Rule 23(b)(2), because "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Class certification is also appropriate under both Rule 23(b)(1)(A) and (b)(1)(B). The Rule 23(b)(1) requirements are:

> (1) prosecuting separate actions by or against individual class members would create a risk of:
>
> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; **or**
>
> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests[.]

Fed. R. Civ. P. 23(b)(1) (emphasis added).

While the Court's Rule 23 analysis may involve *some* overlap with the plaintiffs' underlying claims, "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Ramirez v. U.S. Immigr. & Customs Enf't*, 338 F. Supp. 3d 1, 43-44 (D.D.C. 2018) (quoting *Amgen, Inc. v. Conn. Retirement Plans & Tr. Funds*, 568 U.S. 455, 466 (2013)). As such, the allegations in the complaint are presumed true for purposes of a motion for class certification. *McReynolds v. Sodexho Marriott Servs., Inc.*, 208 F.R.D. 428, 431 (D.D.C. 2002). And in determining whether class certification is proper, trial courts routinely consider material

beyond the pleadings and rely on supplemental evidentiary submissions by the parties, including declarations and other evidence that would be inadmissible at trial. *See, e.g.*, *N.S. v. Hughes*, 335 F.R.D. 337, 353 & n.14 (D.D.C. 2020), *modified on clarification sub nom. N.S. v. Dixon*, 2020 WL 6701076 (D.D.C. Nov. 13, 2020) (rejecting argument that plaintiffs' declarations constituted hearsay because this evidence is "routinely accept[ed] . . . at the class certification stage"). Here, the declarations and other evidence submitted by Plaintiffs demonstrate that Plaintiffs have established all requirements for class certification.

**B.    Plaintiffs' Proposed Class Meets the Requirements of Rule 23(a).**

**1.    The Proposed Class Is Sufficiently Numerous.**

The numerosity requirement of Rule 23(a) is satisfied where the number of potential plaintiffs is "so numerous that joinder of all members" of the class would be "impracticable." Fed. R. Civ. P. 23(a)(1). There is no fixed number required to meet the standard of numerosity, but a class of 20-40 generally suffices. *See Hinton v. D.C.*, 567 F. Supp. 3d 30, 52 (D.D.C. 2021) (there is no "magic number test," but a class of at least 20 can satisfy the numerosity requirement); *N.S.*, 335 F.R.D. at 352 (numerosity is "presumptively" satisfied where class is 40 or more).

Moreover, future members of the putative class must be considered. Courts recognize that where, as here, "requests for prospective injunctive relief . . . would involve future class members," that factor "make[s] joinder inherently impracticable." *See, e.g.*, *D.L. v. D.C.* ("*D.L. I*"), 302 F.R.D. 1, 11 (D.D.C. 2013), *aff'd* ("*D.L. II*"), 860 F.3d 713 (D.C. Cir. 2017) (quotation marks omitted) (collecting cases; holding numerosity was satisfied). "This is especially true when plaintiff seeks injunctive relief." *N.S.*, 335 F.R.D. at 352. And the numerosity requirement also takes into account "non-numerical considerations" that affect Plaintiffs' ability to bring individual suits. *J.D. v. Azar*, 925 F.3d 1291, 1323 (D.C. Cir. 2019). The proposed class here

includes unknown future persons in BOP custody who will suffer the same injury as Plaintiffs absent injunctive relief, rendering joinder impracticable.

