IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ALISHEA KINGDOM, et al.,

        Plaintiff,

v.

DONALD J. TRUMP, et al.,

        Defendants.

Case No. 1:25-cv-00691

### SECOND DECLARATION OF DR. DAN H. KARASIC IN SUPPORT OF PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

I, Dan H. Karasic, M.D., hereby declare and state as follows:

1.    I am over the age of 18, of sound mind, and in all respects competent to testify.

2.    I have been retained by counsel for Plaintiffs as an expert in connection with the above-captioned litigation.

3.    I have actual knowledge of the matters stated herein. If called to testify in this matter, I would testify truthfully and based on my expert opinion.

4.    I submitted an expert declaration in this case on March 14, 2025. My background and qualifications are discussed in that declaration.

5.    I submit this declaration to respond to a few points made in defendants' opposition to Plaintiff's motion and to provide observations regarding the subsequently filed amici brief.

6.    First, defendants' brief asserts that there is "ongoing scientific and medical debate over the necessity and efficacy of hormone medication as a treatment for gender dysphoria." *See, e.g.*, Defendants' brief, at 2; *see also id.* at 15 (suggesting treating for gender dysphoria is a "highly controversial area of medical practice"). This is simply untrue. While there is some

discussion within the field about how to best care for minors with gender dysphoria,[1] there is no serious debate or controversy within the medical and mental health fields about the necessity and efficacy of hormone therapy to treat adults with gender dysphoria. As I explained in my first declaration, decades of research and clinical experience have shown the benefits of hormone therapy to individuals with gender dysphoria.

7. Defendants' brief suggests that if BOP were to discontinue hormone therapy, there will be no harm because, it says, there are alternative treatments that could be provided. *See* Defendants' brief, at 10. That is untrue. As I discussed in my first declaration, while not everyone with gender dysphoria needs hormone therapy, for those for whom it is clinically indicated, there is no alternative treatment. There is no evidence-based psychotherapeutic treatment to treat gender dysphoria. Withdrawing hormone therapy from those who have a medical need for it would be expected to result in an exacerbation of their gender dysphoria, putting them at significant risk of depression, anxiety, self-harm and suicidality.

8. The declaration of the Bureau of Prisons' Assistant Director of the Health Services Division, Chris Bina, suggests that if incarcerated people are taken off of hormone therapy, there will be no harm because he says they would "receive treatment for any symptoms they may experience as clinically indicated." *See* Bina declaration, par. 15. But the symptom that people would experience if hormones are withdrawn is a rise in gender dysphoria, and, as discussed above, there are no alternative treatments for gender dysphoria for those who need gender-affirming medical interventions. Thus, withdrawing or withholding such care when

---

[1] *See, e.g.*, The Cass Review, Independent Review of Gender Identity Services for Children and Young People: Final Report at 195 (April 2024) (the "Cass review") (recommending that puberty blockers be provided within the context of clinical research trials and that hormone therapy be provided "with caution" for youth ages 16 and 17). I do not reference the Cass Review to suggest that I agree with it; indeed, it has been widely criticized. *See, e.g.*, British Medical Association, "BMA to undertake an evaluation of the Cass Review on gender identity services for children and youth people," July 31, 2024, available at https://www.bma.org.uk/bma-media-centre/bma-to-undertake-an-evaluation-of-the-cass-review-on-gender-identity-services-for-children-and-young-people.

indicated puts people at risk of significant harm to their mental health.

9. Defendants cite the Cass Review's finding that "while deaths by suicide in trans-identifying individuals are tragically above the national average, there is 'no evidence that gender-affirmative treatments reduce this.'" Defendants' brief, at 16. As an initial matter, suicide prevention is not the only reason for providing hormone therapy to individuals with gender dysphoria. This condition can cause other severe harms to mental health as I discussed in my first declaration. Moreover, the Cass Review and the cited passage are focused on minors. The cited passage that was excerpted in Defendants' brief specifically refers to "risk of death by suicide among gender diverse youth." Cass Review, at 94. It is difficult to get data on completed suicides for any population,[2] but there is substantial evidence that gender-affirming medical care reduces suicidal ideation and suicide attempts,[3] which are significant risk factors for suicide (*see* n. 2, *supra*), and it is a serious mental health concern in its own right when people think about ending their lives.

10. I'd like to address some confusion reflected in the Defendants' brief about the purpose of hormone therapy in the treatment of gender dysphoria. Defendants' brief states that "[t]he Court apparently assumed that all hormone medication provided to treat gender dysphoria is 'for the purpose of conforming an inmate's appearance to that of the opposite sex,' Exec.

---

[2] Because completed suicides are so rare, it's difficult to get data. For example, in clinical trials of over 4400 youth receiving antidepressants, there were no suicides. Nevertheless, there's a black box warning about increased risk of suicidality when antidepressants are used for people under the age of 25, which is based on increased suicidal ideation and attempts. *See* https://www.fda.gov/drugs/postmarket-drug-safety-information-patients-and-providers/suicidality-children-and-adolescents-being-treated-antidepressant-medications

[3] *See, e.g* Kaltiala, R., Heino, E., Työläjärvi, M., & Suomalainen, L. (2019). Adolescent development and psychosocial functioning after starting cross-sex hormones for gender dysphoria. Nordic Journal of Psychiatry, 74(3), 213–219. https://doi.org/10.1080/08039488.2019.1691260; Allen, et al 2019
Allen LR, Watson LB, Egan AM, Moser CN. Well-Being and Suicidality Among Transgender Youth After Gender-Affirming Hormones. Clinical Practice in Pediatric Psychology. 2019;7(3):302-311. doi:10.1037/cpp0000288
Turban et al 2022 https://journals.plos.org/plosone/article?id=10.1371/journal.pone.0261039
Tordoff et al 2022
doi:10.1001/jamanetworkopen.2022.0978

Order No. 14168, § 4(c), regardless of the inmate's individual medical condition.'" Defendants' brief, at 13.  Hormone therapy alleviates gender dysphoria by conforming an individual's body to be consistent with their gender identity.  Defendants appear to assert that medically necessary hormone treatment and hormone treatment "for the purpose of conforming an inmate's appearance to that of the opposite sex" are separate things.  They are not. The use of hormones to change the patient's appearance is medically necessary for the treatment of gender dysphoria.

