# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ALISHEA KINGDOM, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, *et al.*, <br><br> Defendants. | Civil Docket No. 1:25-cv-691 |

**DEFENDANTS' SUR-REPLY IN OPPOSITION TO PLAINTIFFS'
MOTION FOR A PRELIMINARY INJUNCTION,
TO STAY AGENCY ACTION, AND FOR PROVISIONAL CLASS CERTIFICATION**

Plaintiffs have filed six supplemental declarations with their Reply for the propositions that (1) BOP will discontinue hormone medication to Plaintiffs and others like them because there is purportedly a categorical ban on hormone medication, and (2) Defendants' current provision of hormone medication is litigation "gamesmanship" to "avoid liability," Pls.' Reply at 2.  As discussed below, the declarations do not prove these points.  Moreover, Defendants dispute the claims of Plaintiffs' expert, which Plaintiffs mischaracterize as "undisputed."

   I.   **The Supplemental Declarations Do Not Establish That BOP Has A Categorial Ban on Hormone Medication**

To rebut Plaintiffs' claim of imminent harm arising from any discontinuation of Plaintiffs' hormone medication, Defendants submitted the declaration of Chris Bina, Assistant Director of BOP's Health Services Division.  The declaration explained that BOP has directed that "no Bureau of Prisons funds are to be expended for any medical procedure, treatment, or drug for the purpose of conforming an inmate's appearance to that of the opposite sex."  *See* Declaration of Chris A. Bina, ¶ 6, ECF No. 36-1.  It also noted that BOP is providing hormone medication to some 628 inmates with gender dysphoria based on each inmate's individual medical conditions and clinical need.  *See id.* ¶¶ 13–14; *see also* ¶ 15 ("If inmates are taken off estrogen or testosterone treatments, they receive treatment for any symptoms they may experience as clinically indicated.").  Plaintiffs nevertheless insist that there is a categorical ban on hormone medication because, in their view, such medication necessarily is provided to "conform[ ] an inmate's appearance to that of the opposite sex," and is therefore prohibited by Executive Order ("EO") 14168 and BOP's memorandum implementing the EO, ECF No. 1-2.  To support this interpretation, Plaintiffs cite their supplemental declarations to assert that "BOP officials told [them] and putative class members at facilities throughout the country that [BOP] will terminate their hormones due to the EO."  Pls.' Reply at 6.  But such double hearsay is inherently unreliable.  *See FTC v. CCC Holdings Inc.*, No. CV 08-2043 (RMC), 2009 WL 10631282, at *1 (D.D.C. Jan. 30, 2009) ("the Court will consider hearsay evidence because the Federal Rules of Evidence do not apply to preliminary

injunction hearings," but "the Court will not admit double hearsay because it inherently lacks sufficient indicia of reliability").

For example, putative class member Ayana Satyagrahi states that "staff at FCI Seagoville have been consistently telling me that President Trump's Executive Order means that hormone therapy for gender dysphoria will be ended for everyone in BOP custody." Satyagrahi Decl. ¶ 5. Putative class member A.J. DiCiesare states "BOP staff" have told him the same. DiCiesare Decl. ¶ 3. But there is no indication that the unspecified and unnamed BOP staff have the authority to offer such interpretation or have otherwise been charged with specifying BOP's policy.

Similarly, Plaintiff Kapule asserts that it is still his understanding that his hormone medication "will be discontinued when [Kapule's] current prescription runs out." Kapule Supp. Decl. ¶ 3. Kapule averred in a prior declaration that BOP staff told Kapule so. Kapule Decl. ¶ 9, ECF No. 7-6. In response, the Bina declaration states that Kapule "is currently prescribed and continues to receive hormone medication" and that the provision of hormone medication to inmates with gender dysphoria, including Kapule, is based on the clinical and medical needs of each inmate. Bina Decl. ¶¶ 13–14, 20. Despite these unqualified statements, Plaintiffs now make the unwarranted inferential leap that "Defendants do not dispute that at least one facility has said that hormone therapy will end once current prescriptions run out." Pls.' Reply at 1. But Defendants *do* dispute it; the Bina declaration refutes the idea BOP will ignore the clinical and medical needs of the inmates in deciding whether to provide hormone medication. *See* Bina Decl. ¶¶ 13–14.

At bottom, Plaintiffs' claims are based on speculation. *See, e.g.*, Supp. Decl. of Alishea Sophia Kingdom ¶ 5 ("I do not know if or when my hormone therapy will be discontinued again."); Satyagrahi Decl. ¶ 5 ("No one will tell us when this will happen, only that it is coming."); DiCiesare Decl. ¶ 3 (BOP staff "have been unwilling or unable to say when that will happen"); Kapule Suppl. Decl. ¶ 3 ("No BOP staff have informed me of when my current prescription ends."). A preliminary injunction is therefore unwarranted because any claimed injury must be "of such imminence that there is a clear and present need for equitable relief to prevent irreparable

4

harm," and not just "merely feared as liable to occur at some indefinite time." *Wis. Gas Co. v. FERC*, 758 F.2d 669, 674 (D.C. Cir. 1985).

