## Motion To Intervene

RE: **Kingdom v Trump**, Case No. 1:25cv691 (DDC, Jun 2, 2025)

**Comes Now,** The plaintiff in the above styled case, petitions this Honorable Court, pursuant to FRCP 24(a)(b), to allow the plaintiff to intervene and present as a right, another claim for consideration before the court.

In the interest of [my] background history, the plaintiff recently discovered in a legal newsletter circulated among federal prisoners, of this court's issuance of its Memorandum Opinion (ECF 67) dated June 2, 2025.

The court had ordered the Bureau of Prisons to continue to provide gender affirming care to transgender inmates. The newsletter further stated that the court has granted a Rule 23 class action certification in this civil action. (Source: www.lisa-legalinfo.com)

This plaintiff is a male to female transgender individual and is recognized as such in the Bureau's SENTRY files. Thus this would make the plaintiff a member of this Rule 23 class action.

The plaintiff currently has a Habeas Corpus §2241 petition filed in the Fifth Circuit concerning the Executive Order number 14168. (**Keys v Trump/Bondi,** 2:25-CV-00172 SEC P (Filed 5-23-25)

## A New Claim

This claim would be a denial of access to the federal courts. The plaintiffs [all federal prisoners] do not have "real time" daily access to newly released federal updated caselaw.

About every (30) days each Bureau prison facility receives a "CD" from the Matthew Bender company, that contains the newly issued caselaw, though it is at that time, (30) days old. (**Exhibit____1____**)

(1)

JUL 1 4 2025

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

In essence, this means that federal prisoners have to "wait" (30) days to review new caselaw, but in reality, is old caselaw by the time we read it. Such a long wait may or may not affect any civil action or criminal appeal the prisoner may currently have residing in a federal court.

The plaintiff's case in the Fifth Circuit is a prime example of her ciconstitutional rights being in violation due to the case law delay, This plaintiff had to wait over (30) days in order to review caselaw that pertained to Executive Order 14168.

During that wait, the plaintiff could only glimpse pieces of limited information pertaining to the EO. In about mid February of 2025, This plaintiff lost her Trulincs email access to the outside community, for no apparent reason & has had to reapply to the warden for email approval. I was receiving several legal type newsletters from others & I could of accessed caselaw with that email access.. I learned more about the EO #14168, from the USAToday newspaper!

In reality, it took the plaintiff several months to wait for up-dated caselaw, then write up the §2241 & file it.

The present case, **(Kingdom)** is yet another perfect example of a denial of access to the District of Columbia court. The plaintiff searched thru the old dated caselaw & could only find a footnote reference for **Kingdom v Trump.** The plaintiff has not been able to review the Kingdom case in its entirety or even read the full text of the Memorandrum Opinion (ECF 67) issued by the court. (Source: **Pacito v Trump,** Lexis 54263, 3-24-25, W.D of Washington Footnote 1)

This constitutes a denial of access to the federal courts and in violation of the Fifth, Eighth & Fourteenth Admendments of the U. S. States Constitution. Irreparable injury attaches as an actual

injury in play and is imminent, against all incarcerated prisoners in federal custody.

The plaintiff has attempted to exhaust this issue per the PLRA. I suspect that the Bureau's Central Office remedy coordinator will return the BP-11 unanswered because the Bureau has long failed tp recognize C.F.R Title 28 §542.14(d)(5). That section "5" is not listed in the Bureau's PROGRAM STATEMENT policy.

(**Exhibit** _2, 3_ )

But regardless of whether the Bureau acknowledges section "5", the plaintiff will of have exhausted the remedy grievance procedure. (quoting: **Ross v Blake,** 578 U.S. at 643-44) *(EXh 4 )*

**Accordingly,**

The plaintiff prays the court to recognize the plaintiff's new claim of denial of access to the courts, as a right under FRCP 24 to intervene & be treated as if "[it] were an original party and has equal standing with the original parties". (quoting: **Bayshore Truck Sales Inc,** 471 F. 3d 1233,1246 (11th Cir. 2006)

The plaintiff prays the court to waive FRCP 24(c) as it pertains to FRCP Rule 5. The plaintiff does not have access to all the parties mailing addresses. The plaintiff has attached a Motion For Preliminary Injunction regarding this matter.

