**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

ALISHEA KINGDOM, et al.,

               Plaintiffs,

        v.

DONALD J. TRUMP, et al.,

               Defendants.

Case No. 1:25-cv-00691-RCL

**PLAINITFFS' MOTION FOR A DISCOVERY SCHEDULING ORDER**

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................ 1

II.   BACKGROUND ......................................................................................................... 1

III.  ARGUMENT .............................................................................................................. 3

   A.   Plaintiffs are entitled to discovery under settled exceptions to the APA record rule ......... 4

      i.    The absence of an administrative record or contemporaneous administrative findings in
            this case frustrates judicial review and necessitates discovery ................................................ 4

      ii.   Discovery is also necessary to understand the nature and contours of the Policy .......... 9

   B.   Plaintiffs' non-APA claims independently warrant discovery ......................................... 11

      i.    Whether extra-record discovery for Plaintiffs' other claims brought in conjunction with
            APA claims is warranted requires a fact- and claim-specific inquiry.................................. 11

      ii.   Plaintiffs are entitled to discovery based on the non-APA claims alleged and the
            evidence of officials' subjective knowledge and intent necessary to prove them ................ 12

IV.   CONCLUSION........................................................................................................... 18

# TABLE OF AUTHORITIES

Page(s)

CASES

*Abdullah v. Washington*,
   530 F. Supp. 2d 112 (D.D.C. 2008) ...................................................................16

*All. for Nat. Health U.S. v. Sebelius*,
   714 F. Supp. 2d 48 (D.D.C. 2010) ....................................................................15

*All. for Retired Americans v. Bessent*,
   No. CV 25-0313 (CKK), 2025 WL 1114350 (D.D.C. Mar. 20, 2025)...................................10

*Am. Fed'n of Lab. & Cong. of Indus. Org. (AFL-CIO) v. Dep't of Lab.*,
   349 F.R.D. 243 (D.D.C. 2025)..................................................................9, 10, 11

*Amgen Inc. v. Hargan*,
   285 F. Supp. 3d 397 (D.D.C. 2017) ....................................................................4

*Axiom Res. Mgmt., Inc. v. United States*,
   564 F.3d 1374 (Fed.Cir.2009)), *aff'd*, 887 F.3d 501 (D.C. Cir. 2018)....................................4

*Baker v. D. C.*,
   326 F.3d 1302 (D.C. Cir. 2003) .....................................................................16

*Bellion Spirits, LLC v. United States*,
   335 F. Supp. 3d 32 (D.D.C. 2018), *aff'd*, 7 F.4th 1201 (D.C. Cir. 2021)...................... *passim*

*Bos. All. of Gay, Lesbian, Bisexual & Transgender Youth v.*
   *U.S. Dep't of Health & Hum. Servs.*,
   557 F. Supp. 3d 224 (D. Mass. 2021) ..............................................................12, 17

*Butte Cnty., California v. Chaudhuri*,
   197 F. Supp. 3d 82 (D.D.C. 2016) ....................................................................4

*Cal. v. U.S. Dep't of Homeland Sec.*,
   612 F. Supp. 3d 875 (N.D. Cal. 2020) .................................................................12

*Camp v. Pitts*,
   411 U.S. 138 (1973)................................................................................7, 8

*Chiayu Chang v. U.S. Citizenship & Immigration Servs.*,
   254 F.Supp.3d 160 (D.D.C. 2017)...................................................................12, 15

*Citizens to Pres. Overton Park, Inc. v. Volpe*,
   401 U.S. 402 (1971)..................................................................................7

i

*Cmty. for Creative Non–Violence v. Lujan*,
  908 F.2d 992 (D.C. Cir. 1990) ..........................................................................5

*Cook Cnty., Illinois v. Wolf*,
  461 F. Supp. 3d 779 (N.D. Ill. 2020) .........................................................12, 17

*Dallas Safari Club v. Bernhardt*,
  518 F. Supp. 3d 535 (D.D.C. 2021) ...................................................................6

*Fla. Power & Light Co. v. Lorion*,
  470 U.S. 729 (1985) .......................................................................................5, 8

*Grill v. Quinn*,
  No. CIV S-10-0757 GEB, 2012 WL 174873 (E.D. Cal. Jan. 20, 2012) .................12

*Hill Dermaceuticals, Inc. v. Food & Drug Admin.*,
  709 F.3d 44 (D.C. Cir. 2013) ..........................................................................3, 9

*Hisp. Affs. Project v. Acosta*,
  901 F.3d 378 (D.C. Cir. 2018) ........................................................................9, 10

*Johnson v. D.C.*,
  No. 17-CV-185 (CRC), 2019 WL 689777 (D.D.C. Feb. 19, 2019) ........................16

*Karnoski v. Trump*,
  926 F.3d 1180 (9th Cir. 2019) ...........................................................................8

*Marshall Cnty. Health Care Auth. v. Shalala*,
  988 F.2d 1221 (D.C. Cir. 1993), *reconsideration denied*,
  No. CV 25-339 (JDB), 2025 WL 1129202 (D.D.C. Mar. 19, 2025) ......................9

*Mathis v. United States Parole Comm'n*,
  749 F. Supp. 3d 8 (D.D.C. 2024) ......................................................................18

*Mayor & City Council of Baltimore v. Trump*,
  429 F. Supp. 3d 128 (D. Md. 2019) ............................................................12, 15

*McKoy v. Spencer*,
  No. CV 16-1313 (CKK), 2019 WL 400615 (D.D.C. Jan. 31, 2019) ................11, 13

*Miccosukee Tribe of Indians of Fla. v. United States*,
  No. 08-23001-CIV, 2010 WL 337653 (S.D. Fla. Jan. 22, 2010) ...........................12

*Nat'l Ass'n of Chain Drug Stores v. U.S. Dep't of Health & Hum. Servs.*,
  631 F. Supp. 2d 23 (D.D.C. 2009) (Lamberth, J.,) ..............................................16

