ALISHEA KINGDOM, et al.
v.
DONALD J. TRUMP

Case No: 1:25-cv-691-

A.) The court orders blocking President Trumps Executive Order have been ignored, resulting in rapes and sexual assaults against Ms. Nash. Since the signing of President Trump's Executive Order (PTEO) Ms. Nash has endured additional abuse - including a knifepoint rape and another rape witnessed by a prison guard. see US v. Nash, Case # 1:13-CR-00467, Doc# 328 (N.D. OHIO)

Despite repeatedly requesting protection from rape and retaliation, which are required under The Prison Rape Elimination Act, the BoP refuse to Act. Indeed, such stonewalling has persisted in spite of a federal court of Appeal ruling " based on the more than one-hundred rapes and sexual assaults [Nash] has suffered at the hands of prison guards and fellow inmates while incarcerated in men's prisons" see Sixth Circuit, No 23-3635, Dkt, 18-1, PageId # 4

RECE
Mail
NOV 4 2025
Angela D. Caesar, Clerk
U.S. District    District of

B.) Ms. Nash has undergone several gender affirming surgeries, And Now present as A women. "Ms. Nash has undergone breast Augmentation, facial feminization, bilateral orchiectomy, And a tracheal shave" Nonetheless, the warden denied Nash's request for Gender Affirming surgery, citing PTEO "she has not yet had A vaginoplasty, so the Bureau of Prisons houses her in facilities for men, Executive order 14168" see Nash, case # 1:13-cr-00467, Doc #309, page Id # 1850

Nash seeks And order enjoining BoP 1.) to provide Nash with the medically necessary Transgender healthcare she needs, including permanent hair removal And Gender Confirmation Surgery; (2) to house Nash at A facility consistent with her Gender Identity; And (3) to protect Nash from the known And serious risk of harm she continues to face while being mishoused in A male facility. "Since she began serving her sentence ten years ago, Ms. Nash has been brutally raped And assaulted by both inmates And a prison guard on 196 occassions" see Nash, # 1:13-cr-00467, Doc # 309, Page Id # 1856

C.) The BOP, despite bearing responsibility for Nash's sexual Abuse by one of its staff has provided very little, if any, treatment to address the affects of this Abuse, citing PTEO

Here, Ms. Nash set forth Eight Amendment claims Arising from mental health treatment, or lack thereof, related to her Transgender status And Gender Dysphoria, And the Accompanying difficulties that result from BOP's failure to adequately treat her, properly house her, And protect her from harm. "[Ms. Nash] has been raped at knifepoint, raped in retaliation for reporting misconduct, And raped by two prison guards" See US v. Nash, # 1:13-CR-00467, Doc# 309, page Id # 1858

D.) BOP Transgender Offender Manual authorizes prison officals to house prisoners with male genitalia with women prisoners. Still, the warden denied Nash's request for a transfer related to pursuing her individual transition (i.e. transfer to A different sex facility)
Note: Ms. Nash was previously housed at a female facility.

Ms. Nash's gender affirming housing claim fall under the general umbrella of deliberate indifference to a serious medical need — that her Gender Dysphoria causes her significant suffering in being forced to live as a man amongst male prisoners, and that she has been denied the accomodations and treatment which would alleviate that suffering.

E.) President Tromp's Executive Order is being used for the discriminatory purpose of excluding Ms. Nash from a PREA retaliation assessment, under section 115.67

The BoP was required to protect Ms. Nash from the erroneous deprivation of earned FSA credits due to rape and retaliation when she reported the abuse. Yet, the PREA coordinator refuse to do so, citing PTEO (Exh A)

The point is President Trump's Executive order is not only being used to disguise the horrific treatment of Ms. Nash, but is a dishonest way to circumvent the Antiretaliatory regulation of the PREA Act.

F.) The erroneous deprivation of Nash's FSA request would not have occured but for the BOP's unlawful conduct in continuing to apply President Trump's Executive Order. Because being raped or beaten in prison, or alternately being subjected to extreme isolation are added punishments that are destructive to Nash, dangerous to society, and unconstitutional the BOP cannot show that additional imprisonment will serve the intrest of deterrence, or are necessary to protect the public

G.) In motion after motion Ms. Nash detailed the tragic and widespread abuse she has suffered in BOP custody, as well as the barriers that she faced to reporting the abuse and escaping her abuser. Yet, no one in a position of

power, whether the warden or PREA staff, has any concern about this. Accordingly, the federal judge recommended that the BOP place Ms. Nash in a halfway house for the maximum term before her release. "Defendant's placement in a residential reentry center will assit defendant in transitioning 'into the community and equip her with stability and skills that should minimize her risk of recidivism" see US v. Nash, case # 1:13-cr-00467, Doc # 332, page Id # 2428)

The point here is this: Ms. Nash has been repeatedly raped, urinated on, forced to ingest feces, chocked unconscious, and had one inmate shove a shampoo bottle up her rectum. There is little, if any, incentive for Ms. Nash to reoffend under these circumstances. Still, the warden denied the judge's recommendation citing PTEO. That's Absurd — The BOP is incapable of formulating a plan that safeguards Ms. Nash's physical and mental health.

H.) The improper Application of President Trump's Executive Order was impermissible retaliation for her First Amendment protected Activity when she filed her prior lawsuits and complaints against BOP and its staffers.

The warden had two goals. Goal #1 was to continue the campaign of harassment and retaliation initiated by prison staff. Goal #2 was to bury the illegal action; to create the cover-up needed to deny Nash's FSA request.

Example: The assaults, sexual abuse, rape, and solitary confinement faced by Ms. Nash can only be described as acts of torture. Not merely that, after ten years of sexual violence, it seems highly probable that Ms. Nash poses a far lower risk of criminal activity than she did when she was sentenced in 2014.

Still, the BOP refuse to comply with the judges recommendation to place Nash in a halfway house. Here, the absence of good faith with respect to the legal

position the warden relies on in support of its refusal supports a finding of retaliation — indeed, PTEO has been blocked by the courts.

### Conclusion

The improper implementation and enforcement of President Trump's Executive Order not only set the stage for the BOP's failure to adequately treat Nash, protect her from harm, and properly house her, but the proper application of the Transgender Offender Manual would've prevented the BOP's unlawful conduct.

Note: The Transgender Offender Manual details BOP policies concerning Transgender inmates, including housing and programming assignments and a Transgender inmate reentry needs. The TOM also authorizes prison officials to house prisoners with male genitalia with women prisoners. Finally, the manual the BOP tore up provided guidance to staff in treating trans people in a manner consistent with the PREA Act, which require the BOP to protect from retaliation any prisoner who reports sexual abuse.

X _____
Pro-se

Dear Clerk of the Court

Case # 1:25-cv-691-RCL

Please see enclosed a motion to intervene / class member. Can I please have a copy of the docket please.

Thank you.