Exh A-1

TRULINCS 31505001 - NASH, DARNELL - Unit: CLP-K-A

---

FROM: 31505001
TO: Associate Warden PEN 2
SUBJECT: ***Request to Staff*** NASH, DARNELL, Reg# 31505001, CLP-K-A
DATE: 09/18/2025 09:53:57 AM

To: PREA COORDINATOR
Inmate Work Assignment: n/a

This is a muti-email request for 1.) A PREA retaliation assessment  2.) appointment of a victim advocate  and 3.) application of earned FSA credits.

Ms. Nash was raped, denied access to FSA programming, and BOP staffers repeatedly fabricated false misconduct reports in retaliation for filing her PREA complaints. Under PREA, section 115.67, the PREA Coordinator was required to take corrective action, but refused to do so citing President Trump's Executive Order.

1.) It's true the Presidents EO stripped Trans people of rights and their dignity. However, the EO does not supersede or change the BOP's obligation to comply with the PRISON RAPE ELIMINATION ACT. Accordingly, Ms. Nash is entitled to a PREA retaliation assessment "BASED ON THE MORE THAN ONE-HUNDRED RAPES AND SEXUAL ASSAULTS SHE HAS SUFFERED AT THE HANDS OF PRISON GUARDS AND FELLOW INMATES WHILE INCARCERATED IN MEN'S PRISONS" (see: Sixth Circuit, US v. Nash, Case # 23-3635, DKT 18-1, pageID 7)

2.) The President's EO enables corruption, misconduct, and abuse against Transgender prisoners. Accordingly, the BOP has been enjoined from implementing President Trump's EO.

Think about that: These highest officials, led by the warden, took it upon themselves to set aside a class of prisoners-- transgender prisoners who experience some of the highest rates of sexual violence-- and made them ineligible for PREA protections--despite a court order directing them not to do so.

The point is thanks to the misuse of President Trump's EO the officers efforts at retaliation has had its desired effect--namely, keeping Ms. Nash in prison long after she's eligible for release.

3.) Under PREA, section 115.67, incarcerated victims can request remedial measures after sexual assault complaints to prevent retaliation. Here, to comply with the President's EO Coleman 2 has adopted a rule that excludes Transgender victims from PREA retaliation assessments.

Example #1: Due to rapes and retaliation by inmate and staff abusers Ms. Nash cannot met the criteria necessary to obtain the wardens approval for release under BOP program statement 5410.01. Still, the warden will not take corrective action under PREA, saying that the president signed an Executive Order which instructed the BOP to cease any recognition of Trans people.

Example #2: Officer White sexually assaulted Ms. Nash, then issued her a false incident report to obtain a finding of guilt before the disciplinary officer. Still, the PREA Coordinator denied Nash's request to expunge the record for FSA purposes, stating incidents of "gender identity violence" is barred under Trump. That's absurd=---the court ruled that "NASH HAD BEEN SEXUALLY ASSAULTED BY OFFICER WHITE AND THE INCIDENT WAS COVERED-UP" (see case#1:13 cr-467, US v NASH ,ECF #309 ,pageid 1859 )

Example #3: Bop staffers denied Nash FSA programming in retaliation for her sexual assault complaints. Still, the PREA investigator denied Nash's request for corrective action, stating "you don't exist"

Example #4: Ms. Nash was raped over and over again while in BOP custody. The Bop knew Ms. Nash was in danger, yet no one---no even PREA staff--lifted a finger in support. Accordingly, the federal court recommended that the BOP place Ms. Nash in a halfway house for the maximum term before her release, but the warden refuse to do so citing the President's EO.

