RECEIVED Mailroom SEP 16 2025

Angela D. Caesar, Clerk of Clerk
U.S. District Court. District of Columbia

# Motion For Partial Summary Judgement

Kingdom v Trump et al                         Case Number 1:25cv691-RCL

PURSUANT to FRCP 56, the plaintiff in the above styled case, petitions the court to grant partial summary judgement, based on the following grounds;

1. Failure to comply to the Preliminary Injunction Order. (DOC 68)

   On June 3 2025, the court issued a preliminary injunction enjoining the Attorney General & Bureau of Prison officials from enforcing Executive Order 14168 and to continue to to provide medical hormonal therapy & social accommodation items, to transgender inmates situated within the Bureau of Prisons.;

2. Bad faith and willful noncompliance in implementing the order.

   On July 8 2025, this plaintiff informed the court that Bureau officials had engaged in willful disobedience by their failing to comply with the preliminary injunctive order to resume providing gender affirming care to federal transgender inmates;

3. The defendants failed to plead or otherwise respond to the plaintiff's accusation of the failure to comply.

   The defendants were put "on notice" of their willful disobedience to implement the courts' order. (DOC 68) The opportunity was then available to say "oophs" or "somebody messed up" or provide some reasonable non-frivolous explanation for its failure to not comply with the courts' order. Instead, the defendants willfully continue to ignore or obey the courts' directives;

4. Email to the FCI Oakdale psychology department:

   I emailed the psychology dept to inquire if transgender care had been reinstated. Staff respond was "I am unsure". I later forwarded it back to psycholgy dept on 7-31-25 asking for an update and I received no response. (**Exhibit one** )

(1

5. Request letter to FCI Oakdale medical department:

   The plaintiff placed the request form in a "sealed" envelope addressed to Miss Howard, Medical Administrator. As of the filing of this petition, Miss Howard has not replied to my request or even schedule me to speak with medical staff regarding my receiving hormonal therapy as a trans inmate.

   These two examples clearly demonstrate that the defendants-Bureau officials have not made even the slighest effort to comply or implement the courts written order. **Exh TWO )**

6. Irreparable Injury;

   The defendants failure to provide gender affirming health care, at least to this plaintiff [Carla Keys], supports ongoing actual injury. The whole point of the preliminary injunction is to "prevent" irreparable injury to the [then] existing transgender inmates within the Bureau of Prisons.

   The issues raised in number 4-5, clearly demonstrate that the defendants have not implementing any policy changes in reinstatinf transgender care to federal inmates, as ordered by the court. Such callous indifference supports ongoing irreparable injury. "If injury is demonstrated, a compensatory award is mandatory ¢ not discretionary"
   **See Vuitton et Fils S.A. v Carousel Handbags,** 592 F 2d 126, 130 (2d Cir 1979)

7. Contempt of Court:

   It is clear that the defendants have willifully chosen to not implement or obey the court's preliminary injunctive order (Doc 68). Even after [my] placing the defendants "on notice" of their [mis]conduct, the defndants have done nothing to comply with the court's order. Seperate motions for contempt and sanctions are attached. Its time to face the "consequences" for this ongoing stupidity.

TRULINCS 22458017 - KEYS, CLAY C - Unit: OAK-P-A

----

FROM: 22458017
TO: Psychology
SUBJECT: ***Request to Staff*** KEYS, CLAY, Reg# 22458017, OAK-P-A
DATE: 07/31/2025 10:26:34 AM

To: staff
Inmate Work Assignment: Orderly

Hi. Any updates available regarding transgender care being reinstated?

Thank you.
-----KEYS, CLAY C on 7/23/2025 10:57 AM wrote:

>

Hi. Ill wait for you to check & advise me further

Thanks you!

Carla
-----Psychology on 7/23/2025 7:12 AM wrote:

>
Hello,

This message was received by Psychology Services staff. I am unsure; I would speak to someone in Health Services regarding this issue. They are not able to receive electronic copouts, but if you are able to talk to someone during sick call or your next appointment, a provider will be able to give you more information regarding the status of this issue.

_____

From: ~^! KEYS, ~^!CLAY C <22458017@inmatemessage.com>
Sent: Tuesday, July 22, 2025 3:03 PM
Subject: ***Request to Staff*** KEYS, CLAY, Reg# 22458017, OAK-P-A

To: Staff
Inmate Work Assignment: Orderly

Hi. Can you tell me if the Bureau has resumed providing gender affirming care to transgender inmates presently?

