**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

ALISHEA KINGDOM, et al.,

Plaintiffs,

v.

DONALD J. TRUMP, et al.,

Defendants.

Case No. 1:25-cv-00691-RCL

**PLAINTIFFS' REPLY BRIEF AND OPPOSITION IN SUPPORT OF DISCOVERY**

This Court should deny Defendants' motion to preclude discovery pursuant to Local Rule 16.3 (ECF 84) and grant Plaintiffs' motion for a Rule 26 scheduling order (ECF 87). Plaintiffs have amply demonstrated that settled exceptions to the administrative record rule apply to their APA claims and that their additional claims require the development of factual evidence beyond the (absent) administrative record in this case. Any concerns regarding the proper scope of discovery are appropriately addressed via the Rule 26 process itself. *See* Fed. R. Civ. P. 26(b)(2) (describing district courts' authority to limit discovery).

**I.  The non-existent administrative record and lack of contemporaneous explanations for the EO and Policy satisfy the recognized exceptions to the record rule.**

Despite Defendants' assertions otherwise, Plaintiffs have made the requisite showing that established record-rule exceptions apply in this case. *See* ECF 87 at 4-11. First, the lack of administrative record, contemporaneous explanation, or "reasoned analysis" in BOP's decision to adopt the Policy is itself a "gross procedural deficienc[y] that precludes effective review" of

1

plaintiffs' claims and thus warrants discovery. *United Student Aid Funds, Inc. v. Devos*, 237 F. Supp. 3d 1, 5-6 (D.D.C. 2017) (quotations omitted). Second, the inconsistency between Defendants' articulation of how the Policy operates[1] and the text of the Executive Order and BOP's implementing memoranda requires discovery to "ascertain the contours of the precise policy at issue" because "only the Defendants know the 'contours' of [their] actions."[2] *All. for Retired Americans v. Bessent*, No. CV 25-0313 (CKK), 2025 WL 1114350, at *3 (D.D.C. Mar. 20, 2025) (quoting *Venetian Casino Resort, L.L.C. v. E.E.O.C.*, 409 F.3d 359, 367 (D.C. Cir. 2005)). Because this case squarely falls within these recognized exceptions to the record rule, Defendants' floodgates argument—that if discovery is allowed in this case, it would make the record rule "meaningless," ECF 84 at 3 (quoting *Harvard Pilgrim Health Care of New Eng. v. Thompson*, 318 F. Supp. 2d 1, 10 (D.R.I. 2004))—is misplaced.

Defendants assert that Plaintiffs cannot make a showing that exceptions to the record rule are met until the administrative record is produced. But Defendants did not produce the administrative record despite the deadline for doing so having come and gone,[3] and they have stated that they do not intend to *ever* produce the record for the current policy. ECF 87-2 at ¶ 10-

---

[1] Defendants' counsel stated at oral argument that BOP "construe[d] the[] provisions [of the Executive Order and implementing memoranda] to say that BOP will continue to provide hormones to inmates diagnosed with gender dysphoria, based on those inmates' individual medical conditions and the . . . specific needs, the clinical needs of that inmate." Oral Arg. Tr. at 32. This Court has already "underscore[d] the apparent inconsistency of this position with the text of the Executive Order." ECF 67 at 13 n.2.

[2] Indeed, Defendants' counsel described a period of "confusion" about the meaning of the Executive Order while "BOP was trying to determine how to comply with [it]." Oral Arg. Tr. at 36-37.

[3] Because Defendants filed their Answer on June 24, 2025, *see* ECF 71, the deadline to file "a certified list of the contents of the administrative record with the Court" was 30 days later, July 24, 2025. Local Civil Rule 7(n)(1).

