IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ALISHEA KINGDOM, et al.,

Plaintiffs,

v.

DONALD J. TRUMP, et al.,

Defendants.

Case No. 1:25-cv-00691-RCL

**PLAINTIFFS' STATUS REPORT**

Plaintiffs, through their undersigned counsel ("Class Counsel"), respectfully submit this Status Report in response to the Court's Order issued November 24, 2025 (ECF No. 101).

On June 3, 2025, this Court issued a Preliminary Injunction ("Injunction") enjoining Defendants from enforcing Executive Order 14168 ("the Executive Order"), and Defendant Federal Bureau of Prisons' ("BOP") related memoranda, as applied to hormone therapy and social accommodations for individuals with gender dysphoria who are in the custody of BOP. The Court has extended the Injunction through subsequent orders, and it remains in effect. The Injunction requires Defendants to continue to provide class members with gender-affirming hormone therapy and social accommodations in accordance with BOP policy and procedure in effect immediately prior to the Executive Order. *See* ECF Nos. 67 & 68.

Prior to receiving the Court's November 24 Order, Class Counsel had been investigating reports of noncompliance with the Court's Injunction received from numerous class members, including the individuals who filed motions and letters with the Court: Ms. Stone (ECF No. 97), Carla Keys (ECF No. 75), Michelle Alford (ECF No. 99), Randi Davis (ECF No. 99), Grace

Pinson (ECF No. 86), Asia Crawford (ECF No. 91), Valerie Simpkins (ECF No. 92), and Mya Dye (ECF No. 95). The investigation has revealed disturbing reports not only of noncompliance with the Injunction, but also of retaliation against those who asserted their rights under it. As a result, Class Counsel began taking declarations in anticipation of filing a motion to enforce the Injunction. Class Counsel therefore welcomes this opportunity to inform the Court about what we have learned to date and to suggest measures to ensure compliance with the Injunction.

## I. CLASS COUNSEL'S INVESTIGATIONS INTO DEFENDANTS' COMPLIANCE AND THE BARRIERS THERETO

After the Court first issued the Injunction, Class Counsel mailed notices to approximately 100 class members it had been in communication with, informing them of the Injunction and instructing them to notify Class Counsel of any noncompliance. *See* Noor Decl. ¶ 3. Class Counsel operates a telephone hotline for class members to call with concerns and has actively monitored the hotline, as well as written letters from class members. *Id.* ¶ 7-8. Class Counsel has attempted to schedule a confidential phone call with each class member who has written or called concerning non-compliance as well as those who filed motions with the Court. *Id.* ¶ 9, 13. Class Counsel has been able to investigate and confirm reports of noncompliance at nineteen BOP facilities, sharing seventeen of these Defense Counsel. *Id.* ¶ 20, 24. The remaining two reports were obtained very recently and Counsel only had an opportunity to confer with the people who submitted them shortly before preparing this Status Report. *Id.* ¶ 24.

Defense Counsel has resolved some instances of noncompliance, but not all. In three instances, after Class Counsel has notified Defendants' Counsel of noncompliance issues, class members have informed Class Counsel that the issues have been resolved at the facility. *Id.* ¶ 21. In five instances, class members reported partial resolution of their concerns, and Class Counsel is continuing to work with them to understand the ongoing issues. *Id.* ¶ 22. But on eight other

occasions, Class Counsel arranged confidential legal calls with class members after conferring with Defense Counsel, and, despite Defense Counsel's assurance that it had informed the facility of its obligations, the class member still reported that social accommodations were not provided as they were prior to the Executive Order. *Id.* ¶ 23.

Class Counsel has attempted to investigate noncompliance on a wider scale, but BOP staff have frustrated those efforts. Class members at BOP facilities have reported that they have not received any incoming mail from Class Counsel even though counsel sent them at least two letters; class members have also said that they received empty envelopes from Class Counsel and saw their outgoing mail to Counsel in the trash. *Id*. ¶ 10. Class Counsel has also faced obstacles and delays when seeking to make phone calls to class members. BOP staff at FCI Seagoville stated for weeks that they did not have confidential phone lines available for attorney/client communications. *Id*. Further, when Class Counsel has contacted FCI Seagoville for updates on the phone lines or to schedule legal calls, BOP staff have routinely failed to pick up the phone. The same problem has occurred at USP Terra Haute, and USP Coleman. *Id*. At other facilities, BOP staff have taken several weeks to schedule legal phone calls, despite repeated follow-up from Class Counsel. *Id*.

