# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ALISHEA KINGDOM, et al.,

                Plaintiffs,

    v.

DONALD J. TRUMP, et al.,

                Defendants.

Case No. 1:25-cv-00691-RCL

**DECLARATION OF MEGAN NOOR IN SUPPORT OF PLAINTIFFS' STATUS REPORT REGARDING DEFENDANTS' PRELIMINARY INJUNCTION COMPLIANCE**

I, MEGAN NOOR, DECLARE:

1. I am a Staff Attorney at Transgender Law Center (TLC) and am Counsel of Record for Plaintiffs in this case. I make this declaration in support of Plaintiffs' Status Report regarding Defendants' Preliminary Injunction compliance. I have personal knowledge of the matters set forth below, and if called upon as a witness, I could and would testify competently thereto.

2. As Staff Attorney, I collaborate with TLC's Prison Mail Program, which receives hundreds of letters each year from incarcerated transgender people in local, state, and federal prisons and jails across the United States.

3. After this Court issued the Preliminary Injunction and Class Certification on June 4, 2025, Class Counsel mailed a packet of information about the injunction to approximately one hundred class members who had previously contacted TLC's Prison Mail Program. Each packet contained a notice describing the Court's order on the injunction and class certification and a copy of the Federal Bureau of Prisons Office of General Counsel's notification to "All Chief Executive Officers" about the Preliminary Injunction, (Exh. 15). The notice we mailed requested

that class members write to Transgender Law Center if their access to hormone therapy or social transition accommodations had not been restored pursuant to this Court's injunction. The notice included Transgender Law Center's mailing address.

4. Since this Court issued the Preliminary Injunction and Class Certification in this case, Transgender Law Center's Prison Mail Program has received over one hundred twenty letters from transgender individuals incarcerated in Federal Bureau of Prisons (BOP) facilities.

5. Of the letters received from individuals in BOP facilities, approximately half have reported some form of noncompliance with the Preliminary Injunction, including access to gender-appropriate undergarments, hygiene items, pat search exemption cards, and/or gender-affirming medical care. Many also reported staff claiming not to have received guidance on the Injunction.

6. When TLC's Prison Mail Program receives letters from BOP facilities, those letters are forwarded to TLC attorneys who are counsel of record in this case. A summary of each letter is also made available to all counsel of record for Plaintiffs in the case.

7. Nearly all letters received by TLC's Prison Mail Program receive a written response. The only cases in which a letter does not receive a response are when it is abundantly clear from the letter that the letter writer does not expect a response.

8. TLC also operates a telephone hotline for incarcerated individuals. When a call is received from an individual incarcerated in a BOP facility, TLC attorneys who are counsel of record in this case are notified and receive a summary of the phone call.

9. When class members in this case contact TLC describing clear noncompliance with this Court's Preliminary Injunction, Class Counsel undertakes follow-up. In those cases, Class Counsel schedules a confidential legal phone call with the class member to obtain detailed

information about the noncompliance, and to confirm that the facility is still failing to comply with the injunction. I estimate that Class Counsel, including counsel at TLC and at the American Civil Liberties Union, have conducted at least fifty such legal calls with class members since this Court issued the preliminary injunction. When class members describe situations that may constitute noncompliance with the Injunction but are not clear, TLC writes a letter requesting more information from the class member.

    10. BOP's onerous scheduling process for these legal phone calls has proven to be a significant barrier to Class Counsel's monitoring of the implementation of this Court's injunction. Scheduling a single legal phone call often requires up to one hour of staff time just to schedule, as identifying and contacting class members' correctional counselors often requires repeated calls and emails to the facility and to the counselor once they have been identified. Some facilities, such as Federal Correctional Institution (FCI) Seagoville, United States Penitentiary (USP) Terra Haute, and USP Coleman, do not consistently answer phone calls, leaving Class Counsel unable to consistently contact the facility to schedule legal phone calls. For example, scheduling a legal call with Ms. Satyagrahi, a class member who is incarcerated at FCI Seagoville, required nine attempts to contact the facility, four weeks of delay, and ultimately intervention by Defendants' Counsel before the call took place. For weeks, staff at FCI Seagoville stated that the only confidential phone line at the facility was out of order, making confidential phone calls with class members impossible. When Class Counsel does make contact with a facility, Class Counsel has often had to wait several weeks for the scheduled call to actually take place, making prompt communication with our class members impossible in some cases. Adding to these difficulties are issues that Class Counsel has experienced and that class members report with the BOP mail system. When a lawyer sends a letter to an incarcerated client, BOP policy requires mailroom

staff to call the attorney to verify the sender before BOP will allow the client to receive the letter without staff reviewing it first. This places a significant burden on Class Counsel to receive these phone calls from BOP staff for each letter we send to class members. Class members with whom I have spoken have also reported never receiving mail that TLC has sent them even though we have sent them at least two letters, receiving only the envelopes and not the enclosed letters that we have sent them, or finding their outgoing mail to Class Counsel in the trash. TLC has also received an empty envelope from a class member at least once; that class member later wrote to us again stating that the previous envelope had originally contained a letter to us.

