IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALISHEA KINGDOM, et al., <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP, et al., <br><br> Defendants. | Civ. A. No. 25-0691 (RCL) |

DEFENDANTS' STATUS REPORT

Pursuant to the Court's Order (ECF No. 101), Defendants, through counsel, respectfully file this Status Report.

The Federal Bureau of Prisons (BOP) operates over 120 prisons located throughout the nation, *see* https://www.bop.gov/locations/ (Our Locations), and is responsible for the custody and care of over 150,000 federal inmates, *see* https://www.bop.gov/about/facilities/ (About Our Facilities). About 800 of those inmates have been diagnosed with gender dysphoria and thus are class members. In the preliminary injunction order of June 3, 2025, this Court ordered BOP to restore and maintain access to hormone medications and social accommodations for all class members.

In the over seven months since the injunction, Class Counsel alleges receiving about 100 non-compliance complaints from inmates, with only eight instances that still have not been resolved or otherwise dropped and five instances of "partial resolution." Pls. Stat. Rep. at 2–3, ECF No. 107; Noor Decl. ¶¶ 4–5, 9, ECF No. 107-1. In other words, in over 200 days since the injunction, class counsel has only about a dozen of continued allegations of non-compliance from the nearly 800 class members. In all other instances, the inmates' allegations were promptly

resolved; were determined to be untrue, or were the consequences of routine prison administrative difficulties, such as commissary ordering delays or shortages, all of which were no different than typical prison access issues that preceded the injunction. *See, e.g.*, *id.* ¶ 14 (resolved), ¶ 17 (dissatisfied with size selection of undergarments), ¶ 21 (hormones prescribed), ¶ 22 ("improvements").[1] In other words, BOP has been making all reasonable efforts to comply with the injunction. *See S.E.C. v. Bilzerian*, 112 F. Supp. 2d 12, 17 (D.D.C. 2000) (explaining that a party should make, in good faith, all reasonable efforts to comply with an injunction); *cf. Armstrong v. Executive Office of the President, Office of Admin.*, 1 F.3d 1274, 1289 (D.C .Cir. 1993) (a plaintiff must prove any violation of an injunction with "clear and convincing evidence"); *Breen v. Tucker*, 821 F. Supp. 2d 375, 383 (D.D.C. 2011) (a plaintiff must provide "a quantum of proof adequate to demonstrate a reasonable certainty that a violation [of injunction] occurred").

Defendants do not believe that the Court's intervention is needed at this time. As described above, class counsel raises only a dozen of continued instances of non-compliance that remain to be resolved by the parties and the parties' discussions are ongoing. The parties have been able to resolve the vast majority of non-compliance allegations (about 90% of them). And of those instances that are currently unresolved, class counsel states that they are continuing to investigate or that BOP is looking into the matters. BOP expects that the parties can resolve any pending matters after the parties have completed their inquiries. There is simply no reason for the Court's intervention in the form of a status conference or otherwise. Pls. Stat. Rep. at 10–11.

---

[1] Class counsel also complained about BOP's mail processing, which is not part of this case or the injunction ordered by the Court. To the extent Class Counsel makes the inferential leap that the manner of BOP's mail processing constitutes purported "retaliation," Defendants deny the allegations. Defendants also note that Iin November 2024, the BOP implemented heightened mail screening procedures due to the increased prevalence of narcotics in federal facilities. *See* BOP: Message from the Director and CPL-33 President, available at https://www.bop.gov/news/20241016-message-from-the-director-and-cpl-33-president.jsp.

Notwithstanding the above, BOP is considering some of Plaintiffs' requests. *See id.* BOP has informed undersigned counsel that it is discussing the feasibility of sending notice to class members via BOP-operated tablets and bulletin boards, as well as designating points of contact for arranging attorney-client phone calls with class members. As with any changes made in a penal institution, BOP must be sure that such changes do not jeopardize the safety, security, and orderly operation of its facilities. Defense counsel will continue to confer with Plaintiffs regarding these requests.

With respect to the Court's inquiry as to "what action, if any, the Court should take in response to the [inmate] movants and letter writers," Defendants propose that the Court should deny all motions to intervene without prejudice, and instruct class counsel to determine the recourse forward. Indeed, this Court has already certified a class, and there is no need for individual class members to intervene as it is class counsel's responsibility to represent the interest of the certified class.

With respect to the specific concerns and allegations raised in Plaintiffs' Status Report and attached declarations, undersigned counsel has been informed of the following by BOP:

Class member Williamson alleges that men's boxers and chest binders are not available at FCI Aliceville. The facility indicates that both men's boxer briefs and chest binders are currently available to Williamson through the facility's Commissary. *See* Ex. A at 2 (listing "Men's Boxer Briefs" and "Chest Binders").

Class member Finley alleges that certain undergarments and women's hygiene products are not available at USP Coleman, and that the facility informed her that the products will not be stocked at the facility. The facility has no record of Finley requesting makeup or women's hygiene products. Nor does the facility have any record of Finley filing a grievance related to such requests.

3

Further the Commissary at the facility did not recall Finley having requested these items. Items on the list in Exhibit B are available for purchase by inmates and are available within several days of purchase. This list includes shampoo, conditioner, hair spray, foam curlers, rubber bands, claw clips, coco butter body wash, coconut lime lotion, Lady Speed Stick, lip gloss, blush, eye shadow, and foundation. Ex. B. The list also includes women's undergarments. *Id.* These items are kept in a warehouse near the facility and are available within days of purchase.

