# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ALISHEA KINGDOM, et al., | |
| Plaintiffs, | |
| v. | Case No. 1:25-cv-00691-RCL |
| DONALD J. TRUMP, et al., | |
| Defendants. | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' STATUS REPORT**

Plaintiffs, by and through class counsel, respectfully file this response to Defendants' Status Report, ECF 108. Defendants' Status Report contains factual assertions regarding Defendants' compliance with the Preliminary Injunction (ECF 68) which require clarification or correction. Class counsel has also learned of additional concerns regarding compliance with the Preliminary Injunction and retaliation against class members for advocating for their rights under the Preliminary Injunction which merit the Court's attention.

**I.    Outstanding Concerns Regarding Compliance**

Class member Kara Sternquist, who has been on hormone therapy for over twenty years, had reported that her hormone therapy had been discontinued. ECF 107-1 at 10. Defendants state that she is currently receiving hormone therapy. ECF No. 108 at 5. While Ms. Sternquist is now

receiving some hormone therapy, she is only receiving *some* of the medications[1] that she was receiving prior to the EO and Implementing Memoranda, and for those that she is receiving, her dosages have been significantly reduced. Ex. 2, Sternquist Decl. at ¶¶ 8-9. Prior to the EO and Implementing Memoranda, Ms. Sternquist was receiving Estradiol, Progesterone, and Bicalutamide. *Id*. at ¶ 2. All were stopped for a period of time in the second half of 2025. *Id*. at ¶ 8. When her Estradiol was resumed, it was at a half dose, and then it was even further reduced. *Id*. at ¶ 8. Her Bicalutamide was also resumed at half her prior dosage. *Id*. at ¶ 9. Ms. Sternquist's Progesterone was never resumed. *Id*. Plaintiffs' counsel asked Defendants for an explanation for the changes in Ms. Sternquist's hormone therapy and for her medical records on December 11, 2025, but despite repeated follow-up emails, have received no explanation nor her medical records.[2] ECF 107-1 at 10; *see generally* Ex. 3, Nowlin-Sohl Declaration and Correspondence with Defendants.

Defendants state that boxers and chest binders are now available through commissary at Federal Correctional Institution (FCI) Aliceville in response to Matthew Williamson's declaration. ECF 108 at 3. Mr. Williamson states that while these items were recently added to the commissary list in early November 2025, prior to the issuance of Executive Order 14168 ("the Executive Order), they were available at no cost through laundry and Medical Services. Ex. 4, Williamson Declaration at ¶ 3. Now, chest binders are only available for $41.59 each and boxers for $12.99 each – amounts that are prohibitively expensive for many inmates. ECF 108-1 at 3. Furthermore,

---

[1] The phrase "hormone therapy" does not refer to a single medication, and for transgender women, can include estrogen and medications for testosterone suppression. ECF 7-2, Karasic Declaration ¶ 68.

[2] On January 30, 2026, counsel for Defendants' indicated that they would provide the medical records, but as of this submission, have not responded to a request for an estimated date by which they will be produced. Ex. 3 at 3.

while chest binders are listed on the commissary sheet, they are only available through special purchase order (SPO), which takes much longer to receive than purchasing from the commissary store. *Id.* at ¶ 4. Mr. Williamson is still waiting to receive his chest binder over two and a half months after ordering it. *Id.* at ¶ 5. FCI Aliceville has not made accommodations available to the same extent that they were prior to the Executive Order.

Similarly, Defendants state that the commissary list in Exhibit B to their status report is available at United States Penitentiary (USP) Coleman, but fail to respond to Ms. Finley's declaration that undergarments used to be available at no cost through laundry services[3] and also for purchase through commissary, but after the Executive Order and Implementing Memoranda, USP Coleman ceased providing those items through laundry and they are now only available for purchase. ECF 108 at 4; ECF 108-2; ECF 107-6 at ¶ 9. Defendants have not offered any explanation for discontinuing their pre-Executive Order practice of issuing feminine undergarments through laundry services.

