IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ALISHEA KINGDOM, et al.,

        Plaintiffs,

        v.

DONALD J. TRUMP, et al.,

        Defendants.

Case No. 1:25-cv-00691-RCL

**PLAINTIFFS' EMERGENCY MOTION FOR AN ORDER REQUIRING DEFENDANTS TO SHOW CAUSE WHY THEY SHOULD NOT BE HELD IN CIVIL CONTEMPT**

**INTRODUCTION**

This emergency motion concerns egregious retaliation against incarcerated witnesses who reside at FCI Butner in Butner, North Carolina—conduct that took place after, and in direct contravention of, the protective order this Court issued less than one week ago. *See* ECF 124. Defendants have retaliated against two witnesses, including Grace Pinson, a class member who provided four declarations as part of this litigation, *see* ECF 59-2, 107-2, 121-5, 121-6, and has faced repeated retaliation as a result, *see* ECF 107-2 ¶¶ 10-19 (declaring that BOP officials retaliated against Ms. Pinson by, among other acts, assaulting her, placing her in a segregation unit, and subjecting her to demeaning digital cavity searches); ECF 121-5 ¶¶ 1-8 (discussing, among other acts, BOP's efforts to pressure Ms. Pinson to retract a prior declaration filed in this case and her subsequent placement in segregated housing for baseless reasons); ECF 121-6 ¶¶ 1-5 (retaliatory cancellation of Ms. Pinson's scheduled halfway house transfer). That conduct, as well as similar abuse against other class members, *see* ECF 107 at 9-10, prompted this Court to

1

issue a protective order barring further retaliation. *See* ECF 124. The Court issued that order on February 19, 2026. By the next morning, BOP was already violating it in extreme and blatant ways.

On February 20, officials at the "Central Office" ordered FCI Butner's medical director to terminate Ms. Pinson's hormone treatment. Declaration of Grace Pinson ¶ 4 (Feb. 24, 2024) (hereinafter "Feb. 24 Pinson Decl."). In the days that followed, prison officials made Ms. Pinson strip naked and subjected her to a demeaning visual cavity search in front of multiple male guards; they rifled through her personal and sensitive papers, including legal documents, and tossed them into a cell covered in feces, and extended her detention her in a segregation unit after she was supposed to return to general population. *Id.* ¶¶ 5-8. One of the officials who engaged in this conduct, Lt. Teague, told Ms. Pinson that if "you want to make it home alive, you need to stop sending stuff to that fucking judge." *Id.* ¶ 6. Lt. Teague told Elmer Moreno, another incarcerated person who conferred with class counsel about this litigation, that Mr. Moreno was being held in solitary confinement because he had "been talking to [Ms. Pinson's] lawyers." *Id.* ¶ 9. Summarizing his management philosophy, Lt. Teague informed Ms. Pinson: "I've told you before, and I'll tell you again, I don't give a fuck what that judge says, I do what I want." *Id.* ¶ 6.

But Lt. Teague and his colleagues cannot simply do what they want. Like anyone else, they are bound by the law. Civil contempt vindicates this principle. *See Maness v. Meyers*, 419 U.S. 449, 458-59 (1975). Plaintiffs ask the Court to enter an order requiring Defendants to show cause why that remedy should not issue. Class Counsel informed Defense Counsel about the latest retaliation against Ms. Pinson on Monday, February 23. Pursuant to Rule 7(m), Class Counsel sent another email today, asking Defense Counsel for his position on this motion. Despite multiple emails and a phone call, Defense Counsel did not provide one.

## ARGUMENT

Civil contempt is proper if (1) the Court "issued an order that is clear and reasonably specific," and (2) the putative contemnor violated it—intentionally or not. *Stewart v. O'Neill*, 225 F. Supp. 2d 6, 10 (D.D.C. 2002). Before a court can hold a party in contempt, it must find that these elements are satisfied by clear and convincing evidence. *Id.* By contrast, a show-cause order of the sort requested here can issue as long as the Court has "some indication that sufficient evidence exists that the Court *might* find evidence sufficient to hold defendant in contempt." *Id.*

Here, both requirements are met. The Court's protective order was clear and reasonably specific. It barred Defendants and "their agents and employees" from taking any actions that "harass, intimidate, or otherwise retaliate against witnesses who have provided or will in the future provide the Court information, either via oral testimony or written statements." ECF 124 at 3. This is a clear, straightforward, and definite command.

As for the second requirement, Ms. Pinson's declaration, filed with this motion, provides sufficient evidence for the Court to conclude that it might ultimately issue a contempt finding. Ms. Pinson sworn statement details repeated, egregious acts of retaliation occurring after this Court entered its protective order. She explains that, the morning after the order issued, FCI Butner's medical director informed her that "the Central Office" had directed the immediate termination of Ms. Pinson's hormone therapy, even though stopping cold turkey could put Ms. Pinson at risk of heart attack, stroke, or pulmonary embolism. Feb. 24, 2026 Pinson Decl. ¶ 4.[1]

---

[1] *See also* ECF 7-2 ¶¶ 82-85 (Declaration of Dr. Dan H. Karasic, M.D., detailing the psychological effects of denying or cutting off gender-affirming medical care); ECF 47-4 ¶¶ 7-8 (Supplemental Karasic declaration, stating that "[w]ithdrawing hormone therapy from those who have a medical need for it would be expected to result in an exacerbation of their gender dysphoria, putting them at significant risk of depression, anxiety, self-harm, and suicidality").

