IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALISHEA KINGDOM, et al., | ) |
| Plaintiffs, | ) |
| v. | ) Case No. 1:20-CV-00505-RDP-JHE |
| DONALD J. TRUMP, et al., | ) |
| Defendant. | ) |

## DECLARATION OF DR. KORI PETTY, PSY.D.

I, Kori Petty, Psy.D., pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge and information made known to me from official records reasonably relied upon by me in the course of my employment, hereby make the following declaration relating to the above entitled matter.

1. I am currently employed by the Federal Bureau of Prisons (BOP) as the Chief Psychologist at the Federal Correctional Institution in Talladega, Alabama (FCI Talladega). I was hired by the BOP as a clinical psychologist in 2015, and transferred to FCI Talladega in 2016. I have been in my current role as Chief Psychologist since November 2025. I have been a licensed clinical psychologist since January 2018, and am licensed by the State of Florida.

2. As the Chief Psychologist, I am the primary psychologist responsible for the psychological care provided to inmates at FCI Talladega. In the ordinary course of my duties I examine and treat inmates, supervise other psychology health care providers, and have access to the psychology records for inmates confined at FCI Talladega.

3. Plaintiff, James Edward Meskill, Federal Register Number 27972-057, is a federal inmate currently incarcerated at FCI Talladega. I have reviewed the Plaintiff's psychology records in preparing this declaration, and a true and accurate copy is attached to this

declaration. I am unaware of any statements made by the Plaintiff to the court regarding this case.

4. On May 12, 2025, Plaintiff was referred to Psychology by Health Services after reporting symptoms of depression following the cessation of hormone treatment. On that day, I met with the Plaintiff, allowed him to express his concerns, and evaluated him. I provided psychoeducation on depression and depression management. He expressed an interest in having a psychotropic medication reevaluation citing perceived ineffectiveness of current antidepressant medication. I notified Health Services of his interest in receiving a psychotropic medication reevaluation. I reminded him of how to access psychology crisis services if needed in the future.

5. On August 25, 2025, Plaintiff was referred to Psychology services by his work supervisor for a risk assessment after self-inflicted injuries to his forearms were observed. I conducted a suicide risk assessment on that date. During the assessment, Plaintiff denied suicidal ideation and appeared highly focused on discussing the negative impact the discontinuation of his hormone therapy had on him. At the conclusion of this assessment, I scheduled Plaintiff for a follow-up appointment in 30 days.

6. As a result of the statements Plaintiff made during his suicide risk assessment, on September 11, 2025, I documented a phone consultation with the Psychology Services Administrator for the BOP in Central Office regarding the Plaintiff's request for reinstatement of hormone treatment. I noted that while the records indicate that Plaintiff previously did not meet the criteria for a Gender Dysphoria diagnosis, he was currently reporting a number of indicators for the diagnosis. As a result of this consultation, it was determined that the Plaintiff would be seen for follow-up to further clarify history, treatment motivation, and to consider a gender dysphoria diagnosis.

7. On September 19, 2025, I saw Plaintiff for a follow-up to his suicide risk assessment, and to discuss the Central Office consultation. Plaintiff agreed to the evaluation and was scheduled for 1-2 follow-up sessions to clarify motivation and diagnosis.

*P a g e* | **3**

8. On October 3, 2025, I saw Plaintiff to gather more comprehensive diagnostic information. The details of the evaluation were documented in his psychology records. Plaintiff was scheduled for a follow-up appointment to further clarify motivation and diagnosis.

9. On November 25, 2025, I saw Plaintiff to gather additional comprehensive diagnostic information. Over the course of the three visits (September 19, October 3, and November 25, 2025), Plaintiff described childhood, adolescent, and adult experiences which appeared to be consistent with a diagnosis of Gender Dysphoria. At the conclusion of this visit, I diagnosed Plaintiff with Gender Dysphoria and updated his records to reflect this diagnosis. I advised Plaintiff on how to obtain psychology services at FCI Talladega at each of his clinical encounters. Because Plaintiff continues to be assigned a Care Level 1 Mental Health status, he does not require regularly scheduled psychology visits. Since this date, Plaintiff has not sought out mental health services through Psychology Services.

10. At no time was the psychology care provided to the Plaintiff a result of retaliation. Each time Plaintiff was referred to psychology services, he received appropriate care for his condition.

I declare under penalty of perjury and pursuant to 28 U.S.C. 1746 the foregoing is true and correct to the best of my knowledge and belief.

Executed, this 24th day of February 2026.

*[signature: K. Petty, Psy.D.]*

Kori Petty, Psy.D.
Chief Psychologist
FCI Talladega