IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALISHEA KINGDOM, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | Case No. 1:25-cv-00691-RCL |
| v. ) | |
| ) | |
| DONALD J. TRUMP, et al., ) | |
| ) | |
| Defendants. ) | |

**DECLARATION OF EVAN NORRIS**

I, Evan Norris, do hereby declare as follows:

1. I am employed by the Federal Bureau of Prisons ("BOP") as the Administrator for the Correctional Services Branch, Correctional Programs Division, Central Office. I have been employed with the BOP since September 26, 2010. I was selected to serve as the Administrator for the Correctional Services Branch in December of 2023, and I began serving in that capacity on May 5, 2024.

2. As Administrator for the Correctional Services Branch, I have nationwide oversight and interpretation of policy, training, and operations related to Correctional Services for the BOP.

3. During my career with the BOP, I have worked at two United States Penitentiary's including USP Big Sandy and USP McCreary. I have expertise in the supervision of gangs, disruptive inmates, domestic and foreign terrorists, and other special management cases requiring a high degree of control and monitoring. I have served as a supervisor at two low security institutions, FCI Ashland and FCI Miami, which house inmates with increased medical needs and aging populations. I have served as a Captain at multiple institutions and have been a supervisor in charge of the largest institutional department and was responsible for the safety, security, and orderly operation of multiple facilities. My experience includes having served as an Associate Warden, where I had oversight of the Correctional Services Branch. This oversight included departmental administration, inmate management, physical security, emergency preparedness, investigative functions, and comprehensive staff training.

4. I have been made aware of the Protective Order that was issued by this court on February 19, 2026. I have serious concerns regarding this nationwide protective order and its implementation because of the significant impact on prison operation and administration. The Order is not clear as to exactly what staff conduct is prohibited, which makes it difficult for staff to impose reasonable and effective discipline. The Order states that employees are prohibited from taking actions that "harass, intimidate, or otherwise retaliate against any class member or witness

who provide counsel for Plaintiffs, or the Court, with information related to the substance of this litigation."

5. There are close to 800 inmates that are part of the class, and they are housed in various facilities throughout the country. Staff members working in these facilities may be unaware that any one of these inmates are part of the class in this case. These class members are not readily identifiable.

6. Moreover, there is uncertainty over what constitutes harassment. Many inmates find verbal commands, searches, segregation, housing changes, and other prison management policies and procedures to be unpleasant. While BOP staff are already prohibited from retaliating against inmates for exercising their rights and BOP has a process for inmates to raise allegations of retaliation, this Order appears to give inmates the power of contempt. It opens the door to class members' ability to complain that any discipline or other treatment they receive violates the Order, putting BOP officers at risk of contempt of Court.

7. Under this Order, BOP staff face the prospect of contempt hearings for issuing incident reports for suspected disciplinary violations, conducting searches of Plaintiffs' persons or cells, changing inmate housing assignments (even in response to known security risks), denying requested medical interventions that are not clinically indicated, or ensuring that Plaintiffs adhere to institutional scheduling and assigned activities. Any institutional actions that cause Plaintiffs inconvenience could be alleged to be a form of harassment.

8. The order has the potential to create a surge in inmate grievances for meritless claims that require staff resources to defend. This causes an administrative strain on the BOP.

9. The order also allows inmates to subvert the BOP administrative remedies process. Inmates will be able to simply raise allegations with class counsel without the need to go through BOP's grievance procedures and without allowing BOP the opportunity to investigate claims of officer misconduct in accordance with BOP policy. It also prevents the Office of Internal Affairs from conducting thorough investigations of the allegations of staff misconduct. The impact on BOP's ability to operate the prison system cannot be understated.

10. This order creates an extreme burden on BOP staff by undermining staff authority, and it also causes a disruption in the management of the inmate population by creating an environment where class members are perceived to be receiving preferential treatment.

11. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed this 3rd day of March 2026.

Evan Norris
Administrator for the Correctional Services Branch
Central Office
Federal Bureau of Prisons