# EXHIBIT 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

ALISHEA KINGDOM, et al.,

                    Plaintiffs,          Case No. 1:25-cv-00691-RCL

      v.

DONALD J. TRUMP, et al.,

                 Defendants.

**DECLARATION OF GRACE PINSON**

My name is Grace Pinson.1 I am over the age of 18 and fully competent to make this declaration. Under penalty of perjury, pursuant to 28 U.S.C. § 1746, I declare:

1. I have only had limited time to read the government's submissions filed in this case last night. Even through this review, I have found numerous statements that are incorrect or presented devoid of context. For purposes of this declaration, I highlight only a few examples.

2. On March 2, 2026, Dr. O'Neill came to my cell to have me sign a logbook to receive a female-only pat search exemption card. I got the card, but it does not specify that it covers visual searches, also called strip searches; it only says it is for pat searches. Associate Warden Abdur-Razzaaq told me that the card only covers pat searches and not strip searches. Staff have respected the pat search exemption, but I am still being strip searched by male staff. I was strip searched by my male counselor, Counselor Chase, after visiting my attorneys on March 3. It is humiliating every time.

3. Also on March, 2, 2026 I received the first dose of spironolactone in my medication cup from pill line since January 20, 2026. I know what each of my pills looks like, and I am confident that my spironolactone was not in my pill bottle given to me from February 21 through March 2.

4. Khristy Robinson is a Health Administrator. She is not one of my regular treating providers. I have emailed her about complaints about my health care, and verbally, including about not receiving my estradiol and spironolactone and consistently her response is to instruct me to speak with my provider because she cannot provide care.

5. I have observed at previous medical appointments and during morning pill line in the general population the process that I saw medical staff use when preparing the pill line for the Secure Mental Health Unit (SMHU) at FCI Butner. I have observed one member

of the medical staff dispensing medications into pill bottle for each individual. Then, a different member of the medical staff takes all of the bottles to the SMHU, and then returns after passing out all of the bottles and logs all of the medications in the Medication Administration Record. I have worried before that this process could lead to errors in recording people's medications.

6. On or around the morning of February 24, 2026, Lieutenant Teague informed me that, because my cellmate in the SMHU had confessed to diverting his medications, the Disciplinary Hearing Officer had told him that he either had to dismiss the February 22, 2026 incident report accusing me of diverting medication, or rewrite it with accusations that could be substantiated by evidence. Lieutenant Teague told me that he did not plan to either rewrite or expunge the incident report. This would keep the incident report on "rewrite status," prolonging my time in the SMHU, indefinitely.

7. My attorneys showed me Warden Garland's declaration discussing the revocation of my halfway house transfer. He said that I required "frequent crisis interventions and the presence of mental health providers beyond routinely scheduled sessions," which was a reason for cancelling my transfer.

8. Because of my mental health care level, every time that I receive an incident report, I am required to meet with Psychology staff members. I believe this may be what Warden Garland is referring to by "frequent crisis interventions," many of which have been falsified allegations which have later been found to be unsubstantiated and have been expunged from my disciplinary history. For example, after I was accused of kissing my cellmate, Elmer Moreno, I was required to meet with Psychology staff, even though I was not experiencing a mental health crisis. Likewise, although I received numerous Suicide Risk Assessments in the past few years, I have never been placed on suicide watch or found to be at risk of attempting suicide as a result of any of those assessments in at least four years. I have never initiated a single psychiatric intervention while at FCI Butner; only BOP staff have. I do not believe that I require a level of mental health care that is unavailable at a halfway house or in the community. I believe the U.S. Probation Office has also inspected my mother's home in Oklahoma and found it suitable for home confinement, as well.

9. Cell X04-001, to which I was moved after being strip searched, had had a sewage leak sometime before I was moved there. It smelled horrible. There was a metal panel that had been removed from the wall of SMHU showers, and an officer told me that it was because there had been a leak in the shared wall between that shower and Cell 1. No one had been housed in Cell 1 for at least three weeks. When I got into the cell after being strip searched, there was a large puddle of what looked like brown water that had a strong sewage odor to the left of the table in the cell.

I, Grace Pinson, declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and recollection.  Executed this 4th day of March 2026 at Butner, North Carolina.

Dated: 03/04/2026

*/s/ Grace Pinson*
Grace Pinson