**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| ALISHEA KINGDOM, *et al.*, | |
| Plaintiffs, | |
| v. | Civ. A. No. 25-691 (RCL) |
| DONALD J. TRUMP, *et al.*, | |
| Defendants. | |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR RECONSIDERATION
OF THE "PROTECTIVE ORDER" OF FEBRUARY 19, 2026**

On March 3, 2026, Defendants filed a motion for reconsideration of the "Protective Order" of February 19, 2026. Defs. Recon. Mot. (ECF Nos. 130, 133). Defendants explained that the Order is premised on unsubstantiated retaliation allegations, is inconsistent with the Prison Litigation Reform Act ("PLRA") and Federal Rule of Civil Procedure ("Rule") 65(d), its deficiencies put the safety and security of inmates and officers in jeopardy, and it improperly interferes with prison administration. *Id.* The Court recognized at the hearing on March 4, 2026, that Defendants "have some valid points and the protective order needs to be worked on." Hearing Tr. Mar. 4, 2026, at 14:14-15. The Court ordered the parties to meet and confer about how to revise the Protective Order, and the parties are doing so. Plaintiffs nevertheless insisted in their response to Defendants' reconsideration motion that nothing should be changed about the protective order. Pls. Resp. (ECF No. 146).

The Order is deeply problematic for the Federal Bureau of Prisons ("BOP") as Defendants have previously demonstrated. The threat of contempt flowing from an overbroad and unspecific Order necessarily imposes a chilling effect on BOP's legitimate discipline or other treatment of

1

inmates, which jeopardizes the safety of not only the officers, but the inmates (including class members) themselves. Notably, Plaintiffs have no response to these concerns nor the declaration of BOP's Administrator for the Correctional Services Branch, Evan Norris, who described the "serious concerns regarding this nationwide protective order and its implementation because of the significant impact on prison operation and administration," including the difficulties for staff "to impose reasonable and effective discipline" and the negative impact on the safety and security of the prison. Norris Decl. (ECF No. 133-5) ¶¶ 4, 7. Plaintiffs do not even mention Mr. Norris's declaration, let alone rebut the institutional harm the Protective Order may pose.

On the other side of the ledger are the rights of the class members not to be retaliated against for their participation in this case. BOP of course agrees with Plaintiffs that retaliation is wrong and unlawful, and BOP takes allegations of retaliation seriously as that is central to the safe and orderly operation of the federal prison system. But "BOP staff are already prohibited from retaliating against inmates for exercising their rights and BOP has a process for inmates to raise allegations of retaliation." *Id.* ¶ 6; *see also* Program Statement 1330.18, Administrative Remedy Program; Program Statement 3420.12, Standards of Employee Conduct; Garland Decl. (ECF No. 133-1) ¶¶ 11, 96. Class counsel can also move the Court for compliance with the Preliminary Injunction, regardless of whether any asserted non-compliance stems from retaliation (ECF No. 68).

The question before the Court, however, is whether the specific circumstances of this case warrant an expanded injunction that gives class members the additional power of retaliation-based contempt, at the expense of BOP's unrebutted safety and prison-administration concerns. The answer to that question is "no," most significantly because the allegations of retaliation that underlie the Protective Order are unsubstantiated. And even if they were, the question becomes

whether the Protective Order is consistent with Rule 65(d) and the PLRA.  As explained in Defendants' motion and below, it is not.

For these reasons and for the reasons explained in Defendants' reconsideration motion, the Court should grant Defendants' motion and vacate its Order.

## I.    The Inmates' Retaliation Allegations Are Unsubstantiated.

As discussed in Defendants' reconsideration motion, the three inmates' allegations that underlie the nationwide Protective Order are unsubstantiated, which is a sufficient basis by itself to vacate the Protective Order.  Defs. Recon. Mot. (ECF No. 133) at 9-14.  Defendants submitted four declarations, including a detailed declaration from Warden Garland, that refute any alleged retaliatory reduction of cross-sex hormones or other mistreatment.

Plaintiffs do not rebut the vast majority of Defendants' declarations on the facts, namely that Pinson punched a security camera at least three times on the day of the hand injury—injury that Pinson alleges was caused by an officer; Pinson was fabricating emails from other inmates' accounts to bolster retaliation allegations; Pinson was provided immediate and appropriate treatment for an injured wrist; a female (not a male) officer conducted the complained of strip search; Pinson's transfer to halfway house was legitimately revoked; and Pinson was involved in the diversion of Suboxone prescribed to Pinson—a charge that Pinson was found guilty of on March 11, 2026, following the Unit Discipline Committee's review of the evidence, including video footage showing Pinson and Pinson's cellmate diverting their administered medication.  *See* Ex. 1 (Incident Report).

