**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| ALISHEA KINGDOM, *et al.*, | |
| Plaintiffs, | |
| v. | Civ. A. No. 25-691 (RCL) |
| DONALD J. TRUMP, *et al.*, | |
| Defendants. | |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION**
**TO DIRECT NOTICE TO CLASS MEMBERS**

Defendants hereby respond to Plaintiffs' Motion to Direct Notice to Class Members (Pls. Mot., ECF No. 156).

On June 3, 2025, the Court certified a class action "on behalf of all persons who are or will be incarcerated in the custody of BOP facilities, with a current medical diagnosis of gender dysphoria or who receive such a diagnosis in the future." ECF No. 68. As Plaintiffs acknowledge, the Parties agree on (1) the proposed form of notice to class members, (2) the method of notice (electronically via BOP's Trust Fund Limited Inmate Computer System ("TRULINCS") to those who have access to TRULINCS and paper copies via individual hand delivery to those who are unable to access TRULINCS), and (3) the timeline for providing notice to current inmates who are class members (14 days from the date of the Order). Pls. Mot. at 1, 2–3. The only area of disagreement is about incoming BOP inmates. Pursuant to BOP's established program policy, BOP medical providers are responsible for assessing and diagnosing incoming inmates' physical or mental health conditions, including gender dysphoria, so that BOP providers can appropriately provide a treatment plan for each inmate. BOP's position is that diagnosis of gender dysphoria by

BOP medical providers (whether affirming a previous diagnosis by an outside provider or a new diagnosis) determines whether the inmate is a member of the class and thus whether class notice should be provided to the inmate.  Plaintiffs, on the other hand, take the position that BOP must defer to the diagnosis of any outside medical providers, without any vetting by a BOP medical provider.  Defendants respectfully submit that BOP's position is sound.

Pursuant to BOP policy, Health Services will conduct a "mandatory" initial screening assessment of newly incarcerated inmates, ordinarily within 24 hours of arrival.  Program Statement 6031.05 (Patient Care) § 16(a).  The intake screening is performed in order to identify, among other things, medical or mental health care needs, medication and medication reconciliation, and disabilities requiring further evaluation and potential accommodation.  *Id.* Inmates with perceived immediate needs are referred to the appropriate healthcare employees or psychologist for evaluation.  *Id.*  At the hearing on May 22, 2025, when the Court inquired about who must make the diagnosis and whether BOP must accept a diagnosis, the government explained that BOP "do[es] not blanketly accept[] just any diagnosis."  Hearing Tr. (May 22, 2026) at 43:19–20.  BOP "does its own independent assessment and analysis of the inmates' medical conditions."  *Id.* at 43:20–21.

The contours of the intake screening are determined by where the new inmate is coming from: a separate BOP institution, a facility in the same BOP institution, or from outside of BOP custody.  When an inmate is coming from a separate BOP institution, the receiving institution will review the BOP Electronic Health Record Exit Summary to determine the medical needs of the inmate upon arrival.  Program Statement 6031.05 (Patient Care) § 16(b).  The healthcare provider will initiate a new intake screening to review and update the inmate's health documentation and needs.  *Id.*  When an inmate is transferring between facilities in the same BOP institution, the

receiving clinician will review the Electronic Health Record but other medical documentation (e.g., continuity of care document and medication reconciliation) are not required. *Id.* § 16(c). Inmates coming from outside of BOP custody, however, will have an "intake screening evaluation" completed within 24 hours and referrals to appropriate healthcare providers will be made when needs are identified. *Id.* § 16(d).

Plaintiffs nevertheless demand that BOP defer to the diagnosis of an outside medical provider and that it should be BOP's burden to disprove that diagnosis. Pls. Mot. at 6. That is inconsistent with BOP policy that requires a "mandatory" initial screening assessment of newly incarcerated inmates to identify, among other things, medical or mental health care needs, medication and medication reconciliation, and disabilities requiring further evaluation and potential accommodation. Program Statement 6031.05 (Patient Care) § 16(a). While BOP policy allows for an institution to conduct a screening based on previous BOP health records for BOP transfers between BOP institutions and facilities within the same institutions, *id.* § 16(b), (c), that policy does not apply to inmates coming from the outside, which requires an "intake screening evaluation" within 24 hours and referrals to appropriate providers when the inmate's needs are identified, *id.* § 16(d). The Court should not require BOP to blindly defer to the judgment of outside medical providers when BOP's medical providers are obligated both as a provider and an employee of BOP to make their own independent judgments.

Accordingly, it's entirely reasonable for BOP to insist that its own medical providers diagnose an incoming inmate with gender dysphoria before providing the inmate with class notice. Defendants respectfully propose that the following provision: "Defendants shall provide either electronic or paper copies of the English and Spanish versions of the Class Notice filed as Exhibits A (ECF [TK]) and B (ECF [TK]), respectively, to any persons entering BOP custody with a gender

3

dysphoria diagnosis as established by medical documentation affirmed by BOP providers and to any persons in BOP custody who receive a gender dysphoria diagnosis. Such notice shall be provided within 10 business days of the gender dysphoria diagnosis being received or affirmed." A proposed order is attached.

Dated: April 5, 2026                          Respectfully submitted,

                                              BRETT A. SHUMATE
                                              Assistant Attorney General

                                              JEAN LIN
                                              Special Litigation Counsel

                                              /s/ *M. Jared Littman*
                                              M. JARED LITTMAN
                                              ELIZABETH B. LAYENDECKER
                                              Trial Attorneys
                                              U.S. Department of Justice
                                              Civil Division, Federal Programs Branch
                                              1100 L. Street, NW
                                              Washington D.C. 20005
                                              (202) 451-7478
                                              Jared.Littman2@usdoj.gov

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ALISHEA KINGDOM, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>Defendants. | Civ. A. No. 25-691 (RCL) |

### [COUNTER PROPOSED] ORDER

Upon consideration of Plaintiffs' Motion to Direct Notice to Class Members (ECF No. 156) and Defendants' Response thereto, it is hereby

**ORDERED** that within 14 days of the issuance of this Order, Defendants shall either (1) provide paper copies of the English and Spanish versions of the Class Notice filed as Exhibits A (ECF 156-1) and B (ECF 156-2) via individual hand delivery to all class members; or (2) provide electronic copies of the English and Spanish versions of the Class Notice filed as Exhibits A (ECF 156-1) and B (ECF 156-2) to all class members through e-mail via Trust Fund Limited Inmate Computer System ("Trulincs") and paper copies via individual hand delivery to those who are unable to access email via Trulincs.

**ORDERED** that Defendants shall provide either electronic or paper copies of the English and Spanish versions of the Class Notice filed as Exhibits A (ECF [TK]) and B (ECF [TK]), respectively, to any persons entering BOP custody with a gender dysphoria diagnosis as established by medical documentation affirmed by BOP providers and to any persons in BOP custody who receive a gender dysphoria diagnosis. Such notice shall be provided within 10 business days of the gender dysphoria diagnosis being received or affirmed.

2

**ORDERED** that Defendants shall file with the Court within 7 days after notice has been provided to all class members a declaration by a BOP official confirming that the English and Spanish versions of the Class Notice filed as Exhibits A (ECF 156-1) and B (ECF 156-2), respectively, were distributed to all class members as instructed in this Order.

**IT IS SO ORDERED**.


Dated: _____        _____
                                  Hon. Royce C. Lamberth
                                  United States District Judge

2