**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ALISHEA KINGDOM, et al., | |
| Plaintiffs, | |
| v. | No. 1:25-cv-00691-RCL |
| DONALD J. TRUMP, et al., | |
| Defendants. | |

**PLAINTIFFS' MOTION TO STAY DEADLINE TO RESPOND TO DEFENDANTS'**
**MOTION TO DISSOLVE THE PRELIMINARY INJUNCTION**

Plaintiffs Alishea Sophia Kingdom, Solo Nichols, and Jas Kapule ("Plaintiffs"), by and through their attorneys, respectfully move to stay Plaintiffs' deadline to respond to Defendants' Motion to Dissolve the Preliminary Injunction ("Motion to Dissolve"), ECF 160, to allow Plaintiffs the opportunity to seek leave to file a supplemental complaint and to file a motion for an updated preliminary injunction addressing the Bureau of Prisons' ("BOP") new policy regarding treatment for gender dysphoria. The outcome of Plaintiffs' forthcoming motions may render the Motion to Dissolve moot, in which case, staying briefing on the Motion to Dissolve would serve judicial economy. Pursuant to Local Civil Rule 7(m), Plaintiffs' counsel conferred with Defendants' counsel about this motion. Defendants' counsel stated that Defendants oppose the motion, but in the event the Court grants the motion, the parties have agreed to a proposed briefing schedule on Plaintiffs' forthcoming motions, set forth in the proposed order. Defendants have also stated that they consent to Plaintiffs' forthcoming motion for leave to file a supplemental complaint.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 20, 2025, President Trump issued Executive Order 14168 ("EO 14168"), which, among other things, directed agencies to "remove all . . . policies . . . that promote or otherwise inculcate gender ideology," where gender ideology is defined as "the false claim that males can identify as and thus become women and vice versa," and required BOP to "revise[] its policies concerning medical care to be consistent with this order" and to "ensure that no Federal funds are expended for any medical procedure, treatment, or drug for the purpose of conforming the inmate's appearance to that of the opposite sex." ECF 4-1 ¶ 6. On February 21, 2025, and February 28, 2025, BOP issued two memoranda (the "Implementing Memoranda") directing BOP facilities to stop providing gender affirming medical care, including hormone therapy, and social accommodations. *See* ECF 1-1, 1-2.

1

Plaintiffs filed this class action lawsuit on March 7, 2025, and filed motions for a preliminary injunction and class certification on March 17, 2025. Plaintiffs argued that they were likely to succeed on the merits of their Eighth Amendment claim and their Administrative Procedure Act ("APA') claims. Their APA claims included that the Implementing Memoranda are unconstitutional; arbitrary and capricious because they are unsupported by reasoned explanation; and arbitrary and capricious because they are unreasonable. ECF 7-1 at 20-30.

This Court granted Plaintiffs' motion for a preliminary injunction on June 3, 2025, finding that Plaintiffs were likely to succeed on the merits of their APA arbitrary and capricious claim because Defendants "provide no reasoned explanation for the denial of gender-affirming care, treat gender dysphoria different than other medical conditions with no justification, and fail to adequately take stock of the sudden reversal in agency policy from before the Executive Order was issued." ECF 67 at 17. Having decided in Plaintiffs' favor on statutory grounds, the Court did not address the merits of Plaintiffs' Eighth Amendment claim. ECF 67 at 23. The Court also found that the three remaining preliminary injunction factors weighed in Plaintiffs' favor. *Id*. at 24-27.

Three months after the preliminary injunction, Defendants informed Plaintiffs' counsel in early September 2025 that BOP would soon be issuing a new policy. *See* ECF 87-2 ¶¶ 10-11. Nearly five months later, on February 19, 2026, BOP issued a new policy, Program Statement 5260.01, on "Management of Inmates with Gender Dysphoria." ECF 125. Like the Implementing Memoranda and EO 14168, the new BOP policy prohibits social accommodations. *Id*. at § 5(d). And like the Implementing Memoranda and EO 14168, the new policy prohibits hormone therapy. *Id.* at § 5(c). It does so by prohibiting the initiation of hormone therapy as a treatment for gender dysphoria moving forward and by requiring those currently receiving hormone therapy to be tapered off, with the aim of "discontinuation of the hormone intervention" for all people in BOP

2

custody receiving such treatment for gender dysphoria. *Id*. The only exception to full discontinuation of hormone therapy provided in the new BOP policy is for individuals who "(1) are post sex trait modification surgery or (2) have been receiving hormones to address [gender dysphoria] for an extended period of time and develop severe physiological and psychological withdrawal effects from tapering," in which case the policy requires "tapering plans" to be "reevaluated regularly with respect to cessation of hormones." *Id.*

The new BOP policy acknowledges that EO 14168 prohibits any federal funding for gender affirming medical care, and states that "[t]hough Executive Order 14,168 supports this policy, the Bureau also adopts this policy independently of Executive Order 14,168." *Id*. at § 5. On March 12, 2026, Defendants produced an administrative record for the new policy only.

