**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

ALISHEA KINGDOM, et al.,

        Plaintiffs,

    v.

DONALD J. TRUMP, et al.,

        Defendants.

No. 1:25-cv-00691-RCL

**PLAINTIFFS' REPLY IN SUPPORT OF
MOTION TO DIRECT NOTICE TO CLASS MEMBERS**

The parties disagree on when individuals who enter Bureau of Prisons ("BOP") custody become class members and the timeline for providing notice to new class members.  There are two ways new individuals can become part of the class this Court certified: first, if they enter BOP custody with a gender dysphoria diagnosis; second, if they are already in BOP custody and receive a gender dysphoria diagnosis.  Plaintiffs propose that Defendants provide either electronic or paper copies of the English and Spanish versions of the Class Notice, ECF 156-1 and 156-2, to new class members "within 96 hours upon intake into BOP custody if the person has a gender dysphoria diagnosis at the time of intake and within 96 hours upon the person receiving a gender dysphoria diagnosis while in BOP custody."  ECF 156-3 at 1–2.  Defendants disagree, taking the position that individuals only become part of the certified class if their gender dysphoria diagnoses have been provided or affirmed by BOP, and they seek 10 business days from the diagnosis being provided or affirmed by BOP to provide notice.  *See* ECF 164 (Defs.' Counter Proposed Order).

Defendants' argument rests on faulty premises.  First, contrary to Defendants' assertion, Plaintiffs do not "take the position that BOP must defer to the diagnosis of any outside medical providers, without any vetting by a BOP medical provider."  ECF 164 at 2.  Plaintiffs do not dispute

1

that BOP may conduct an independent assessment of medical conditions.  BOP's policy, however, does not and cannot change the class this Court certified, which consists of "all persons who are or will be incarcerated in the custody of BOP facilities, with a current medical diagnosis of gender dysphoria or who receive such a diagnosis in the future."  ECF 68.  The class definition does not require a *BOP*-affirmed or *BOP*-provided gender dysphoria diagnosis; it requires a "medical diagnosis of gender dysphoria."  *Id.*  In certifying the class, this Court made clear that new class members would be "admitt[ed] . . . on the basis *of an actual diagnosis*" because doing so "is an easily administrable task that supports the ascertainability of the class[.]"  ECF 67 at 28–29 n.9 (emphasis added).  The Court did not hinge membership in the class on the gender dysphoria diagnosis originating with or being verified by BOP.  Defendants' position therefore contradicts the plain language of the class this Court certified.

Second, Defendants' argument disregards BOP's own policy and the practical implications of their counter proposal.  BOP policy requires that "[w]hen an inmate patient enters a facility with medications from the community, the pharmacy will ensure that adequate supplies are on hand prior to disposal. These medications, if appropriate, will be administered on [directly observed therapy] until the pharmacy is able to obtain the drug(s)."  BOP Program Statement 6360.02 § 11(g) ("Intake Medications").[1]  Accordingly, under its own policy, BOP is obligated to make medications such as hormone therapy available to individuals entering BOP custody already on hormone therapy.  Moreover, the patient care policy Defendants rely upon in their opposition does not on its face require BOP to identify or verify gender dysphoria diagnoses within any specific time period.  The intake screening section (§ 16) of that policy, which Defendants repeatedly cite,

---

[1] U.S. Department of Justice, Federal Bureau of Prisons Program Statement 6360.02 ("Pharmacy Services"), Oct. 24, 2022, *available at* https://www.bop.gov/policy/progstat/6360_002.pdf.

states that the intake screening—which "ordinarily," but not always, takes place within 24 hours upon arrival—serves to identify "[u]rgent medical, oral health, or mental health care needs," "[d]isabilities (sensory, cognitive, and physical) requiring further evaluation and potential accommodation," and "[m]edication and medication reconciliation."[2] It does not expressly require BOP to identify or otherwise assess an individual's gender dysphoria diagnosis at intake, and indeed, for one class member, BOP did not evaluate his gender dysphoria diagnosis and determine his treatment needs until nearly *10 months* after he entered BOP custody with a gender dysphoria diagnosis, even though he had been on hormone therapy for nine years before entering BOP custody. *See* ECF 107-1 ¶ 21. This Court's class certification order does not permit Defendants to unilaterally excise members of the class or to indefinitely delay their membership by making it contingent on BOP's independent verification process.

