# Exhibit A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ALISHEA KINGDOM<br>Reg. 13131-089<br>FCI Fairton<br>P.O. Box 420<br>Fairton, NJ 08320<br><br>SOLO NICHOLS<br>Reg. 16212-040<br>FCI Tallahassee<br>P.O. Box 5000<br>Tallahassee, FL 32314<br><br>JAS KAPULE<br>Reg. 97856-298<br>FCI Waseca<br>P.O. Box 1731<br>Waseca, MN 56093<br><br>*on behalf of themselves and all persons*<br>*similarly situated,*<br><br>         *Plaintiffs*<br>    v.<br><br>DONALD J. TRUMP, in his official capacity as<br>President of the United States,<br>The White House<br>1600 Pennsylvania Avenue, NW<br>Washington, D.C. 20500<br><br>TODD BLANCHE, in his official capacity as<br>Acting Attorney General of the United States,<br>950 Pennsylvania Avenue NW<br>Washington, D.C. 20530<br><br>WILLIAM K. MARSHALL, III, in his official<br>capacity as Director of the Federal Bureau of<br>Prisons,<br>320 First St NW<br>Washington, D.C. 20534 | No. 1:25-cv-00691 |

CHRISTOPHER A. BINA, in his official capacity as Assistant Director for the Health Services Division of the Federal Bureau of Prisons,
320 First St NW
Washington, D.C. 20534

DANA R. DIGIACOMO, in her official capacity as Acting Assistant Director of the Reentry Services Division of the Federal Bureau of Prisons,
320 First St NW
Washington, D.C. 20534

SHANE SALEM, in his official capacity as Assistant Director of the Correctional Programs Division of the Federal Bureau of Prisons,
320 First St NW
Washington, D.C. 20534

*Defendants.*

## SUPPLEMENTAL CLASS ACTION COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

(Trump Administration and BOP's categorical ban on gender-affirming health care for people with gender dysphoria in the custody of the Federal Bureau of Prisons)

1

Plaintiffs Alishea Sophia Kingdom, Solo Nichols, and Jas Kapule ("Plaintiffs"), by and through their attorneys, supplement their original class action complaint as follows:

## INTRODUCTION

138.    Plaintiffs supplement their Complaint to add material facts that have developed since the filing of the original complaint.  Specifically, on February 19, 2026, the Federal Bureau of Prisons ("BOP") issued Program Statement 5260.01, entitled "Management of Inmates with Gender Dysphoria" (the "Program Statement"). It is filed in this case at ECF 125.

139.    Plaintiffs incorporate by reference and in full their Complaint filed at ECF 4-1. Plaintiffs' claims in paragraphs 96-137 in the original Complaint as well as the prayer for relief have been updated herein to address and seek injunctive relief that extends to the Program Statement.

## UPDATED PARTIES

140.    Defendant Todd Blanche replaced former Defendant Pamela J. Bondi as the Acting Attorney General of the United States and is automatically substituted as a party. Fed. R. Civ. P. 25(d). He oversees the U.S. Department of Justice, including BOP, and is responsible for the enforcement and implementation of EO 14168 in federal prisons. He is sued in his official capacity.

141.    Defendant William K. Marshall, III replaced former Defendant William W. Lothrop as the Director of BOP and is automatically substituted as a party. He signed and issued the Program Statement and is responsible for the enforcement of it as well as EO 14168 in federal prisons. He is sued in his official capacity.

## UPDATED FACTS

### The Court's Preliminary Injunction

142.    Plaintiffs filed this lawsuit on March 7, 2025, challenging EO 14168 and BOP's

Implementing Memoranda banning gender affirming health care, including social accommodations and hormone therapy, for individuals with gender dysphoria in BOP custody. They filed motions for a preliminary injunction and to stay agency action, as well as for class certification on March 17, 2025. ECF 7; ECF 8.

