# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALISHEA KINGDOM, et al., | Case No. 1:25-cv-00691-RCL |
| Plaintiffs, | **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR RENEWED PRELIMINARY INJUNCTION (ECF No. 188)** |
| v. | |
| DONALD J. TRUMP, et al., | |
| Defendants. | |

## INTRODUCTION

Defendants stubbornly insist upon forcing Plaintiffs into unnecessary motion practice here to have the Court temporarily renew the currently operative Preliminary Injunction first issued on June 3, 2025, *see generally* ECF No. 67 (hereinafter "June 3 PI" or "the PI"). Plaintiffs made this request for a stipulation so that the Court has adequate time to review and rule on the pending Motion for an Updated Preliminary Injunction and to Stay Agency Action, ECF No. 179 (hereinafter "Motion for Updated PI"), based on BOP's new Program Statement related to gender-affirming care, which was fully briefed as of May 20, 2026. *See* ECF Nos. 186 (Opposition), 194 (Reply). The current injunction runs through Sunday, May 31, 2026, ECF No. 144, and the Court has scheduled a hearing on the Motion for Updated PI for Wednesday, May 27, 2026, four calendar days before the expiration of the operative injunction. Plaintiffs moved for the extension of the PI (not to exceed 90 days) to begin June 1, 2026, and to end 14 calendar days after the Court's resolution of the pending Motion, in an abundance of caution and in recognition of the Court's workload and need for judicial efficiency.[1]

---

[1] The Prison Litigation Reform Act ("PLRA") states that "[p]reliminary injunctive relief shall automatically expire on the date that is 90 days after its entry, unless the court . . . makes the order final before the expiration of the 90-day period." 18 U.S.C. § 3626(a)(2).

**ARGUMENT**

Defendants assert that the temporary, limited relief that Plaintiffs seek "would violate the Prisoner [*sic*] Litigation Reform Act (PLRA)." ECF No. 192 at 1. Defendants' opposition is meritless and should be rejected for procedural and legal reasons.

As a threshold matter, the three previous times that Plaintiffs moved to renew the PI, Defendants offered similar boilerplate objections to renewal, restating the PLRA's language on 90-day expirations, and without acknowledging the abundant body of case law permitting sequential renewals of injunctions. *See, e.g.*, ECF No. 111-2, ¶¶ 3-4, Ex. A. Each time, this Court rejected Defendants' boilerplate opposition, and granted the motions to renew the PI, citing the relevant case law authorizing such renewals; a procedure recently highlighted by the D.C. Circuit in parallel litigation. *See generally* ECF Nos. 79, 96, and 114 and cases cited therein; *see also Doe v. Blanche*, 172 F.4th 901, 912 (D.C. Cir. 2026) (noting the agreement of the same Defendants in this case "that section 3626(a)(2) does not limit a district court's ability to issue a new preliminary injunction at the end of the ninety-day period set forth in that statute" and that "every court of appeals that has reached the issue agrees" (cleaned up)). Indeed, Defendants recently took the position in front of the D.C. Circuit that a reading of Section 3626(a)(2) that permits sequential renewal of an injunction "avoids the heightened burdens that would be imposed on the parties and the courts if prison-condition disputes had to be litigated on a highly expedited basis . . . ." *Doe, id.* (quoting Defendants' brief). Defendants offer no explanation as to the change of their position on the Court's authority to renew injunctions from the position they recently took before the appellate court.

"The doctrine of the law of the case posits that when a court decides upon a rule of law, that decision should govern the same issues in subsequent stages in the same case. This rule of practice promotes the finality and efficiency of the judicial process by protecting against the

agitation of settled issues." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 815-16 (1988) (cleaned up). While the doctrine is a guiding principle and not a total bar to reconsidering past decisions, it "promotes finality and efficiency of the judicial process by protecting against the agitation of settled issues" and "expresses the practice of courts generally to refuse to reopen what has been decided." *Id.* at 816, 817 (cleaned up). Defendants offer no credible reason that their previously rejected arguments should be considered here in light of the history of this case.