According to the BOP, as of January 10, 2025, there were 2,198 transgender people incarcerated in BOP custody. *See* Declaration of Rick Stover ¶ 5, filed February 23, 2025 in *Doe v. McHenry*, Case No. 1:25-cv-00286-RCL (Dkt. 52-1, D.D.C.). Under BOP's policy regarding the treatment of gender dysphoria immediately prior to the issuance of the EO and the Implementing Memoranda, transgender people with gender dysphoria were provided gender-affirming hormone therapy and accommodations when clinically indicated. *See* Declaration of Dr. Cathy Thompson ("Thompson Decl."), Ex. C. All of these people have lost or will imminently lose access to this care due to BOP's implementation of EO 14168. Compl. ¶ 17. The current numbers alone resolve the numerosity issue. But the proposed class will also include transgender people with gender dysphoria who will be incarcerated in BOP custody in the future and—as a direct result of the EO and Implementing Memoranda—will be denied access to gender-affirming health care regardless of their need for such care. *Id.* ¶ 18.

Moreover, joinder is impracticable not only because of the sheer numbers of the class, but also because the class members are geographically dispersed and incarcerated in federal prisons across the United States, and subject to transfer and movement at any time. *See* Compl. ¶¶ 24-26 (named Plaintiffs are incarcerated in New Jersey, Florida, and Minnesota); *see also J.D.*, 925 F.3d at 1323 (stating that joinder may be impracticable in light of "fluidity" of carceral custody, "the dispersion of class members across the country, and their limited resources"); *see also, e.g.*, *Kifafi v. Hilton Hotels Ret. Plan*, 189 F.R.D. 174, 176 (D.D.C. 1999) (geographical dispersion relevant to impracticability of joinder); *Afghan & Iraqi Allies v. Pompeo*, 334 F.R.D. 449, 459 (D.D.C. 2020) (same). In sum, the proposed class is sufficiently numerous to satisfy the

requirement of Rule 23(a)(1).

### 2.    The Class Presents Common Questions of Law and Fact.

The commonality requirement of Rule 23(a)(2) requires plaintiffs seeking class certification to show that their claims "depend upon a common contention" that "is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 564 U.S. at 350. "[C]ommonality requires a showing that the *members* of the class suffered an injury resulting from the defendant's conduct." *Bynum v. District of Columbia*, 214 F.R.D. 27, 34 (D.D.C. 2003) (emphasis in original).

Here, there are questions of law or fact common to the class, including whether the EO and Implementing Memoranda violate the Fifth and Eighth Amendments of the U.S. Constitution, the Rehabilitation Act, and the Administrative Procedure Act. If Defendants are permitted to enforce EO 14168 and the Implementing Memoranda, Plaintiffs and all members of the class will be subject to a common impact: the cessation or denial of gender-affirming health care regardless of their medical need for such care. All class members, including Plaintiffs, seek the same relief: an injunction preventing enforcement of the EO, as applied to BOP medical care and accommodations, and of the Implementing Memoranda, which mandate a categorical denial of gender-affirming health care for people in BOP custody regardless of individual medical need.

In other words, Plaintiffs have identified a single alleged practice—a blanket policy prohibiting certain health care from even being considered—that provides the basis for every class member's injury. Courts in this circuit have uniformly certified classes under these circumstances. "[W]here plaintiffs allege widespread wrongdoing by a defendant . . . 'a uniform policy or practice that affects all class members'" satisfies the commonality requirement. *Thorpe v. Dist. of Columbia*, 303 F.R.D. 120, 145 (D.D.C. 2014); *accord R.I.L-R*, 80 F. Supp. 3d at 181;

*see also Ramirez*, 338 F. Supp. 3d at 46-47 (rejecting argument that circumstances of detention or differing procedural posture of immigration proceedings defeated commonality and typicality); *D.L. II*, 860 F.3d at 723-26 (affirming district court's certification of "three subclasses . . . each defined by reference to a 'uniform policy or practice' governing a specific stage of the special education process"). Answering these common legal questions will "drive the resolution of the litigation." *Ramirez*, 338 F. Supp. 3d at 45 (cleaned up) (quoting *Dukes*, 564 U.S. at 350). Should the Court conclude that Defendants cannot categorically ban the provision of gender-affirming health care, all class members will benefit from the requested relief, which includes a declaration of the illegality of Defendants' policy and an injunction preventing Defendants from implementing it.