11.     Defendants point to some statements suggesting that WPATH's guidelines are based on ideology, not science or "extensive clinical experience."  *See* Defendants' brief at 17.  This is not true.  As I discussed in my first declaration, WPATH's guidelines were developed by experts in the field using a rigorous evidence-based approach.  *See* Karasic initial declaration, pars. 53-62.  The authors of the WPATH guidelines include university professors and individuals with extensive clinical experience in providing care for people with gender dysphoria.  I myself have been involved in the development of the WPATH guidelines and have over 30 years of clinical experience treating individuals with gender dysphoria.  Since the first WPATH guidelines in 1979, WPATH has drawn on the expertise of the most experienced clinicians.  And these guidelines were developed using widely accepted methods recommended by the National Academy of Medicine that have been used to develop other medical guidelines such as all American Psychiatric Association's practice guidelines for various psychiatric illnesses, such as schizophrenia, eating disorders, and alcohol use disorder, since 2011.[4]  The WPATH guidelines are recognized as authoritative by every major medical association in the United States, including the National Commission on Correctional Health Care.[5]

---

[4] *See* https://www.psychiatry.org/psychiatrists/practice/clinical-practice-guidelines/guideline-development-process.
[5] *See* National Commission on Correctional Health Care, Position Statement- Transgender and Gender Diverse Health Care in Correctional Settings, November, 2020, available at https://www.ncchc.org/position-statements/transgender-and-gender-diverse-health-care-in-correctional-settings-2020/.

12. Defendants' brief also attempts to discredit the WPATH guidelines by citing references in Judge Lagoa's concurring opinion in *Eknes-Tucker v. Governor of Alabama* in which she cites a publication entitled "The WPATH Files." The WPATH Files is a collection of select out-of-context excerpts of communications among WPATH members on a message board over a four-year period that was obtained and published by a journalist and activist opposed to gender-affirming medical care, along with a narrative she created based on those cherry-picked excerpts in an attempt to discredit WPATH. These select, out-of-context statements do not permit the conclusions about WPATH asserted by the author. Moreover, the author is not someone within the field of medicine or mental health nor experienced in the treatment of gender dysphoria, and this document is not published in a scientific journal. It is an activist's opinion piece based on a highly misleading presentation of excerpts of communications.

13. I have reviewed the amicus brief filed by several states in this case and have a few observations.

   a. First, while the amicus brief claims that hormone therapy is a "controversial practice" and attempts to support that claim by citing three studies, none of those studies permit such a conclusion. The first study[6] did not evaluate the evidence because the authors set criteria for inclusion in their review that excluded all of the studies. *See id.* ("We could not appraise the quality of the evidence because no studies met our review's inclusion criteria."). The second study[7] found that hormone therapy was associated with increased quality of life, decreased depression, and decreased anxiety. That the authors were unable to

---

[6] Haupt et al, Antiandrogen or estradiol treatment or both during hormone therapy in transitioning transgender women, 11 Cochrane Database of Systematic Reviews, Art. No. CD013138, at 2, 11 (2020).
[7] Kellan E. Baker, et al., Hormone Therapy, Mental Health, and Quality of Life Among Transgender People: A Systematic Review, 5 J. Endocrine Soc. 1, 12–13 (2021).

draw conclusions about the impact on death by suicide is an ongoing challenge in research. *See supra*, par. 9. Finally, the state amici suggest that a third study[8] indicated that hormone therapy increased suicidality, but that study showed a "reduction in suicidality following gender-affirming treatment." Within the medical and mental health fields, hormone therapy has long been widely recognized as an effective treatment for gender dysphoria.

b.  The states' amicus brief also suggests that that psychotherapy is "widely recognized" as an alternative treatment for gender dysphoria in lieu of gender-affirming medical care, citing Anderson et al., Gender Dysphoria and Its Non-Surgical and Surgical Treatments, 10 Health Psych. Rsch., at 4 (2022). But that study, which notes the benefits of psychotherapy for patients with gender dysphoria (e.g. providing support, help with coming out), does not suggest that psychotherapy is a substitute for gender-affirming medical interventions when indicated. Indeed, the study cites to the WPATH Standards of Care and a paper that discusses psychotherapy in the context of preparation for gender-affirming surgery. As discussed above, there is no evidence-based psychotherapeutic treatment to treat gender dysphoria in lieu of hormones.

c.  In sum, the amici states make baseless assertions about treatment for gender dysphoria based on a highly misleading characterization of the sources they cite.[9]

---

[8] Daniel Jackson, Suicide-Related Outcomes Following Gender-Affirming Treatment: A Review, 15(3) Cureus 11–13 (2023).
[9] The states' amicus brief also offers a misleading presentation of the evidence on gender-affirming surgery, but since the motion before the court does not address surgery, I have not provided an analysis of that discussion.

-7-

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct,

Executed this 3rd day of March, 2025

_____
Dan H. Karasic