## II. BOP's Provision of Hormone Medication Is Entitled to A Presumption of Regularity and Good Faith

Plaintiffs argue that BOP is providing hormone medication only for litigation purposes. Pls.' Reply at 1. They cite the fact that BOP complied with this Court's nationwide temporary restraining order issued in *Doe v. McHenry*, 1:25-cv-286, ECF No. 23 (D.D.C. Feb. 4, 2025), which has since expired, and Plaintiff Kingdom's recounting of Kingdom's conversation with a BOP doctor about why Kingdom's hormonal medication was temporarily discontinued. *See* Pls.' Reply at 9–10. According to Kingdom, Dr. Dimonte said that it was not his decision to stop hormone medication at FCI Fairton (where Kingdom is housed), that this litigation "was causing problems," and that after speaking with lawyers, he was restarting hormone medication at FCI Fairton. Pls.' Reply at 2 (citing Kingdom Supp. Decl. ¶ 2, ECF No. 47-1).

Even assuming Kingdom has accurately recounted Dr. Dimonte's statements, those statements do not suggest that BOP resumed hormone medication at FCI Fairton due to litigation. Of the more than 120 BOP correctional institutions, Plaintiffs allege that FCI Fairton and FCI Tallahassee (where Plaintiff Nichols is housed) have stopped or reduced the inmates' hormone medication. *See* Nichols Decl. ¶¶ 11, 13–14. That hardly supports a blanket ban or an inference that Defendants reversed course because of litigation. More importantly, BOP has resumed hormone medication at those facilities based on "individualized assessments" of each inmate's medical conditions. Bina Decl. ¶¶ 17, 23; *see also* Nichols Supp. Decl. ¶¶ 3–4. It defies logic to suggest that BOP is providing hormone medication to hundreds of inmates with gender dysphoria purely for litigation purposes despite purportedly knowing that doing so would violate EO 14168. Much more is needed to accuse BOP of "gamesmanship," particularly given the presumption of regularity and good faith, to which Defendants are entitled. *In re Navy Chaplaincy* 850 F. Supp. 2d 86, 94 (D.D.C. 2012) (holding that a court must "presume that government officials will

conduct themselves properly and in good faith"); *accord Klayman v. NSA,* 280 F. Supp. 3d 39, 52 (D.D.C. 2017), *aff'd sub nom. Klayman v. Obama*, 759 F. App'x 1 (D.C. Cir. 2019).

### III.   Plaintiffs' Mischaracterizations of Defendants' Position

Finally, Plaintiffs submit the supplemental declaration of Dr. Dan Karasic to assert that "there is no serious debate within the medical community that hormone therapy is an effective treatment." Pls.' Reply at 16 (citing Karasic Supp. Decl. ¶ 6). Plaintiffs further claim that Dr. Karasic's declaration regarding the effectiveness of hormone medication and social transition for gender dysphoria—and indeed, the entirety of Dr. Karasic's declaration—is "undisputed." Pls.' Reply at 16–17. But Defendants need not address each statement in Dr. Karasic's declaration in order to dispute them; Defendants' arguments have placed Dr. Karasic's assertions in dispute. *See* Defs.' Resp. at 15 ("[T]he Court should be especially hesitant to issue an unnecessary constitutional ruling now given 'that there is an ongoing debate over' the necessity and efficacy of treatments for gender dysphoria."); *id.* at 16–17 ("Plaintiffs cannot rely on [ ] generalized allegations about the potential benefits of hormone medication to establish an Eighth Amendment violation," and such generalized allegations include Dr. Karasic's reliance on standards issued by the World Professional Association of Transgender Health (WPATH)). Given the dispute over the benefits of hormone medication, Plaintiffs are unlikely to succeed on their Eighth Amendment claim. *Gibson v. Collier*, 920 F.3d 212, 220 (5th Cir. 2019) ("There is no intentional or wanton deprivation of care if a genuine debate exists within the medical community about the necessity or efficacy of that care.").

Dated: April 9, 2025                                      Respectfully submitted,

                                                            YAAKOV M. ROTH
                                                            Acting Assistant Attorney General

                                                            JEAN LIN
                                                            Special Litigation Counsel

                                                            /s/ *Alexander J. Yun*
                                                            ALEXANDER J. YUN
                                                            ELIZABETH B. LAYENDECKER

Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L. Street, NW
Washington D.C. 20005
(202) 674-0255
Alex.Yun@usdoj.gov

*Counsel for Defendants*