RESPECTFULLU SUBMITTED,

_C Keys_

_____

Clay "Carla" Keys, Pro se

_7-8-25_

_____

Date

## Motion  For  Injunctive  Relief

Federal Rules of Civil Procedure 65 empowers the court to issue
a preliminary injunction. Such injunctive relief  is an extra-
ordinary remedy meant to prevent serious & imminent harm in
dire circumstances.

To obtain such relief, the plaintiffs must show (1) a substantial
likelihood of success on the merits, (2) that the plaintiff's
would suffer irreparable injury if the injunction were not granted,
(3) that an injunction would not substantially injury any other
interested parties, and (4) that the public interest would be
furthered by the injunction.

Access to the courts is supposed to be "adequate and effective,
and meaningful." quoting **Bounds v Smith**, 430 U.S. 817,822, 97
S.Ct. 1491 (1977)

There are three basic kinds of court access claims that prisoners
can assert;

1. Right To Assistance Claims: These are claims that prison
   officials failed to assist prisoners in bringing legal
   actions, by providing law libraries or legal assistance,
   as required by the decision in Bounds v Smith;

2. Interference Claims: These are claims that prison officials
   or other officials interfered with prisoners' attempts to
   bring or pursue legal action;

3. Retaliation Claims

The first two apply to the motion for injunctive relief.

The Supreme Court held in Bounds v Smith that prison officials
have an affirmative obligation to "assist inmates in the prep-
aration & filing of meaningful legal papers by providing
prisoners with adequate law libraries or adequate assistance

(1)

from persons trained in the law".

However, in re **Lewis**, The Supreme Court imposed several restrictions on prisoners ability to enforce the Bounds v Smith obligition. Lewis held that a prisoner complaining of a Bounds violation must show that;

1. He was, or is, suffering "actuall injury" by being "frustrated" or "impeded". quoting **Lewis v Casey**, 518 US 343,351-53,116S Ct.

2. in bringing a non-frivolous claim, **Lewis**, 518 U.S. át 353

3. about his criminal conviction or sentence or the conditions of his confinement. quoting **Lewis**, 518 U.S. at 355

A federal prisoner not having timely access to updated caselaw, demonstrates a severe inadequacy, is very restrictive resulting in an actual injury to all federal prisoners filing an action in federal court. Certainly, such an denial of access to updated caselaw, frustrates & impedes the litigant.

The plaintiff has shown in her filings, that she had to wait months in order to gather caselaw to file her ¶2241 in the Fifth Circuit. Multiply that by thousands of other actions filed by federal prisoners, for many years & you have actual injury.

The plaintiff cannot access the Kingdom v Trump case because it has yet to be "updated" & provided through the "CD" update published by the Matthew Bender Company.

The operations of prison law libraries, et al, is governed by the "reasonable relationship standard", which lets prison officials adopt whatever practices or restrictions they choose as long as they are "reasonably related to legitimate penological interests" quoting **Lewis**, 518 U.S. at 361-62 citing **Turner v Safley** 482 US 78,107, S CT 2254 (1987)

Up to about June 13, 2025, the prisoners here at Oakdale FCI
had access to legal caselaw in the computer rooms that are
situated in every housing unit where prisoners reside at.

In my building, "Rapides One", we have (6) computers we use
use to access trulincs, email staff, review caselaw, et al.

Three of those computers were accessable to review caselaw.
For reasons unknown, Oakdale FCI Trust Fund staff blocked
the icon links to access the caselaw section. Staff imposed
this denial of access in every housing unit.