*Nat'l Ass'n of Mfrs. v. Dep't of Def.*,
  583 U.S. 109 (2018) ...........................................................................................8

ii

*Nat'l Ass'n of Postal Supervisors v. United States Postal Serv.*,
   No. 1:19-CV-2236-RCL, 2023 WL 5221367 (D.D.C. Aug. 15, 2023)
   ..........................................................................................................................3, 8, 14, 15

*Nat'l L. Ctr. on Homelessness & Poverty v. U.S. Dep't of Veterans Affs.*,
   842 F. Supp. 2d 127 (D.D.C. 2012) ..................................................................................6

*Nat'l Med. Enters., Inc. v. Shalala*,
   826 F. Supp. 558 (D.D.C. 1993) ......................................................................................11

*Nat'l Min. Ass'n v. Jackson*,
   856 F. Supp. 2d 150 (D.D.C. 2012) ...............................................................................4, 5

*New York v. U.S. Dep't of Commerce*,
   351 F. Supp. 3d 502 (S.D.N.Y. 2019),
   *aff'd in part and rev'd in part on other grounds*, 588 U.S. 752 (2019)............................12, 17

*Norsworthy v. Beard*,
   87 F. Supp. 3d 1104 (N.D. Cal. 2015) ............................................................................16

*Puerto Rico Pub. Hous. Admin. v. U.S. Dep't of Hous. & Urb. Dev.*,
   59 F. Supp. 2d 310 (D.P.R. 1999).....................................................................................12

*Romer v. Evans*,
   517 U.S. 620 (1996)...........................................................................................................16

*Rydeen v. Quigg*,
   748 F. Supp. 900 (D.D.C. 1990), *aff'd*, 937 F.2d 623 (Fed. Cir. 1991) ................................11

*Saratoga Dev. Corp. v. United States*,
   21 F.3d 445 (D.C. Cir. 1994) ........................................................................................5, 6

*Steele v. United States*,
   657 F. Supp. 3d 23 (D.D.C. 2023) (Lamberth, J.) ...........................................................6

*In re Subpoena Duces Tecum Served on Off. of Comptroller of Currency*,
   156 F.3d 1279 (D.C. Cir. 1998) .........................................................................................6

*Texas v. Biden*,
   No. 2:21-CV-067-Z, 2021 WL 4552547 (N.D. Tex. July 19, 2021)......................................12

*Truong v. United States Citizenship & Immigr. Servs.*,
   No. CV 21-316 (RC), 2022 WL 17356865 (D.D.C. Dec. 1, 2022)..........................................5

*United Farm Workers v. Noem*,
   No. 1:25-CV-00246-JLT-CDB, 2025 WL 1490131 (E.D. Cal. May 23, 2025)................11, 15

*United States v. Skrmetti*,
   145 S. Ct. 1816 (2025) .................................................................................17

*United Student Aid Funds, Inc. v. Devos*,
   237 F. Supp. 3d 1 (D.D.C. 2017) .................................................................7

*Venetian Casino Resort, L.L.C. v. E.E.O.C.*,
   409 F.3d 359 (D.C. Cir. 2005) .....................................................................9

*Venetian Casino Resort, L.L.C. v. E.E.O.C.*,
   530 F.3d 925 (D.C. Cir. 2008) ...................................................................10

## STATUTES

5 U.S.C. § 706 .....................................................................................................3

## OTHER AUTHORITIES

First Amendment ......................................................................................3, 5, 11, 13

Fifth Amendment .............................................................................................13, 15

Eighth Amendment .......................................................................................1, 11, 16

Braden Currey, Note, *Rationalizing the Administrative Record for Equitable Constitutional
   Claims*, 133 YALE L.J. 2017 (2024) ..........................................................12

Fed. R. Civ. P. 26 ......................................................................................3, 8, 14, 18

Fed. R. Civ. P. 26(a)(1)(B)(i) ................................................................................3

Fed. R. Civ. P. 26(a)(1)(C) ....................................................................................2

Fed. R. Civ. P. 26(f)(2) .......................................................................................1, 2

Local Civil Rule 7(n) .........................................................................................1, 2, 3

Local Civil Rule 16.3 ..............................................................................................3

Local Rule 16.3(b)(1) ...............................................................................................2

President Trump's Executive Order 14168……………………………………………………………passim

## I.  INTRODUCTION

Pursuant to Federal Rule of Civil Procedure 16(b) and Local Civil Rule 16.3, Plaintiffs respectfully move for an order setting a discovery schedule in this matter.

The instant dispute concerns Plaintiffs' entitlement to discovery in this case, which challenges President Trump's Executive Order 14168 ("the Executive Order") categorically banning the provision of gender-affirming health care (including hormone therapy and accommodations) for people with gender dysphoria in the Bureau of Prisons' (BOP) custody, and BOP's implementation of the Executive Order ("the Policy").

Plaintiffs bring both statutory and constitutional claims, challenging the Policy under the APA, as well as the Eighth Amendment, the Equal Protection Clause, and the Rehabilitation Act. Plaintiffs contend that they are entitled to limited discovery as to their APA claims, first, because Defendants have not produced, and *do not intend* to produce, any administrative record (AR) for the current, enjoined Policy and second, because there is fundamental disagreement as to the very nature and existence of the Policy. Plaintiffs are separately entitled to discovery as to their constitutional claims because they are factually and legally distinct from the APA claims, require the Court to apply completely different standards of review, and require discovery to establish relevant and material evidence.

## II.  BACKGROUND

Following this Court's June 3, 2025 order (ECF 68) granting Plaintiffs' Motion for Preliminary Injunction (ECF 7) and Motion for Class Certification (ECF 8), the parties' respective counsel held a Rule 26f conference on July 24, 2025, where they discussed all matters required under LCR 16.3(c). *See* Nowlin-Sohl Decl. ¶¶ 2-3 [X].

On July 26, 2025, Plaintiffs' counsel sent an email to defense counsel inquiring about Defendants' obligations under Local Rule 7(n) to file a certified list of the contents of the administrative record with the Court, noting that the deadline had passed on July 24, 2025. *Id*. ¶ 4. Defense counsel responded on July 27, 2025, that they would confer with their clients regarding the issue. *Id*.