TRULINCS 31505001 - NASH, DARNELL - Unit: CLP-K-A

---

FROM: 31505001
TO: Associate Warden PEN 2
SUBJECT: ***Request to Staff*** NASH, DARNELL, Reg# 31505001, CLP-K-A
DATE: 09/18/2025 06:50:27 PM

To: PREA COORDINATOR (prea request)
Inmate Work Assignment: n/a

For 10 years the BOP has allowed Ms. Nash to be repeatedly raped, then falsified reports to cover it up. Not content with that, the Warden -- in retaliation for Nash's prior lawsuits and complaints against BOP and its staffers-- used the false reports to deny Nash earned FSA credits.

The point is the denial of Nash's request creates a continuing and unacceptably high risk that she will suffer physical and sexual abuse at the hands of other inmates and prison officials. This heightened risk, combined with the BOP's repeated failures to end these rapes and retaliatory acts, justified "immediate action to protect the inmate. Section 115.63 provides, "when an agency learns that an inmate is subject to a substantial risk of imminent sexual abuse, it shall take immediate corrective action to protect the inmate". 28 C.F.R. 115.67 govern agency protection against retaliation.

1. Ms. Nash will be raped again, its merely a question of when. Indeed, the warden has in his possession legal documents fining "more than one-hundred rapes and sexual assaults Nash has suffered at the hands of prison guards and fellow inmates while incarcerated in men's prisons" (Sixth Circuit, US v. NASh, case#23-3635, DKt 18-1, pageID 7)

the point is rape and retaliation should not be a routine feature of any prison system, but it has become one in the BOP, which means the BOP should act promptly on Nash's emergency grievance.

2. The BOP allows an inmate to invoke a special grievance process when submitting grievances related to sexual assaults. Specifically, emergency grievances alleging a substantial risk of imminent sexual abuse be provided an initial response within 24 hours and a final agency decision in five calendar days. (see Footnote #1)

Here, the repeated abuse Nash has suffered and the substantial likelihood that she will continue to be assaulted while in prison justify an emergency grievance under PREA.

3. 9-9-2025 Ms. Nash filed an emergency grievance with the warden here at USP Coleman, but the warden failed to respond in 48 hours, as required by policy. That is incorrect.

The rapes and coordinated cover-ups that followed each assault cannot serve as a basis to deny Nash's FSA request. Furthermore, the failure to protect Nash from rape and retaliation, and the warden subsequent application of the false reports to deny Nash's FSA request will, undoubtedly, have the effect of causing Nash to be subject to additional rapes.

In sum, Ms. Nash has been raped over 200 times in BOP custody, This number, undoubtedly, would've been smaller had the BOP acted sooner. (Sixth Circuit; In re: Darnell Nash, case #253153 "Nash seeks to compel access to the emergency grievance process at USP COLEMAN")

For these reasons, Ms. Nash request (for the fifth time) for a response to her emergency grievance and an appointment of a victim advocate.

Footnote #1 "After receiving an emergency grievance alleging an inmate is subject to a substantial risk of imminent sexual abuse, the agency shall immediately forward the grievance ( or any portion thereof that alleges the substantial risk of imminent sexual abuse) to the level of review at which immediate corrective action may be taken, shall provide an initial response within 48 hours, and shall issue a final agency decision in five days." BOP PROGRAM STATEMENT.

TRULINCS 31505001 - NASH, DARNELL - Unit: CLP-K-A

----------------------------------------------------------------------------------------------------

FROM: 31505001
TO: Associate Warden PEN 2
SUBJECT: ***Request to Staff*** NASH, DARNELL, Reg# 31505001, CLP-K-A
DATE: 09/18/2025 06:04:31 PM

To: PREA COORDINATOR (PREA REQUEST)
Inmate Work Assignment: n/a

First, the failure to protect Nash form rape and retaliation, and the wardens subsequent application of the false reports to deny Nash's FSA request is NOT authorized by the President's EO. Rather, it would constitute impermissible retaliation for Nash's first amendment protected activity when she reported the rapes and assaults.