Thank you!

Carla Keys

Exhibit 2

Motion Summery Judgement

I cannot locate Exh 2 My calendar says I sent it to MSS Howard on 8-5-25

cKeys
9-11-25

RECEIVED Mailroom SEP 16 2025 Angela D. Caesar, Clerk of Clerk U.S. District Court, District of Columbia

## Motion For Finding Of Contempt

RE Kingdom v. Trump et al          Case Number 1:25cv691-RCL

PURSUANT to FRCP 65(d)(2) and FRCP 70(e), the plaintiff in the above styled case, petitions the court to grant and hold the defendants in criminal & civil contempt of court, based on the following reasons;

1. On July 8 2025, the plaintiff filed a motion to show-cause as to why the defendants should not be held in contempt, for their failure to obey the courts' preliminary injunctive order. (DOC 68)

2. The defendants were placed on proper "notice" and given the opportunity to plead or defend their non-conpliance or correct the deficiency by implementing & obeying the order.

3. Here we are (70+) days later and the defendants still refuse to comply with the courts order. (DOC 68) Why not? Well consider the numerous comments made by one of the defendants, Attorney General Bondi. Calling federal judges that oppose or have ruled against the Trump Administrations shenanigans filed in courts, as "rogue judges" or "they must be stopped" et al.

4. In a recent stinging rebuke, Honorable Thomas Cullen, dismissed a Trump Administration lawsuit filed against Maryland federal judges. He slammed the lawsuit as "potentially calamitous" and criticized it as an attack on the judiciary. Judge Cullen highlighted in a footnote that White House officials in recent months had described [federal] judges as "rogue" or "unhinged" and "crooked" among other epithets. His honor further stated;

> "although some tension between the coordinate branches of government is a hallmark of our constitutional system, this concerted effort by the Executive to smear & inpugn individual judges who rule against it is both unprecendented & unfortunate".

(Citation not available)

(1)

Exh 1:1-3

(Motion Sanctions)

See par 2/
Separ

FILED 5:35 p.m. EDT
05.22.2025
NEWS

# Is Trump's Ban on Gender-Affirming Care for Trans Prisoners Unconstitutional?

A federal judge considers if the president's executive order barring hormone treatment in the Bureau of Prisons is cruel and unusual punishment.



People demonstrate in support of gender-affirming care in Washington, DC, in March. ANDREW THOMAS/NURPHOTO VIA ASSOCIATED PRESS

By BETH SCHWARTZAPFEL

UPDATED 6:00 P.M. 06.03.2025

Senior district Judge Royce Lamberth in Washington, D.C., issued a preliminary injunction on June 3, preventing the federal Bureau of Prisons from withholding gender-affirming care until the lawsuit filed by the ACLU and the Transgender Law Center is resolved. The judge ordered the prison system to continue providing hormone therapy to transgender people as needed, and to restore access to social accommodations such as hair removal, chest binders and undergarments.

ORIGINAL STORY

A federal judge heard arguments Thursday over whether the government can withhold gender-affirming care from people incarcerated by the Bureau of Prisons while a lawsuit against the Trump administration proceeds.

District Judge Royce Lamberth, who sits in Washington, D.C., must consider whether to temporarily stop the prison system from implementing an executive order from President Donald Trump. The order, which Trump signed shortly after his inauguration in January, directed the prisons to stop providing hormone therapy for people being treated for gender dysphoria, as had been the practice for years.

Trump's executive order prohibited federal spending for "any medical procedure, treatment, or drug for the purpose of conforming an inmate's appearance to that of the opposite sex." The lawsuit, filed in March, argued that Trump's order is unconstitutional because it "mandates an across-the-board ban on such gender-affirming health care for individuals in BOP custody, regardless of the impact on their health." The suit was brought by the ACLU and the Transgender Law Center on behalf of one trans woman and two trans men, but the lawyers asked the judge to make the case a class action suit representing anyone in federal prison affected by the executive order.

In the suit, lawyers for transgender prisoners argued that Trump's order directly conflicts with years of court rulings that held that prisons cannot issue blanket bans on any category of medical care without making individualized assessments. They also said that denying incarcerated people gender-affirming care violates the Eighth Amendment's prohibition on cruel and unusual punishment. The lawyers have asked for the judge to stop the prison system from enforcing the order permanently.