11. Rather, they say, BOP intends to issue an unspecified new policy at an unspecified date and that they will then produce the administrative record for that future policy. *See* ECF 84 at 6; ECF 87-2, at ¶ 11 (Nowlin-Sohl Declaration, quoting Defense counsel's September 10, 2025 email). But the matter before this Court is the current policy, not some unknown future policy. This Court need not wait for a future administrative record for a future policy to hold that these exceptions to the record rule apply in Plaintiffs' challenge to the policy currently in place.[4]

## II. Plaintiffs' non-APA claims independently warrant discovery.

Defendants' argument—that under *Bellion Spirits*, if Plaintiffs' non-APA claims challenge the "substance" of an agency's policy, discovery is precluded—rests on a misreading of *Bellion Spirits*, as well as the decisions relying on its standard, which turn on whether the claim challenges "the substance of an agency's decision **made on an administrative record**" and the only relevant evidence to evaluate the claim is the administrative record. *Bellion Spirits, LLC v. United States*, 335 F. Supp. 3d 32, 43-44 (D.D.C. 2018) (emphasis added), *aff'd*, 7 F.4th 1201 (D.C. Cir. 2021). As articulated in Plaintiffs' opening brief, discovery related to Plaintiffs' non-APA claims is permissible under the *Bellion Spirits* standard because (a) the underlying decision made by BOP was not based on an evaluation of any administrative record—indeed, Defendants do not even intend to produce an administrative record for the challenged rule, and (b) the substantive rules of decision for the non-APA claims turn on evidence of officials' subjective knowledge and intent that would not be found in any administrative record. *See* ECF 87 at 13-18.

---

[4] *Urb. Sustainability Directors Network v. U.S. Dep't of Agric.*, No. CV 25-1775 (BAH), 2025 WL 2374528 (D.D.C. Aug. 14, 2025), cited by Defendants, is inapposite. There, the court was unwilling to consider whether exceptions to the record rule applied prior to the production of the record when the plaintiffs were seeking expedited discovery prior to the deadline for defendants to produce the record, and there was no indication—unlike in this case—that Defendants would not fulfill their obligations to do so. *Id.* at *39.

Defendants' erroneously assert, without support or explanation, that "it is anticipated that the administrative record will fully inform whether the BOP Policy violates the Eighth Amendment." Br. at 4. It cannot. The legal standard for evaluating Plaintiffs' Eighth Amendment deliberate indifference claim is whether plaintiffs have an objectively serious medical condition and whether BOP officials were subjectively aware of the substantial risk of serious harm of denying them the prohibited treatment. *Farmer v. Brennan*, 511 U.S. 825, 842 (1994). These questions cannot be answered by looking only at the administrative record. Highly relevant evidence would include discovery from the BOP personnel responsible for providing health care to individuals in BOP custody about the reasons gender affirming healthcare was provided prior to the EO, the impact of that care on the health of individuals with gender dysphoria, and the anticipated impact on their health of withdrawing that care that previously had been deemed appropriate for them by BOP medical or mental health providers. It would also include expert testimony that gender dysphoria is a serious medical condition, and the harms that can result from denying the prohibited treatment.

Plaintiffs' Equal Protection claim similarly requires assessing evidence outside the administrative record. That claim turns on whether there is a sufficient fit between the policy and asserted legitimate purposes, or whether animus explains the policy's creation. *See*, *e.g. Romer v. Evans*, 517 U.S. 620, 632 (1996). These assessments require discerning the policy's true purpose, which may not appear in the record the agency produces to explain its action; indeed, if the motivating rationale was animus, "that animus almost certainly will not be disclosed" in the record. *Cook Cnty., Illinois v. Wolf*, 461 F. Supp. 3d 779, 795 (N.D. Ill. 2020) (cleaned up).