BOP's mailroom procedures have also impeded Class Counsel's ability to receive and respond to reports of noncompliance. Under BOP policy, when a lawyer sends a letter to an incarcerated client, BOP staff must contact the attorney to verify their status as the sender; only after this verification process is complete will BOP allow the client to receive the letter without staff reviewing it first. *Id.* ¶ 10. The process of responding to verifications can be time-consuming, particularly given that, here, the class consists of 1,040 people. Class Counsel asked Defense Counsel to waive its verification process for letters from Class Counsel to class

members; Defense Counsel refused. Class Counsel also sought to mitigate the issue by asking Defense Counsel to post notices about the Injunction throughout BOP facilities; this request was refused as well. The barriers created by BOP's mailroom policies have significantly impeded Class Counsel's ability to communicate with class members.

In sum, despite significant communication barriers, Class Counsel has been able to investigate and verify incidents of noncompliance at nineteen facilities. This is cause for significant concern.

## II.     REPORTS OF NONCOMPLIANCE WITH THE INJUNCTION

Class Counsel has spoken with all but three class members who have written letters to the Court or filed motions with it.[1] *Id*. ¶ 13; *see also* Pinson Decl., Dye Decl., Simpkins Decl., Alford Decl. Although one class member reported that her facility had begun complying with the injunction shortly after she wrote to the Court, and one was transferred out of BOP custody before Class Counsel could take a declaration from her, *id*. ¶ 14, 18, several others confirmed to Class Counsel that there remained significant ongoing noncompliance. For example, one individual reported being unable to initiate hormone therapy despite receiving social transition accommodations for years. Concerningly, this individual did not appear on the class list that Class Counsel received from Defendant. Class Counsel requested clarification from Defendants' Counsel about this individual, but has not received a response as of this filing. *Id*. ¶ 15.

In addition to the individuals who contacted the Court, Class Counsel's independent investigations have revealed numerous instances of Defendants failing to provide class members

---

[1] As to the three class members whom Class Counsel has not yet contacted: one (Mx. Milton) is not currently in BOP custody; Class Counsel had already raised Ms. Skyy's concerns and others from USP Coleman with Defendants' Counsel; and Class Counsel plan to reach out to Ms. Nash as soon as possible. Noor Decl. ¶ 19.

with social accommodations and/or hormone therapy in accordance with BOP policy and practice in effect immediately prior to the Executive Order, as required by the Injunction.

Numerous class members have reported noncompliance with the Injunction's requirements on social accommodations, including access to undergarments and hygiene products and cosmetics that accord with class members' gender identity. For example, at FCI Aliceville in Aliceville, AL, Matthew Williamson has yet to receive access to men's boxers and chest binders. Williamson Decl. ¶ 11. When he asked the Laundry Services Supervisor about obtaining these accommodations, the Supervisor stated that he would "never" let incarcerated people get chest binders again. *Id*. ¶ 12. Mr. Williamson is also still unable to receive men's hygiene items through the commissary. *Id*. ¶ 10. When he asked the Aliceville Trust Fund Supervisor when such items would be restocked as they had been prior to the Executive Order, the Supervisor told him that they would only stock "gender-neutral" items in the commissary, *id*. ¶ 12, a departure from the facility's practice under the policy in place before the Executive Order. Defendants' Counsel reported that staff at FCI Aliceville were aware of their obligations under the injunction and that social accommodation items were once again available on August 19, 2025, but Mr. Williamson reported the above to Class Counsel on October 22, 2025.

At USP Coleman II in Coleman, FL, Justine Finley reported that she has not received makeup which she ordered via Special Purchase Order (SPO), and was told that she needed to submit SPOs in order to obtain undergarments and women's hygiene products. Finley Decl. ¶ 4, 8-9. With respect to undergarments and women's hygiene products, BOP staff have told her that they will no longer stock those items, despite the Injunction. *Id*. ¶ 8-9. Class Counsel raised issues of compliance at Coleman II, reported by a different class member, to Defendants' Counsel on October 7, 2025, and received in reply only an undated copy of the Coleman Federal

Correctional Complex (FCC) commissary list, which contains items that Ms. Finley had stated she was unable to purchase from the commissary Noor Decl. ¶ 19; Finley Decl. ¶ 8.