11. When class members report noncompliance, either via mail to TLC or by writing to this Court, and Class Counsel confirms that the noncompliance is ongoing through a phone call with the class member. Class Counsel then contacts Defendants' Counsel to alert them to the issue. Following confirmation from Defendants' Counsel that they have alerted the BOP to the issue, Class Counsel then contacts the class members who initially reported the noncompliance via confidential legal phone call to confirm whether the facility has begun complying.

12. Following consistent reports of noncompliance at facilities throughout the BOP, Class Counsel began affirmatively reaching out to class members at facilities with larger class member populations, even if class members had not contacted TLC to report compliance issues, in preparation to bring a motion to enforce the Injunction. Since September 2025, Class Counsel has contacted class members incarcerated at over twenty BOP facilities.

13. As a part of this outreach, Class Counsel has spoken with all but three of the individuals who have filed *pro se* motions or written letters to this Court via confidential legal calls to hear more about the issues they have encountered, and in several instances drafted declarations with these class members regarding the same.

14. Class Counsel spoke with Ms. Stone at FCI Ashland on December 5, 2025, after Ms. Stone sent a letter to the Court on November 18, 2025 (ECF No. 97). Ms. Stone informed us that after she mailed out her letter to the Court, but before the letter was docketed or Class Counsel received it, the compliance issues at FCI Ashland were resolved, and all medical treatment and social accommodations are available to the same extent they were prior to the Executive Order.

15. On December 11, 2025, Class Counsel also spoke with Carla Keys, a class member who resides at FCI Oakdale and who filed several documents with the Court (ECF Nos. 75, 77, 81, 85, 100). Ms. Keys reported during the call that staff continued to refuse to allow her to initiate hormone replacement therapy, saying that it is not offered by Medical Services. She believes that she was diagnosed with gender dysphoria, as she was evaluated by a Psychology Services staff member and by a staff member of the Transgender Executive Counsel and has received social transition accommodations at two different BOP facilities for years. Despite this, Ms. Keys was not included on the list of class members provided by Defendants' Counsel. Class Counsel contacted Defendants' Counsel to inquire about her status as a class member on December 11, 2025, but as of the date of this filing, has not received a response. Class Counsel is continuing to investigate this issue.

16. On December 5, 2025, Class Counsel spoke with Michelle Alford and Randi Davis, class members who reside at FCI Fairton and who contacted the Court on November 18 (ECF No. 99). Both reported dramatically fewer commissary items available at the Fairton commissary shop and an inability to receive female-only pat search exemptions. Class Counsel has not yet reported this noncompliance to Defendants' Counsel, in part because it is our understanding that, as Counsel of Record in this case, Defendants' Counsel received Ms. Alford's motion and are aware of the facts alleged therein. A declaration from Ms. Davis is attached to the Status Report.

17. Class Counsel has been in contact with Grace Pinson (ECF No. 86) throughout this litigation. Class Counsel informed Defendants' Counsel of class members' (including Ms. Pinson's) reports of injunction noncompliance with respect to undergarments and commissary items at FCI Butner Medium I, where Ms. Pinson, Mya Dye (ECF No. 95), and Valerie Simpkins (ECF No. 92) are housed, on September 26 and October 7, 2025. On November 6, 2025, Defendants' Counsel provided a stock list of laundry items at the Butner Federal Correctional Complex, which includes Butner Medium I, and explained that the Butner's policy is to share laundry items between facilities as needed to provide adequate clothing for the individuals incarcerated in each facility in the complex. The stock list showed between eight and forty-six pairs of women's undergarments available in each size. We most recently spoke with Ms. Pinson, Ms. Dye, and Ms. Simpkins in early December 2025. All three women reported that they were still unable to obtain undergarments in any size other than size 7, described a lack of gender-affirming commissary items available at the facility, as well as deeply concerning allegations of retaliation against Ms. Pinson for her advocacy for her and other transgender women's rights under the Injunction. Declarations from all three women are attached to the Status Report.

18. On November 13, 2025, Class Counsel spoke with Asia Crawford, who filed a motion with the Court on October 27, 2025 (ECF No. 91). During the call, Ms. Crawford a class member who resided at Metropolitan Correctional Center (MCC), a BOP facility in Chicago, stated that the facility rarely administered her prescribed hormone therapy, doing so far less frequently than her prescription requires. Ms. Crawford also stated that MCC did not provide access to social accommodation items. When Class Counsel informed Defendants' Counsel about the noncompliance that Ms. Crawford had reported and attempted to schedule a follow-up call with

Ms. Crawford, we were informed that she was no longer in BOP custody as of November 20, 2025.