Class member Nora Laureano-Guzman alleges that FCI Williamsburg is not providing access to women's undergarments and cosmetics.[2] Pls. Stat. Rep. at 6; Declaration of Nora Laureano-Guzman ¶¶ 5, 9, ECF No. 107-7. The facility indicated, however, that both women's undergarments and makeup are available to inmates. Women's undergarments are available through the facility's Laundry. If the facility's Laundry does not have the inmate's size, the inmate can obtain undergarments in their size through the submission of a Special Purchase Order. Makeup is available through the facility's Commissary.

Class member Walker alleges that women's undergarments are not available at USP Florence. Pls. Stat. Rep. at 6. Walker was issued the requested women's undergarments on Tuesday, January 6.

Class member White alleges that FMC Carswell would not provide access to boxers or men's hygiene items that were previously available. Pls. Stat. Rep. at 6. The facility indicated that White has purchased and obtained men's hygiene products and undergarments regularly since April. The facility's records indicate that White purchased multiple binders, boxer briefs, men's

---

[2] Laureano-Guzman includes additional allegations regarding statements purportedly made by BOP staff. The facility is unaware of any allegations of staff misconduct except Plaintiffs' statue report. Any complaints of staff misconduct should be made to BOP directly, which has procedures to investigate and address such complaints.

4

deodorant, and men's body wash from May through November. The facility additionally confirmed that boxer briefs are currently in the facility's inventory. White was transferred to a different facility (FCI Pekin) on December 3, 2025, and the staff at the new facility confirmed that these items are available at the facility and that White has access to them.

Mya Dye, who is no longer a class member because of Dye's release from BOP custody, alleges that FCI Butner provides women's undergarments only in a single size. Pls. Stat. Rep. at 6–7. The facility indicated that women's clothing was never stocked in the Commissary at the facility. Instead, it was always ordered through a Special Purchase Order or upon request. The facility indicates that it never received a request for undergarments from Dye, nor is there a record of Dye purchasing them.

With respect to class member Sternquist's allegation that FMC Carswell has discontinued hormone treatment, the facility reports that such treatment has not been discontinued and that Sternquist continues to receive hormone treatment. Class member Wills complained that hormone treatment has not been able since they entered BOP custody in December 2024. Wills was not prescribed hormone treatment when Wills entered BOP custody in December 2024. In October 2025 Wills was evaluated by the Clinical Director at FCI Tallahassee to assess whether hormone treatment was appropriate. After determining that such treatment was appropriate, Wills was prescribed hormone treatment.

Carla Keys alleges that the facility has denied Keys hormone treatment. Pls. Stat. Rep. at 8. However, neither the Psychology Data System records nor Bureau Electronic Medical Record System records show Keys ever being diagnosed with gender dysphoria. In 2022, Keys was evaluated for gender dysphoria but was not diagnosed with the condition. Keys' medical records

indicate that Keys did not meet the criteria for a gender dysphoria diagnosis. Accordingly, Keys is not a class member.

Several plaintiffs allege that the BOP facilities that house them are revoking or not providing them with female-only pat search exemption cards. Pls. Stat. Rep. at 8. As relevant here, BOP policy provides that "inmates will be pat-searched in accordance with the gender of the institution, or housing assignment, in which they are assigned." BOP Program Statement 5521.06(b)(2), *Searches of Housing Units, Inmates, and Work Areas* (June 4, 2015). Pursuant to the Program Statement, inmates can request an exception, which had to be pre-authorized by the Warden, after consultation with staff from Health Services, Psychology Services, Unit Management, and Correctional Services. *Id.* BOP could deny requests or revoke pat-search accommodations for an inmate's inappropriate sexual behavior or for an inmate's violations of institutional rules on contraband. BOP Program Statement 5200.08, *Transgender Offender Manual* (Jan. 13, 2022), at 10–11. In exigent circumstances, any staff member could conduct a pat search of any inmate regardless of an accommodation. *Id.* at 11.

FCI Fairton had no record of class member Davis making such a request. After receiving Plaintiffs' Status Report, the facility's Unit Manager reached out to Davis to arrange a meeting and prepare a memorandum for the Warden's review and authorization. Similarly, USP Florence has not received a request from class member Walker for female-only pat searches, nor does USP Coleman have any record of Larsen making such a request.

Finally, Class member Pinson alleges that FCI Butner retaliated against Pinson when Pinson sought protection of the injunction. There was no retaliation. Instead, Pinson and several other inmates were encumbered as a disciplinary measure and for security reasons. While these encumbrances affect Pinson's ability to make social calls and emails until April 2026, they do not

impact Pinson's ability to communicate with attorneys via mail or a legal call. With respect to Pinson's allegations of being assaulted by BOP staff, the facility reports that an altercation occurred on October 17, 2025. During the altercation Pinson and a correctional officer sustained minor injuries. After the altercation, for security reasons, Pinson was searched and then restrained for a limited period of time.

In sum, Defendants have worked diligently to ensure compliance with the Court's injunction and resolve any issues brought to their attention. They will continue to do so. Accordingly, as explained above, the Court's intervention is not needed at this time.

Dated: January 12, 2026

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

JEAN LIN
Special Litigation Counsel

/s/ *Elizabeth B. Layendecker*
ELIZABETH B. LAYENDECKER
M. JARED LITTMAN
ALEXANDER J. YUN
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington D.C. 20005
(202) 616-5046
Elizabeth.B.Layendecker@usdoj.gov