Defendants' response to Ms. Simpkins and Ms. Dye's declarations regarding only one size of undergarments being available through laundry post-EO is that they can purchase other sizes through Special Purchase Order. ECF 108 at 5. This does not address the issue that stocking only one size—where they used to provide undergarments in a variety of sizes prior to the enjoined EO and Implementing Memoranda—does not comply with the Preliminary Injunction. It also ignores the significant costs and delays that such a change imposes upon class members, compared with clothing which is provided at no cost by Laundry Services.

---

[3] Class counsel's understanding is that BOP facilities generally have a "Laundry" department which issues standard clothing items to individuals incarcerated at the facility, including undergarments. These clothing items are provided at no cost to all incarcerated individuals.

Defendants fail to respond to Ms. Auliyaa's declaration that she is still not able to access certain hygiene items through commissary, and that laundry services at USP Florence have not resumed providing bras and underwear. ECF 107-13 ¶¶ 4-5, 8. Nor have they responded to Ms. Larson's declaration stating that she has repeatedly requested a commissary list with women's hygiene items and to purchase such items, and has been told that such items are not available. ECF 107-12 at ¶¶ 12. Ms. Larson has stated that she remains unable to purchase women's hygiene items at FCI Coleman Medium, and that staff have repeatedly told her that no list of transgender-specific items exists. Ex. 5, Larson Declaration ¶¶ 2-6.

With regard to pat searches, Defendants failed to respond to the denial of pat search accommodations to Grace Pinson and Valerie Simpkins. Ms. Pinson did receive a pat search accommodation card at some time between her December 15, 2025 call with class counsel and January 20th, 2026, but it was confiscated again and is no longer being honored. Ex. 6, Pinson Feb. Decl. at ¶ 8. Defendants state that USP Coleman has no record of Tiffany Larson making a request for a pat search accommodation, but Ms. Larson is at FCI Coleman Medium, not USP Coleman. ECF 108 at 6; ECF 107-12 at ¶ 1.

## II.    Additional Status Updates

Plaintiffs' counsel have recently been made aware that approximately 74 people were removed from the list of class members between July 2025 and November 2025 because their diagnoses of gender dysphoria were removed. Defendants provided Plaintiffs' counsel with a list of class members in July 2025 and an updated list in November 2025. Understandably, there were a number of class members who were released from BOP custody and were not on the November 2025 list, as well as a number of new class members on the November 2025 list. Of great concern though are 74 people who are still in BOP custody but were removed from the class list, which

4

counsel for Defendants explained is a result of them no longer having an active diagnosis of gender dysphoria. *See* Ex. 3 at 3-4.

The removal of the diagnosis for 74 people—over 7% of the class—during a four month period raises serious concerns that the diagnosis is being removed from class members who continue to have gender dysphoria and not for medical reasons.

The case of Rebecca Meskill also raises concerns that class members' gender dysphoria diagnoses may have been removed for reasons other than a medical determination, which is what occurred in her case. Ms. Meskill was diagnosed with gender dysphoria and prescribed hormone therapy in October 2023 by BOP medical staff. ECF 117-1 at 4-7. She continued to receive hormone therapy until the EO and Implementing Memoranda, and submitted a declaration in this matter about her hormone therapy being terminated as a result of BOP's policy change. ECF 59-1. In response, Defendants submitted the declaration of Dr. Donald Lewis. Defendants represented that Dr. Lewis' declaration explained that Ms. Meskill "d[id] not have a current diagnosis of gender dysphoria." ECF 60 at 2.

But Ms. Meskill's lack of a "current diagnosis of gender dysphoria" was a direct result of the now enjoined EO and Implementing Memoranda. While Ms. Meskill's medical record for February 28, 2025 [4] does contain an entry stating "Transgender/Gender Identity DO/Gender Dysphoria – male to female., F64.0F – Resolved," just three lines above, the "administrative note" states, **<u>"d/c transgender med per central office memo.</u>"** ECF 117-1 at 11 (emphasis added). In other words, Ms. Meskill's medical record is clear on its face that her hormone therapy

---

[4] This is also the date that the memorandum from Assistant Health Services Director Chis Bina was issued, which stated that "no Bureau of Prisons funds are to be expended for any medical procedure, treatment, or drug for the purpose of conforming an inmate's appearance to that of the opposite sex." Bina Declaration at 1.