3

Two days later, Lt. Teague and several other BOP officers took Ms. Pinson and her cellmate to the shower area, placed them in stalls, and made them each strip naked. *Id.* ¶ 5. Ms. Pinson reminded the officers of her female-only pat and visual search exemption. *Id.* Lt. Teague said that he didn't "give a fuck" and, along with the other officers—all of whom were male—ordered Ms. Pinson to show her breasts, lift her genitalia, and spread her rectum wider and wider. *Id.* They left her in the shower, crying and naked, for about thirty minutes. *Id.*

From there, the officers took Ms. Pinson back to the Segregated Mental Health Unit (SMHU), where she was housed. *Id.* ¶ 6. The officers brought her to a new cell on the unit. *Id.* It was covered with urine and feces, and her papers, including legal documents, were strewn among the excrement. *Id.* ¶ 7. Before Ms. Pinson entered the new cell, Lt. Teague said to her, "I've told you before, and I'll tell you again, I don't give a fuck what that judge says, I do what I want." *Id.* ¶ 6. He continued: "[Y]ou only have a little bit of time left in here. If you want to make it home alive, you need to stop sending stuff to that fucking judge, or you're not going to make it." *Id.*

Ms. Pinson's ongoing detention in segregated housing is also retaliatory. She was originally scheduled to return to general population on February 23, after a hearing officer found her not guilty on the charges that led to her placement in the SMHU. *Id.* ¶ 3. But the day of her expected release, Lt. Teague asserted that he found drugs in Ms. Pinson's old cell in the SMHU. *Id.* ¶ 8. And even though Ms. Pinson's cellmate confessed, in writing, that the substance was his and that Ms. Pinson didn't know anything about it, Ms. Pinson was told that she would remain in the SMHU until a hearing officer came to the prison. *Id.*

Retaliation at FCI Butner extends beyond Ms. Pinson. Elmer Moreno is also detained in the SMHU. *Id.* ¶ 9. On February 19, he spoke with class counsel and prepared a sworn statement, filed herewith, corroborating allegations in Ms. Pinson's February 11 declaration. Four days after

4

his call with class counsel, on February 23, Mr. Moreno asked Lt. Teague why he was housed in the SMHU, despite the absence of any pending charges. *Id.* ¶ 9. Lt. Teague responded that it was because of his contact with class counsel, and observed that Mr. Moreno didn't "have any charges yet." *Id.*

## CONCLUSION

Ms. Pinson's declaration demonstrates flagrant violations of this Court's protective order. Nothing more is needed to initiate emergency proceedings. The Court should immediately grant Plaintiffs' emergency motion and issue an Order to Show Cause, requiring that Defendants expeditiously answer the charges in Ms. Pinson's declaration and take immediate action to protect her, Mr. Moreno, and everyone else who has or will come forward as part of this litigation. This response is necessary not only to protect class members and witnesses, but also to affirm the Court's own authority, and to make clear to Defendants and their agents and employees that adherence to Court orders is mandatory, not optional. *Maness,* 419 U.S. at 459 ("If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal. Persons who make private determinations of the law and refuse to obey an order generally risk criminal contempt even if the order is ultimately ruled incorrect.").

A proposed order is attached. Plaintiffs' counsel is available for an immediate status conference at the Court's convenience, if the Court so desires.

Dated: February 25, 2026                                  Respectfully submitted,
                                                          */s/ Michael Perloff*

Li Nowlin-Sohl (*pro hac vice*)
Leslie Cooper (*pro hac vice*)
Shana Knizhnik, DDC Bar ID 120840
James D. Esseks (*pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel: 212-549-2500
lnowlin-sohl@aclu.org
lcooper@aclu.org
sknizhnik@aclu.org
jesseks@aclu.org

Corene T. Kendrick (*pro hac vice*)
American Civil Liberties Union Foundation
425 California St., Ste. 700
San Francisco, CA 94104
Tel: 202-393-4930
ckendrick@aclu.org

Lynly S. Egyes (*pro hac vice*)
TRANSGENDER LAW CENTER
594 Dean Street, Suite 11
Brooklyn, NY 11238
Tel: 510-587-9696
lynly@transgenderlawcenter.org

Michael Perloff, D.C. Bar No. 1601047
Aditi Shah, D.C. Bar No. 90033136
ACLU Foundation of the District of Columbia
529 14th Street NW, Suite 722
Washington, D.C. 20045
Tel: 202-457-0800
mperloff@acludc.org
ashah@acludc.org

David C. Fathi (*pro hac vice*) *
Maria V. Morris, D.C. Bar. No. 1697904
Elisa C. Epstein (*pro hac vice*) *
American Civil Liberties Union Foundation
915 15th Street, N.W.
Washington, D.C. 20005
Tel: 202-393-4930
dfathi@aclu.org
mmorris@aclu.org
eepstein@aclu.org
*Not admitted in D.C.; practice limited to federal courts.*

Shawn Thomas Meerkamper (*pro hac vice*)
Megan Z. F. Noor (*pro hac vice*)
Dale Melchert (*pro hac vice motion forthcoming*)
TRANSGENDER LAW CENTER
P.O. Box 70976
Oakland, CA 94612
Tel: 510-587-9696
shawn@transgenderlawcenter.org
megan@transgenderlawcenter.org
dale@transgenderlawcenter.org

*Counsel for Plaintiff Class*