Instead of meaningfully engaging with the substance of the evidence, Plaintiffs fault Defendants for not providing the "evidence sooner." Pls. Resp. (ECF No. 146) at 10.  Plaintiffs

also question the investigatory methods that underlie Warden Garland's declaration. *See, e.g.*, *id.* at 11 n.6, 13-14. Plaintiffs' arguments are misplaced.

As to the timing of the evidence, on November 24, 2025, the Court ordered the parties to submit status reports regarding injunction compliance (ECF No. 101), and Defendants timely did so on January 12, 2026 (ECF No. 108). Within less than a week after the Court issued the Protective Order following the status conference on February 19, 2026 (ECF No. 119), Plaintiffs filed on February 25, 2026, an emergency motion for an order to show cause why Defendants should not be held in contempt for violating the Protective Order. ECF No. 127. The Court held a hearing the next day and issued an order to show cause why the Warden and certain officers accused of retaliation should not be held in contempt of the Protective Order. ECF No. 128. Within three business days of the order to show cause, Defendants submitted four declarations from BOP that rebutted the retaliation allegations, including a 32-page declaration from Warden Garland that included information gathered from interviews with multiple FCI-Butner employees accused of retaliation. *See* ECF Nos. 129-1 (Garland Decl.), 129-2 (Petty Decl.); 129-3 (Bell Decl.); 129-4 (Vonville Decl.). Thus, within days of class counsel filing their first motion for relief for non-compliance since the Preliminary Injunction went into effect in June 2025, Defendants responded quickly and comprehensively. The Court should not permit the inmates' unsubstantiated and rebutted allegations to form the basis of the Protective Order. If anything, the entire episode demonstrates the burden on prison safety and administration that could result from requiring a Warden and other BOP officials to divert their time to expeditiously respond to what ultimately proved to be false allegations of retaliation and the need for Class Counsel to conduct good faith inquiry into class members' allegations of retaliation before presenting them to this Court. To address those concerns, Defendants are proposing reasonable procedures to Plaintiffs

4

that would expeditiously allow the parties to resolve retaliation allegations before burdening the Court for a resolution.

Plaintiffs also argue that that the Warden should not have relied on a BOP employee's interviews of the accused officers, presumably expecting the Warden to conduct all such interviews himself or for the officers to submit their own independent declarations. Pls. Resp. (ECF No. 146) at 13. As Defendants discussed at the hearings, BOP policy requires the Office of Internal Affairs ("OIA") to investigate allegations of officer misconduct and OIA investigations were then still ongoing. BOP determined that proceeding in the manner it did in investigating the allegations—outside of the required OIA process—was the most efficient and impartial way to gather the information within the timeline the Court ordered. The Warden's extensive, thorough, and detailed declaration discussing his informal investigation, which is supported by medical records, incident reports, and corroborating interviews, and which the Court characterized as "excellent," Hearing Tr. Mar. 6, 2026, at 4:20-21, is more than sufficient to rebut what ultimately proved to be false allegations by the inmates, even if those allegations were assertedly "first-hand," Pls. Resp. (ECF No. 146) at 11 n.6, 13-14.

To the extent Plaintiffs say anything at all in response to Defendants' evidence, they fail to fairly characterize the declarations they submitted. For example, regarding Pinson's medication, in response to BOP's showing that Pinson's hormones have continued uninterrupted, Plaintiffs state, "But that misconstrues Ms. Pinson's testimony; she did not state that the hormone therapy was already cut off; but rather that she was told that it would be cut off in the future, and that this directive came from the Central Office. Doc. 127-1 ¶ 4." Pls. Resp. (ECF No. 146) at 15. That was not Pinson's declaration; Pinson clearly alleged that BOP told her that hormones would be

terminated "immediately" and that Pinson "would not receive the next injection of [] estrogen." Pinson 2/24/26 Decl. (ECF No. 127-1) ¶ 4.

To be sure, the charge about Pinson and Moreno kissing in the bathroom, was expunged because "the inmates were not properly identified in Section 11 of the Incident Report." Garland Decl. (ECF No. 133-1) ¶ 59. But that only shows that BOP has in place stringent incident report requirements and a multi-level discipline process to protect the inmate. *See* Program Statement 5270.09, Inmate Discipline Program. Thus, even though the officer personally observed Pinson and Moreno kissing, Garland Decl. (ECF No. 133-1) ¶ 91(c), (e), the officer failed to explain on the form how he knew the inmates' identities.