On April 1, 2026, Defendants filed a motion to dissolve the preliminary injunction, arguing that the enjoined Implementing Memoranda have been superseded by the new BOP policy and therefore Plaintiffs' arbitrary and capricious claim is moot (ECF 160 at 7) and that because BOP purportedly has provided an explanation for its new policy, the Court's basis for finding that Plaintiffs are likely to succeed on an arbitrary and capricious claim no longer exists (*id*. at 7-10). Defendants further suggest that Plaintiffs must amend or supplement their complaint to challenge BOP's new policy. *Id*. at 8 n.1.

Based on BOP's issuance of the new policy, Plaintiffs intend to seek leave to file a supplemental complaint pursuant to Federal Rule of Civil Procedure 15(d). Plaintiffs also intend to move for an updated preliminary injunction to extend to the new policy, which will permit the Court to consider Plaintiffs' updated APA and Eighth Amendment claims.[1]

---

[1] In their Motion to Dissolve, Defendants' argument is focused entirely on the alleged changed circumstances for Plaintiffs' likelihood of success on the merits. They do not allege changed circumstances for the other three preliminary injunction factors. *See generally* ECF 160.

3

**LEGAL STANDARD**

The authority to stay proceedings stems from "the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Nat'l Indus. for Blind v. Dep't of Veterans Affairs*, 296 F.Supp.3d 131, 137 (D.D.C. 2017) (quoting *Air Line Pilots Ass'n v. Miller*, 523 U.S. 866, 879 n.6 (1998)); *see also Landis v. North American Co.,* U.S. 248, 254 (1936). In order to prevail on a motion to stay, "[t]he proponent of a stay bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997). In considering a contested motion to stay, courts must "'weigh competing interests and maintain an even balance' between the court's interests in judicial economy and any possible hardship to the parties." *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 732–33 (D.C. Cir. 2012) (quoiting *Landis*, 299 U.S. at 255).

**ARGUMENT**

**I.     Staying Briefing on Defendants' Motion to Dissolve Favors Judicial Economy.**

This Court should stay briefing on Defendants' Motion to Dissolve pending resolution of Plaintiffs' forthcoming motions because such a stay would promote judicial economy. This Court has recognized that where a forthcoming development may moot or reshape a pending motion, a stay is in the interests of judicial economy and efficiency. *See, e.g.*, *W. Virginia ex rel. Morrisey v. United States Dep't of Health & Hum. Servs.*, 2014 WL 12803229, at *1 (D.D.C. Nov. 3, 2014) ("[I]n the interest of judicial economy, Courts will stay summary judgment briefing pending the resolution of a motion to dismiss."); *see also P.J.E.S. by & through Francisco v. Mayorkas*, 652 F. Supp. 3d 103, 112 (D.D.C. 2023). This Court has also recognized that supplemental complaints themselves serve important judicial efficiency interests. *Pub. Emps. for Env't Resp. v. Nat'l Park Serv.,* 2021 WL 1198047, at *6 (D.D.C. Mar. 30, 2021).

4

Here, it is clear that Plaintiffs' forthcoming motions, if granted, would render the Motion to Dissolve moot. If the Court were to proceed with resolving the Motion to Dissolve without a stay, it would nonetheless need to resolve Plaintiffs' forthcoming motions; whereas if the Court were to grant Plaintiffs' forthcoming motions, there would be no need to resolve the Motion to Dissolve. The efficiency savings are especially strong here, where the parties have agreed to a briefing schedule that would permit resolution of Plaintiffs' forthcoming motions before the current expiration date of the preliminary injunction under the Prison Litigation Reform Act. ECF 114 (noting that the current expiration date is May 31, 2026).

Granting a stay to allow Plaintiffs to move for leave to file a supplemental complaint and an updated preliminary injunction will conserve the resources of both the Court and counsel and allow the Court to address the matters at issue efficiently.