Third, Defendants fail to appreciate that the purpose of Plaintiffs' motion simply is to provide *notice* to individuals about the pendency of this class action, the preliminary injunction, and class counsel's contact information. The actual provision of treatment is a separate question and not one that is before the Court in this motion. The notice therefore has nothing to do with BOP's self-asserted need to verify a prior gender dysphoria diagnosis. Defendants do not identify any harm that would result if they were required to provide notice to people who enter BOP custody "with a current medical diagnosis of gender dysphoria." ECF 68. Nor do Defendants

---

[2] U.S. Department of Justice, Federal Bureau of Prisons Program Statement 6360.05 ("Patient Care"), May 14, 2024, *available at* https://www.bop.gov/policy/progstat/6031.05.pdf. A Change Notice to this program statement was issued on March 14, 2025, making changes "to ensure consistency with [the President's] Executive Orders," including to the portions concerning gender affirming treatment. *See* U.S. Department of Justice, Federal Bureau of Prisons Change Notice, 6031.05 CN-2, March 14, 2025, *available at* https://www.bop.gov/policy/progstat/6031_005_cn-2.pdf. Given that the Change Notice does not alter § 16 regarding intake screening, Plaintiffs cite to the March 2024 version of the program statement as Defendants did in their opposition.

provide any explanation as to why they would need "10 business days" to provide such notice.

This Court should grant Plaintiffs' motion and enter the proposed order attached to the motion.  ECF 156-3.

Dated: April 10, 2026

David C. Fathi† (*pro hac vice*)
Maria V. Morris, D.C. Bar No. 1697904
Elisa C. Epstein† (*pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th Street, N.W.
Washington, D.C. 20005
Tel: 202-393-4930
dfathi@aclu.org
mmorris@aclu.org
eepstein@aclu.org


Corene T. Kendrick (*pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
425 California St., Ste. 700
San Francisco, CA 94104
Tel: 202-393-4930
ckendrick@aclu.org


Li Nowlin-Sohl* (*pro hac vice*)
Leslie Cooper (*pro hac vice*)
Shana Knizhnik, DDC Bar ID 120840
James D. Esseks (*pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel: 212-549-2500
lnowlin-sohl@aclu.org
lcooper@aclu.org
sknizhnik@aclu.org
jesseks@aclu.org

Respectfully submitted,

_____*/s/ Aditi Shah*_____
Aditi Shah, D.C. Bar No. 90033136
Michael Perloff, D.C. Bar No. 1601047
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF THE DISTRICT OF
COLUMBIA
529 14th Street NW, Suite 722
Washington, D.C. 20045
Tel: 202-457-0800
ashah@acludc.org
mperloff@acludc.org


Shawn Thomas Meerkamper (*pro hac vice*)
shawn@transgenderlawcenter.org
Megan Z. F. Noor (*pro hac vice*)
megan@transgenderlawcenter.org
Dale Melchert (*pro hac vice motion
forthcoming*)
dale@transgenderlawcenter.org
TRANSGENDER LAW CENTER
P.O. Box 70976
Oakland, CA 94612
Tel: 510-587-9696

Lynly S. Egyes (*pro hac vice*)
lynly@transgenderlawcenter.org
TRANSGENDER LAW CENTER
594 Dean Street, Suite 11
Brooklyn, NY 11238
Tel: 510-587-9696

* *Not admitted in New York*
† *Not admitted in D.C.; practice limited to
federal courts*

*Counsel for Plaintiff class*