143.    On June 3, 2025, this Court granted Plaintiffs' motions. ECF 68. Plaintiffs had moved for a preliminary injunction based on their Eighth Amendment and Administrative Procedure Act (APA) claims, and the Court found that they were likely to succeed on the merits of their APA claim that the policy was arbitrary and capricious based, in part, on the lack of a reasoned explanation for the policy. ECF 67; ECF 68. The Court did not reach their Eighth Amendment claim. The Court certified a class consisting of "all persons who are or will be incarcerated in the custody of BOP facilities, with a current medical diagnosis of gender dysphoria or who receive such a diagnosis in the future," and enjoined Defendants "from enforcing Executive Order 14168 as applied to medical hormone therapy and social accommodations for people in the custody of the BOP and from enforcing BOP's memoranda implementing Executive Order 14168." ECF 68 at 1–2.[1]

BOP's February 2026 Program Statement

144.    Three months after this Court's order entering the preliminary injunction, in early September 2025, Defendants informed Plaintiffs' counsel that BOP would soon be issuing a new policy governing medical care for gender dysphoria.

145.    BOP issued the Program Statement, "Management of Inmates with Gender Dysphoria," on February 19, 2026. ECF 125. In addition to the Program Statement, BOP prepared

---

[1] This Court has since granted each of Plaintiffs' motions to renew the preliminary injunction, necessitated by the automatic expiration of preliminary relief every 90 days under § 3626(a)(2) of the Prison Litigation Reform Act. The current 90-day period ends May 31, 2026. ECF 114.

a memorandum on the Program Statement that is filed in this case, ECF 160-2 (the "Memorandum"), and a memorandum on the administrative record, ECF 160-1 ("AR Memo"), both of which are part of the administrative record submitted by Defendants for the Program Statement.

146. The stated intent of the Program Statement "is for federal funds to not be expended for any medical procedure, treatment, or drug for the purpose of conforming an inmate's appearance to that of the opposite sex to the maximum extent permitted by law, including the Eighth Amendment to the U.S. Constitution." ECF 125 § 8, at 9. The Program Statement also says that EO 14168 "prohibits the Bureau from expending federal funds for 'any medical procedure, treatment, or drug for the purpose of conforming an inmate's appearance to that of the opposite sex' 'to the extent consistent with applicable law,'" *id.* § 5, at 5-6 (quoting EO 14168), and that BOP will comply with the EO absent "a court injunction or court order." *Id*. §5, at 6. Despite this mandate, the Program Statement asserts that it was adopted "independently of Executive Order 14,168." *Id*.

147. Thus, just like the Executive Order and Implementing Memoranda, the Program Statement categorically bans gender affirming medical care and social accommodations for the treatment of gender dysphoria.

148. The Program Statement categorically bans the initiation of hormone therapy for individuals with gender dysphoria, stating that "[i]n instances when an inmate is diagnosed with GD but is not currently receiving hormones to address GD, the Bureau will not provide hormones to address GD and the inmate will not receive hormones to address GD." *Id.* § 5(c)(i), at 7.

149. The Program Statement provides that individuals who are currently receiving hormone therapy to address gender dysphoria are to be withdrawn from treatment. It mandates a

4

"tapering plan" for "all such inmates." *Id.* § 5(c)(ii), at 7. For people "that have recently begun receiving hormones to address GD, the Primary Care Provider shall develop a tapering plan that includes a rapid discontinuation of the hormone intervention," and for those "that have been receiving hormones to address GD for an extended period of time, the Primary Care Provider shall develop a tapering plan that includes an appropriately paced discontinuation of the hormone intervention." *Id.* § 5(c)(ii), at 8.

150.    For individuals who "(1) are post sex trait modification surgery or (2) have been receiving hormones to address GD for an extended period of time and develop severe physiological and psychological withdrawal effects from tapering," the Program Statement provides that "it may not be appropriate in all cases for the initial tapering plan to include cessation of hormones," "[b]ut tapering plans should be reevaluated regularly with respect to cessation of hormones." *Id.*

151.    The Program Statement also categorically bans social accommodations. It states that BOP "will not provide social accommodations, including to inmates diagnosed with GD, and the inmate will not receive social accommodations. If the inmate currently has social accommodations, the Bureau shall no longer provide the social accommodations and, when practicable, remove or confiscate the social accommodations." *Id.* § 5(d), at 8.