Even if the Court were to consider Defendants' substantive argument related to the PLRA, it fails. Defendants cite no case law to support their position that the PLRA does not authorize renewing a preliminary injunction to "maintain the status quo," ECF No. 192 at 5, because none exists. It has long been recognized that the PLRA does not bar a court from maintaining the status quo while it considers a motion to extend existing relief. *See, e.g., Hallett v. Morgan*, 296 F.3d 732, 739 (9th Cir. 2002) (district court in prison conditions case twice extended existing injunctive relief "until it could enter a final order resolving the parties' dispute"); *Doe v. Blanche*, No. 1:25-cv-286-RCL, ECF No. 125 (D.D.C. May 19, 2026) (renewing a PI in parallel litigation to this case for a limited period of time until the D.C. Circuit's mandate issued on a recently-decided appeal); *cf. Jackson v. D.C.*, 254 F.3d 262, 268 (D.C. Cir. 2001) (holding that the PLRA does not displace federal courts' "traditional power to issue injunctions to preserve the status quo while administrative proceedings are in progress") (cleaned up).

Finally, Defendants argue that Plaintiffs' prior request for more time to respond to their new Program Statement is a reason not to renew the PI for a short period of time; however, this contention is unpersuasive. A refresher of the full timeline of events demonstrates that Defendants, not Plaintiffs, are responsible for the relevant delays: Defendants sought in August 2025 to delay and preclude discovery, despite the lack of any administrative record (AR) for the Implementing

Memoranda enjoined since June 2025, and promised the Court in September 2025 that "BOP [was] actively working on a new policy" and was "prioritizing its completion." ECF No. 84 at 6. Defendants then stated two months later in November 2025, when opposing a scheduling order, that the issuance of a new policy was "imminent." ECF No. 104 at 2. But Defendants did not issue the Program Statement until three months later, on February 19, 2026, *see* ECF No. 125, and did not produce the AR until three weeks after that, on March 12, 2026, ECF No. 151. They then moved to dissolve the PI three weeks later, on April 1, 2026, ECF No. 160. Plaintiffs sought a mere additional *two weeks* beyond the standard two-week response deadline, Local R. Civ. 7(b), to respond to the Motion to Dissolve the PI, in order to develop a proper record for the Supplemental Complaint and the now pending Motion for Updated PI. *See* ECF Nos. 166 (motion to stay resolution of motion to dissolve), 166-1 (proposed briefing schedule).

It is unclear what "assurances" Defendants vaguely claim Plaintiffs "now back away from." ECF No. 192 at 3. Plaintiffs' Motion for Updated PI is fully briefed and scheduled for argument by the Court on Wednesday, May 27, 2026. The Court may well resolve the Motion before the existing PI expires on Sunday, May 31, 2026, but in case the Court needs more time to consider and issue an opinion, it is in the interests of judicial economy, both parties, and the public to maintain the status quo for a short period of time. The possible alternative—letting the current PI expire, creating confusion throughout BOP facilities nationwide and likely causing panic among the one thousand class members when the previously enjoined bans on care are implemented, only for them to potentially be enjoined once more in a matter of days—serves no one.

The cases cited by Defendants to support their position are all inapposite. Contrary to their unsupported assertion, Plaintiffs have not put forward any "contrary position" in this litigation. ECF No. 192 at 4 (citing *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (examining the