### 3.    Plaintiffs' Claims Are Typical of Those of the Class.

The typicality requirement of Rule 23(a)(3) requires that the claims of the representative parties be typical of those of members of the class. *Dukes*, 564 U.S. at 349. The typicality requirement focuses on whether the *representatives* of the class suffered a similar injury from the same course of conduct." *Bynum*, 214 F.R.D. at 34 (emphasis in original).

Typicality is satisfied here for largely the same reasons that commonality is satisfied. *See Ramirez*, 338 F. Supp. 3d at 46; *R.I.L.-R.*, 80 F. Supp. 3d at 181-82; *O.A. v. Trump*, 404 F. Supp. 3d 109, 155-56 (D.D.C. 2019). Each proposed class member, including the proposed class representatives, faces the same principal injury (the prohibition against the provision of certain medical care and accommodations regardless of their medical need), based on the same government practice (the EO and Implementing Memoranda), which is unlawful as to the entire class because it violates the Constitution and federal law. Plaintiffs thus "share an identical interest in invalidation of" EO 14168, as applied to BOP medical care and accommodations, and BOP's Implementing Memoranda. *O.A.*, 404 F. Supp. 3d at 156. Moreover, as with

commonality, any factual differences that might exist between the named Plaintiffs and class members do not undermine or defeat typicality.  *See Bynum*, 214 F.R.D. at 34-35; *Afghan & Iraqi Allies*, 334 F.R.D. at 461.

The EO and Implementing Memoranda do not allow for the consideration of a transgender patient's individualized medical needs; Defendants will enforce the ban on gender-affirming health care across the board as to all transgender people in BOP custody.  Though each class member's treatment plan for gender dysphoria is individualized, Thompson Decl., ¶ 33, Ex. C, this is no barrier to class-wide relief, as the only issue here is the constitutionality of the uniform policy—the EO's and Implementing Memoranda's a categorical ban on gender-affirming health care—"that provides the basis for every class member's injury."  *Ramirez*, 338 F. Supp. 3d at 46; *see also Daskalea v. Wash. Humane Soc'y*, 275 F.R.D. 346, 358 (D.D.C. 2011) ("[t]he facts and claims of each class member do not have to be identical to support a finding of typicality; rather, typicality refers to the nature of the claims of the representative, not the individual characteristics of the plaintiff" (quotation marks omitted)); *Howard v. Liquidity Servs. Inc.*, 322 F.R.D. 103, 118 (D.D.C. 2017) (even a single common issue will do); *Thorpe*, 303 F.R.D. at 145 (same).  And given these common questions, "'factual variations among the class members will not defeat the commonality requirement.'"  *Damus v. Nielsen*, 313 F. Supp. 3d 317, 332 (D.D.C. 2018) (quoting *Hardy v. District of Columbia*, 283 F.R.D. 20, 24 (D.D.C. 2012)); 7A Wright et al., Federal Practice and Procedure: Civil § 1763 at 203.

> **4.    The Proposed Class Representatives Will Fairly and Adequately Protect the Interests of the Class.**

Rule 23(a)(4) requires that the class representatives "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).  Adequacy of representation is a two-part inquiry: the named plaintiffs "(i) must not have antagonistic or conflicting interests with the unnamed

members of the class and (ii) must appear able to vigorously prosecute the interests of the class through qualified counsel." *J.D.*, 925 F.3d at 1312 (internal quotation marks omitted) (quoting *Twelve John Does v. District of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997)). Regarding the first prong, the proposed class representatives—the named Plaintiffs—have no antagonistic or conflicting interest with members of the class. Each of the named Plaintiffs has been diagnosed with gender dysphoria and wants and needs the gender-affirming health care that the EO and Implementing Memoranda ban. Plaintiffs have a substantial stake in the proceedings and the same interest as the putative class members in preventing the unconstitutional enforcement of the EO and Implementing Memoranda.