So, what penological interest did it serve for prison officials
to restrict housing unit caselaw access? None whatsoever.

Such denials to caselaw places the prisoner at a severe dis-
advantage to properly conduct legal research.

But the government aka legal counsel, has real time daily
access to PACER updated caselaw. This gives the government an
unfair advantage in its responses to any action the prisoner
may file.

Say hypothetically, the prisoner files a civil or criminal
action in federal court. The prisoner writes up her brief,
citing caslaw(s) to support her claim. Then say, the govern-
ment counsel files a response and being that counsel has real
time daily access to PACER caselaw, they have the better
advantage of using newly issued caselaw the prisoner has not
been able to access because remember, the plaintiff has to
"wait" 30 days or longer to access caselw that might help her
in her action before the court.

Such a scenario supports actual injury.

Last summer, the Bureau contracted to have "wifi" installed
in every housing unit & also at the Education building where
the law library resides at. I hear that wifi has also been *installed*

(3)

at other Bureau prison facilities as well. I spoke with [then] Warden Martinez & he told me that the wifi was installed to allow prisoners to use their SCORE brand computer tablets to be able to access the TRULINCS bulletin board info, et al, in the future. It sounds to me that the wifi could access the PACER caselaw.

**Accordingly,**

The plaintiff's pray the court will grant the Motion For Injunctive Relief & issue a preliminary injunction and order the defendant, Pamela Bondi, the Attorney General of the United States, be temporarily enjoined & restricted from denying federal prisoner's access to the courts through electronic means and order the following;

1. That the Bureau of Prisons set up & establish a computer system whereas prisoners can have daily or near daily access to the electronically stored information system (ESI) and to the PACER system that contains daily updated federal caselaw;

2. Order the Bureau to immediately restore prisoner access to caselaw on the computers in each housing unit;

3. Grant any other relief the court deems necessary.

## Declaration

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

RESPECTFULLY SUBMITTED,

C Carla Keys, Pro Se

7-8-25

Date

(4)

**Motion To Show Cause As To Why The Bureau Of Prisons Should Not Be Held In Contempt Of Court For Its Failure To Implement Or Obey The Court's Issued Order**

On or about June 2, 2025, the court issued a preliminary injunction that ordered the Bureau of Prisons to continue providing hormone therapy to [all] transgender federal prisoners as needed and to restore access to social accomodations such as hair removal, chest binders & undergarments, et al.

The court stated "the BOP may not arbitrarily deprive inmates of medication or other lifestyle accomodations that its own medical staff have deemed to be medically appropriate"., quote.

Yet, as of July 8, 2025 of this filing, it has been (36) days since the court issued its order. It is quite obviously that the BOP is dragging its bureaucratic feet, in implementing or of obeying  the court's directive.

The failure to comply to the order in question, violates the [all] plaintiffs Eighth Amendment constitutional rights, to not be subjected to a cruel or unusual punishment as a prisoner.

The Bureau's failure to implement the order, the plaintiffs have suffered irreparable injury that is actual and imminent, as a result of this unexcusable delay in implementing the court's order in the preliminary injunction.

The Bureau has engaged in in a deliberate indifferent matter. The Bureau could of easily written up a memorandrum instructing institutional staff to reinstate gender affirming health care to transgender prisoners. The Bureau has chosen purposefully to drag its feet & should be held accountable for this ongoing [mis]conduct.

I petition the court to order the Bureau to to explain why it has

delayed implementing the court's written order. I seriously
doubt the Bureau can offer any justifiable reason for this
excessive delay. I request the court hold the appropriate
Bureau officials in civil contempt of court.

RESPECTFULLY SUBMITTED,

_____
C. Carla Keys

_____
7-8-25

Date

(2)

## Motion For Waiver Of Protection
## Identifiers

Pursuant to FRCP 5.2, the plaintiff waives the protection of Rule 5.2(h), as to the plaintiff's identity and the court may use her real name as is warranted in any filings. Any futuristic health care documents the plaintiff may release to the court though, should be sealed.