On August 5, 2025, consistent with Fed. R. Civ. P. 26(f)(2), plaintiffs' counsel sent defense counsel a draft joint report and proposed discovery plan based on the discussions at their Rule 26f conference. *Id*. ¶ 5. On August 7, 2025, two weeks after the Rule 26f conference, Plaintiffs sent defense counsel their initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1)(C). *Id*. ¶ 6.

On August 8, 2025, defense counsel emailed plaintiffs' counsel, announcing for the first time "Defendants' view [] that this [is] an APA record-review case, this case is exempt under Local Rule 16.3(b)(1), and discovery is not warranted," and provided legal arguments for their position. *Id*. ¶ 7.  Plaintiffs responded by providing opposing legal arguments in the draft joint report, to which Defendants later responded with additional legal arguments. *Id.* ¶ 8. The Parties changed tack and submitted a brief, Initial Joint 26(f) Statement, requesting a briefing schedule on the issue. ECF 82.

Despite their contention that the Court can and must resolve this case based solely on the administrative record, Defendants have failed to file a certified list of the contents of an administrative record for the challenged policy as required by Local Civil Rule 7(n), or to produce an administrative record to Plaintiffs. Indeed, Defendants informed Plaintiffs that they do not intend to produce an administrative record for the policy at issue in this case—because they are developing a new policy and will instead produce an administrative record for that policy—via e-mail on September 10, 2025 stating, "Defendant is not planning on producing the AR for the

current policy. With the advent of the new policy, it would be more efficient to produce that AR, instead of the AR to a superseded, moot policy." Nowlin-Sohl Decl. ¶ 11. Defendants did not provide any timeline for the completion of the new policy, nor any information about what the new policy is. *Id*.

As of the date of this filing, Defendants have neither filed a certified list of the contents of an administrative record for the Policy as required by Local Civil Rule 7(n), produced an administrative record for the Policy, nor provided their initial disclosures as required by Fed. R. Civ. P. 26.

## III. ARGUMENT

Federal Rule of Civil Procedure 26 and Local Civil Rule 16.3 require parties to meet and confer and propose a discovery plan except in certain types of cases that come within the rules' delineated exceptions, which include "action[s] for review on an administrative record." Fed. R. Civ. P. 26(a)(1)(B)(i); LCvR 16.3(b)(1). This exclusion is "intended to reach proceedings that are framed as an 'appeal' based solely on an administrative record." *Nat'l Ass'n of Postal Supervisors v. United States Postal Serv.*, No. 1:19-CV-2236-RCL, 2023 WL 5221367, at *3 (D.D.C. Aug. 15, 2023) (Lamberth, J.) (quoting Fed. R. Civ. P. 26 advisory committee's note (2000 amendments)). Cases brought under the Administrative Procedure Act (APA) usually fall into this discovery exception, limiting judicial review to the administrative record, because the APA's text requires courts to "review the whole record or those parts of it cited by a party" in determining whether to set aside agency action as arbitrary and capricious or otherwise not in accordance with law. 5 U.S.C. § 706.

The "record rule" in APA cases ensures "a reviewing court . . . ha[s] before it neither more nor less information than did the agency when it made its decision." *Hill Dermaceuticals, Inc. v.*

*Food & Drug Admin.*, 709 F.3d 44, 47 (D.C. Cir. 2013). It is meant to prevent "post hoc rationalizations," "consideration of facts and arguments that were not presented to the decision-maker," and "the Court substituting its judgment for that of the agency." *Amgen Inc. v. Hargan*, 285 F. Supp. 3d 397, 404 (D.D.C. 2017) (citing *Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984); *Nuclear Energy Inst., Inc. v. Env't Prot. Agency*, 373 F.3d 1251, 1297–98 (D.C. Cir. 2004); *Citizens to Pres. Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416 (1971)). In other words, the record rule prevents courts from "using new evidence to 'convert the arbitrary and capricious standard into effectively de novo review.'" *Butte Cnty., California v. Chaudhuri*, 197 F. Supp. 3d 82, 91 (D.D.C. 2016) (quoting *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1380 (Fed.Cir.2009)), *aff'd,* 887 F.3d 501 (D.C. Cir. 2018).

These purposes logically inform the established exceptions to the record rule in APA cases, including for cases in which the precise nature of the agency's policy or action is in dispute, as well as courts' decisions on whether to permit discovery in cases involving additional claims beyond the APA. For the reasons explained below, discovery is warranted here both because this case comes within settled exceptions to the APA record rule (Section III.A) and because Plaintiffs' non-APA claims require the Court to evaluate evidence beyond any potential administrative record (Section III.B).

### A.  Plaintiffs are entitled to discovery under settled exceptions to the APA record rule

> *i.   The absence of an administrative record or contemporaneous administrative findings in this case frustrates judicial review and necessitates discovery*

The exceptions to the APA record rule are all based on an "assessment that 'resort to extra-record information[1] [is necessary] to enable judicial review to become effective.'" *Nat'l Min. Ass'n v. Jackson*, 856 F. Supp. 2d 150, 157 (D.D.C. 2012) (quoting *Calloway v. Harvey*, 590 F. Supp. 2d 29, 38 (D.D.C. 2008), in turn quoting *Esch v. Yeutter,* 876 F.2d 976, 991 (D.C. Cir. 1989)). Although the D.C. Circuit has "narrowed" the exceptions over time, *id.* at 156-57, limited discovery on APA claims "should" be granted "if a party makes a significant showing—variously described as a strong, substantial, or prima facie showing—that it will find material in the agency's possession indicative of bad faith or an incomplete record." *Truong*, 2022 WL 17356865, at *5 (quoting *Air Transp. Ass'n of Am., Inc. v. Nat'l Mediation Bd.*, 663 F.3d 476, 487 (D.C. Cir. 2011)). That is, discovery on APA claims is proper where a party demonstrates either (1) "a strong showing of bad faith or improper motive," or (2) that "the record is so bare as to frustrate effective judicial review." *Id.* (quoting *Am. Petroleum Tankers Parent, LLC v. United States*, 952 F. Supp. 2d 252, 271 (D.D.C. 2013), in turn quoting *Cmty. for Creative Non–Violence v. Lujan*, 908 F.2d 992, 998 (D.C. Cir. 1990)).