Second, The rapes and the coordinated cover-ups that followed each assault cannot serve as a basis to deny Nash's FSA request. Indeed, the inquiry involved in a ruling on Nash's compassionate release motion necessarily implicates the substantive evidentiary standard of proof that would apply to PREA's criteria for establishing retaliation. In other words. if the bop failed to protect Nash from more than one-hundred rapes (including rapes and sexual assaults by staff) then common sense tells us they also failed to protect Nash from prison employees falsifying disciplinary reports to cover such abuse.

Third, Evidence presented in Nash's compassionate release proceedings establish widespread abuse and retaliation. Accordingly, Nash's FSA request should be assessed without regard to BOP Program statement 5410.01 (exception cases). Indeed, the federal judge said it best in a footnote of her motion: "HOW CAN NASH SAFELY PARTICIPATE IN EDUCATION AND TRAINING COURSES IF SHE IS BEING REPEATEDLY RAPED BY NMATES AND STAFF" AND "WHEN SAFE TO DO SO, NASH HAS PARTICPATED IN RECIDIVISM REDUCTION CLASSESS" (SEE ORDER , 1:13:CR-00467, US.V. NASH, DOC # 332 PAGE ID 2429)

Finally, putting Ms. Nash in segregated and other isolation housing after she has suffered assaults or threats by other inmates and staff adversely affected and compromised Nash's ability to participate in BOP programming aimed at reducing recidivism. Accordingly, the federal court recommended that the BOP place Nash in a halfway house for the maximum term before her release, and PREA staff should do that same.

Conclusion: For far too long the BOP has actively concealed rapes and sexual assaults against Ms. Nash, and shielded both inmates and staff predators from accountability, at every turn. Indeed, the misuse of the President's EO--and the defiance of the courts order enjoining the application of that EO-- is yet another example of the BOP's demonstrated contempt for Nash's safety. Please provide 1.) a prea retaliation assessment 2.) a victim advocate 3.) application of earned FSA credits

If this is not the appropriate course of action, nash is asking to be notified in writing why the BOP feels this is not appropriate and for another way to remedy this issue.

TRULINCS 31505001 - NASH, DARNELL - Unit: CLP-K-A

------------------------------------------------------------------------

FROM: 31505001
TO: Associate Warden PEN 2
SUBJECT: ***Request to Staff*** NASH, DARNELL, Reg# 31505001, CLP-K-A
DATE: 09/20/2025 06:24:42 PM

To: PREA COORDINATOR (PREA REQUEST)
Inmate Work Assignment: n/a

Any retaliatory conduct that rendered Nash ineligible to apply earned FSA credits must be corrected under PREA, section 115.67

1. The Prea Coordinator is precluded from arguing there was no retaliation because multiple federal courts have already made that determination. Accordingly, Nash's FSA request should be decided without regard to Incident report #3923073, #3998057, #3998055, #3748684, and #4109141.

Its not logical to reject Nash's request for corrective action when multiple federal courts have found rape and retaliation to cover up such abuse.

In her legal filings Nash argued that the BOP failed to investigate Nash's sexual assault reports and protect her from prison employees falsifying disciplinary reports.

With respect to Incident report # 3923073 Nash argued before the district court that "on April 15, 2024 Ms. Nash was sexually assaulted by Officer White. Ms. Nash requested the BOP collect evidence of the assault, but the BOP waited two months to conduct a sexual assault forensic examination . by that time, all forensic evidence was lost. (see United State v. Nash, case # 1:13-cr-00467, DKt, #309, PageId 1859 (N.D. OHIO 7-3-2024)

With respect to incident report # 3998445, 3998057, 3998055 Nash argued that "on September 19, 2024 Ms. Nash reported to the prison officials that she had been raped. she was supposed to be transported to a local hospital for a sexual assault examination but instead she was placed on suicide watch and denied transport" see United States v. Nash, case # 1:13-cr-00467, DOC # 322, PageId 2310