The Bureau of Prisons declined to comment, citing the pending litigation, and a Justice Department lawyer representing the government did not immediately respond to requests for comment after the hearing. In court filings, lawyers for the bureau argued that the federal prison system "has not categorically banned the provision of hormone medication to inmates with gender dysphoria," and said that there are no grounds for the lawsuit because the named plaintiffs are still on their medicines. The bureau "conducts individualized assessments to address the medical needs of inmates in its custody," they wrote.

At Thursday's hearing, an attorney for the Department of Justice argued that the bureau was not withholding hormone therapy from transgender people, but conceded that the government had stopped providing social accommodations such as undergarments.

For more than a month after Trump signed the order, bureau officials in Washington, D.C., issued no formal guidance about how to implement it for the more than 2,000 people incarcerated in federal facilities who self-identified to prison psychology services as transgender. As a result, there was chaos and confusion across the federal prison system, as wardens and other officials confiscated clothing, then gave them back, then confiscated them again.

In late February, bureau officials identified several long-standing accommodations for trans people that would no longer be provided. A Feb. 21 memo said, "Staff must refer to individuals by their legal name or pronouns corresponding to their biological sex." Trans people could no longer have access to gender-affirming clothing and underwear. All support groups and programs for trans people "must also halt." Across the country, people reported having bras and other undergarments confiscated in cell searches. Other accommodations, like pat-down searches of trans women by female correctional officers, were no longer available.

People on gender-affirming hormone therapy have received conflicting information about whether they would be able to stay on their medications, and for how long, according to declarations filed in the lawsuit and more than a dozen trans people who have spoken to The Marshall Project. Some were told they could finish whatever prescriptions they already had, but that the prison pharmacy wouldn't order more. Some reported that their medication was stopped suddenly. Still others were denied their medication, only to have it resume again with no explanation. Alishea Kingdom, the lead plaintiff in the ACLU's case, said in court filings that the prison stopped access to her hormone medication and then restarted it because, a prison doctor told her, her lawsuit "was causing problems." More than 600 people are receiving gender-affirming hormone therapy in federal prisons, according to legal filings in the case.

The lawsuit is the latest to challenge Trump's executive order, and judges have issued several other rulings restricting how it could be implemented in the federal prison system. Most of the previous court proceedings focused on a provision that demanded "that males are not detained in women's prisons" or immigration detention facilities. A small group of trans women was initially moved from women's facilities to men's facilities and then back. Lamberth is overseeing two of those cases as well.

Phaedra McLaughlin arrived in the federal prison system in February to begin serving a 3 ½ year sentence for using a stolen credit card. She has been on hormone therapy for more than 20 years and had gender-confirmation surgery in 2018. At her sentencing in December, the judge recommended she go to a women's minimum-security prison in Texas. But because of the

One nurse at a federal prison in Texas said the memo was more confusing than clarifying. "They just kind of dance around everything," said the nurse, who asked not to be named because she's not authorized to speak to the press. "They give an answer, so they can say they gave one, but then they don't give a clear enough answer to let you know what to do."

In court documents, ACLU attorneys have argued that the bureau's instructions were clearly contradictory.

In a declaration filed in the case, Rebecca-James Meskill, a transgender woman housed in a men's prison in Alabama, said that after more than a year of hormone therapy, refills of her medication suddenly stopped in March. When she asked a prison doctor about it, "he said to take it up with the White House."

**Beth Schwartzapfel**
Staff Writer

I report on prisons and jails, parole, addiction and health, LGBTQ+ issues and more.

View my past work · Get in touch

executive order, she was ultimately sent to a men's medical center in Minnesota, where she and four other trans women lived in an open dorm with 30 men, she said. While she was there, she lost access to her hormone therapy.



Phaedra McLaughlin and her family in 2023.
COURTESY OF PHAEDRA MCLAUGHLIN

"I am a POST-OP trans woman," she wrote in a recent email. "The executive order is placing persons with VAGINAS in MALE prisons." She was only there for a few days before she joined a separate lawsuit challenging the housing policies and was sent to a women's prison.