Defendants err in suggesting otherwise. Their argument, ECF 84 at 4, assumes that *United States v. Skrmetti*, 145 S. Ct. 1816 (2025) requires evaluating Plaintiff's claim on rational basis

review when it does no such thing. *See* ECF 87 at 18 n.6. In any event, Defendants are welcome to advocate for their preferred legal standard at summary judgment; at this stage, Plaintiffs are entitled to pursue discovery "proportional" to the needs of the case, Fed. R. Civ. P. 26(a), and that includes discovery related to the legal theories pled in the complaint. *See* Cmpt. ¶¶ 113-116; ECF 87 at 17-18; *Nat'l Ass'n of Postal Supervisors v. United States Postal Serv.*, No. 1:19-CV-2236-RCL, 2023 WL 5221367, at *7 (D.D.C. Aug. 15, 2023) (Lamberth, J.) (holding, where court had not yet assessed and determined the applicable legal standard, that because "the Court ha[d] not yet determined whether it w[ould] ultimately need to consult extra-record evidence," it was not appropriate "to hamstring its future decision-making by foreclosing all discovery at this early juncture").

Moreover, even if this Court determines that rational basis review is the appropriate level of equal protection scrutiny, that in no way precludes discovery, contrary to Defendants' suggestion. Plaintiffs are entitled to present evidence showing that the ban on gender-affirming health care fails that test because it is not even rationally related to the furtherance of any legitimate government purpose. *See*, *e.g. Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 464 (1981) ("[P]arties challenging legislation under the Equal Protection Clause may introduce evidence supporting their claim that it is irrational."); *United States v. Carolene Prods. Co.*, 304 U.S. 144, 153 (1938) ("Where the existence of a rational basis for legislation whose constitutionality is attacked depends upon facts beyond the sphere of judicial notice, such facts may properly be made the subject of judicial inquiry.").[5] That is because even under rational basis review, a law's rationale must be "grounded in a sufficient factual context" that allows the court to "ascertain some

---

[5] Indeed, even in *Trump v. Hawaii*, a decision grounded in the exceptionally deferential context of "constitutional claim[s] concerning the entry of foreign nationals," the Supreme Court considered extrinsic evidence while applying rational basis review. 585 U.S. 667, 705 & n.5 (2018).

relation between the classification and the purpose it served." *Romer*, 517 U.S. at 632-33. *See also Heller* v. *Doe*, 509 U.S. 312, 321 (1993) (requiring, under rational basis review, justification to have a "footing in the realities of the subject addressed by the legislation"); *U.S. Dep't of Agric.* v. *Moreno*, 413 U.S. 528, 534–36 (1973) (rejecting opposition to "unsubstantiated assumptions" about hippies as rationale under rational basis review). This "ensure[s] that classifications are not drawn for the purpose of disadvantaging the group burdened by the law." *Romer*, 517 U.S. at 633. Plaintiffs are entitled to discovery to support their showing of a lack of rational basis. *See, e.g. Davis v. Prison Health Servs.*, 679 F.3d 433, 438-40 (6th Cir. 2012) (holding that plaintiff was entitled to discovery to develop sexual orientation discrimination claim, even though it was governed by rational basis review); *In re Ctr. for Mil. Readiness*, No. MC 18-51013, 2019 WL 4733602, at *4 (E.D. Mich. Sept. 28, 2019) (rejecting defendants' argument that discovery regarding ban on transgender military servicemembers was precluded based on *Trump v. Hawaii*, and holding that plaintiffs were "entitled to discovery into whether the Ban was motived by discriminatory intent, animus, or ill-will under either a strict scrutiny, rational basis, or deferential review").[6] As with the Eighth Amendment claim, evaluating this claim will require the Court to consider evidence outside of the administrative record (if one exists).

Finally, Defendants fare no better in their arguments about Plaintiffs' Rehabilitation Act Claim. *See* ECF 84 at 5 n.1. Defendants assert for the first time, in the context of this discovery dispute as opposed to in their Answer or in a Motion to Dismiss, that the statute does not accord Plaintiffs a cause of action. *Id.* Defendants' late-breaking argument fails: even accepting, for the sake of argument, that the Rehabilitation Act does not create a private right of action, the

---

[6] If anything, Plaintiffs' possible burden to "adduc[e] evidence" "negat[ing]" any "seemingly plausible basis," *St. Joseph Abbey v. Castille*, 712 F.3d 215, 223 (5th Cir. 2013), for the Executive Order and Policy besides animus makes discovery even more necessary.