At FCI Williamsburg in Williamsburg, SC, Nora Laureano-Guzman reported that she does not have access to women's undergarments. Laureano-Guzman Decl. ¶ 9. When she asked BOP staff about this, one staff member stated, "Nobody told you to be in prison." *Id.* ¶ 12. Another BOP staff member referred to Ms. Laureano-Guzman using a transphobic slur. *Id*. In August of 2025, Class Counsel informed Defense Counsel of this issue, and Defense Counsel responded that social accommodations had been made available. Noor Decl. ¶ 23. However, as of December 5, Ms. Laureano-Guzman reports that a small subset of social accommodations have been restored but that key items, such as undergarments and almost all makeup items, remain unavailable.

Kendall Walker at USP Florence in Florence, CO, reports that she is not able to get bras or panties. Walker Decl. ¶ 8.[2] James White at FMC Carswell in Fort Worth, TX, also reports that BOP staff will not provide access to boxers or men's hygiene items that were available prior to the Executive Order. White Decl. ¶ 4, 9. Despite Defendants' Counsel stating that FMC Carswell was in compliance with the Injunction, Mr. White reports that he continues to be unable to purchase boxers or men's hygiene items that were previously available. Noor Decl. ¶ 23.

Mya Dye, a class member who resides at FCI Butner in Butner, North Carolina, reports that, while women's undergarments are available through Laundry Services, they are only provided in a single size that does not fit Ms. Dye or anyone else at the facility. Dye Decl. ¶ 9. *See also* Simpkins Decl. ¶ 9 (similar). Ms. Dye filed a motion to intervene informing the Court and parties of these issues, but they have not yet been resolved. Class Counsel also learned of

---

[2] This was just recently confirmed by Class Counsel and not yet reported to Defense Counsel. Noor Decl. ¶ 24.

these issues from Grace Pinson in September of 2025 and informed Defense Counsel at that time. Defense Counsel sent a copy of the laundry inventory at the Butner Federal Correctional Complex dated October 30, 2025, which shows non-zero quantities of undergarments in inventory in several sizes, but Ms. Dye and Ms. Simpkins reported in early December that undergarments continue to only be made available to them in one size. Noor Decl. ¶ 17; Dye Decl. ¶ 9; Simpkins Decl. ¶ 9. Thus, it appears that either the list Defense Counsel provided was inaccurate or facility staff are not providing class members access to apparel in the facility's inventory.

Class members have reported that staff are generally unable or unwilling to provide a timeline for when social accommodations may be available again. *See* Decl. of Justine Finley at ¶ 10; Decl. of James White at ¶ 14; Decl. of Nora Laureano-Guzman at ¶ 13; Decl. of Randi Davis at ¶ 12.

In addition to denial of social accommodations, Class Counsel has received reports of class members being denied access to medically necessary hormone therapy.

Kara Sternquist at FMC Carswell reported that her hormone therapy was discontinued despite the Injunction. Noor Decl. ¶ 25. She said the warden told her she is not a class member even though her name appears on the class list. *Id*. Class Counsel notified Defense Counsel of this issue on December 11, 2025, but has not received a response. *Id.*

Benjamin Wills at FCI Tallahassee in Tallahassee, FL reported that he had not received hormone therapy since entering BOP custody in December of 2024—despite having been on hormone therapy for nine years prior to entering BOP custody. Noor Decl. ¶ 21. Mr. Wills' hormone therapy was finally restored in October 2025, four and a half weeks after Class Counsel raised this with Defense Counsel. *Id.*

At FCI Talladega in Talladega, AL, Rebecca Meskill, who previously submitted a declaration in this case, reported that her hormone therapy was not restarted following the Injunction. Meskill Decl. ¶ 4-5. Ms. Meskill began experiencing nervous hives and rashes due to the denial of hormone therapy, causing her to scratch her forearms until she bled profusely. Meskill Decl. ¶ 7-8. Class Counsel brought this issue to Defendants' attention on October 24, 2025, and Ms. Meskill's hormone therapy was finally resumed in early December. Noor Decl. ¶ 21.