19. Class Counsel has not yet spoken with three individuals who have written the Court: Ms. Nash, ECF No. 94; Mx. Milton, ECF No. 98, who is not currently in BOP custody; and Ms. Skyy, ECF No. 105. TLC sent a letter to Mx. Milton informing them that the *Kingdom v. Trump* class only includes individuals in BOP custody, and invited them to write back describing any further questions or problems they are having for which TLC's Prison Mail Program may be able to provide resources or information. Class Counsel alerted Defendants' Counsel about reports of Ms. Skyy's situation and other Injunction compliance issues at USP Coleman on October 7, 2025, and received an undated copy of the Coleman Federal Correctional Complex commissary list and no further response from Defendants' Counsel. Class Counsel intends to make contact with Ms. Nash as soon as possible, as well.

20. Since the Injunction was issued, Class Counsel has informed Defendants' Counsel of reported compliance issues at seventeen facilities: FCI Talladega, FCI Petersburg Medium, FCI Butner Medium I, United States Penitentiary (USP) Coleman I and II, FCI Seagoville, FCI Aliceville, Federal Medical Center (FMC) Carswell, FCI Williamsburg, USP Tucson, FCI Englewood, FMC Devens, USP Terra Haute, FCI Hazelton, FCI Waseca, FCI Tallahassee, and MCC Chicago.

21. On follow-up, class members at FCI Talladega, FCI Waseca, and FCI Tallahassee have reported that the compliance issues they had reported had been resolved. In the interim, however, class members experienced significant hardship. One class member, Benjamin Wills at FCI Tallahassee, did not receive his testosterone treatment for approximately ten months despite having been on testosterone for nine years before entering BOP custody. In October 2025, four

and a half weeks after Class Counsel raised this issue with Defendants' Counsel, Mr. Wills's testosterone hormone therapy was reinitiated. Class Counsel was also able, after significant effort, to obtain the medical records of Rebecca Meskill at FCI Talladega after she the facility refused to reinstate her hormone therapy after the Injunction. Ms. Meskill submitted a declaration in connection with Plaintiffs' motions for a preliminary injunction and class certification in this case (ECF No. 59), describing the denial of her hormone therapy due to the Executive Order. She later reported to Class Counsel that her hormone therapy had not been reinstated despite the Injunction. Contrary to the claims in Defendants' sealed response to Ms. Meskill's declaration (ECF No. 61), it was immediately and abundantly clear from Ms. Meskill's medical records that her hormone therapy was in fact discontinued due to the Executive Order. Class Counsel raised this issue with Defendants' Counsel on October 24, 2025, and after over a month of Class Counsel's intervention with Defendants' Counsel, Ms. Meskill was once again prescribed her hormone therapy in early December 2025.

22. Class members at USP Tucson, USP Terra Haute, FCI Englewood, FCI Hazelton, and FMC Devens have reported improvements following Class Counsel's intervention, but state that there are ongoing issues with compliance, and Class Counsel is working to follow up with these class members to learn more about the ongoing issues at these facilities.

23. At eight facilities (FCI Petersburg Medium, FCI Butner Medium I, FCI Seagoville, FCI Aliceville, FCI Williamsburg, USP Coleman I and II, and FMC Carswell), class members continue to report that social accommodation items are unavailable to the same extent that they were available prior to the Executive Order. This is despite Defendants' Counsel acknowledging Class Counsel's reports of noncompliance at each facility, and, with the exception of USP Coleman and FCI Butner Medium I, explicitly stating that each facility is aware of its obligations

under the Injunction and that social accommodation items are available to the same extent they were prior to the Executive Order. Declarations of class members at each of these eight facilities are attached to the Status Report. Defendants' Counsel never directly acknowledged Class Counsel's report of noncompliance at MCC Chicago, and the class member whom we contacted was transferred out of BOP custody before Class Counsel could take a declaration from her.

24. Class Counsel has also very recently learned of noncompliance at two facilities, USP Florence High and FCI Coleman Medium. Class Counsel confirmed these reports via confidential legal phone calls with class members at each facility shortly before preparing the instant Status Report.

25. Additionally, Class Counsel is continuing to investigate reports from Kara Sternquist at FMC Carswell that her hormone therapy was recently terminated, despite the Injunction. She informed Class Counsel that a warden told her that she is not a class member, although her name appears on the class list given to Class Counsel by Defendants' Counsel. Class Counsel requested an explanation from Defendants' Counsel about this on December 11, 2025, but has not received a response.

I declare under penalty of perjury that the foregoing is true and correct. Executed this December 22, 2025 at Oakland, California.

/s/ *Megan Noor*
Megan Noor
Attorney for Plaintiffs