("transgender med") was discontinued ("d/c") per the Bina Memorandum ("central office memo") on the very day that the Bina Memorandum issued.

No other conclusion is plausible. The medical record does not indicate that Ms. Meskill was seen on February 28, 2025, and her declaration stated that she was not seen or evaluated in connection with the discontinuation of her hormones. ECF 107-11. at ¶ 3. There are no notes indicating a medical reason for finding that Ms. Meskill's gender dysphoria was "resolved." The "resolved" language for F64.0F (the diagnostic code for gender dysphoria for transgender women)[5] appears to mean only that the diagnosis was removed from her medical record. Put differently, there was no *medical* determination regarding Ms. Meskill's gender dysphoria—the records simply indicate that her diagnosis was removed, and that it was removed as a result of the Bina Memorandum.[6]

Absent Plaintiffs' counsel's inquiry into the removal of Ms. Meskill's gender dysphoria diagnosis, she would have been excluded from relief of the preliminary injunction because BOP was erroneously excluding her from the class.[7] Plaintiffs are concerned that other class members have similarly had their gender dysphoria diagnoses removed for reasons other than medical determinations and are now being improperly excluded from the class. Plaintiffs asked counsel for

---

[5] *See* Fed. Bureau of Prisons, Gender-Affirming Care of Transgender and Gender Nonbinary Persons (June 2023), at 10. These clinical guidelines were previously publicly available on the BOP website but were taken down as a result of Executive Order 14168. The guidelines are now archived on a perma-CC website at https://perma.cc/U5UT-S9PN.

[6] The medical record for Ms. Meskill on March 28, 2025 provides further evidence that Ms. Meskill's gender dysphoria diagnosis was removed—and her hormone therapy consequently stopped—as a result of the now-enjoined EO and Implementing Memoranda. The notes for that visit—where Ms. Meskill was actually seen by a provider—state, "REQUEST TO BE BACK ON ESTROGEN DENIED DUE TO THE EXECUTIVE ORDER FROM WHITE HOUSE AND MEMO FROM CENTRAL OFFICE." ECF 117-1 at 12.

[7] After advocacy by Plaintiffs' counsel, Ms. Meskill was re-diagnosed with gender dysphoria and re-prescribed hormone therapy in early December 2025. ECF 107-1 at ¶ 21.

Defendants on December 11, 2025, to confirm whether each person was correctly excluded from the class and provide a brief explanation as to why each person's diagnosis was removed, but despite several follow-up requests, they have provided no explanation. *See generally* Ex. 3. Defendants cannot end-run the preliminary injunction by excluding people from the class, and must provide an explanation for each of the 74 people who were removed from the class between July and November 2025.

### III.    Issues of Retaliation Persist

Class counsel continues to receive concerning reports from class members about retaliation for their participation in this case, or for advocating for their own rights under the Preliminary Injunction. Rebecca Meskill, discussed above, did not have her hormone therapy reinstated for months after the issuance of the Preliminary Injunction, whereas to her knowledge, the other transgender woman she knows at FCI Talladega was able to restart her hormone therapy without issue. ECF 107-11 at ¶ 3. The discrepancy in treatment between Ms. Meskill and another transgender woman at her facility raises serious concerns that the failure to reinstate Ms. Meskill's hormone therapy, in violation of the Preliminary Injunction and despite her repeated requests, was done in retaliation for the declaration that she submitted in support of Plaintiffs' motion for preliminary injunction. *See id*. at ¶¶ 4, 6, 9, 14.