The additional allegations of retaliation that Plaintiffs submitted along with their response proves the point—Pinson's declarations are incredible and are inadequate to form the basis of the Protective Order. Even after Defendants established that Pinson submitted perjured declarations relating to the circumstances and treatment of Pinson's hand injury, the alleged termination of Pinson's hormone medication, the diversion of Suboxone, and the placement of Pinson in an unkept cell with mishandled legal documents, *see* Defs. Recon. Mot. (ECF No. 133) at 11-14, Show Cause Resp. (ECF No. 129) at 8-11, class counsel submitted yet another declaration from Pinson about the cleanliness of the cell, which contradicts Pinson's own declaration filed one week earlier.

On February 24, 2026, Pinson stated under the penalty of perjury that Pinson was put in a cell with "someone else's feces and urine all over it" and some of Pinson's legal papers had "feces on them." Pinson 2/24/26 Decl. (ECF No. 127-1) ¶ 7; *see also* Plfs. Emerg. Mot. (ECF No. 127) at 4. BOP responded that evidence shows that there was no feces "visible on the floor or walls of the cell" and "large stacks of papers [were] stacked neatly in the corner of the cell and on the

6

bunk."  Garland Decl. (ECF No. 129-1) ¶ 70; *see also id.* ¶ 91(k) (lieutenant confirming what was seen on video—no urine or feces in the cell and papers stacked neatly).  Indeed, Pinson was seen on video sitting on the cell floor reading and sorting the papers and walking in the cell without shoes on.  *Id.* ¶ 70.  But just one week later, Pinson states in another declaration that the cell smelled and there was a puddle "of what looked like brown water" next to the table.  Pinson 3/4/26 Decl. (ECF No. 146-1) ¶ 9.  That is, Pinson's own story changed dramatically over the course of one week, and yet, Pinson provides no explanation of the contradictions in the declarations.

In sum, because there is no evidentiary basis for the Protective Order, the Court should vacate the Order.  *Twelve John Does v. District of Columbia*, 117 F.3d 571, 577 (D.C. Cir. 1997). (vacating ban on retaliation against inmates because "the complete absence of factual support for the ban in the record is a fatal deficiency").

## II.     The Protective Order Is Legally Defective.

In disputing that the Protective Order needed modifications, Plaintiffs argue that there is no need to adhere to traditional retaliation principles or the Federal Rules of Civil Procedure because the "Protective Order" falls under the All Writs Act and inherent Article III authority.  Pls. Resp. (ECF No. 146) at 22-37.  Plaintiffs are incorrect, and the Court should grant the relief that Defendants requested—vacating the Protective Order.

At the outset, Defendants do not dispute that an order that prohibits access-to-courts retaliation is within the Court's purview.  But such an order granting equitable relief to class members must still follow applicable rules.  First, the "Protective Order"—a term the Court adopted based on Plaintiffs' proposal—is in the nature of an injunction that provides prospective relief with the threat of contempt, and thus, must comply with Rule 65(d).  Therefore, the injunction must "state its terms specifically" and "describe in reasonable detail . . . the act or acts restrained or

required"; for these reasons, "obey the law" injunctions are improper. Defs. Recon. Mot. (ECF No. 133) at 15-16. Fed. R. Civ. P. 65(d)(1).

Second, the PLRA requires that prospective relief in any civil action with respect to prison conditions must be narrowly drawn, extend no further than necessary, the least intrusive means to correct the harm, and give substantial weight to adverse impacts on public safety and operation of the criminal justice system. 18 U.S.C. § 3626(a). The Protective Order itself says the Order complies with these requirements. Notably, contrary to Plaintiffs' representation, Pls. Resp. (ECF No. 146) at 29-32, Defendants did not argue that PLRA exhaustion and the three-strikes rule apply to the Protective Order, but rather, Defendants argued that "without the screening mechanisms of the PLRA insulating BOP from the deluge of frivolous prisoner claims . . . the Protective Order is subject to abuse[.]" Defs. Recon. Mot. (ECF No. 133) at 2. In contrast to the PLRA exhaustion rule that imposes limitations on "action[s] . . . brought" by prisoners, 42 U.S.C. § 1997e(a), the application of 18 U.S.C. § 3626 applies to "any civil proceeding arising under Federal law with respect to the conditions of confinement or the effects of actions by government officials on the lives of persons confined in prison," except habeas proceeding challenging confinement. 18 U.S.C. § 3626(g)(2).