## II.      The Balance of the Hardships Favors Granting a Stay.

Plaintiffs' stay will not cause undue hardship to Defendants, but not granting a stay will harm Plaintiffs. *Landis*, 299 U.S. at 255.

### A.      *Premature Dissolution Will Cause Harm to Plaintiffs.*

The purpose and a central benefit of staying briefing on Defendants' Motion to Dissolve is that such a stay would avoid depriving class members of their rights and protections under the preliminary injunction before the Court can address a motion for an updated preliminary injunction after the supplemental complaint is filed. This Court has already held that Plaintiffs and class members are likely to suffer irreparable harm from BOP denying hormone therapy and social accommodations, and Defendants do not argue that the likelihood of irreparable harm has changed as a result of BOP's new policy. *See generally,* ECF 160. The harm to the class that would result from a potential dissolution of the preliminary injunction before the Court can address a motion

for an updated preliminary injunction is precisely the type of harm *Landis* requires courts to weigh against the cost of delay. Here, given the protection the preliminary injunction provides members of the class against being stripped of essential healthcare, the risk of harm to Plaintiffs and the class should the injunction be dissolved now outweighs any potential harm that may result from delaying briefing the Motion to Dissolve.

B.     *A Brief Stay Will Cause Minimal Harm to Defendants.*

Defendants cannot demonstrate a clear case of hardship from a brief stay on their Motion to Dissolve and continuation of the status quo. This is evident from Defendants' own delay: Defendants did not move to dissolve the preliminary injunction until more than a month after BOP's new policy was issued (and after knowing it would be issuing a new policy for over five months). Conversely, if the Court does not stay the Motion to Dissolve, the possibility of a brief dissolution of the preliminary injunction followed by an updated preliminary injunction would cause harm not only to the class but also to Defendants by creating administrative burdens related to implementing then halting the new policy across all its facilities and generating confusion in its facilities as to what care is and is not permissible. Moreover, any potential harm to Defendants as a result of a brief stay of their Motion to Dissolve is minimal and substantially outweighed by the judicial economy benefits and potential grave harm to Plaintiffs and the class.

## CONCLUSION

For the foregoing reasons, this Court should grant Plaintiffs' motion and enter the attached proposed order setting forth a joint proposed briefing schedule for Plaintiffs' forthcoming motions.

Respectfully submitted

*L. Nowli-Sohl*

Li Nowlin-Sohl (*pro hac vice*)
Leslie Cooper (*pro hac vice*)
Shana Knizhnik, DDC Bar ID 120840
James D. Esseks (*pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel: 212-549-2500
lnowlin-sohl@aclu.org
lcooper@aclu.org
sknizhnik@aclu.org
jesseks@aclu.org

Corene T. Kendrick (*pro hac vice*)
American Civil Liberties Union Foundation
425 California St., Ste. 700
San Francisco, CA 94104
Tel: 202-393-4930
ckendrick@aclu.org

Lynly S. Egyes (*pro hac vice*)
TRANSGENDER LAW CENTER
594 Dean Street, Suite 11
Brooklyn, NY 11238
Tel: 510-587-9696
lynly@transgenderlawcenter.org

Dated: April 10, 2026

Michael Perloff, D.C. Bar No. 1601047
Aditi Shah, D.C. Bar No. 90033136
ACLU Foundation of the District of Columbia
529 14th Street NW, Suite 722
Washington, D.C. 20045
Tel: 202-457-0800
mperloff@acludc.org
ashah@acludc.org

David C. Fathi (*pro hac vice*) *
Maria V. Morris, D.C. Bar. No. 1697904
Elisa C. Epstein (*pro hac vice*) *
American Civil Liberties Union Foundation
915 15th Street, N.W.
Washington, D.C. 20005
Tel: 202-393-4930
dfathi@aclu.org
mmorris@aclu.org
eepstein@aclu.org
*Not admitted in D.C.; practice limited to federal courts.*

Shawn Thomas Meerkamper (*pro hac vice*)
Megan Z. F. Noor (*pro hac vice*)
Dale Melchert (*pro hac vice motion forthcoming*)
TRANSGENDER LAW CENTER
P.O. Box 70976
Oakland, CA 94612
Tel: 510-587-9696
shawn@transgenderlawcenter.org
megan@transgenderlawcenter.org
dale@transgenderlawcenter.org

*Counsel for Plaintiff Class*

7