152.    Although the Program Statement purports to provide for "individualized treatment plan[s]" and states that treatment plans are "tailored to the specific clinical needs" of the person diagnosed with gender dysphoria, *Id.* § 5(a), at 6, it does not allow any treatment plans to include any social accommodations or hormone therapy (other than the tapering off of hormone therapy), regardless of the patient's individual need for them.

153.    Instead, the Program Statement provides that "[t]reatment interventions will focus on managing the psychological distress/dysphoria, assisting with adjustment to incarceration,

5

community re-entry, and strengthening resilience," *id.*, and "[t]he individualized treatment plan may include psychotherapy, group counseling, psychiatric services, and psychotropic medications." *Id*. § 5(c)(i), at 7.

154.    The Program Statement departs from well-accepted, evidence-based protocols for the treatment of gender dysphoria, which include social transition and hormone therapy to help the patient live consistently with their gender identity.

155.    Plaintiffs and all other Class Members who are currently receiving hormone therapy are being provided such care because it was deemed clinically indicated for them by BOP medical providers, as that was a precondition for such treatment under the policy that existed prior to the Executive Order.

156.    The treatments for gender dysphoria permitted by the Program Statement are not evidence-based treatments for gender dysphoria. There is no evidence that psychotherapy or psychotropic medications can alleviate gender dysphoria.

157.    The Program Statement poses a significant risk of serious harm to Plaintiffs' and Class Members' health by depriving them of access to medically necessary treatment for gender dysphoria, in violation of the Constitution and federal statutes.

<u>Updated facts related to the Plaintiffs</u>

158.    **Alishea Kingdom**: After the initial Complaint was filed, Ms. Kingdom's hormone therapy was restored in March 2025. Her access to social accommodations was restored after this Court issued its Preliminary Injunction. In the several weeks after being denied hormone therapy due to EO 14168 and BOP's Implementing Memoranda, Ms. Kingdom experienced anxiety and panic attacks, insomnia, mood swings, and thoughts of self-harm and suicide as her body reacted to the change in hormone levels and her gender dysphoria worsened.

159.    Especially having experienced the harm of losing this medical care, Ms. Kingdom is fearful for her health if BOP's prohibition on gender-affirming care in its Program Statement takes effect and her hormone therapy is once again removed, as well as her social accommodations.

160.    **Solo Nichols**: From mid-November 2025 until mid-February 2026, Mr. Nichols was cut off from his testosterone hormone therapy because of issues getting his prescription from the pharmacy. During that time, he experienced extreme hot flashes, rapid mood swings, loss of sleep, and difficulty functioning.

161.    Between this experience and his earlier experience when BOP began tapering off his hormone therapy, reducing his dosage as a result of EO 14168 and the Implementing Memoranda, if BOP's prohibition on gender-affirming care takes effect and his gender affirming care were withdrawn, Mr. Nichols knows it would exacerbate his gender dysphoria and make him dread waking up every day.

162.    **Jas Kapule**: In late 2025, BOP medical staff reduced Mr. Kapule's testosterone dose without his knowledge or participation in the decision, allegedly because his serum testosterone levels were above a normal range. Mr. Kapule began noticing increased anger, impatience, and worsened depression and anxiety. He experienced severe uterine cramps as well. A few months later, Mr. Kapule was devastated when his menstrual period returned for the first time in two years, an experience that was humiliating and emasculating. Mr. Kapule's medical provider observed the physical and emotional distress that the lowered testosterone dose caused him, and eventually resumed a higher dose.

163.    Mr. Kapule fears that if BOP's prohibition on gender affirming care takes effect and his care is withdrawn, he will be forced through this same process once more, but worse because it would be a complete withdrawal from testosterone. He fears the severe gender dysphoria

that he knows comes with the return of his menstrual period, and the emotional instability that a lowered dose brought him.