4

doctrine of judicial estoppel)). Nor have Plaintiffs "delay[ed] the initiation of litigation," as Defendants assert. *Id.* (citing *Max-Planck-Gesellschaft Zur Förderung Der Wissenschaften E.V. v. Whitehead Inst. for Biomedical Rsch.*, 650 F. Supp. 2d 114, 123 (D. Mass. 2009) (one party waited "years" after a patent dispute had begun before filing suit). And Plaintiffs most definitely have not created an "emergency . . . of [their] own making," *id.* (citing *Bos. Parent Coal. for Acad. Excellence Corp. v. Sch. Comm. of the City of Bos.*, 996 F.3d 37, 50 (1st Cir. 2021) (applying "reasonable diligence" principle from election cases to "plaintiff sitting on its collective hands" in school admissions lawsuit filed just before admissions decisions for following school year were to be released, four months after relevant policy had been adopted)). Finally, it is unbecoming and borderline offensive for Defendants to suggest that Plaintiffs have somehow "self-inflicted" the irreparable harms they allege in this case due to the Executive Order. *Cf. id.* (citing *Lee v. Christian Coal. of Am., Inc.*, 160 F. Supp. 2d 14, 33 (D.D.C. 2001) (finding that one plaintiff was unlikely to succeed on the merits of her individual employment discrimination claim based on "rather compelling" and uncontradicted evidence that she caused the adverse employment action by verbally assaulting and physically threatening another employee)).

As this Court noted in the PI, "[c]ourts in this Circuit have adopted a sliding scale approach to the TRO [and PI] analysis." ECF No. 67 at 8 (citing *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995)). This flexibility, along with the "severe" irreparable harms that continue to be "imminent and likely" absent a renewed PI, *id.* at 24-25, the "easily resolved" balance of the equities and public interest in favor of Plaintiffs, *id.* at 25-26, as well as this Court's ample authority, as discussed above, to maintain the status quo pending the resolution of the Motion for Updated PI, all point to the appropriateness of a limited renewal.

## **CONCLUSION**

For the foregoing reasons and those set forth in their Motion, Plaintiffs respectfully request the Court grant the Motion for Renewed PI, ECF No. 188. A proposed order was previously submitted to the Court at ECF No. 188-2.

Dated: May 25, 2026

David C. Fathi (*pro hac vice*) *
Maria V. Morris, D.C. Bar. No. 1697904
Elisa C. Epstein (*pro hac vice*) *
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th Street, N.W.
Washington, D.C. 20005
Tel: 202-393-4930
dfathi@aclu.org
mmorris@aclu.org
eepstein@aclu.org
*Not admitted in D.C.; practice limited to
federal courts.*

Corene T. Kendrick (*pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
425 California St., Ste. 700
San Francisco, CA 94104
Tel: 202-393-4930
ckendrick@aclu.org

Shawn Thomas Meerkamper (*pro hac vice*)
Megan Z. F. Noor (*pro hac vice*)
Dale Melchert (*pro hac vice*)
TRANSGENDER LAW CENTER
P.O. Box 70976
Oakland, CA 94612
Tel: 510-587-9696
shawn@transgenderlawcenter.org
megan@transgenderlawcenter.org
dale@transgenderlawcenter.org

Respectfully submitted,

*/s/ Li Nowlin-Sohl*
Li Nowlin-Sohl (*pro hac vice*)
Leslie Cooper (*pro hac vice*)
Shana Knizhnik, DDC Bar ID 120840
James D. Esseks (*pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel: 212-549-2500
lnowlin-sohl@aclu.org
lcooper@aclu.org
sknizhnik@aclu.org
jesseks@aclu.org

Michael Perloff, D.C. Bar No. 1601047
Aditi Shah, D.C. Bar No. 90033136
ACLU FOUNDATION OF THE DISTRICT
OF COLUMBIA
529 14th Street NW, Suite 722
Washington, D.C. 20045
Tel: 202-457-0800
mperloff@acludc.org
ashah@acludc.org

Lynly S. Egyes (*pro hac vice*)
TRANSGENDER LAW CENTER
594 Dean Street, Suite 11
Brooklyn, NY 11238
Tel: 510-587-9696
lynly@transgenderlawcenter.org

*Counsel for Plaintiff Class*