Regarding the second prong, Plaintiffs are competent to represent the class. The adequacy requirement "does not require either that the proposed class representatives have legal knowledge or a complete understanding of the representative's role in class litigation." *Garnett v. Zeilinger*, 301 F. Supp. 3d 199, 210 (D.D.C. 2018) (citation omitted). The class representatives need only have "some rudimentary knowledge of [their] role as a class representative and [be] committed to serving in that role in litigation." *Id.* (citation omitted). Plaintiffs' declarations demonstrate that they are sufficiently aware of the facts of this case. *See generally* Declarations of Alishea Kingdom, Solo Nichols, and Jas Kapule.

## C.    The Proposed Class Meets the Requirements of Rule 23(b).

Plaintiffs must show that one of the requirements of Rule 23(b) is met. Here, Plaintiffs satisfy the requirements for three components of Rule 23(b): Rules 23(b)(1)(A), 23(b)(1)(B), and 23(b)(2). Each subsection provides an independent basis for certifying the class.

### 1.    Rule 23(b)(1)(A).

Under this subsection, class certification is appropriate if the prosecution of separate actions by individual members of the class would create the risk of "inconsistent or varying

adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." Fed. R. Civ. P. 23(b)(1)(A). A "core example" of such an action is a "situation in which many individuals, all challenging a single government policy, bring separate suits for injunctive relief." Newberg and Rubenstein on Class Actions § 4:11 (6th ed.).

Here, there are over 2,000 people incarcerated in BOP facilities who are affected by the challenged policies and each one could file suit for injuries arising from these systemwide policies. Thus, certification is appropriate under 23(b)(1)(A) because if each member of the proposed class litigated their claims individually there would be a risk that each individual case would impose a different standard on Defendants. *See, e.g., Ashker v. Governor of State of California*, 2014 WL 2465191, at *7 (N.D. Cal. June 2, 2014) (certifying prisoner class under Rule 23(b)(1)(A) to avoid risk of inconsistent judgments); *Franklin v. Barry*, 909 F. Supp. 21, 31 (D.D.C. 1995) (same); *see also Adair v. England*, 209 F.R.D. 5, 12 (D.D.C. 2002) ("Rule 23(b)(1)(A) certification is appropriate when the class seeks injunctive or declaratory relief to change an alleged ongoing course of conduct that is either legal or illegal as to all members of the class."). Accordingly, the requirements for certification under 23(b)(1)(A) are met.

## 2.    Rule 23(b)(1)(B).

Class certification under Rule 23(b)(1)(B) is appropriate when prosecuting "separate actions by or against individual class members would create a risk of … adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1)(B). This rule has been applied in actions by incarcerated people challenging the conditions of their confinement. *See Hilton v. Wright*, 235 F.R.D. 40, 53 (N.D.N.Y. 2006) (certification of class

challenging prison's Hepatitis C treatment policy under 23(b)(1)(B)); *Ingles v. City of New York*, 2003 WL 402565, at *7-8 (S.D.N.Y. Feb. 20, 2003) (certification under 23(b)(1)(B) of class of incarcerated people challenging prison's use of force policy and seeking injunctive relief); *Coleman v. Wilson*, 912 F. Supp. 1282, 1293 (E.D. Cal.1995) (certification of class challenging prison's mental health care policies under 23(b)(1)(B)).

Here, the class seeks injunctive relief that, if granted, would affect the rights of similarly situated potential plaintiffs who are affected by the same systemwide policies. If Plaintiffs do not succeed on their claims, the ability of future plaintiffs to challenge the same practice will be inhibited under *stare decisis*. *See Riley v. Nev. Sup. Court*, 763 F. Supp. 446, 453 (D. Nev. 1991) (certifying class of death-sentenced people challenging state court policies under 23(b)(1)(B) because "collateral estoppel would not bind a subsequent plaintiff to a finding of constitutionality. However, if the subsequent plaintiff ended up in this particular court, our previous finding of constitutionality would bind the subsequent plaintiff as a practical matter because of stare decisis."). Accordingly, the requirements for certification under 23(b)(1)(B) are met.