RESPECTFULLY SUBMITTED,

_C Keys_

C Carla Keys Pro Se

_7-8-25_

Date

## Motion To Compel

The plaintiff petitions this Honorable Court to order the Bureau of Prisons to comply with the preliminary injunctive order that the court issued in its Memorandrum Opinion (ECF 67), that the Bureau provide gender affirming care to federal prisoners.

The administrative staff here at the Oakdale Federal Correctional Complex, have yet to implement or obey the court's order and resume providing transgender health care & gender affirming under garments, to the existing transgender inmates residing at the Oakdale FCC/FCI I,II & camp.

As the court may review here, is that after the EO 14168 was implemented nationwide, I wrote the psychology dept and they confirmed that all transgender services available to its inmates, was terminated. **(Exhibit 5 )**

**Accordingly,** The plaintiff requests that the court          order the Bureau to publish the court's Memorandrum Opinion/Preliminary Injunction reinstating transgender gender affirming health care and post said information on institution's TRULINCS electronic bulletin board & publish hard copies to be posted through out each Bureau prison facilty for federal prisoners to review.

As it has been (36+) days at the time of this filing & of the court's issuing its order, it is obvious that the Bureau cannot be trusted upon to obey the court's order on its own initiative.

RESPECTFULLY SUBMITTED,

_____

C. Carla Keys, Pro se

7-8-25

Date

RE: Matthew Bender Master Agreement 

## 10.0 DEFINITIONS.

**10.1** "**Agreement**" means this Master Agreement together with the Order Form.

**10.2** "**Distributed Media**" means the floppy disc, CD-ROM, DVD-ROM, external hard drive, or other physical media now existing or developed in the future on which we furnish the Legal Research Service.

**10.3** "**Legal Research Service**" means, as applicable, (i) the Licensed Program, Materials, updates made available on Distributed Media or online, and related documentation, whether in print or electronic form, or (ii) the LexisNexis Matthew Bender Online service available at www.bender.com. For purposes of this Agreement, "Legal Research Service" does not include other LexisNexis Company online services such as LexisNexis at www.lexis.com or Nexis at www.nexis.com.

**10.4** "**LexisNexis Company**" means LexisNexis, a division of Reed Elsevier Inc., Matthew Bender & Company, Inc., or any company that may become affiliated with them.

**10.5** "**Licensed Program**" means the computer programs, control information and related software that provide access to the Materials.

**10.6** "**Materials**" means the information contained in the Legal Research Service.

**10.7** "**Multi-User Network**" means a computer system and network under your exclusive control on which multiple users may access the Legal Research Service concurrently.

Matthew Bender Master Agreement          1

© 2025 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.



22458017

Code of Federal Regulations Title 28 §542.14(d)(5)

(4) The inmate shall date and sign the Request and submit it to the institution staff member designated to receive such Requests (ordinarily a correctional counselor). CCC inmates may mail their Requests to the CCM.

## (d) Exceptions to Initial Filing at Institution.

(1) Sensitive Issues. If the inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the Request became known at the institution, the inmate may submit the Request directly to the appropriate Regional Director. The inmate shall clearly mark "Sensitive" upon the Request and explain, in writing, the reason for not submitting the Request at the institution. If the Regional Administrative Remedy Coordinator agrees that the Request is sensitive, the Request shall be accepted. Otherwise, the Request will not be accepted, and the inmate shall be advised in writing of that determination, without a return of the Request. The inmate may pursue the matter by submitting an Administrative Remedy Request locally to the Warden. The Warden shall allow a reasonable extension of time for such a resubmission.

(2) DHO Appeals. DHO appeals shall be submitted initially to the Regional Director for the region where the inmate is currently located.