It is difficult to imagine a record more "bare," *Cmty. for Creative Non–Violence*, 908 F.2d at 998, "incomplete," *Truong*, 2022 WL 17356865, at *5, or "inadequate for review," *Saratoga Dev. Corp. v. United States*, 21 F.3d 445, 458 (D.C. Cir. 1994), than one that does not exist. By conceding that there is no administrative record forthcoming as to the current Policy, Defendants betray the reality that this is not a case involving an "administrative record *already in existence*."

---

[1] Although "cases in this Circuit have distinguished between 'supplementing the administrative record' and 'permitting consideration of extra-record evidence'" as compared to "request[s] for discovery" in APA cases and have provided somewhat varied articulations of their attendant record-rule exceptions, the standards for and reasoning behind all these procedural avenues are "substantially similar." *Truong v. United States Citizenship & Immigr. Servs.*, No. CV 21-316 (RC), 2022 WL 17356865, at *5 n.2 (D.D.C. Dec. 1, 2022).

*Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743 (1985) (quoting *Camp v. Pitts,* 411 U.S. 138, 142 (1973)) (emphasis added). As a result, discovery "provides the only possibility for effective judicial review." *Saratoga Dev. Corp*, 21 F.3d at 458 (quoting *Cmty. for Creative Non–Violence,* 908 F.2d at 997). "Where there is no administrative record to review, the party challenging the agency action may inquire into the decisionmaking process in order to create such a record." *In re Subpoena Duces Tecum Served on Off. of Comptroller of Currency*, 156 F.3d 1279, 1280 (D.C. Cir. 1998) (citing *Overton Park*, 401 U.S. at 420); *see also Dallas Safari Club v. Bernhardt*, 518 F. Supp. 3d 535, 542 n.6 (D.D.C. 2021). As a result, this Court has "allowed . . . parties to engage in fact discovery" where "there is no administrative record in [the] case." *Steele v. United States*, 657 F. Supp. 3d 23, 34 n.6 (D.D.C. 2023) (Lamberth, J.). As this Court has noted, allowing discovery where no administrative record exists follows the logic of the record rule itself: "absent an administrative record constituting the materials upon which the agencies arrived at some decision to which this Court, upon review, might defer, plaintiffs would likely be entitled to some discovery to enable meaningful judicial review." *Nat'l L. Ctr. on Homelessness & Poverty v. U.S. Dep't of Veterans Affs.*, 842 F. Supp. 2d 127, 131 (D.D.C. 2012) (Lamberth, J.).

In addition to failing to produce an administrative record, Defendants have pointed to "no contemporaneous administrative findings" in this case that could allow proper judicial review absent discovery. *Saratoga Dev. Corp.*, 21 F.3d at 458 (quoting *Cmty. for Creative Non–Violence,* 908 F.2d at 997); *cf. Bellion Spirits, LLC v. United States*, 335 F. Supp. 3d 32, 38 (D.D.C. 2018) (noting, in context of motion to supplement an existing administrative record, that exceptions to record rule "grant plaintiffs a means of securing effective judicial review when the agency's failure to explain its action . . . precluded the creation of an adequate record" (internal quotations omitted)), *aff'd*, 7 F.4th 1201 (D.C. Cir. 2021). In granting Plaintiffs' Motion for Preliminary

Injunction as to their APA claims, this Court already found that "BOP's *only* explanation for its new policies is that the Executive Order required the adoption of those policies, and that the Executive Order itself provided adequate explanations for BOP's new policies." ECF 67 at 21 (Memorandum Opinion granting Preliminary Injunction) (emphasis in original). In turn, this Court held that "the reasoning contained [in the EO] is plainly deficient" and "neither the BOP nor the Executive Order provides any serious explanation as to why the treatment modalities covered by the Executive Order or implementing memoranda should be handled differently than any other mental health intervention," or "how providing hormone medications or social accommodations to prisoners hampers 'scientific inquiry, public safety, morale, trust in government,' or any other virtue animating the Executive Order." *Id.* at 22-23. Likewise, the Court could find "nothing in the thin record before the Court" at the preliminary injunction stage indicating that "either the BOP or the President consciously took stock of—much less studied—the potentially debilitating effects that the new policies could have on transgender inmates before the implementing memoranda came into force." *Id.* at 23.

If there were any "administrative findings that were made at the same time as" the Policy, one would expect Defendants to have offered them. *Overton Park*, 401 U.S. at 420. Instead, they have only offered "'post hoc' rationalizations" or explanations, *id.* at 419 (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168-169 (1962)), in response to litigation. *See* ECF 36-1 (Declaration of Chris Bina, Assistant Director of BOP Health Services Division). This is not only anathema to the record rule's purposes, it is itself indicative of an APA violation, as BOP has offered no "contemporaneous explanation of the agency['s] decision" whatsoever, *Camp*, 411 U.S. at 143, let alone a "reasoned analysis" for abruptly altering "longstanding policies" that have "engendered serious reliance interests that must be taken into account." *United Student Aid Funds,*

*Inc. v. Devos*, 237 F. Supp. 3d 1, 5 (D.D.C. 2017) (quoting *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009)) (finding that lack of evidence in administrative record relevant to question of whether agency action constituted a new rule was a "gross procedural deficiency" that warranted admission of extra-record evidence). *See also* ECF 67 at 20-23. The absence of administrative record and contemporaneous agency findings or explanation constitutes "such [a] failure to explain administrative action as to frustrate effective judicial review." *Camp*, 411 U.S. at 142-43. Unlike "typical[]" APA cases, in which agencies "compile records in the course of informal agency action," this case falls into the narrow exception where "[t]he factfinding capacity of the district court" via Rule 26 discovery *is* necessary "to judicial review of agency decisionmaking" under the APA. *Fla. Power & Light Co*, 470 U.S. at 744. As a result, "allowing discovery will ultimately aid the Court" in adjudicating Plaintiffs' claims. *Nat'l Ass'n of Postal Supervisors*, 2023 WL 5221367, at *7.