With regard to Incident report # 3748684 Nash argued "that a prisoner sexually abased her on at least five occasions, including on March 20, 2023 when the prisoner repeatedly slapped and penetrated Nash anus with his fingers and pulled her hair, forced her to perform oral sex on him after she refused to do so, and forced Nash to engage in sexual intercourse. (see Sixth Circuit, Case # 23-3635, DKT 18-1, PageID 1)

No just that, Pursuant to Prea investigation policy, when an inmate makes a prea complaint it must be immediately investigated and the victim and abuser must be separated . Here, Ms. Nash not only "attached a copy of her request to be in a different prison form a prisoner who had repeatedly raped and sexually abused her" but "also attached a letter from another prisoner who had informed a correctional officer that Nash had been sexually assaulted" (Sixth Circuit, Case #23-3635)

Nonetheless, and despite it obligation to do so, the BOP did nothing to intervene.

In regard to incident report # 410914, Nash argued that "Inmate Farrington forced Nash to perform oral sex then sodmozied Nash and threatened to kill her if she reported the rape". Nonetheless, the BOP did nothing but issue Nash a false Incident report.

As should be clear by now. the failure to adhere to PREA standards not only resulted in a never ending series of sexual assaults against Ms. Nash , but provided a terrific motive to lie. Indeed, if the officers refused to perform a rape kit in retaliation for her PREA complaints, its likely they also falsified an Incident report to cover up the misconduct.

TRULINCS 31505001 - NASH, DARNELL - Unit: CLP-K-A

-------------------------------------------------------------------------------

FROM: 31505001
TO: Associate Warden PEN 2
SUBJECT: ***Request to Staff*** NASH, DARNELL, Reg# 31505001, CLP-K-A
DATE: 09/20/2025 07:09:53 PM

To: PREA COORDINATOR (PREA
Inmate Work Assignment: N/A

2. The disciplinary tickets were written in retaliation for Nash's complaints against staff and inmates

Ms.Nash is plainly trapped in a vicious cycle of rape and retaliation. It works like this: 1.) Ms. Nash is raped  2.) Nash is placed in segregated housing as a form of punishment. and 3.) BOP staffers -- in order to justify a transfer of Ms. Nash--either falsely accurse Ms. Nash of a high severity disciplinary infraction or falsify a threat assessment. The evidence is overwhelming.

4-15-2024 Officer White sexually assaulted Nash, six hours AFTER Nash filed her sexual assault report, Officer White issued Nash a false incident report #3923073

9-18-2024 Ms. Nash was raped by Inmate Dylan Deling, 48 hours later, AFTER the BOP failed to perform a forensic rape examination, she was issued false incident reports #3998445, #3998057, #3998055

March 2023 Nash reported "that a prisoner sexually abused her on at least five occasions, including on March 20,2023. 72 hours later, AFTER Nash filed her report, Nash was issued a false incident report #3748684

The bottom line is Ms. Nash has been raped by over a dozen different inmates. Yet, Ms. Nash has never been accused of or found guilty of either fighting, carrying a weapon, or threatening other incarcerated persons. Still, the BOP has repeatedly accused Nash of threatening staff. Does that sound right to anybody? If Ms. Nash has never exhibited the slightest tendency of aggression towards the men who raped here why would she threaten or assault staff?

Another thing: why would a victim --in the immediate aftermath of a violent rape or sexual assault- threaten staff, when doing so will likely result in additional abuse.

For example, Former Federal Bureau of Prisons guard Miguel Hidalgo plead guilty on January 2.2024 to assaulting a handcuffed prisoner and breaking his ribs at the Federal Correctional Complex in Coleman. See United States v. Hidalgo, USDC (M.D. FLA), Case #5-23-cr-00053. Video captured Hidalgo entering a prisoners cell, pushing him to the floor and striking him, even though the prisoner and his cellmate were both handcuffed at the time. The guard then left only to reenter the cell and assault the prisoner again. Why? Hidalgo's attorney said that the prisoner "threatened" Hidalgo.)