The vast majority of the 1,350 trans women in the system are housed in men's facilities, according to bureau data obtained by The Marshall Project. They have long been able to access some accommodations, like women's undergarments and women's hygiene items, from the commissary. (There are about 750 trans men in the system, according to bureau data. All but one of them were housed in women's prisons. For safety reasons, it's very unusual for trans men to request placement in men's facilities.)

Ayana Satyagrahi, who is incarcerated at a men's prison in Texas, described having to shower in common areas alongside men now that her prison no longer provides a designated shower time for transgender women only. "We've had guys come in the shower area on us," she said.

When it came to gender-affirming medications, the bureau's Health Services Division sent prison administrators a memo that was only two sentences. It reiterated the language of the executive order barring medical procedures and medications without explaining what to do about the hundreds of people already on hormones, or how to proceed when prison psychologists think hormone treatment or surgery is needed. The memo concluded by saying that the policy "is to be implemented in a manner consistent with applicable law including the Eighth Amendment."

*(Motion Sanctions)* Exh. 2

FROM: Psychology
TO: 22458017
SUBJECT: RE:***Inmate to Staff Message***
DATE: 05/06/2025 10:52:02 AM

Your messaged has been received. At this time, Health Services is not providing Medical Hormone Treatment. My understanding is that the Support Therapy class is no longer offered. However, if you need to speak to a psychologist or would like resources regarding anxiety, depression, etc., please let us know so that we can best assist you.

---

From: ~^! KEYS, ~^!CLAY C <22458017@inmatemessage.com>
Sent: Saturday, May 3, 2025 6:43 PM
Subject: ***Request to Staff*** KEYS, CLAY, Reg# 22458017, OAK-P-A

To: Ms Barber
Inmate Work Assignment: Orderly

Hi. I identify as a transgender and I am listed in SENTRY files as such. I would like to speak with someone about being evaluated to start receiving hormonal therapy to transition from male to female as a transgender.

Is this possible to receive such hormonal treatment, because on 1-20-25 President Trump signed Executive Order 14168 "Defending Women from Gender Ideology Extremism & Restoring Biological Truth to the Federal Government" and Section 4(c) states in part, "no federal funds will be expended for any medical procedure, treatment, or drug(s) for the purpose of conforming an inmate's appearance to that of the opposite sex".

I seek clarification on whether I will be permitted to receive such medical hormonal treatment to transition or not. I assume "not" based on Section 4(c) but I would like to hear what the psychology dept has to say regarding this issue.

Also, is the transgender support therapy class still being offered at psychology dept?

Thank you.

Carla Keys

## ABOUT US

**The Marshall Project is a nonpartisan, nonprofit news organization that seeks to create and sustain a sense of national urgency about the U.S. criminal justice system. We have an impact on the system through journalism, rendering it more fair, effective, transparent and humane.**

There is bipartisan agreement that the criminal justice system needs reform. Our reporting has shown that it perpetuates racial and economic inequities, costs taxpayers billions of dollars a year, and is toxic to those it incarcerates — and often to those who work in it. Police, courts and prisons are repositories of crises they are ill-equipped to handle, including mental illness, addiction and poverty. And victims of crime often feel re-traumatized by a system that is supposed to protect them.

Although we are not advocates, The Marshall Project often spurs change. Our journalism exposes wrongs, bringing them to the attention of officials who can take action. We give visibility to proposals and critiques from the criminal justice community. And we try to set an example for other media to cover criminal justice issues fairly and responsibly.

We partner with both national and local media outlets to reach diverse audiences who can be awakened to the issue. Our journalism informs criminal justice experts who need fresh and accurate information to do their best work. We also aim to serve and engage the millions of people whose lives have been ensnared in the criminal justice system, and whom the media have too often neglected and marginalized.

Our name is a tribute to Thurgood Marshall, a towering figure in the civil rights movement. We are committed to building and retaining a diverse staff and board, who bring a variety of experiences and perspectives to bear on the issues we cover.

themarshallproject.org

156 West 56th Street, Suite 70
New York, NY 10019



Clerk,
United States Courthouse
333 Constitution Ave NW
Washington, D.C.
20001

C Carla Keys #22458-017
Oakdale FCI i
Po Box 5000
Oakdale, lA
71463



"Stapled" to Seperate Motions & (3) Exhibits. Thanks.

/s/ 9-17-25

United State[s]

Carl Keys
22438-017
PO Box 5000
Oakdale, LA.
71463