Rehabilitation Act is still enforceable under the Courts' inherent equitable power. *See Mathis v. United States Parole Comm'n*, 749 F. Supp. 3d 8, 22 (D.D.C. 2024); *see also Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015) (discussing equity's "long history of judicial review of illegal executive action" and explaining the circumstances when a statutory claim can be enforced under equity). In any event, Defendants can voice their disagreement with Plaintiffs' legal arguments at summary judgment; those merits considerations are not a valid a basis to deny discovery.

This is not a case where "a plaintiffs' constitutional claims 'fundamentally overlap' with the APA claims," making discovery inappropriate. *See* ECF 84 at 3 (quoting *Chiayu Chang*, 254 F. Supp. 3d at 162).[7] Indeed, Plaintiffs do not only challenge the agency's Policy, but also the relevant portions of the President's Executive Order that led to that Policy, which cannot be challenged as an agency action. *See Franklin v. Massachusetts*, 505 U.S. 788, 801 (1992); *Chamber of Com. of U.S. v. Reich*, 74 F.3d 1322, 1326-28 (D.C. Cir. 1996). Plaintiffs require, and are entitled to develop via the Rule 26 process, evidence to support their claims. As this Court explained in *Nat'l Ass'n of Postal Supervisors*, the *Bellion Spirits* standard requires this court to "look[] to the substantive rule of decision applicable to the non-APA claim to determine the evidentiary scope of its review of that claim." 2023 WL 5221367, at *9 (citing *Bellion Spirits*, 335

---

[7] Defendants' passing allusion to the fact that "judicial review under the [APA] . . . expressly includes claims that agency action is 'contrary to constitutional right,'" ECF 84 at 2 (quoting 5 U.S.C. § 706(2)(B)), has no bearing on courts' analysis regarding the applicability of the record rule to such claims, and courts have found exception from the record rule appropriate in cases in which plaintiffs alleged constitutional violations via the APA, *see*, *e.g. Porter v. Califano*, 592 F.2d 770, 771-72, 780-82 (1979); *Bos. All. of Gay, Lesbian, Bisexual & Transgender Youth v. U.S. Dep't of Health & Hum. Servs.*, 557 F. Supp. 3d 224, 244-45 (D. Mass. 2021), via standalone constitutional claims, *see*, *e.g. Rydeen v. Quigg*, 748 F. Supp. 900, 906 (D.D.C. 1990), *aff'd*, 937 F.2d 623 (Fed. Cir. 1991); *Cook Cnty., Illinois*, 461 F. Supp. 3d at 794-95, or—as Plaintiffs have done in this case—both. *See*, *e.g. Texas v. Biden*, No. 2:21-CV-067-Z, 2021 WL 4552547, at *3-4 (N.D. Tex. July 19, 2021); *see also* ECF 87 at 16 n.5.

F. Supp. at 43-44). Applying that standard here, Plaintiffs' non-APA claims require the Court to consider evidence outside of the administrative record and Plaintiffs are, thus, entitled to discovery to marshal relevant evidence.

In the cases cited by Defendants, courts denied discovery where plaintiffs' non-APA claims were merely a "reframing" or "alternative theories" of their APA claims, made in order to "avoid the record-review rule," ECF 84 at 2-3, and the substantive decision rules did not require looking outside of the administrative record. *Nat'l Ass'n of Postal Supervisors*, 2023 WL 5221367, at *9. In other words, those cases all involved non-APA claims that were "indistinguishable" from the APA ones. *Validata Chem. Servs. v. U.S. Dep't of Energy,* 169 F. Supp. 3d 69, 89 (D.D.C. 2016).[8] These cases are all inapposite here, where, as discussed, Plaintiffs' non-APA claims do not merely reframe the APA claim and turn on evidence that would not be part of any administrative record.