Carla Keys, who moved to intervene in this case, reported that she has been unable to begin hormone therapy. ECF No. 100. Staff told her that hormone therapy is not offered at Medical Services, despite the Injunction. Noor Decl. ¶ 15. Ms. Keys does not appear on the class list given to Class Counsel by Defendants' Counsel despite reporting that she believes she has been diagnosed with gender dysphoria. *Id.* Class Counsel requested an explanation from Defendants' Counsel on December 11, 2025, but as of this filing, has not received a response.

Finally, transgender women class members report that BOP facilities are continuing to revoke or otherwise refusing to provide them with female-only pat search exemption cards. Prior to the Executive Order, BOP policy required staff to give transgender prisoners exemption cards that ensured they were searched by people of the same gender identity. Exh. 15. The February 21, 2025 BOP memorandum implementing the Executive Order revoked this policy; yet, because the Court's Injunction stayed that memorandum, the pat search policy should have gone back into effect. For many class members, it has not, despite BOP's General Counsel advising all BOP chief executive officers that the Preliminary Injunction required such. *Id*. BOP staff at FCI Fairton in Fairton, NJ, have refused to reissue Ms. Davis's female only pat search exemption card even though she was eligible for such exemption in accordance with BOP policy prior to the

Executive Order. Davis Decl. ¶ 11. Instead, staff at FCI Fairton force Ms. Davis to submit to a urinalysis in front of male staff, causing extreme discomfort and distress for Ms. Davis. *Id*. Class members Kendall Walker at USP Florence, Tiffany Larson at FCI Coleman, Grace Pinson at FCI Butner, and Valerie Simpkins at FCI Butner have also reported being denied this same accommodation. *See* Walker Decl. ¶ 7; Larson Decl. ¶ 9; Pinson Decl. ¶¶ 4, 6; Simpkins Decl. ¶ 5. One staff member told Ms. Larson why, stating in October 2025: "You're not transgender anymore. You're in a male facility and we will treat you as a male. We go by what Trump said and we follow what Trump is doing." Larson Decl. ¶ 9.

BOP's noncompliance with the Injunction has adversely affected class members' physical and mental health. Class members have experienced increasing symptoms of depression, anxiety, and PTSD, as well as worsening symptoms of their gender dysphoria due to BOP's denial of hormone therapy and/or social accommodations. *See* Williamson Decl. ¶ 13; Finley Decl. ¶ 11; White Decl. ¶ 15; Meskill Decl. ¶ 12; Auliyaa Decl. ¶ 9; Dye Decl. ¶ 15; Davis Decl. ¶ 11; Satyagrahi Decl. ¶ 11.

### III. REPORTS OF RETALIATION AGAINST CLASS MEMBERS WHO ASSERTED THEIR RIGHTS UNDER THE INJUNCTION

Class Counsel has also received disturbing reports of retaliation by BOP employees against some class members who asserted their rights under the Injunction. Grace Pinson at FCI Butner recently reported severe physical and mental abuse in response to her efforts to obtain the protections of the Injunction. On October 10, 2025, less than one month after she filed a motion to intervene in this case detailing FCI Butner's noncompliance with the Injunction (ECF No. 86), Ms. Pinson reported that her BOP email account was placed under an "investigation hold," preventing her from contacting Class Counsel via email. Pinson Decl. ¶ 19. On October 17,

2025, Ms. Pinson reported that BOP officers assaulted her, cut off her clothes, and detained her naked and in chains for 10 hours in an area where she was visible to others. *Id.* ¶ 12. This was observed and reported by another class member. Simpkins Decl. ¶¶ 11-12. Ms. Pinson said BOP employee Captain Hock then told her, "Don't play the victim, I know what you've been writing to that judge in D.C." Pinson Decl. ¶ 13. She said that BOP officials broke her wrist during the assault and she was not provided medical care for approximately one week after. *Id.* ¶ 12, 14. Ms. Pinson further said she is currently housed in solitary confinement and no longer has access to her legal materials. *Id.* ¶ 18.

Ms. Dye at FCI Butner reported having her release date threatened if she continued to pursue her rights under the Injunction. Specifically, she was told to stop filing grievances about BOP's failure to comply with the Injunction if she "want[ed] to go home[.]" Dye Decl. ¶ 13.