Defendants' attempt to minimize the treatment of Grace Pinson raised in Plaintiffs' Status Report is belied by subsequent actions taken against her by BOP staff. Ms. Pinson's December 15, 2025 declaration stated that a staff member, Captain Hock, referenced her statements to "that judge in D.C.," while she was restrained following an officer breaking her hand and wrist (which Defendants characterize as "minor injuries"), and that Captain Hock also told her that he would prevent her scheduled transfer to a halfway house in order to keep her at FCI Butner. ECF 107-2

at ¶ 13, ¶ 17. Defendants do not address either of these statements by the staff member in their response, only stating, without offering evidence, that "[t]here was no retaliation" against Ms. Pinson. ECF 108 at 6. Ms. Pinson was scheduled to be transferred to a halfway house on January 2, 2026. Ex. 7, Pinson Jan. Decl. at ¶ 1. However, on December 18, 2025, just three days after her phone call with class counsel where she gave her declaration that was submitted with Plaintiffs' status report, she was told that her scheduled transfer had been revoked. *Id.* at ¶ 2. BOP staff have not offered any disciplinary reason for her transfer being revoked. *Id.* at ¶ 2-5. As of this filing, Ms. Pinson is still incarcerated at FCI Butner Medium I.

In a further and even more appalling act of retaliation, Ms. Pinson reports that on January 20, 2026, FCI Butner staff attempted to coerce her into signing a document with the caption for this case which stated that she was withdrawing her previously submitted declarations in this case, threatening to transfer her to solitary confinement at a different facility if she did not sign. Ex. 6, Pinson Feb. Decl. at ¶ 3. After Ms. Pinson refused to sign the document withdrawing her declarations, she was moved to the Secure Mental Health Unit (SMHU)—a unit that is also used for disciplinary purposes at FCI Butner—that same afternoon. *Id.* at ¶ 4. Ms. Pinson has been housed in the SMHU in a freezing cold cell for over three weeks in what appears to be retaliation for her testimony in this case. *Id.* at 5. She has also been strip searched by male guards, despite her pre-existing pat and visual search exemption, approximately two dozen times in those three weeks. *Id.* at ¶ 8. This has caused Ms. Pinson great distress. *Id.* at ¶ 8.

Plaintiffs respectfully reiterate their request for a status conference wherein the parties and the Court may discuss potential remedies for Defendants' continued noncompliance with the Preliminary Injunction and steps to prevent retaliation against class members.

Dated: February __, 2026

David C. Fathi† (*pro hac vice*)
Maria V. Morris, D.C. 1697904
Elisa C. Epstein† (*pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th Street, N.W.
Washington, D.C. 20005
Tel: 202-393-4930
dfathi@aclu.org
mmorris@aclu.org
eepstein@aclu.org
† *Not admitted in D.C.; practice limited to
federal courts.*

Corene T. Kendrick (*pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
425 California St., Ste. 700
San Francisco, CA 94104
Tel: 202-393-4930
ckendrick@aclu.org

Li Nowlin-Sohl* (*pro hac vice*)
Leslie Cooper (*pro hac vice*)
Shana Knizhnik, DDC Bar ID 120840
James D. Esseks (*pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel: 212-549-2500
lnowlin-sohl@aclu.org
lcooper@aclu.org
sknizhnik@aclu.org
jesseks@aclu.org

Respectfully submitted,

*/s/ Megan Z. F. Noor*
Megan Z. F. Noor (*pro hac vice*)
megan@transgenderlawcenter.org
Shawn Thomas Meerkamper (*pro hac vice*)
shawn@transgenderlawcenter.org
Dale Melchert (*pro hac vice* motion
forthcoming)
dale@transgenderlawcenter.org
TRANSGENDER LAW CENTER
P.O. Box 70976
Oakland, CA 94612
Tel: 510-587-9696

Lynly S. Egyes (*pro hac vice*)
lynly@transgenderlawcenter.org
TRANSGENDER LAW CENTER
594 Dean Street, Suite 11
Brooklyn, NY 11238
Tel: 510-587-9696

Michael Perloff, D.C. Bar No. 1601047
Aditi Shah, D.C. Bar No. 90033136
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF THE DISTRICT OF
COLUMBIA
529 14th Street NW, Suite 722
Washington, D.C. 20045
Tel: 202-457-0800
mperloff@acludc.org
ashah@acludc.org


* *Not admitted in New York*

*Counsel for Plaintiff class*