In any event, it is undisputed that any injunction should be easy to understand and follow. *Schmidt v. Lessard*, 414 U.S. 473, 476 (1974) ("Since an injunctive order prohibits conduct under threat of judicial punishment, basic fairness requires that those enjoined receive explicit notice of precisely what conduct is outlawed."). The Protective Order, however, is missing the causal link between the protected activity and the alleged retaliatory conduct. Defs. Recon. Mot. (ECF No. 133) at 17-18. Plaintiffs nevertheless believe that the Order is "fine as is" because retaliation law, which requires a causal link, does not apply to protective orders and is tied to the statutory language

of Title VII. Pls. Resp. (ECF No. 146) at 35. The fact that Plaintiffs do not believe that a class member has to show a causal link between the protected activity and the retaliatory conduct is concerning to say the least. Then Plaintiffs state that the Order does in fact require a causal connection but relied on a source outside of the Protective Order to make the case. *Id.* at 36. Omitting a critical element of retaliation from the face of the Protective Order, which would broadly expand the term "retaliation," clearly fails Rule 65(d), and that is even before one considers the need-narrowness-intrusiveness requirements of the PLRA.

Defendants also challenged the Protective Order as overbroad because it does not define what kind of treatment would amount to impermissible harassment or intimidation, and under the law, it is not enough for a plaintiff to allege subjectively that the treatment they are experiencing constitutes harassment. Defs. Recon. Mot. (ECF No. 133) at 18. Rather, the conduct must objectively have that effect. *Id.* Plaintiffs again argue that the legal requirements of harassment and intimidation do not apply to protective orders. Pls. Resp. (ECF No. 146) at 36. And even if those legal requirements do apply, Plaintiffs point to D.C. Circuit caselaw—certainly not something the typical corrections officer will be familiar with—to supplement the Order. *Id.* at 37. This is not sufficient under the PLRA or Rule 65(d).

Defendants also argued that the Protective Order is overbroad because it subjects BOP to contempt proceedings even when the alleged retaliatory act is against "other prisoners." Defs. Recon. Mot. (ECF No. 133) at 19; *see* Prot. Ord. (ECF No. 124) at 4. Plaintiffs do not even address this provision, and therefore, the Court should treat Defendants' argument as conceded. *See, e.g.*, *Fateh v. Blinken*, Civ. A. No. 23-1277 (RCL), 2024 WL 864378, at *5 (D.D.C. Feb. 29, 2024).

Likewise, Defendants argued that the Protective Order failed to give "substantial weight" to "adverse impacts on public safety and operation of the criminal justice system." Defs. Recon. Mot.

9

(ECF No. 133) at 19-21 (quoting 18 U.S.C. § 3626(a)).  Despite Defendants going to great lengths explaining how the Protective Order jeopardizes the safety and security of a very dangerous and delicate carceral environment and could chill legitimate discipline and deter other appropriate treatment of inmates, Plaintiffs did not substantively respond to this argument either and therefore the Court should treat it as conceded.  *Fateh*, 2024 WL 864378, at *5.  Of course, Plaintiffs did argue that the PLRA does not apply.  That is a curious argument because the Protective Order they drafted, and which this Court adopted verbatim, does include the requirements imposed by the PLRA.

In sum, the Protective Order rests on unsubstantiated factual allegations and should be vacated for that reason alone.  It also extends beyond the legal contours of retaliation, proscribes BOP action taken for disciplinary reasons and not unlawful retaliatory reasons, lacks the specificity required for BOP to comply, and ignores the impact on prison safety and administration.  For these reasons, the Protective Order should be vacated.

Dated: March 16, 2026                    Respectfully submitted,

                                         BRETT A. SHUMATE
                                         Assistant Attorney General

                                         JEAN LIN
                                         Special Litigation Counsel

                                         /s/ *M. Jared Littman*
                                         M. JARED LITTMAN
                                         ALEXANDER J. YUN
                                         ELIZABETH B. LAYENDECKER
                                         Trial Attorneys
                                         U.S. Department of Justice
                                         Civil Division, Federal Programs Branch
                                         1100 L. Street, NW
                                         Washington D.C. 20005
                                         (202) 451-7478
                                         Jared.Littman2@usdoj.gov