**UPDATED CLAIMS FOR RELIEF**
**COUNT 1**
**Challenge to EO 14168 as Applied to BOP Medical Care and Accommodations and Program Statement 5260.01**
**Eighth Amendment of the United States Constitution**
**Against All Defendants in Their Official Capacities**

164.    Under the Eighth Amendment, Defendants must provide incarcerated people with adequate and necessary health care that meets accepted standards of care and practice within the medical community. The Eighth Amendment prohibits deliberate indifference by government officials to incarcerated persons' serious medical needs. An official who has knowledge of an incarcerated person's need for medical care that would place the incarcerated person at substantial risk of serious harm if not treated, and who denies, delays, or otherwise interferes with the provision of health care, is deliberately indifferent.

165.    Plaintiffs have been diagnosed with the serious medical condition of gender dysphoria, which causes them significant clinical distress, and which, without medically necessary treatment, will predictably result in serious and irreparable physical and psychological harm to Plaintiffs.

166.    Plaintiffs and Class Members have serious medical needs for hormone therapy and other gender-affirming health care for their gender dysphoria, including accommodations that enable them to dress and otherwise live consistently with their gender identity. The EO and the Program Statement's blanket prohibition of this medical treatment and accommodations for all Plaintiffs and Class Members, without regard to individual medical needs for this care, violates

the accepted and applicable community standards of care for the treatment of gender dysphoria, and subjects Plaintiffs and Class Members to substantial risk of serious harm.

167. Denying and withdrawing Plaintiffs' and Class Members' gender-affirming health care contravenes their health care providers' professional medical judgment, which had been made based on an assessment of patients' individualized medical needs, and in accordance with the accepted and applicable community standards of care. EO 14168 and the Program Statement establish a blanket prohibition that denies medically necessary treatment to Plaintiffs and Class Members, without consideration of any independent medical judgment formed by health care providers as to the necessity of that care, in violation of the Eighth Amendment's prohibition on cruel and unusual punishments.

168. By denying Plaintiffs and Class Members medically necessary treatment for their gender dysphoria, Defendants have caused or will cause harm by withholding effective treatment for an objectively serious medical condition.

169. Defendants' deliberate actions under EO 14168 and the Program Statement of denying medically necessary care have caused or will cause serious physical and psychological harm to Plaintiffs and Class Members, putting them at grave risk for worsening physical and psychological symptoms.

170. Defendants have acted, and continue to act, with deliberate indifference to Plaintiffs' serious medical needs, and to the substantial risk of serious harm to Plaintiffs and Class Members.

171. As a result of Defendants' actions described herein, in the absence of injunctive relief, Plaintiffs and Class Members will continue to suffer irreparable harm.

9

## COUNT 2

**Challenge to EO 14168 as Applied to BOP Medical Care and Accommodations and
Program Statement 5260.01**
**Fifth Amendment of the United States Constitution – Equal Protection**
**Against All Defendants in Their Official Capacities**

172.    The Fifth Amendment provides that "[n]o person shall . . . be deprived of life, liberty, or property, without due process of law." The Supreme Court has held that the Due Process Clause includes a guarantee against the United States of equal protection of the laws equivalent to that guaranteed against the States by the Equal Protection Clause of the Fourteenth Amendment.

173.    EO 14168, as applied to BOP medical care and accommodations, and the Program Statement violate the Fifth Amendment's equal protection guarantee.

174.    EO 14168 and the Program Statement facially classify based on sex and transgender status.

175.    EO 14168 declares that it is federal policy to recognize only two sexes, defining "sex" as "an individual's immutable biological classification as either male or female," determined based on the type of reproductive cell an individual, at the time of conception, is expected to produce. It mandates that BOP "revise[] its policies concerning medical care to be consistent with this order" and prohibits BOP from expending any federal funds on any "medical procedure, treatment, or drug for the purpose of conforming an inmate's appearance to that of the opposite sex." EO 14168 §§ 2(a) & 4(c). It also directs agencies, including BOP, to "remove all . . . policies . . . that promote or otherwise inculcate gender ideology," and to "take all necessary steps, as permitted by law, to end the Federal funding of gender ideology," and prohibits the use of federal funds "to promote gender ideology." *Id.* §§ 3(e) & 3(g).

176.    The Program Statement implements EO 14168. It states that BOP will comply with EO 14168 unless prohibited by an injunction or court order.