### 3.    Rule 23(b)(2).

This provision requires that the party opposing certification has "acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the class as a whole."

Rule 23(b)(2)'s requirements are satisfied when, as here, members of a proposed class seek uniform injunctive and declaratory relief from policies and practices that are generally applicable to the class as a whole. "[T]he suit challenges a policy 'generally applicable' to all class members." *R.I.L-R*, 80 F. Supp. 3d at 182; *see Dukes*, 564 U.S. at 360 ("The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted"). Indeed,

the D.C. Circuit has recognized that "Rule 23(b)(2) exists so that parties and courts, *especially in civil rights cases like this*, can avoid piecemeal litigation when common claims arise from systemic harms that demand injunctive relief." *D.L. II*, 860 F.3d at 726 (emphasis added); *see also In re District of Columbia*, 792 F.3d 96, 102 (D.C. Cir. 2015) ("Rule 23(b)(2) was intended for civil rights cases."); *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 614 (1997) ("Civil rights cases against parties charged with unlawful, class-based discrimination are prime examples" of (b)(2) class actions (citations omitted)).  And other courts routinely recognize that Eighth Amendment conditions of confinement cases are quintessential 23(b)(2) class actions. *See, e.g.*, *Postawko v. Missouri Dep't of Corr.*, 2017 WL 3185155, at *14 (W.D. Mo. July 26, 2017), *aff'd*, 910 F.3d 1030 (8th Cir. 2018) ("Indeed, a case like this one in which a group of prisoners seeks to challenge the constitutionality of a prison policy is so well suited for Rule 23(b)(2) class treatment that the leading class-action and federal-practice treatises both use it as the exemplar of a case fitting within that subsection.").

Here, Plaintiffs challenge an executive order and implementing memoranda of general applicability.  Defendants' enforcement of EO 14168 and the Implementing Memoranda to prohibit gender-affirming health care to people in BOP custody applies generally to the proposed class, and Plaintiffs seek only injunctive and declaratory relief.  The relief sought would provide relief to each class member, and would in no way differentiate between class members.  Such relief would resolve class members' claims "in one stroke." *Dukes*, 564 U.S. at 350.  "The relief Plaintiffs seek" is thus both "'generally applicable to the class'" and "indivisible," and certification under Rule 23(b)(2) is proper. *O.A.*, 404 F. Supp. 3d at 157; *accord, e.g.*, *Huisha-Huisha v. Mayorkas*, 560 F. Supp. 146, 166 (D.D.C. 2021) (holding that Rule 23(b)(2) is satisfied when a class seeks relief that "is generally applicable to the class and is indivisible")

13

(cleaned up).

**D.      The Court Should Appoint Plaintiffs' Attorneys as Class Counsel.**

Upon certifying the class, the Court must also appoint class counsel.  Fed. R. Civ. P.

23(c)(1)(B).  Under Rule 23(g), in appointing class counsel, a court considers (1) "the work

counsel has done in identifying or investigating potential claims in the action;" (2) "counsel's

experience in handling class actions, other complex litigation, and the types of claims asserted in

the action;" (3) "counsel's knowledge of the applicable law;" and (4) "the resources that counsel

will commit to representing the class."  Fed. R. Civ. P. 23(g)(1)(A)-(B).  The court may also

consider "any other matter pertinent to counsel's ability to fairly and adequately represent the

interests of the class."

As set forth in the supporting declarations, Plaintiffs' attorneys of record possess

substantial expertise litigating constitutional and civil rights challenges to governmental action,

including specific experience representing transgender plaintiffs in civil rights and prisoners'

rights litigation, as well as class actions.  *See* Declarations of David Fathi, Shawn Thomas

Meerkamper, and Michael Perloff.  Plaintiffs' attorneys are non-profits dedicated to civil rights

work and will commit the resources necessary to pursue this litigation and represent the class.