(3) Control Unit Appeals. Appeals related to Executive Panel Reviews of Control Unit placement shall be submitted directly to the General Counsel.

(4) Controlled Housing Status Appeals. Appeals related to the Regional Director's review of controlled housing status placement may be filed directly with the General Counsel.

(5) Other requests for formal review of decisions not originating from the Warden. Other than the exceptions listed above, formal administrative remedy requests regarding initial decisions that did not originate with the Warden, or his/her staff, may be initially filed with the Bureau office which made the original decision, and appealed directly to the General Counsel.

HISTORY: [44 FR 62250, Oct. 29, 1979; 58 FR 58246, Oct. 29, 1993; 61 FR 86, 88, Jan. 2, 1996; 75 FR 34625, 34626, June 18, 2010]

[EFFECTIVE DATE NOTE:

75 FR 34625, 34626, June 18, 2010, added paragraph (d)(5), effective June 18, 2010.]

CFR2                                    1

2025 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

22458017

 *Exh 3*

Program Statements #1330.18 (Date 1-6-2014)

### d. Exceptions to Initial Filing at Institution

**(1) Sensitive Issues.** If the inmate reasonably believes the issue is sensitive and the inmate's safety or well-being would be placed in danger if the Request became known at the institution, the inmate may submit the Request directly to the appropriate Regional Director. The inmate shall clearly mark "Sensitive" upon the Request and explain, in writing, the reason for not submitting the Request at the institution. If the Regional Administrative Remedy Coordinator agrees that the Request is sensitive, the Request shall be accepted. Otherwise, the Request will not be accepted, and the inmate shall be advised in writing of that determination, without a return of the Request. The inmate may pursue the matter by submitting an Administrative Remedy Request locally to the Warden. The Warden shall allow a reasonable extension of time for such a resubmission.

**(2) DHO Appeals.** DHO appeals shall be submitted initially to the Regional Director for the region where the inmate is currently located.

See the Program Statement **Inmate Discipline Program.**

**(3) Control Unit Appeals.** Appeals related to Executive Panel Reviews of Control Unit placement shall be submitted directly to the General Counsel.

See the Program Statement **Control Unit Programs.**

**(4) Controlled Housing Status Appeals.** Appeals related to the Regional Director's review of controlled housing status placement may be filed directly with the General Counsel.

See the Program Statement **Procedures for Handling HIV Positive Inmates Who Pose Danger to Other.**

### 9. APPEALS § 542.15

**a. Submission.** An inmate who is not satisfied with the Warden's response may submit an Appeal on the appropriate form (BP-10) to the appropriate Regional Director within 20 calendar days of the date the Warden signed the response. An inmate who is not satisfied with the Regional Director's response may submit an Appeal on the appropriate form (BP-11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response. When the inmate demonstrates a valid reason for delay, these time limits may be extended. Valid reasons for delay include those situations described in §542.14(b) of this part.

progstat                                   1

© 2025 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

22458017

U.S. Department of Justice

**1 2 3 4**

Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

| From: | Keys, Clay C | 22458-017 | R-124L | Oakdale I |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A - REASON FOR APPEAL**    **Note:** I file this grievance based on CFR Title 28 §542.14(d)(5).
This allows me to file the administrative remedy to Central Office, thus bypassing the warden
and Regional Director, as they cannot resolve this issue at those levels. The issue grieved
applies only to the Bureau's Central Office. (See Exhibit one attached)