This conclusion is not altered by Defendants' proffer that a new policy, about which they provide no information, is forthcoming at some undefined future date. *See Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 583 U.S. 109, 120 n.5 (2018) (holding that proposed new agency action does not moot a preexisting challenge to a rule where the originally challenged rule "remains on the books"); *Karnoski v. Trump*, 926 F.3d 1180, 1195-97, 1204 (9th Cir. 2019) (finding that discovery was not automatically precluded even after new policy regarding transgender members of the armed forces had been issued, because of "non-frivolous arguments" that the new policy nonetheless "implemented" the original one, such that the district court should still consider the basis for "the President's initial decision").

Defendants' argument that this is a standard "record-review case" relies on a hypothetical administrative record that somehow simultaneously exists in complete form and that also, in the

interest of "efficien[cy]," Nowlin-Sohl Decl. ¶ 11 (quoting Defendants' counsel), Defendants have

not produced and will not produce. But this Court cannot limit its factfinding function based on

Schrodinger's administrative record—one which simultaneously does and does not exist. Rather,

where (as here) there is no *existing* administrative record, the purpose of the record rule—that "a

reviewing court 'should have before it neither more nor less information than did the agency when

it made its decision,'" *Hill Dermaceuticals*, 709 F.3d at 47—simply does not apply, and the rule's

exception for cases where a deficient administrative record frustrates judicial review does. As a

result, discovery on the APA claims is necessary and appropriate in this case.

*ii.  Discovery is also necessary to understand the nature and contours of the Policy*

Discovery is also proper in this case because the parties dispute the nature of the challenged

agency actions, and discovery is "necessary to determine the contours of" those actions. *Am. Fed'n*

*of Lab. & Cong. of Indus. Org. (AFL-CIO) v. Dep't of Lab.*, 349 F.R.D. 243, 245-249 (D.D.C.

2025) ("The 'contours of the precise policy at issue' are far from defined. . . . As such, the

discovery requested here is appropriate, for it is not so much 'fact-finding' as it is 'filling in gaps

. . . to determine what the agency actually did.'") (quoting in turn *Hisp. Affs. Project v. Acosta*,

901 F.3d 378, 388 (D.C. Cir. 2018) and *Marshall Cnty. Health Care Auth. v. Shalala*, 988 F.2d

1221, 1227 (D.C. Cir. 1993)), *reconsideration denied*, No. CV 25-339 (JDB), 2025 WL 1129202

(D.D.C. Mar. 19, 2025); *see also Venetian Casino Resort, L.L.C. v. E.E.O.C.*, 409 F.3d 359, 360

(D.C. Cir. 2005) (discussing situations where "[t]he parties' litigation positions have obscured the

issues . . . , so it is impossible to discern whether the alleged . . . policy in fact exists"). Allowing

discovery for cases in which the agency actions challenged are "unlike the actions normally

challenged in APA cases, such as a promulgated regulation or a grant or denial of an application"

and instead involve equivocal policies where it is not "evident that there exists a standard

9

administrative record that defendants could submit" accords with the principles underlying the record rule itself. *AFL-CIO*, 349 F.R.D. at 248 (D.D.C. 2025); *see also Hisp. Affs. Project*, 901 F.3d at 387-88.

Here, Defendants have contended, in essence, that the challenged policies have been implemented in a manner distinct from what their text and the text of the Executive Order plainly require. ECF 67 at 13. At oral argument, Defendants argued that Plaintiffs' understanding of the Policy "rest[s] on a misinterpretation, a misunderstanding of what the BOP's policy is." ECF 69 (Oral Arg. Tr.) at 30. "The record now before the Court is insufficient to allow the Court and Plaintiffs to 'ascertain the contours of the precise policy at issue'" because "only the Defendants know the 'contours' of [their] actions." *All. for Retired Americans v. Bessent*, No. CV 25-0313 (CKK), 2025 WL 1114350, at *3 (D.D.C. Mar. 20, 2025) (quoting *Venetian Casino Resort,* 409 F.3d at 367). As this Court has already held, BOP's position that its "policy is to provide hormone therapy to inmates as necessary to address medical needs *other* than 'conforming an inmate's appearance to that of the opposite sex'" is wholly "inconsisten[t] . . . with the text of the Executive Order." ECF 67 at 13. This inconsistency essentially amounts to an "unannounced departure in practice from a written regulation," *Hisp. Affs. Project*, 901 F.3d at 387, or "two irreconcilable policies, one of which . . . enables the agency . . . to circumvent the other." *Venetian Casino Resort, L.L.C. v. E.E.O.C.*, 530 F.3d 925, 935 (D.C. Cir. 2008).

Defendants themselves have submitted evidence beyond the (theoretical) administrative record in their attempts to support their asserted interpretation of the Policy. *See* ECF 36-1 (Declaration of Chris Bina); *see also* ECF 52-1 at 4 ("[T]he Bina declaration refutes the idea that BOP will ignore the clinical and medical needs of the inmates in deciding whether to provide hormone medication."). Thus, *by their own conduct,* Defendants tacitly concede that the parties

must look beyond any administrative record—*i.e.*, that discovery is necessary—to ascertain the nature of the policy at issue. *See AFL-CIO*, 349 F.R.D. at 249 (noting the significance of defendants' "reli[ance] on declarations taken <u>after</u> the alleged policies or decisions took effect" in determining that discovery was necessary (emphasis in original)). Therefore, this Court should "exercise its discretion to permit . . . discovery to ascertain the contours of the precise policy at issue." *Id.* (quoting *Hisp. Affs. Project*, 901 F.3d at 388, in turn quoting *Venetian Casino Resort*, 530 F.3d at 928).