The bottom line is this: Ms. Nash's disciplinary record does not display a propensity for violence. Rather, it shows the trauma and injustice of being violently raped, retaliated against, and penalized for reporting sexual misconduct, as well as opposing and complaining about institutional bias against Trans people. And the temporal proximity between Nash's sexual assault report and the retaliatory action suggest a causal link. For these reasons, Nash FSA request should be granted.

TRULINCS 31505001 - NASH, DARNELL - Unit: CLP-K-A

Exh A-6

------------------------------------------------------------

FROM: 31505001
TO: Associate Warden PEN 2
SUBJECT: \*\*\*Request to Staff\*\*\* NASH, DARNELL, Reg# 31505001, CLP-K-A
DATE: 09/20/2025 07:57:03 PM

To: PREA COORDINATOR (PREA)
Inmate Work Assignment: n/a

3.) By failing to adhere to PREA standards the BOP forfeited its right to use the false reports to deny Nash's FSA request.

Example: Office White sexually assaulted Ms. Nash but instead of preserving physical evidence of sexual abuse, the BOP waited until Nash's injuries healed to conduct a sexual assault medical examination. How transparently corrupt is that? The BOP intentionally withheld a sexual assaults examination in order to get a conviction.

The point is evidence was withheld by BOP that could have impeached the false reports. In other words, the warden denial of Nash's FSA request is carelessly and deliberately pronounced on an extensive and materially false foundation which Nash had no opportunity to correct. Here, again, the exceptional magnitude of non-compliance with PREA standards require a blanket ban against the challenged reports.

Throwing Ms. Nash in the SHU in relation for her PREA complaints and the resultant loss of FSA programming cannot serve as a basis to deny Nash FSA request.

Example: The rapes and coordinated cover-ups that followed each assault is an injustice that adversely affected and compromised Nash's ability to participate in BOP programs aimed at reducing recidivism.

To be clear: instead of performing a forensic rape examination after an incident of sexual abuse. the bop repeatedly placed Nash in the Shu in retaliation for her PREa complaints, resulting in the loss of FSA programming.

Here, again, any retaliatory conduct that rendered Nash ineligible to apply earned FSA credits must be corrected under PREA.

The point is, citing Nash failure to "complete programming" to deny her FSA request would constitute improper victim blaming and is functionally an attempt to exculpate the BOP for its own wrongdoing. Indeed, in direct opposition to PREA's requirement not to use solitary confinement as a protective tool the BOP frequently respond to Nash's safety issues with the punishment's of solitary confinement.

4.) The BOP failure to protect Nash from rape and retaliation, and the wardens subsequent application of the false reports to deny Nash's FSA request expose the BOP to significant civil liability. On March 26, 2024 , for example, The Illinois Department of Corrections signed an agreement to pay 3,150,000$ to a former state prisoner (Jacqueline Farris) to settle her claims that she was raped by a guard and then denied entry to a diversion program based on medications she was prescribed because of he trauma he inflicted.

Significantly, as likely here, the DOC were denied summary judgement on Farris's claim that denying her access to the boot camp program was impermissible retaliation for her first Amendment protected activity when she reported the rape (see Farris v. Kohlrus, 2023 US DIST LEXIS 240529 (C.D. ILL)

The point is if the PREA Act, the BOP zero tolerance policy , or Judge Pearson's recommendation for half way house wont prompt the BOP to take corrective action perhaps avoiding a significant civil penalty will. Note: while just 14% of civil rights suits brought by prisoners reach settlement, 45% are settled when filed outside of prison (food for thought)

The bottom line: Ms Nash was sexually abused by prison staff and retaliated against when she filed complaints. Despite the lack of evidence that BOP complied with PREA standards, and the evidence that in fact they repeatedly cover-up the abuse and retaliation, the warden still used the false reports to deny Nash's FSA request.