---

[8] *See*, *e.g. id.* at 70-74, 89 (finding overlap in due process claim premised on an "alleged statutory and regulatory right to bring an . . . appeal" under the same regulatory framework as original agency adjudication regarding government subcontractor bid); *see also Chiayu Chang v. United States Citizenship & Immigr. Servs.*, 254 F. Supp.3d 160, 162 (D.D.C. 2017) (holding that due process and equal protection claims, challenging as "irrational and arbitrary" discrete visa denials based on existing administrative records, were "fundamentally similar" to APA claims); *McCoy v. Spencer*, No. CV 16-1313 (CKK), 2019 WL 400615, at *2, 11-12 (D.D.C. Jan. 31, 2019) (finding that discharged Navy dentist's due process claim was duplicative of APA claim because it required the court "to evaluate the merits of the Navy's decision revoking [her] credentials," a "decision [that] was made on the administrative record"); *Harvard Pilgrim Health Care of New Eng. v. Thompson*, 318 F. Supp. 2d 1, 4, 7-13 (D.R.I. 2004) (finding that, where Medicare reimbursement determinations had already been appealed in full administrative proceedings at the agency level but plaintiffs had not raised constitutional claims in agency adjudication, discovery plaintiffs sought as to those claims was "legally irrelevant" and remand to agency was necessary for any further "investigation and factual development"); *cf. Amica Ctr. for Immigrants Rts. v. U.S. Dep't of Just.*, No. CV 25-298 (RDM), 2025 WL 1852762, at *10 & n.5, 15-17 (D.D.C. July 26, 2025) (finding that discrete contractual dispute by government contractors was covered by the Tucker Act, not the constitution, but noting that the court's review of constitutional claims was "not limited to the administrative record").

### III. Conclusion

For these reasons as well as those articulated in Plaintiffs' Motion for Discovery Scheduling Order (ECF 87), Plaintiffs' motion should be granted, and Defendants' motion for exemption from discovery under Local Civil Rule 16.3 should be denied.

Dated: November 25, 2025

Respectfully submitted,

David C. Fathi† (*pro hac vice*)
Maria V. Morris, D.C. 1697904
Elisa C. Epstein† (*pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th Street, N.W.
Washington, D.C. 20005
Tel: 202-393-4930
dfathi@aclu.org
mmorris@aclu.org
eepstein@aclu.org
† *Not admitted in D.C.; practice limited to federal courts.*

/s/ Michael Perloff
Michael Perloff, D.C. Bar No. 1601047
Aditi Shah, D.C. Bar No. 90033136
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF THE DISTRICT OF
COLUMBIA
529 14th Street NW, Suite 722
Washington, D.C. 20045
Tel: 202-457-0800
mperloff@acludc.org
ashah@acludc.org

Corene T. Kendrick (*pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
425 California St., Ste. 700
San Francisco, CA 94104
Tel: 202-393-4930
ckendrick@aclu.org

Shawn Thomas Meerkamper (*pro hac vice*)
shawn@transgenderlawcenter.org
Megan Z. F. Noor (*pro hac vice*)
megan@transgenderlawcenter.org
TRANSGENDER LAW CENTER
P.O. Box 70976
Oakland, CA 94612
Tel: 510-587-9696

Li Nowlin-Sohl* (*pro hac vice*)
Leslie Cooper (*pro hac vice*)
Shana Knizhnik, DDC Bar ID 120840
James D. Esseks (*pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel: 212-549-2500
lnowlin-sohl@aclu.org
lcooper@aclu.org
sknizhnik@aclu.org
jesseks@aclu.org

Lynly S. Egyes (*pro hac vice*)
lynly@transgenderlawcenter.org
TRANSGENDER LAW CENTER
594 Dean Street, Suite 11
Brooklyn, NY 11238
Tel: 510-587-9696

* *Not admitted in New York*

*Counsel for Plaintiff class*