Ms. Meskill at FCI Talladega is concerned that hormone therapy was withheld from her in retaliation for previously filing a declaration in this case, as the other transgender women at her facility were able to restart hormone therapy after the Injunction without issue, but her treatment was delayed more than five months and only resumed after intervention by Class Counsel. Meskill Decl. ¶¶ 3, 10, 11, 14; Noor Decl. ¶ 21.

## IV.    REMEDIES TO ENSURE COMPLIANCE AND PREVENT RETALIATION

As discussed above, in the approximately six months since the Injunction first issued, Class Counsel has heard numerous reports of BOP facilities denying access to social accommodations and/or hormone therapy, in defiance of the Injunction's commands. Given these reports, Class Counsel believes it is in the interest of all members of the class to have a status conference to discuss potential measures to ensure future compliance. Some remedies that could be discussed at a status conference include:

i) requiring BOP to send notice regarding the Injunction and how to contact Class Counsel to all class members via mail and/or BOP-operated tablets and to post the notice on accessible bulletin boards at each facility where class members are housed;

ii) requiring Defendants to issue notice to mailroom personnel at each BOP facility where class members are housed that incoming mail from Class Counsel is to be treated as legal mail and does not need to be verified by a phone call before it can be distributed to the class member(s);

iii) requiring Defendants to designate a BOP headquarters point of contact with whom Class Counsel can arrange attorney-client phone calls with class members throughout BOP;

iv) requiring Defendants to provide Class Counsel copies of all grievances/administrative remedies filed by class members concerning access to hormone therapy and/or social accommodations since June 3, 2025;

v) requiring facility wardens to provide monthly certification to the Court that their facility is in compliance with the Injunction and that class members at the facility are able to send and receive legal mail with Class Counsel and have confidential phone calls with Class Counsel; and

v) entering a non-retaliation order.

Class Counsel believes the status conference would be most productive if Defendants would share with Class Counsel and the Court all guidance they have provided BOP employees about the implementation of the Injunction in advance of the status conference. Class Counsel has asked for this information from Defendants' Counsel previously, and received a

-11-

memorandum addressed to "All Chief Executive Officers," but have heard from many class members that staff claim not to have received guidance about the Injunction. Noor Decl. ¶ 5.

## V. CONCLUSION

Based on the facts and circumstances set out above, Class Counsel respectfully requests that the Court set a status conference as soon as practicable after Defendants file their response to discuss the matters set forth in this Status Report.

Dated: December 22, 2025

David C. Fathi† (*pro hac vice*)
Maria V. Morris, D.C. 1697904
Elisa C. Epstein† (*pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
915 15th Street, N.W.
Washington, D.C. 20005
Tel: 202-393-4930
dfathi@aclu.org
mmorris@aclu.org
eepstein@aclu.org
† *Not admitted in D.C.; practice limited to federal courts.*

Corene T. Kendrick (*pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
425 California St., Ste. 700
San Francisco, CA 94104
Tel: 202-393-4930
ckendrick@aclu.org

Li Nowlin-Sohl (*pro hac vice*)
Leslie Cooper (*pro hac vice*)
Shana Knizhnik, DDC Bar ID 120840
James D. Esseks (*pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel: 212-549-2500

Respectfully submitted,

*/s/ Megan Noor*
Megan Z. F. Noor (*pro hac vice*)
megan@transgenderlawcenter.org
Shawn Thomas Meerkamper (*pro hac vice*)
shawn@transgenderlawcenter.org
TRANSGENDER LAW CENTER
P.O. Box 70976
Oakland, CA 94612
Tel: 510-587-9696

Lynly S. Egyes (*pro hac vice*)
lynly@transgenderlawcenter.org
TRANSGENDER LAW CENTER
594 Dean Street, Suite 11
Brooklyn, NY 11238
Tel: 510-587-9696

Michael Perloff, D.C. Bar No. 1601047
Aditi Shah, D.C. Bar No. 90033136
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF THE DISTRICT OF COLUMBIA
529 14th Street NW, Suite 722
Washington, D.C. 20045
Tel: 202-457-0800
mperloff@acludc.org
ashah@acludc.org

lnowlin-sohl@aclu.org
lcooper@aclu.org
sknizhnik@aclu.org
jesseks@aclu.org

*Counsel for Plaintiff class*