10

177. The Program Statement also states that the "intent of this policy is for federal funds to not be expended for any medical procedure, treatment, or drug for the purpose of conforming an inmate's appearance to that of the opposite sex." ECF 125 § 8, at 9.

178. EO 14168 and the Program Statement operate through facial sex classification, with a person's sex, as defined by the EO, determining whether they may receive certain medical treatments or accommodations.

179. By prohibiting treatment prescribed "for the purpose of conforming an inmate's appearance to that of the opposite sex," and funding for any policies or accommodations "promot[ing]" the "claim that males can identify as and thus become women and vice versa," the EO and the Program Statement, which states that BOP will comply with the EO, also facially classify based on sex by enforcing sex stereotypes. EO 14168 §§ 2(f), 3(g), 4(c); ECF 125 § 5, at 5-6; *id.* § 8, at 9.

180. Under the Equal Protection Clause, sex classifications are subject to heightened scrutiny and are presumptively unconstitutional.

181. EO 14168 and the Program Statement also facially classify based on transgender status. They deny medical treatments and accommodations to individuals because they are transgender.

182. Discrimination based on transgender status is sex discrimination subject to heightened scrutiny.

183. Transgender status discrimination is subject to heightened scrutiny for the additional reason that transgender status is a quasi-suspect class warranting heightened scrutiny.

184.    There is no legitimate purpose or basis for the categorical ban in EO 14168 and the Program Statement on gender-affirming health care for people with gender dysphoria in BOP custody.

185.    Prohibiting gender-affirming medical care and accommodations for individuals in BOP custody is not substantially related to the EO's stated purpose of protecting women from "men [who] self-identify as women . . . gain[ing] access to intimate single-sex spaces and activities designed for women"; nor is it even rationally related to that purpose. EO 14168 § 1. Nor is this prohibition of such care substantially related to any important government interest or rationally related to any legitimate government interest. Accordingly, EO 14168 and the Program Statement violate the right to equal protection guaranteed by the Fifth Amendment.

186.    EO 14168 and the Program Statement are motivated by discriminatory animus and are unconstitutional under any level of scrutiny.

187.    EO 14168, as applied to BOP medical care and accommodations, and the Program Statement have caused and/or will cause irreparable harm to Plaintiffs and the class they represent, including serious physical, psychological, and emotional harm, distress, and mental anguish.

## COUNT 3

**Challenge to EO 14168 as Applied to BOP Medical Care and Accommodations and Program Statement 5260.01**
**Rehabilitation Act of 1973, Section 504**
**Against All Defendants in Their Official Capacities**

188.    Plaintiffs have a current diagnosis of gender dysphoria as well as a record of gender dysphoria that is known to BOP officials.

189.    Gender dysphoria is a serious medical condition that qualifies as a disability.

12

190.    BOP is an executive agency that falls within the definition of a covered public entity that is responsible for providing benefits, services, and programs to all individuals in its custody.

191.    EO 14168 and the Program Statement categorically ban medical treatments and accommodations for people in BOP custody if the treatments and accommodations are provided to "conform[] an inmate's appearance to that of the opposite sex." EO 14168 § 4(c); ECF 125 § 5, at 5-6; *id.* § 8, at 9. That describes treatment for gender dysphoria. The BOP policy also explicitly bans hormone therapy and social accommodations to treat gender dysphoria. ECF 125 § 5(c)-(d), at 7-8.  Thus, treatments and accommodations are banned only if they are prescribed to treat gender dysphoria. This disparate treatment of Plaintiffs and class members based upon their gender dysphoria diagnosis discriminates against them based upon disability.

192.    EO 14168 and the Program Statement discriminate based on disability by excluding people with gender dysphoria, including Plaintiffs and Class Members, from accessing certain medical treatments and accommodations that are provided to other people in BOP custody based on their diagnosis.

193.    Accordingly, EO 14168, as applied to BOP medical care and accommodations, and the Program Statement violate Section 504 of the Rehabilitation Act of 1973. The failure to provide accommodations to Plaintiffs and class members based upon their gender dysphoria diagnosis discriminates against them based upon disability.