*See, e.g.,* Fathi Decl. ¶ ¶ 7-8. Accordingly, Plaintiffs' attorneys are adequate class counsel and

should be so appointed pursuant to Rule 23(g).  *See, e.g.*, *Howard v. Liquidity Servs. Inc.*, 322

F.R.D. 103, 141 n.23 (D.D.C. 2017) (evidence provided by plaintiffs weighed in favor of

appointment of class counsel); *Samma v. United States Dep't of Def.*, 2020 WL 4501000, at *10

(D.D.C. Aug. 4, 2020) (same).

## III.      CONCLUSION

The Court should certify the proposed Class under Rule 23(a) and 23(b)(1) and/or

23(b)(2), appoint the Individual Plaintiffs as Class Representatives, and appoint the undersigned

as Class Counsel.

Dated: March 17, 2025                           Respectfully submitted,

David C. Fathi†                                 /s/ Michael Perloff
Maria V. Morris, D.C. 1697904                   Michael Perloff, D.C. Bar No. 1601047
Elisa C. Epstein†                               Aditi Shah*
AMERICAN CIVIL LIBERTIES UNION                  AMERICAN CIVIL LIBERTIES UNION
FOUNDATION                                      FOUNDATION OF THE DISTRICT OF
915 15th Street, N.W.                           COLUMBIA
Washington, D.C. 20005                          529 14th Street NW, Suite 722
Tel: 202-393-4930                               Washington, D.C. 20045
dfathi@aclu.org                                 Tel: 202-457-0800
mmorris@aclu.org                                mperloff@acludc.org
eepstein@aclu.org                               ashah@acludc.org
†*Not admitted in D.C.; practice limited to*    *Not admitted in DC; practice limited to
*federal courts. Pro hac vice application*      matters before federal courts and D.C.
*forthcoming.*                                  agencies.*

Corene T. Kendrick**                            Shawn Thomas Meerkamper**
AMERICAN CIVIL LIBERTIES UNION                  shawn@transgenderlawcenter.org
FOUNDATION                                      Megan Z. F. Noor**
425 California St., Ste. 700                     megan@transgenderlawcenter.org
San Francisco, CA 94104                         TRANSGENDER LAW CENTER
Tel: 202-393-4930                               P.O. Box 70976
ckendrick@aclu.org                              Oakland, CA 94612
                                                Tel: 510-587-9696

Li Nowlin-Sohl**
Leslie Cooper**                                 Lynly S. Egyes**
Shana Knizhnik, DDC Bar ID 120840               lynly@transgenderlawcenter.org
James D. Esseks**                               Milo Inglehart**
AMERICAN CIVIL LIBERTIES UNION                  milo@transgenderlawcenter.org
FOUNDATION                                      TRANSGENDER LAW CENTER
125 Broad Street, 18th Floor                    594 Dean Street, Suite 11
New York, NY 10004                              Brooklyn, NY 11238
Tel: 212-549-2500                               Tel: 510-587-9696
lnowlin-sohl@aclu.org
lcooper@aclu.org                                ** *Pro hac vice application forthcoming.*
sknizhnik@aclu.org
jesseks@aclu.org                                *Counsel for plaintiffs and the proposed class*

## CERTIFICATE OF SERVICE

I hereby certify that, on this 17th day of March 2025, I served the foregoing PLAINTIFFS' MOTION FOR CLASS CERTIFICATION by emailing a copy to Defendants' counsel, John Robinson, listed below. Mr. Robinson provided written consent to receive email service on behalf of Defendants on March 17, 2025.

John Robinson
U.S. Department of Justice
John.J.Robinson@usdoj.gov
(202) 616-8489

*/s/ Michael Perloff*
Michael Perloff