I grieve the fact that federal inmates are not allowed real time daily access to newly up-
dated federal caselaw. As the Central Office is aware, Institutions receive a CD about every
30 days & to which contains the new caselaw. I very recently worked on a legal case for the
Fifth Circuit & I had to "wait" over two months to gather old outdated caselaw in order to
file my legal matter in federal court. Making inmates wait this long constitutes a denial of
access to the courts, in violation of the 5th, 8th & 14th Admendments of the US Constitution.
Irreparable injury as well as deliberate indifference applies. "Wifi" has been installed at
prisons now & the BOP could easily set it up where inmates could review new federal caselaw
within 24 hrs of being issued by the courts, instead of having to wait 30 days to review the
caselaw. Also, on about 6-13-25, Trust Fund staff removed caselaw access from the living
area computers in each bldg where inmates reside. Now we cannot access caselaw after hours &
such inmates that are employed by Unicor & cannot visit the law library daily, now cannot
access caselaw in their living quarters. This needs to be reinstated & a system set up for in-
mates to be able to access newly issued caselaw, not 30 days later. Thank you.

| 7-3-25 | DATE | | C Keys | SIGNATURE OF REQUESTER |
|---|---|---|---|---|

**Part B - RESPONSE**

Attached: §542.14(d)(5)

**Exh 4**

| DATE | | | GENERAL COUNSEL |
|---|---|---|---|

**1234**

ORIGINAL: RETURN TO INMATE    CASE NUMBER: _____

**Part C - RECEIPT**

CASE NUMBER: _____

| Return to: | | | |
|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

SUBJECT: _____

RULINCS  22458017 - KEYS, CLAY C - Unit: OAK-P-A

--------------------------------------------------------------------------------

FROM: Psychology
TO: 22458017
SUBJECT: RE:***Inmate to Staff Message***
DATE: 05/06/2025 10:52:02 AM

Your messaged has been received. At this time, Health Services is not providing Medical Hormone Treatment. My understanding is that the Support Therapy class is no longer offered. However, if you need to speak to a psychologist or would like resources regarding anxiety, depression, etc., please let us know so that we can best assist you.

From: ~^! KEYS, ~^!CLAY C <22458017@inmatemessage.com>
Sent: Saturday, May 3, 2025 6:43 PM
Subject: ***Request to Staff*** KEYS, CLAY, Reg# 22458017, OAK-P-A

To: Ms Barber
Inmate Work Assignment: Orderly

Hi. I identify as a transgender and I am listed in SENTRY files as such.  I would like to speak with someone about being evaluated to start receiving hormonal therapy to transition from male to female as a transgender.

Is this possible to receive such hormonal treatment,  because on 1-20-25 President Trump signed Executive Order 14168 "Defending Women from Gender Ideology Extremism & Restoring Biological Truth to the Federal Government" and Section 4(c) states in part, "no federal funds will be expended for any medical procedure, treatment, or drug(s) for the purpose of conforming an inmate's appearance to that of the opposite sex".

I seek clarification on whether I will be permitted to receive such medical hormonal treatment to transition or not. I assume "not" based on Section 4(c) but I would like to hear what the psychology dept has to say regarding this issue.

Also, is the transgender support therapy class still being offered at psychology dept?

Thank you.

Carla Keys

Certified Mail: <u>9589 0710 5270 1983 9472 80</u>

Date: <u>7-08-2025</u>

RECEIVED
Mailroom

JUL 1 4 2025

Angela D. Caesar, Clerk of Clerk
U.S. District Court, District of Columbia

Clerk, United States Courthouse
333 Constitution Ave  NW
Washington, D.C.   20001

RE: **Kingdom v Trump,** 1:25cv691 (DDC. Jun 2, 2025

Dear Clerk;

Greetings. Find enclosed several motions filed in relation
to the above styled case, in this order;

1. Motion To Intervene (3) pages, with (4) exhibits;

2. Motion For Injunctive Relief, (4) pages; Under Oath;

3. Motion To Show Cause, (2) pages;

4. Motion For Waiverof Protection Identifiers.
5. Motion To Compel, (1) page *(1) exhibit*
If I may be of further assistance, Please do not hesitate
to contact me at the address below.

Thank you.

Kind Regards,

C. Carla Keys #22458-017

Federal Correctional Institution
Po Box 5000
Oakdale, LA. 71463