   B.  <u>Plaintiffs' non-APA claims independently warrant discovery</u>

          *i.  Whether extra-record discovery for Plaintiffs' other claims brought in conjunction with APA claims is warranted requires a fact- and claim-specific inquiry*

Even if this Court determines that review on Plaintiffs' APA claims should be limited to the (absent) administrative record, Plaintiffs' constitutional claims under the Eighth Amendment and the Equal Protection Clause and statutory claim under the Rehabilitation Act are independently proper subjects of discovery. Courts in this Circuit and in other jurisdictions across the country have found that some constitutional claims brought alongside APA claims warrant exception from the record rule. *See McKoy v. Spencer*, No. CV 16-1313 (CKK), 2019 WL 400615, at *11-12 (D.D.C. Jan. 31, 2019) (permitting discovery on plaintiff's First Amendment claims brought alongside APA claims); *Nat'l Med. Enters., Inc. v. Shalala*, 826 F. Supp. 558, 565 n.11 (D.D.C. 1993) (permitting non-record evidence to be considered on equal protection claim, even though it was "not part of the administrative record under review," because "[c]hief among [the exceptions to the record rule is] a court's review of a constitutional claim"); *Rydeen v. Quigg*, 748 F. Supp. 900, 906 (D.D.C. 1990) (holding that courts "need not accord deference to the agency's decisions in regard to [the] constitutional challenges because the courts, not agencies, are experts on

constitutional issues" and therefore the court "may consider the additional affidavits . . . even though they were not before the agency upon administrative review" (citing *Porter v. Califano*, 592 F.2d 770, 780 n.15 (1979))), *aff'd*, 937 F.2d 623 (Fed. Cir. 1991); *see also United Farm Workers v. Noem*, No. 1:25-CV-00246-JLT-CDB, 2025 WL 1490131, at *3-6 (E.D. Cal. May 23, 2025); *Bos. All. of Gay, Lesbian, Bisexual & Transgender Youth v. U.S. Dep't of Health & Hum. Servs.*, 557 F. Supp. 3d 224, 244-45 (D. Mass. 2021); *Texas v. Biden*, No. 2:21-CV-067-Z, 2021 WL 4552547, at *3-4 (N.D. Tex. July 19, 2021); *Cal. v. U.S. Dep't of Homeland Sec.*, 612 F. Supp. 3d 875, 895-898 (N.D. Cal. 2020); *Cook Cnty., Illinois v. Wolf*, 461 F. Supp. 3d 779, 794-95 (N.D. Ill. 2020); *New York v. U.S. Dep't of Commerce*, 351 F. Supp. 3d 502, 667-69 (S.D.N.Y. 2019), *aff'd in part and rev'd in part on other grounds*, 588 U.S. 752 (2019); *Grill v. Quinn*, No. CIV S-10-0757 GEB, 2012 WL 174873, at *2-5 (E.D. Cal. Jan. 20, 2012); *Miccosukee Tribe of Indians of Fla. v. United States*, No. 08-23001-CIV, 2010 WL 337653 at *2 (S.D. Fla. Jan. 22, 2010); *Puerto Rico Pub. Hous. Admin. v. U.S. Dep't of Hous. & Urb. Dev.*, 59 F. Supp. 2d 310, 327–28 (D.P.R. 1999).

Although there is "some disagreement among district courts," *Chiayu Chang v. U.S. Citizenship & Immigration Servs.*, 254 F.Supp.3d 160, 161 (D.D.C. 2017), "on a plaintiff's ability to supplement an administrative record to support a constitutional cause of action," *Bellion Spirits*, 335 F. Supp. 3d at 4, the weight of authority favors a "fact-specific" approach that considers "the particular facts of the claims involved and the discovery requested." *Cal*, 612 F. Supp. 3d at 895-96; *see also Mayor & City Council of Baltimore v. Trump*, 429 F. Supp. 3d 128, 139 (D. Md. 2019) (surveying authority and concluding that "the welter of cases underlines the need for a flexible

approach, tailored to the facts and claims of the case"). There is no "bright line or categorical rule."

*Bellion Spirits*, 335 F. Supp. 3d at 43.[2]

> ii. *Plaintiffs are entitled to discovery based on the non-APA claims alleged and the evidence of officials' subjective knowledge and intent necessary to prove them*

Judge Boasberg's opinion in *Bellion Spirits* follows this fact- and claim-driven relevancy

approach and provides a well-reasoned approach for evaluating this question, although in a very

different context. *See McKoy*, 2019 WL 400615, at *11-12 (noting the lack of controlling D.C.

Circuit authority and applying the "excellent reasoning" of *Bellion Spirits* to permit discovery for

plaintiff's First Amendment and Privacy Act claims). In *Bellion Spirits*, a vodka distributor and

manufacturer brought an action against the Alcohol and Tobacco Tax and Trade Bureau (TTB)

and other agencies after the agency denied the companies' request to add eight claims to their

product label "espousing the health benefits" of their proprietary blend of ingredients, finding that

the health claims were not "adequately substantiated by scientific or medical evidence" as required

by law. *Bellion Spirits*, 335 F. Supp. 3d at 36. The plaintiff companies challenged the denial under

the APA, the First Amendment, and the Due Process Clause of the Fifth Amendment. *Id.* at 36-37.

At issue in the opinion was plaintiffs' motion to supplement the administrative record with "five

documents and the testimony of two live witnesses," which Plaintiffs conceded were not relevant

to their APA claim. *Id.* at 37-39.

The court did not allow supplementation of the administrative record as to plaintiffs' First

Amendment challenge to "the agency's finding that their health claims [were] misleading and

---

[2] *See generally* Braden Currey, Note, *Rationalizing the Administrative Record for Equitable Constitutional Claims*, 133 YALE L.J. 2017 (2024) (noting the "remarkably unsettled" doctrine in this area and collecting cases that, like *Bellion Spirits*, apply "the principles underlying the record rule" and "focus on what facts are *relevant* to a particular substantive doctrine of constitutional law").

insufficiently substantiated," because that claim required the court to evaluate, only "under the ordinary (and deferential) substantial-evidence standard," TTB's decision interpreting the "complex scientific data" regarding the companies' health claims for their product. *Id.* at 41-42. In other words, because the standard for the First Amendment commercial speech claim required the court merely to "critically analyze the *agency*'s logic and explanation," *not* to "engage in [its own] comparative evaluation of conflicting scientific evidence," "considering evidence to which the agency was not privy" would in no way "aid[]" the "[c]ourt's evaluation of the agency's decision" and its "attempt to sort through scientific evidence." *Id.* at 42-43 (emphasis added). The court "looked to the substantive rule of decision applicable to the non-APA claim to determine the evidentiary scope of its review of that claim" and concluded that the proffered "extra-record evidence was *irrelevant* to the constitutional claim" at issue. *Nat'l Ass'n of Postal Supervisors*, 2023 WL 5221367, at *9 (emphasis added) (citing *Bellion Spirits*, 335 F. Supp. at 43-44).