Worse still, the failure to preserve physical evidence of sexual abuse not only denied Nash the right to marshal facts in her defense of the false reports and to present the evidence at the FSA assessment, but the failure to adhere to PREA -and the resultant cover-ups-- deprived the warden from understanding the context which Nash's disciplinary and programming history arose. Finally, the denial of a victim advocate deprived the warden of information on how profoundly the trauma of sexual abuse and exploitation affected Nash's behavior and choices. In Sum, The rapes and retaliation against Ms. Nash is an injustice that needs to stop. Please allow me to go home.

Exh A-7

TRULINCS 31505001 - NASH, DARNELL - Unit: CLP-K-A

--------------------------------------------------------------------------------

FROM: 31505001
TO: Warden PEN 2
SUBJECT: ***Request to Staff*** NASH, DARNELL, Reg# 31505001, CLP-K-A
DATE: 09/04/2025 07:13:41 AM

To: WARDEN (PREA REQUEST)
Inmate Work Assignment: n/a

This is a multi-email inmate-to-staff request for corrective action under The Prison Rape Elimination Act, Section 115.67, agency protection against retaliation.

Ms.Nash has a serious and well documented history of being raped in bop custody--including being raped and violently sexually assaulted by prison guards. Accordingly, a federal judge recommended that the bop place Ms. Nash in a halfway house for the maximum term before her release. For these reasons and more, Ms. Nash request 1.) application of earned FSA time credits towards supervision (12 months) 2.) FSA earned time credits towards pre-release (385 days) and 3.) maximum term of halfway house placement allowed pursuant to the Second Chance Act.

1. The Judge's Recommendation for Maximum Term of Halfway House

Ms. Nash was raped over and over again while in bop custody. The bop knew Ms. Nash was in danger --yet, no one--no even PREA staff-- lifted a finger in support. Accordingly, the federal court ruled that "defendant placement in residential reentry center will assist defendant in transitioning into the community and equip her with stability and skills that should minimize her risk of recidivism" (see: US v Nash, case # 1:13 cr467-1, Dkt. #332, PageID2428 (N.D. OHIO August 15 2025)

Ms. Nash case reflect that the steps officials have taken to ensure Ms. Nash's safety--mostly placing Nash in segregated housing and transferring her to other facilities-- have not provided necessary protections and have instead perpetuated a significant,extended, and continuing cycle of harm. Here, Judge Pearson aimed to equip Ms. Nash with "stability and skills"-- without being subject to the unwarranted risk of rape, and the warden should do the same. Indeed, Judge Pearson put it best: "that a single rape or sexual assault of an adult in custody is unacceptable and that such indignities are committed surreptitiously making them difficult to prove" "(ID pageID2420)

TRULINCS 31505001 - NASH, DARNELL - Unit: CLP-K-A

---

FROM: 31505001
TO: Warden PEN 2
SUBJECT: ***Request to Staff*** NASH, DARNELL, Reg# 31505001, CLP-K-A
DATE: 09/04/2025 07:55:43 AM

To: Warden (PREA REQUEST)
Inmate Work Assignment: n/a

2. MS NAS HAS BEEN REPEATEDLY RAPED AND ASSAULTED WHILE IN PRIOSN

Ms. Nash was repeatedly raped, sexually assaulted, written false misconduct reports by staff, and denied medical treatment to cover up such abuse. Here, the legal facts established in Nash's compassionate release case require corrective action under PREA, section 115.67 agency protection against retaliation.