194.    This Court has inherent equitable authority to enjoin violations of federal law by federal officers. *See Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 326 (2015).

## COUNT 4

**Challenge to Program Statement 5260.01**

**Administrative Procedure Act, 5 U.S.C. §§ 500-596 & 706**

**Contrary to Constitutional Right, Power, Privilege or Immunity, and Not In Accordance with Law**

**Against Agency Defendants**

195.    The APA provides that courts "shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . contrary to constitutional right" as well as those found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A)–(C).

196.    The Program Statement is a final agency action that marks the consummation of BOP's decision-making process and is one by which rights or obligations have been determined or from which legal consequences will follow.

197.    Pursuant to the Program Statement, BOP will no longer provide gender-affirming health care for Plaintiffs and the Class Members, even when such care is medically indicated. ECF 125 § 5(c)-(d), at 5-6. Regardless of need, treatment and accommodations will be denied because of Defendants' enforcement of the Program Statement.

198.    Actions taken by BOP to enforce the Program Statement will cause irreparable harm to Plaintiffs and the class, including serious physical, psychological, and emotional harm, distress, and mental anguish.

199.    For the reasons described in the preceding claims, and incorporated here, the Program Statement is "contrary to constitutional right, power, privilege, or immunity," and therefore must be held unlawful and set aside. 5 U. S.C. § 706(2)(B). In particular, as detailed above, those actions violate the Eighth Amendment and the right to equal protection guaranteed

14

by the Fifth Amendment of the Constitution. It is also in excess of statutory authority or short of statutory right and not in accordance with law because it violates the Rehabilitation Act.

## COUNT 5

**Challenge to Program Statement 5260.01**
**Administrative Procedure Act, 5 U.S.C. §§ 500-596 & 706**
**Arbitrary and Capricious, Unlawful, and Unconstitutional Agency Action**
**Against Agency Defendants**

200.    The APA, 5 U.S.C. §§ 500-596 & 706, provides that courts "shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. . . ." 5 U. S.C. § 706(2)(A).

201.    The Program Statement is a final agency action that marks the consummation of BOP's decision-making process and is one by which rights or obligations have been determined or from which legal consequences will follow.

202.    The Program Statement is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2)(A), for multiple independent reasons.

203.    The Program Statement is arbitrary and capricious and an abuse of discretion because it lacks reasoned decision-making and is irrational and unreasonable.

    a.    The Program Statement and BOP's stated reasons for the policy change are pretextual, as the policy was preordained by EO 14168.

    b.    BOP failed to consider highly relevant evidence, including its own experience providing gender affirming care to individuals with gender dysphoria in BOP custody for years. The Memorandum and record are conspicuously devoid of any information about how gender affirming care has impacted patient health and/or security.

15

c. The Program Statement is a complete reversal from BOP's policy prior to EO 14168, upon which Plaintiffs and other Class Members have relied, and BOP has failed to explain why the status quo ante—which existed for years prior to EO 14168—was in any way flawed, let alone sufficiently flawed to warrant this abrupt and substantial change; nor does EO 14168 provide such an explanation.

d. BOP's justifications for the prohibition on gender-affirming care are based largely on a declaration from a psychiatrist that BOP retained for purposes of defending this lawsuit and who has virtually no experience treating patients with gender dysphoria.

e. The Program Statement's categorical prohibition on gender-affirming health care for incarcerated people in BOP custody regardless of medical need departs from the well accepted protocols for the treatment of gender dysphoria.

f. The Program Statement is so implausible that it cannot be the product of agency expertise.

204. Pursuant to the Program Statement, BOP will no longer provide gender-affirming health care for Plaintiffs and Class Members, even when such care is medically indicated. ECF 125, § 5(c)-(d), at 5-6. Regardless of need, hormone therapy and social accommodations will be denied because of Defendants' enforcement of the blanket ban.

205. Actions taken by BOP to enforce the Program Statement will cause irreparable harm to Plaintiffs and Class Members, including serious physical, psychological, and emotional harm, distress, and mental anguish.