The *Bellion Spirits* court then analyzed several other cases involving parallel APA and constitutional claims, announcing "a common thread running through [them]: when a constitutional challenge to agency action requires evaluating the substance of an agency's decision made on an administrative record, that challenge must be judged on the record before the agency." *Id.* at 43. Stated alternatively, the court did not allow supplementation of the administrative record "for any constitutional claim that requires the Court to analyze the substance of an agency's decision that is, in turn, *based on an evaluation of that record*." *Id.* at 44 (emphasis added).[3]

---

[3] This is consistent with the formulation of the record rule's application to "proceedings that are framed as an 'appeal' based solely on an administrative record." *Nat'l Ass'n of Postal Supervisors*, 2023 WL 5221367, at *3 (quoting Fed. R. Civ. P. 26 advisory committee's note (2000 amendments)).

That is not the case here. Fundamentally, this is *not* a case in which the agency's underlying decision is "based on an evaluation of [an administrative] record." *Id.* As discussed above and previously held by this Court, it is apparent that BOP's decision to change its policy was done solely in response to the Executive Order, with no contemporaneous explanation or findings, let alone consideration or "evaluation" of an existing record of evidence. Thus, the bar on discovery for constitutional challenges to the substance of agency decisions "made on an administrative record," *id.* at 43, simply does not apply, and discovery is necessary for "effective judicial review." *Id.* at 41 (quoting *IMS, P.C. v. Alvarez*, 129 F.3d 618 (D.C. Cir. 1997), in turn quoting *Camp*, 411 U.S. at 142-43).[4]

Moreover, an analysis of the "applicable principles of substantive law" in this case, *Nat'l Ass'n of Postal Supervisors*, 2023 WL 5221367, at *9 (citing *Bellion Spirits*, 335 F. Supp. at 43-44), reveals that Plaintiffs' non-APA claims do not "fundamentally overlap" with their APA claims. *Chiayu Chang*, 254 F. Supp. 3d at 162 (denying discovery where the "information necessary for the [c]ourt" to adjudicate plaintiffs' constitutional claims regarding denial of visa applications "would . . . be found in the administrative record"). Rather, the non-APA claims here are "legally and factually independent" of the APA claims and require the application of completely different standards, as well as the development of different facts that would not be found in an administrative record. *United Farm Workers*, 2025 WL 1490131, at *3 (finding that "additional discovery" was "necessary to develop the factual record" for plaintiffs' "independent"

---

[4] This comports with other cases finding discovery appropriate where, as here, Plaintiffs do not challenge a "discrete adjudication" but instead "challenge an agency's general course of conduct," *United Farm Workers*, 2025 WL 1490131 at *6 (citing *Manker v. Spencer*, 3:18-cv-372 (CSH), 2019 WL 5846828, at *19-20 (D. Conn. Nov. 7, 2019)), or sudden policy change. Unlike "challenges to an agency adjudication or rule promulgated after formal or informal proceedings," no such record exists in cases like this one, where Defendants "acted without warning or public input." *Mayor & City Council of Baltimore*, 429 F. Supp. 3d at 139-41.

Fourth and Fifth Amendment claims against U.S. Border Patrol).[5] Indeed, Plaintiffs are unable to bring their APA claims against Defendant Trump and their constitutional claims against him are wholly independent from the APA.

Under the APA's arbitrary-and-capricious standard of review, "the actual subjective motivation of agency decisionmakers is immaterial as a matter of law." *Nat'l Ass'n of Chain Drug Stores v. U.S. Dep't of Health & Hum. Servs.*, 631 F. Supp. 2d 23, 27 (D.D.C. 2009) (Lamberth, J.,). By contrast, Plaintiffs' claims under the Eighth Amendment and Equal Protection Clause implicate the subjective knowledge, intent, and purpose of the relevant decisionmakers, as well as the health and safety risks of the challenged policy to class members. *See, e.g.*, *Baker v. D. C.*, 326 F.3d 1302, 1306 (D.C. Cir. 2003) (indicating that Eighth Amendment claims require proof of "subjective knowledge of the serious medical need and [a] reckless[] disregard[] [of] the excessive risk to inmate health or safety from that risk" (citing *Farmer v. Brennan,* 511 U.S. 825, 837 (1994))); *Romer v. Evans*, 517 U.S. 620, 632-34 (1996) (holding that laws "born of animosity toward the class of persons affected" violate equal protection even under rational basis review because "a bare . . . desire to harm a politically unpopular group cannot constitute a legitimate governmental interest" (citing *U.S. Dep't of Agric. v. Moreno*, 413 U.S. 528, 534 (1973))).

Plaintiffs seek discovery on their Eighth Amendment claim to establish that BOP officials had "subjective knowledge" that denying gender-affirming care to Plaintiffs would expose inmates to a serious risk of harm. *Johnson v. D.C.*, No. 17-CV-185 (CRC), 2019 WL 689777, at *3 (D.D.C.

---

[5] The fact that Plaintiffs here have brought both freestanding constitutional claims, *see* Cmpt. ¶¶ 96-117 (Counts I and II), and APA claims alleging that Agency Defendants' actions are "contrary to constitutional right," *Id.* ¶¶ 124-129 (Count IV) (quoting 5 U.S.C. § 706(2)(B)), is irrelevant to this analysis, because this court's "role" in "mak[ing] an independent assessment of constitutional issues" is the "same 'whether the plaintiff sues directly under the Constitution or under the APA.'" *All. for Nat. Health U.S. v. Sebelius*, 714 F. Supp. 2d 48, 59 n.20 (D.D.C. 2010) (quoting *Rydeen,* 748 F.Supp. at 905 n.8) (internal alteration omitted).