To be clear: after years of litigation and extensive briefing on the issue, five different federal judges found that Ms. Nash was denied her constitutional right to safe confinement and protection from retaliation. Here, the warden cannot reasonably reject the legal and factual truth that Nash was repeatedly raped and retaliated against for making PREA complaints--How could he?

a.) the BOP's own records underlie the courts finding of rapes, assaults, and retaliation. The court noted that "defendant medical records reflect a substantiated sexual assault claim and stating that non-compliance or lack of substantiation was due to BOP's failure to investigate" (see order Pageid#2423)

b.) Ms. Nash's showing of repeated rapes and retaliation was so thorough that judge Pearson turned down Nash's request for an evidentiary hearing on the issue, stating "Defendant also request the court hold an evidentiary hearing if it finds there is a factual dispute on extraordinary and compelling circumstances...because the court does find that there are extraordinary an compelling circumstances --[.i.e 200 rapes] the court does not see the need for an evidentiary hearing" (see order PageID#2421)

Finally, There is no serious question that Ms. Nash is incarcerated in an environment were rape, other forms or sexual assault, and retaliation are prevalent and tolerated, so much so that the Sixth Circuit granted Nash's request to disqualify her original district court judge for repeatedly disregarding this reality. The Sixth Circuit summarized the result in a memorable sentence: "NASH DOES NOT ASK FOR EVERY SUCH PERSON [WHO HAS BEEN RAPED] TO BE RELEASED; NASH REQUEST COMPASSIONATE RELEASE FOR HERSELF BASED ON THE MORE THAN ONE-HUNDRED RAPES AND SEXUAL ASSSAULTS SHE HAS SUFFERED AT THE HANDS OF PRISON GURADS AND FELLOW INMATES WHILE INCARCERATED IN MEN'S PRISONS" ( see: US v. Nash, Sixth Circuit , case # 23-2635,DKT. 18-1, Pageid 7)

The point is stereotypes like "she made it up", "no harm was done" , and "she asked for it" does not apply here. Indeed, to continue to proceed on such a false assumption to deny Nash's FSA request could, by itself, constitute retaliation. Note: "performance reviews" (like FSA assessments) are explicitly mentioned as a metric the bop uses to determine retaliation under PREA.

Exh- A-9

TRULINCS 31505001 - NASH, DARNELL - Unit: CLP-K-A

---

FROM: 31505001
TO: Warden PEN 2
SUBJECT: ***Request to Staff*** NASH, DARNELL, Reg# 31505001, CLP-K-A
DATE: 09/04/2025 09:55:54 AM

To: WARDEN (PREA REQUEST)
Inmate Work Assignment: n/A

3. Ms Nash's FSA request should be assessed without regard to Program Statement 5410.01

The decision making process for the application of earned FSA credits under Program Statement 5410.01 (exception cases) is unfair and bias against Nash, in violation of PREA

Example #1: The bop failed to investigate Nash's sexual assault reports and protect her from prison employees falsifying disciplinary reports. Nonetheless, and despite its obligation not to do so under PREA, the warden denied Nash's FSA request, citing her failure to "maintain clear conduct for 3 years from the date of request" (P.S.5410.01). That is incorrect: The failure to monitor for retaliation and the impediment of Nash's ability to seek administrative review under PREA require the BOP to refrain from using P.S. 5410.01 to deny Nash. (see; section 115.67, agency protection against retaliation)

Example#2: Because of the rapes and subsequent placement in secure housing for her own protection and her repeated transfers to different facilities Nash has not been able to begin of finish any programs. Still, the warden denied Nash's request, citing her failure to complete programming. That's absurd: Ms Nash is repeatedly placed in the SHU for making any kind of report, whether for malfeasance like sexual abuse or the enforcement of her rights, such as the right not to be housed with likely abusers. Indeed, Inmate Farrigton's 3-12-2025 rape, reported to staff, resulted in Ms Nash's assignment to the SHU. Note: Although technically considered "non-punitive" the conditions of confinement in protective custody are essentially the same as those applicable to inmates in disciplinary segregation.

The point is the failure to provide protection from rape and retaliation for reporting assaults dramatically distorts the FSA process and paints an inaccurate picture of Nash's dangerousness and odds of recidivism. Here, the risk of an erroneous deprivation of earned time credits due to rape and retaliation must be brought down to zero. The legitimacy and significance of this concern is demonstrated by the BOP's zero tolerance policy.