16

206.    This Court has authority under the Administrative Procedure Act to "hold unlawful and set aside" such agency action. 5 U.S.C. § 706(2).

207.    As a result of the unconstitutional and unlawful BOP Policy, Plaintiffs and class members face irreparable harm requiring vacatur of the Policy and injunctive relief to prevent the Policy's enforcement.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiffs request that this Court grant the following relief:

(A)    Issue a judgment under 28 U.S.C. §§ 2201-02 declaring that EO 14168 as applied to BOP medical care and accommodations and the Program Statement violate Plaintiffs' rights under the Fifth and Eighth Amendments to the United States Constitution, the Rehabilitation Act of 1973, and that the Program Statement violates the Administrative Procedure Act, for the reasons and on the Counts set forth above;

(B)    Enter preliminary and permanent injunctive and declaratory relief, including but not limited to, vacating and setting aside the Program Statement and any future BOP policies enforcing or consistent with EO 14168's ban on gender affirming medical care and social accommodations to treat gender dysphoria; enjoining Defendants, including their contractors, employees, and agents, from enforcing the Program Statement or EO 14168 as applied to medical care and accommodations for Plaintiffs and Class Members incarcerated in the custody and control of BOP; ordering Defendants, their contractors, employees, and agents, to provide and continue providing Plaintiffs and Class Members gender-affirming health care in accordance with BOP practice immediately prior to EO 14168 being issued by

17

Defendant Trump on January 20, 2025; and declaring unconstitutional Defendants'

practices in denying Plaintiffs and Class Members adequate and necessary medical

treatment;

(C)     Permanently certify the Class;

(D)     Award Plaintiffs' their costs and reasonable attorneys' fees pursuant to 28 U.S.C.

§ 2412, 5 U.S.C. § 504, and 42 U.S.C. § 12205, and any other applicable source of

law; and

(E)     Grant any other and further relief this Court deems just, proper, and appropriate.

Dated: April 29, 2026                          Respectfully submitted,

/s/Shana Knizhnik
Li Nowlin-Sohl (*pro hac vice*)                Michael Perloff, D.C. Bar No. 1601047
Leslie Cooper (*pro hac vice*)                 Aditi Shah, D.C. Bar No. 90033136
Shana Knizhnik, D.D.C. Bar No. 120840          ACLU Foundation of the District of Columbia
James D. Esseks (*pro hac vice*)               529 14th Street NW, Suite 722
American Civil Liberties Union Foundation       Washington, D.C. 20045
125 Broad Street, 18th Floor                   Tel: 202-457-0800
New York, NY 10004                             mperloff@acludc.org
Tel: 212-549-2500                              ashah@acludc.org
lnowlin-sohl@aclu.org
lcooper@aclu.org                               Shawn Thomas Meerkamper (*pro hac vice*)
sknizhnik@aclu.org                             Megan Z. F. Noor (*pro hac vice*)
jesseks@aclu.org                               Dale Melchert (*pro hac vice)*
                                               Transgender Law Center
David C. Fathi (*pro hac vice*) *              P.O. Box 70976
Maria V. Morris, D.C. Bar No. 1697904          Oakland, CA 94612
Elisa C. Epstein (*pro hac vice*) *            Tel: 510-587-9696
American Civil Liberties Union Foundation       shawn@transgenderlawcenter.org
915 15th Street, N.W.                          megan@transgenderlawcenter.org
Washington, D.C. 20005                         dale@transgenderlawcenter.org
Tel: 202-393-4930
dfathi@aclu.org
mmorris@aclu.org
eepstein@aclu.org

Corene T. Kendrick (*pro hac vice*)
American Civil Liberties Union Foundation
425 California St., Ste. 700
San Francisco, CA 94104
Tel: 202-393-4930
ckendrick@aclu.org

Lynly S. Egyes (*pro hac vice*)
Transgender Law Center
594 Dean Street, Suite 11
Brooklyn, NY 11238
Tel: 510-587-9696
lynly@transgenderlawcenter.org

*Counsel for Plaintiff Class*

*\*Not admitted in D.C.; practice limited to federal courts.*

19