Feb. 19, 2019) (discussing incarcerated plaintiff's ability to "depose officials" to establish their "deliberate indifference to their subjective knowledge of her suicide risk"); *cf. Abdullah v. Washington*, 530 F. Supp. 2d 112, 115-16, 118-19 (D.D.C. 2008) (discussing "extensive discovery" taken in Eighth Amendment deliberate indifference case). Accordingly, Plaintiffs "should have the opportunity to explore . . . the extent and nature of [Defendants'] knowledge through discovery." *Norsworthy v. Beard*, 87 F. Supp. 3d 1104, 1117 (N.D. Cal. 2015) (allowing discovery in Eighth Amendment case alleging deliberate indifference in denial of sex reassignment surgery).

Plaintiffs also seek, via their Equal Protection claim, to show that both the Executive Order and BOP Policy implementing it fail any level of equal protection scrutiny, because they are not substantially, or even rationally, related to any legitimate government interest, and were motivated by discriminatory animus. This requires discovery to ascertain the "actual state purposes" underlying BOP's policy. *Bos. All. of Gay, Lesbian, Bisexual & Transgender Youth*, 557 F. Supp. 3d at 245 (quoting *United States v. Virginia*, 518 U.S. 515, 535-36 (1996)); *see also Cook Cnty.*, 461 F. Supp. 3d at 794-95 (holding that plaintiffs' equal protection claims grounded in allegations of animus were "entitled to discovery . . . regardless of whether [plaintiff] [could] satisfy the 'strong showing' [of bad faith or improper behavior] standard applicable to APA claims," because "if a facially neutral agency action is motivated by . . . animus, that animus almost certainly will not be 'disclose[d]' in the agency's 'contemporaneous explanation' for that action'" (quoting *Dep't of Commerce v. New York*, 588 U.S. 752 780 (2019))); *New York v. U.S. Dep't of Commerce*, 351 F. Supp. 3d 502, 667-68 (S.D.N.Y. 2019) (explaining how the equal protection doctrine requires "inquiry capable of uncovering hidden forms of discrimination" and distinguishing cases that "did not involve claims about a suspect class or prohibited animus"), *aff'd in part and rev'd in part on*

*other grounds*, 588 U.S. 752 (2019).[6] Plaintiffs similarly request discovery with respect to their Rehabilitation Act claim to demonstrate the disparate and discriminatory treatment of Plaintiffs and class members on the basis of their gender dysphoria diagnoses. *See Mathis v. United States Parole Comm'n*, 749 F. Supp. 3d 8, 15 (D.D.C. 2024) (quoting *Am. Council of the Blind v. Paulson*, 525 F.3d 1256, 1266 (D.C. Cir. 2008)).

Based on a fact- and claim-specific analysis of Plaintiffs' constitutional claims and the relevant and material facts required to prove them, Plaintiffs are entitled to discovery.

## IV.  CONCLUSION

For the reasons stated above, Plaintiffs are entitled to discovery, which is necessary to effectuate proper judicial review of the challenged Policy and Executive Order. The lack of any existing administrative record or contemporaneous administrative explanations for the Policy, the incompatibility of BOP's stated interpretation of its Policy as compared to its text and the Executive Order animating it, as well as an analysis of the agency action and substantive constitutional claims at issue, all point to the same conclusion: discovery is necessary to facilitate judicial review in this case. As a result, this Court should exercise its discretion to allow the Rule 26 discovery process to proceed.

Dated: September 19, 2025                              Respectfully submitted,

---

[6] The Supreme Court's decision in *United States v. Skrmetti*, 145 S. Ct. 1816 (2025), does not alter this analysis. The *Skrmetti* court did not reach the argument that transgender individuals constituted a quasi-suspect class, *id.* at 1832-34, and further explicitly noted that plaintiffs had not raised the argument that the statute at issue was "mere pretext[] designed to effect an invidious discrimination against transgender individuals," *id.*, which plaintiffs do in this case. *See* Cmpt. ¶ 116.

David C. Fathi† (*pro hac vice*)
Maria V. Morris, D.C. 1697904
Elisa C. Epstein† (*pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th Street, N.W.
Washington, D.C. 20005
Tel: 202-393-4930
dfathi@aclu.org
mmorris@aclu.org
eepstein@aclu.org
† *Not admitted in D.C.; practice limited to*
*federal courts.*
Corene T. Kendrick (*pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
425 California St., Ste. 700
San Francisco, CA 94104
Tel: 202-393-4930
ckendrick@aclu.org

Li Nowlin-Sohl (*pro hac vice*)
Leslie Cooper (*pro hac vice*)
Shana Knizhnik, DDC Bar ID 120840
James D. Esseks**
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel: 212-549-2500
lnowlin-sohl@aclu.org
lcooper@aclu.org
sknizhnik@aclu.org
jesseks@aclu.org

*/s/ Michael Perloff*
Michael Perloff, D.C. Bar No. 1601047
Aditi Shah, D.C. Bar No. 90033136
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF THE DISTRICT OF
COLUMBIA
529 14th Street NW, Suite 722
Washington, D.C. 20045
Tel: 202-457-0800
mperloff@acludc.org
ashah@acludc.org

Shawn Thomas Meerkamper**
shawn@transgenderlawcenter.org
Megan Z. F. Noor**
megan@transgenderlawcenter.org
TRANSGENDER LAW CENTER
P.O. Box 70976
Oakland, CA 94612
Tel: 510-587-9696

Lynly S. Egyes (*pro hac vice*)
lynly@transgenderlawcenter.org
TRANSGENDER LAW CENTER
594 Dean Street, Suite 11
Brooklyn, NY 11238
Tel: 510-587-9696

** *Pro hac vice application pending.*

*Counsel for Plaintiff class*