**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

ALISHEA KINGDOM, et al.,

        Plaintiff,

    v.

DONALD J. TRUMP, et al.,

        Defendants.

No. 1:25-cv-00691 (RCL)

**PLAINTIFFS' COMBINED OPPOSITION TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AND MOTION TO STAY DISCOVERY PENDING
DISPOSITION OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**Table of Contents**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 2

      A.    Factual Background ................................................................................... 2

      B.    Procedural History .................................................................................... 5

STANDARDS OF REVIEW ............................................................................................... 8

ARGUMENT ...................................................................................................................... 9

     I.    Defendants' Jurisdictional and Declaratory Relief Arguments Fail....................... 9

     II.    Defendants Fail To Show the Absence of a Genuine Issue of Material Fact As To Plaintiffs' Eighth and Fifth Amendment Claims and Discovery Is Needed As To Both. ........................................................................................ 11

      A.    Defendants fail to meet their burden on Plaintiffs' Eighth Amendment claim. ..................................................................................... 11

      B.    Defendants fail to meet their burden on Plaintiffs' Fifth Amendment claim. ..................................................................................... 14

     III.    Defendants Fail To Show that the Administrative Record Entitles them to Summary Judgment on Plaintiffs' APA Arbitrary and Capricious Claim. ............ 17

     IV.    Defendants Fail To Show that Plaintiffs' Rehabilitation Act Claim Fails as a Matter of Law. ..................................................................................... 19

      A.    Section 504 of the Rehabilitation Act is enforceable because it implies a private right of action. ............................................................... 19

      B.    Alternatively, Section 504 of the Rehabilitation Act is enforceable under this Court's inherent equitable power to enjoin violations of federal law. ..................................................................................... 22

      C.    Defendants fail to show that gender dysphoria is not a qualified disability within the meaning of the Rehabilitation Act. ......................... 26

      D.    Defendants fail to show the absence of a genuine issue of material fact as to the merits of Plaintiffs' Rehabilitation Act claim. ..................... 28

     V.    Defendants' Motion To Stay Discovery Pending Disposition of Their Motion for Summary Judgment Should Be Denied............................................. 29

CONCLUSION.................................................................................................................. 30

**TABLE OF AUTHORITIES**

**Cases**                                                                                                          **Page(s)**

*Alexander v. Sandoval*,
   532 U.S. 275 (2001)..................................................................................................19

*Am. Council of the Blind v. Paulson*,
   463 F. Supp. 2d 51 (D.D.C. 2006), *aff'd*, 525 F.3d 1256 (D.C. Cir. 2008).............................25

*Am. First Legal Found. v. Cardona*,
   630 F. Supp. 3d 170 (D.D.C. 2022)...............................................................................18

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986).......................................................................................................8

*Armstrong v. Exceptional Child Center, Inc.*,
   575 U.S. 320 (2015)..........................................................................................22, 23, 24, 25

*Bivens v. Six Unknown Fed. Narcotics Agents*,
   403 U.S. 388 (1999)................................................................................................21, 22

*Bonumose, Inc. v. United States Food & Drug Admin.*,
   747 F. Supp. 3d 211 (D.D.C. 2024)...............................................................................8, 9

*Bridgeport Hosp. v. Sebelius*,
   2011 WL 862250 (D.D.C. Mar. 10, 2011).......................................................................29

*Caldwell v. Caesar*,
   150 F. Supp. 2d 50 (D.D.C. 2001)..................................................................................13

*Califano v. Yamasaki*,
   442 U.S. 682 (1979)......................................................................................................23

*Cannon v. Univ. of Chicago*,
   441 U.S. 677 (1979)......................................................................................................19

*Cano v. S.C. Dep't of Corr.*,
   2025 WL 2919054 (D.S.C. June 16, 2025), *report and recommendation adopted in
   part, rejected in part*, 2025 WL 2608137 (D.S.C. Sept. 9, 2025) ....................................28, 29

*City of Cleburne, Tex. v. Cleburne Living Center*,
   473 U.S. 432 (1985)...............................................................................................15, 16

*Clark v. Skinner*,
   937 F.2d 123 (4th Cir. 1991) ........................................................................................21

*Clinton v. Jones*,
 520 U.S. 681 (1997)........................................................................................................29

*\*Convertino v. U.S. Dep't of Just.*,
 684 F.3d 93 (D.C. Cir. 2012) ...........................................................................................1

*Cousins v. Sec'y of the U.S. Dep't of Transp.*,
 880 F.2d 603 (1st Cir. 1989) .........................................................................................21

*Doe v. Spahn*,
 2025 WL 1305360 (D.D.C. May 6, 2025) .....................................................................21

*Doe 2 v. Trump*,
 319 F. Supp. 3d 539 (D.D.C. 2018)................................................................................11

*Ehrman v. United States*,
 429 F. Supp. 2d 61 (D.D.C. 2006)....................................................................................8

*Eisenstadt v. Baird*,
 405 U.S. 438 (1972)........................................................................................................15

*Est. of Parsons v. Palestinian Auth.*,
 651 F.3d 118 (D.C. Cir. 2011)...........................................................................................8

*Haitian Bridge All. v. Biden*,
 2026 WL 627405 (D.D.C. Mar. 6, 2026).........................................................................11

*Heller v. Doe*,
 509 U.S. 312 (1993)........................................................................................................14

*\*Kingdom v. Trump*,
 2025 WL 1568238 (D.D.C. June 3, 2025)..............................................................6, 10, 11

*Landis v. N. Am. Co.*,
 299 U.S. 248 (1936)........................................................................................................29

*Landmark Hosp. of Salt Lake City v. Azar*,
 442 F. Supp. 3d 327 (D.D.C. 2020)...................................................................................9

*Lane v. Pena*,
 867 F. Supp. 1050 (D.D.C. 1994), *vacated in part on other grounds as explained in*
 *Lane v. Pena*, 518 U.S. 187 (1996)................................................................................25

*Lawrence v. Texas*,
 539 U.S. 558 (2003)........................................................................................................16

*League of United Latin Am. Citizens v. Exec. Off. of President*,
 808 F. Supp. 3d 29 (D.D.C. 2025)...................................................................................10

*Mathis v. United States Parole Comm'n*,
  749 F. Supp. 3d 8 (D.D.C. 2024)................................................................20, 22, 23, 25

*Miller v. French*,
  530 U.S. 327 (2000).................................................................................................23

*Minnesota v. Clover Leaf Creamery Co.*,
  449 U.S. 456 (1981).................................................................................................14

*Motor Vehicle Manufacturers Ass'n of the United States, Inc. v. State Farm Mut. Auto.
  Ins. Co.*,
  463 U.S. 29 (1983)...................................................................................................17

*Moya v. U.S. Dep't of Homeland Sec.*,
  975 F.3d 120 (2d Cir. 2020) ....................................................................................21

*Nat'l Ass'n of the Deaf v. Trump*,
  486 F. Supp. 3d 45 (D.D.C. 2020) (Boasberg, C.J.)....................................19, 20, 21

*\*Nat'l Ass'n of the Deaf v. Trump*,
  808 F. Supp. 3d 150 (D.D.C. 2025) ................................................................. passim

*Nat'l Ass'n for Home Care & Hospice v. Becerra*,
  731 F. Supp. 3d 78 (D.D.C. 2024) .............................................................................9

*Nat'l Pub. Radio, Inc. v. Trump*,
  2026 WL 877434 (D.D.C. Mar. 31, 2026)...............................................................9, 10

*Newdow v. Roberts*,
  603 F.3d 1002 (D.C. Cir. 2010) ...............................................................................10

*Plyler v. Doe*,
  457 U.S. 202 (1982).................................................................................................14

*Porter v. Warner Holding Co.*,
  328 U.S. 395 (1946).................................................................................................23

*Romer v. Evans*,
  517 U.S. 620 (1996).................................................................................................15

*S. Cal. v. U.S. Postal Serv.*,
  134 F. Supp. 3d 311 (D.D.C. 2015) .........................................................................17

*SAI v. Dep't of Homeland Sec.*,
  149 F. Supp. 3d 99 (D.D.C. 2015)......................................................................20, 21

*Seminole Tribe v. Florida*,
  517 U.S. 44 (1996)..............................................................................................23, 24

iv

*Sirmans v. Caldera*,
   27 F. Supp. 2d 248 (D.D.C. 1998) ................................................................................ 18, 19

*Stoe v. Barr*,
   960 F.3d 627 (D.C. Cir. 2020) ........................................................................................... 8

*Talbott v. United States*,
   ____ F.4th ____, 2026 WL 1532205 (D.C. Cir. June 1, 2026) (Wilkins, J., controlling
   opinion on this point) ............................................................................................ 15, 16, 17

*Taxpayers Watchdog, Inc. v. Stanley*,
   819 F.2d 294 (D.C. Cir. 1987) ....................................................................................... 8, 12

*Thompson v. Fathom Creative, Inc.*,
   626 F. Supp. 2d 48 (D.D.C. 2009) ..................................................................................... 1

*U.S. Dep't of Agric. v. Moreno*,
   413 U.S. 528 (1973) .......................................................................................................... 15

*United States v. Carolene Products, Co.*,
   304 U.S. 144 (1938) .......................................................................................................... 14

*United States v. Honeywell Int'l, Inc.*,
   20 F. Supp. 3d 129 (D.D.C. 2013) .................................................................................... 29

*United States v. Windsor*,
   570 U.S. 744 (2013) ..................................................................................................... 15, 16

*Vance v. Bradley*,
   440 U.S. 93 (1979) ............................................................................................................ 16

*Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*,
   535 U.S. 635 (2002) ..................................................................................................... 23, 24

*White v. Fraternal Order of Police*,
   909 F.2d 512 (D.C. Cir. 1990) .......................................................................................... 29

*Williams v. Kincaid*,
   45 F.4th 759 (4th Cir. 2022) ....................................................................................... 26, 27

*Youngstown Sheet & Tube Co. v. Sawyer*,
   343 U.S. 579 (1952) .......................................................................................................... 24

*Ziglar v. Abassi*,
   582 U.S. 120 (2017) ..................................................................................................... 21, 22

**STATUTES**

5 U.S.C. § 559 ......................................................................................................................... 24

5 U.S.C. § 706(2)(A)................................................................................................9

18 U.S.C. § 3626(a)(2)............................................................................................6

29 U.S.C. § 705(20)(F)(i) ..................................................................................26, 27

29 U.S.C. § 794(a) ................................................................................................19

29 U.S.C. § 794(a)(1)-(2).......................................................................................20

29 U.S.C. § 794a(b) ..............................................................................................21

42 U.S.C. § 1396a(a)(30)(A) ..................................................................................25

Administrative Procedure Act ("APA") ................................................................ passim

Americans with Disabilities Act ("ADA") ..................................................................26

Indian Gaming Regulatory Act................................................................................24

Medicaid Act.........................................................................................................25

Prison Litigation Reform Act ("PLRA") .....................................................................6

Rehabilitation Act ............................................................................................ passim

Rehabilitation Act § 504 ................................................................................... passim

Rehabilitation Act § 505 .........................................................................................20

## RULES

Fed. R. Civ. P. 1...................................................................................................2

Fed. R. Civ. P. 56(a) .............................................................................................8

Fed. R. Civ. P. 56(d) .............................................................................................1

## OTHER AUTHORITIES

U.S. CONST. amend. V .....................................................................................5, 10, 14

U.S. CONST. amend. VIII ................................................................................... passim

Exec. Order No. 14168, *Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*, 90 Fed. Reg. 8615 (Jan. 20, 2025) ........................................................................................................ passim

Jonathan R. Siegel, *Suing the President: Nonstatutory Review Revisited*, 97 Colum. L. Rev. 1612, 1666 (1997) ..............................................................................................24

Samuel Bray & Paul Miller, *Getting into Equity*, 97 Notre Dame L. Rev. 1763, 1798-99 (2022)......................................................................................................................23

**INTRODUCTION**

Defendants are unable to satisfy their heavy burden on their premature motion for summary judgment. No discovery has occurred yet—Plaintiffs served their first set of discovery requests on April 21, 2026 pursuant to this Court's April 3, 2026 order (ECF 163), to which Defendants have not yet responded, and Plaintiffs intend to separately move for discovery specific to the Bureau of Prisons' ("BOP") 2026 Program Statement. As this Court has held, "[p]re-discovery summary judgment motions are usually premature and hence disfavored." *Thompson v. Fathom Creative, Inc.*, 626 F. Supp. 2d 48, 53 (D.D.C. 2009); *see also Convertino v. U.S. Dep't of Just.*, 684 F.3d 93, 99 (D.C. Cir. 2012) ("[S]ummary judgment is premature unless all parties have had a full opportunity to conduct discovery.") (cleaned up); Fed. R. Civ. P. 56(d) ("If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may," among other options, "defer considering the motion or deny it.").

In any event, Defendants' arguments fail. For the reasons stated in Plaintiffs' prior briefing, including in their motion for an updated preliminary injunction (ECF 179-1) and reply (ECF 194), each of Defendants' jurisdictional arguments fails: Plaintiffs have standing to challenge Executive Order 14168, this Court has jurisdiction to enjoin Defendants from enforcing the Executive Order, and the Court does not need to dismiss the President as a defendant. Defendants' arguments as to Plaintiffs' substantive claims fare no better. Defendants fail to meet their burden of establishing the absence of a genuine issue of material fact with respect to Plaintiffs' Eighth Amendment and Equal Protection claims, and their claim that the Program Statement is supported by the administrative record and consistent with the Administrative Procedure Act ("APA") standard of review fails for the reasons identified by the Court in its June 17, 2026 decision granting Plaintiffs' motion for an updated preliminary injunction, ECF 216 at 17-25. Defendants likewise cannot show

1

that Plaintiffs' Rehabilitation Act claim fails as a matter of law.

Nor are Defendants able to establish good cause to stay discovery pending disposition of their summary judgment motion. Under this Court's April 3 order, written discovery requests are to be "served no later than June 22, 2026, and completed by July 23, 2026." ECF 163 at 1. Defendants' requested stay would unduly prejudice Plaintiffs by protracting the discovery schedule and delaying the "just, speedy, and inexpensive determination" of this litigation. Fed. R. Civ. P. 1.

This Court should deny Defendants' motions for summary judgment and to stay discovery.

## BACKGROUND

Plaintiffs incorporate in full and by reference the statement of facts in their memorandum in support of their motion for an updated preliminary injunction and to stay agency action. ECF 179-1 at 3-22. Plaintiffs provide the following facts and procedural history as relevant here:

A.     **Factual Background**

For years before President Trump issued Executive Order 14168 upon his return to office, BOP provided Plaintiffs and class members treatment to alleviate their gender dysphoria, a serious medical condition characterized by significant distress and/or social or occupational impairment caused by the incongruence between a person's gender identity and their sex assigned at birth. ECF 7-3 (First Decl. of Dr. Cathy Thompson) ¶¶ 28-38. Specifically, BOP provided gender-affirming medications and social accommodations to allow people with gender dysphoria to live consistently with their gender identity. *Id.* ¶¶ 32-36, 38.

This was BOP's longstanding practice and the status quo up until President Trump issued EO 14168, *Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government*, on the day of his inauguration on January 20, 2025. *See* 90 Fed. Reg. 8615 (Jan. 20, 2025) ("EO 14168" or "EO"). In addition to its general direction to agencies to

2

"remove all . . . policies . . . that promote or otherwise inculcate gender ideology," *id*. § 3(e), EO 14168 contains two provisions directed at BOP: first, it requires BOP to "revise[] its policies concerning medical care to be consistent with this order"; and second, it requires BOP to "ensure that no Federal funds are expended for any medical procedure, treatment, or drug for the purpose of conforming an inmate's appearance to that of the opposite sex." *Id*. § 4(c).

Shortly after the EO, Plaintiffs and others with gender dysphoria in BOP custody began suffering its consequences. BOP withheld social accommodations such as chest binders and gender-affirming undergarments from all three Plaintiffs. On January 26, February 6, and February 12, 2025, BOP denied Plaintiff Alishea Kingdom her usual hormone therapy, citing the relevant section (§ 4(c)) of the EO. ECF 7-4 (First Kingdom Decl.) ¶¶ 12, 16, 19. BOP gave Plaintiff Solo Nichols a lower dose than his prescribed dosage for his hormone therapy on February 12, 2025, and told him that his next dose would be even lower and after that his treatment would be discontinued. ECF 7-5 (First Nichols Decl.) ¶ 14. And BOP staff told Plaintiff Jas Kapule sometime between January 23, 2025, and March 12, 2025, that his hormone therapy would be discontinued when his prescription ran out. ECF 7-6 (First Kapule Decl.) ¶ 9. Each Plaintiff began experiencing harm as a result of these decisions and faced a serious risk of additional and continuing harm from being deprived of hormone therapy and social accommodations. ECF 7-4 (First Kingdom Decl.) ¶¶ 21-22; ECF 7-5 (First Nichols Decl.) ¶¶ 16, 18; ECF 7-6 (First Kapule Decl.) ¶¶ 12-13.

BOP also issued two implementing memoranda to enforce the EO: (1) on February 21, 2025, it issued a memorandum prohibiting the use of appropriated funds to purchase social accommodations and requiring requests for clothing such as undergarments "that do not align with an [individual's] biological sex" to be denied, ECF 1-1 at 2-3; and (2) on February 28, 2025, BOP issued a second implementing memorandum providing that, "[c]onsistent with" the EO, no BOP

3

funds "are to be expended for any medical procedure, treatment, or drug for the purpose of conforming an inmate's appearance to that of the opposite sex," ECF 1-2 at 2.

One year later, on February 19, 2026, BOP issued Program Statement 5260.01, "Management of Inmates with Gender Dysphoria" (the "Program Statement"). ECF 125. Like the EO and implementing memoranda, the stated intent of the Program Statement "is for federal funds to not be expended for any medical procedure, treatment, or drug for the purpose of conforming an inmate's appearance to that of the opposite sex to the maximum extent permitted by law." *Id.* § 8. Although BOP claims that it adopted the Program Statement "independently of" the EO, the Program Statement (1) acknowledges that the EO requires the substance of the Program Statement, and (2) affirms that BOP will comply with the EO absent a court order prohibiting such compliance. *Id.* § 5. Indeed, BOP's Medical Director, Dr. Elizabeth Stahl, stated in her declaration certifying the index of the administrative record filed in this case that the Program Statement was "implemented by [BOP] to comply with [§ 4(c) of the Executive Order]." ECF 151 at 1.

The Program Statement merely repackages the categorical ban on hormone therapy and social accommodations required by BOP's implementing memoranda and the EO. It categorically bans all social accommodations, which it defines as "items, including cosmetics and clothing, used to alter the person's appearance to align with the person's 'gender identity.'" ECF 125 § 2. In addition to stating that BOP "will not provide social accommodations" and individuals "will not receive social accommodations," it provides that if a person already has social accommodations, BOP will "when practicable, remove or confiscate the social accommodations." *Id.* § 5(d).

For hormone therapy, the Program Statement categorically bans the initiation of hormone therapy for people with gender dysphoria, stating that for those who are diagnosed with gender dysphoria but are not currently receiving hormones, BOP "will not provide hormones to address

4

[gender dysphoria] and the [individual] will not receive hormones to address [gender dysphoria]." *Id.* § 5(c)(i). For people currently receiving hormone therapy to address gender dysphoria, the Program Statement requires that they be tapered off—*i.e.*, cut off—their hormones. *Id.* § 5(c)(ii). It mandates a "tapering plan" for "all such [individuals]"; for people who "are post sex trait modification surgery" or who have been on hormones "for an extended period of time and develop severe physiological *and* psychological withdrawal effects from tapering," the Program Statement recognizes it "may not be appropriate in *all cases* for the *initial* tapering plan to include *cessation* of hormones," but even their tapering plans "should be *reevaluated regularly with respect to cessation* of hormones." *Id.* (emphases added). Instead, the only forms of "treatment" Defendants intend to provide are potentially "psychotherapy, group counseling, psychiatric services, and psychotropic medications," *id.* § 5(c)(i), given Defendants' commitment mandated by the EO and reflected in the Program Statement to not spend federal funds on any "medical procedure, treatment, or drug for the purpose of conforming an [individual's] appearance to that of the opposite sex." *Id.* § 8.

### B.    Procedural History

Plaintiffs brought this case on March 7, 2025, challenging the EO and BOP's implementation of the EO as unconstitutional under the Eighth and Fifth Amendments to the U.S. Constitution and unlawful under the Administrative Procedure Act ("APA") and the Rehabilitation Act of 1973. They moved for class certification, ECF 8, and for a preliminary injunction and to stay agency action based on their Eighth Amendment and APA claims, ECF 7.

On June 3, 2025, this Court granted both motions. ECF 68. It certified a class consisting of "all persons who are or will be incarcerated in the custody of BOP facilities, with a current medical diagnosis of gender dysphoria or who receive such a diagnosis in the future" and preliminarily

enjoined Defendants from "enforcing Executive Order 14168 as applied to medical hormone therapy and social accommodations for people in the custody of the BOP and from enforcing the BOP's memoranda implementing Executive Order 14168." ECF 68 at 1-2. It also required Defendants to "provide and continue providing Plaintiffs and members of the class gender-affirming hormone therapy and social accommodations in accordance with BOP policy and practice in effect immediately prior to Defendant Trump's issuance of Executive Order 14168 on January 20, 2025." *Id.* at 2. In issuing the preliminary injunction, in addition to finding for Plaintiffs on irreparable harm and the equities and public interest, the Court concluded that Plaintiffs were likely to succeed on the merits of their APA claims and therefore declined to reach Plaintiffs' Eighth Amendment claim. *Kingdom v. Trump*, 2025 WL 1568238, at *8 n.4 (D.D.C. June 3, 2025).

Since the preliminary injunction was issued, Plaintiffs have periodically moved to renew the preliminary injunction as required by the Prison Litigation Reform Act ("PLRA"), under which preliminary injunctive relief in civil actions related to prison conditions automatically expires 90 days after the entry of the preliminary injunction. 18 U.S.C. § 3626(a)(2). This Court has granted each such motion for a renewed preliminary injunction. ECF 79, ECF 96, ECF 114, ECF 202.

On September 19, 2025, Plaintiffs moved for a discovery scheduling order, ECF 87, which this Court granted on February 19, 2026, ECF 123. Specifically, this Court "grant[ed] discovery on Plaintiffs' APA and constitutional claims" because Defendants failed to timely produce any administrative record. *Id.* at 2. On March 5, 2026, the parties submitted separate proposed discovery schedules pursuant to the Court's February 19 order, ECF 141 (Defs.' Proposed Discovery Schedule) and ECF 144 (Pls.' Proposed Discovery Schedule), and on April 3, this Court issued a discovery schedule order providing, among other things, that written discovery requests

"[s]hall be served no later than June 22, 2026, and completed by July 23, 2026," that "[n]on-expert depositions shall be completed by September 21, 2026," and that "[f]act discovery shall close by September 21, 2026." ECF 163 at 1. Plaintiffs served their first set of discovery requests on April 21, to which Defendants have not yet responded. Plaintiffs intend to separately move for discovery specific to the Program Statement.

On April 1, 2026, Defendants moved to dissolve the preliminary injunction based on the Program Statement. ECF 160. Plaintiffs moved to stay briefing on Defendants' motion to dissolve while Plaintiffs filed a supplemental complaint addressing the Program Statement and moved for an updated preliminary injunction to enjoin Defendants from enforcing the Program Statement. ECF 166. This Court granted Plaintiffs' motion to stay on April 15, ECF 170, and Plaintiffs filed their supplemental complaint and motion for an updated preliminary injunction on April 29. ECF 179 (Plaintiffs' motion for an updated preliminary injunction); ECF 180 (order granting Plaintiffs' motion for leave to file supplemental complaint); ECF 182 (Plaintiffs' supplemental complaint). Plaintiffs' motion for an updated preliminary injunction was fully briefed on May 20, and this Court heard argument on Plaintiffs' motion on May 27, 2026.

On June 17, 2026, this Court granted Plaintiffs' motion for an updated preliminary injunction, enjoining Defendants "from enforcing Program Statement 5260.01" and requiring Defendants to "provide and continue providing Plaintiffs and class members with gender-affirming care in accordance with BOP policy and practice in effect immediately prior to the issuance of Executive Order 14168 on January 20, 2025." ECF 215 at 1. In addition to finding that Plaintiffs carried their burden of showing irreparable harm and that the equities and public interest weighed in Plaintiffs' favor, the Court concluded that "the Program Statement amounts to arbitrary and capricious action and accordingly h[eld] that Plaintiffs are likely to succeed on the merits of their

7

APA claim," and declined to reach Plaintiffs' Eighth Amendment arguments at this time. ECF 216 at 15.When Defendants filed their opposition to Plaintiffs' motion for an updated preliminary injunction, they simultaneously moved for summary judgment. ECF 186; ECF 187. The next day, Defendants moved to stay discovery pending disposition of their motion for summary judgment. ECF 190. Plaintiffs moved to extend their response deadlines to Defendants' motion for summary judgment and motion to stay discovery by three weeks, ECF 198, and the Court granted Plaintiffs' motion for an extension on May 26. ECF 200.

## STANDARDS OF REVIEW

"Summary judgment is appropriate only if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Stoe v. Barr*, 960 F.3d 627, 629 (D.C. Cir. 2020) (quoting Fed. R. Civ. P. 56(a)). The moving party "bears the heavy burden of establishing that the merits of his case are so clear that expedited action is justified." *Taxpayers Watchdog, Inc. v. Stanley*, 819 F.2d 294, 297 (D.C. Cir. 1987). Specifically, the moving party must "make the initial showing of the absence of any genuine issues of material fact." *Ehrman v. United States*, 429 F. Supp. 2d 61, 66 (D.D.C. 2006) (citations omitted). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [its] favor." *Est. of Parsons v. Palestinian Auth.*, 651 F.3d 118, 123 (D.C. Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). With respect to Article III standing, a defendant moving for summary judgment on standing "must demonstrate 'that there is no genuine dispute as to any material fact,' Fed. R. Civ. P. 56(a), and that the plaintiff cannot establish the required elements of Article III standing based on the undisputed evidence." *Bonumose, Inc. v. United States Food & Drug Admin.*, 747 F. Supp. 3d 211, 223 (D.D.C. 2024).

For Plaintiffs' claim that the Program Statement is arbitrary and capricious in violation of

the APA, a slightly different standard applies. For that claim, summary judgment is appropriate only if "the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." *Nat'l Ass'n for Home Care & Hospice v. Becerra*, 731 F. Supp. 3d 78, 86 (D.D.C. 2024) (quoting *Landmark Hosp. of Salt Lake City v. Azar*, 442 F. Supp. 3d 327, 331 (D.D.C. 2020)). "The APA, in turn, requires the Court to 'hold unlawful and set aside agency action' that is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Id.* (quoting 5 U.S.C. § 706(2)(A)).

## ARGUMENT

### I.    Defendants' Jurisdictional and Declaratory Relief Arguments Fail.

Plaintiffs incorporate in full and by reference their arguments in response to Defendants' standing arguments in their reply in support of their motion for an updated preliminary injunction. ECF 194 ("Reply") at 3-7. Defendants fail to show that Plaintiffs cannot establish Article III standing on their claims against the Executive Order. As Plaintiffs argued in their Reply, this Court's authority to enjoin enforcement of an unlawful Executive Order is well established. Indeed, in another challenge seeking injunctive relief against the enforcement of an Executive Order, this Court held that National Public Radio ("NPR") and the Public Broadcasting Service ("PBS") "have standing to seek a judicial order enjoining the Federal Defendants from implementing the Executive Order" that instructed all federal agencies to end direct or indirect federal funding of NPR and PBS. *Nat'l Pub. Radio, Inc. v. Trump*, 2026 WL 877434, at *17 (D.D.C. Mar. 31, 2026). There, like here, the government argued that NPR's and PBS's challenges were premature because they "must wait until there is a concrete [agency] action to constitutionally challenge." *Id.* at *18. Judge Moss rejected that argument because the Executive Order "is definitive" and "broadly instructs 'all executive departments and agencies . . . to cease Federal funding for NPR and PBS.'"

*Id.* at *19.

It is the same here: EO 14168 expressly requires BOP to "ensure that no Federal funds are expended for any medical procedure, treatment, or drug for the purpose of conforming an inmate's appearance to that of the opposite sex." EO 14168 § 4(c). It does not leave room for BOP discretion;[1] it provides a definitive instruction and whether that instruction violates the Eighth Amendment, Fifth Amendment, or Rehabilitation Act "does not require further administrative development." *Nat'l Pub. Radio, Inc.*, 2026 WL 877434, at *19. "Moreover, the Program Statement itself states that the 'Bureau will comply with . . . Executive Order [14168] unless compliance with the Executive Order is prohibited by a court injunction or court order.'" ECF 216 at 16 (quoting ECF 125 § 5). Defendants' authorities are irrelevant to the Executive Order at issue here: Unlike in *Newdow v. Roberts*, 603 F.3d 1002 (D.C. Cir. 2010), this case does not involve "a decision committed to the executive discretion of the President." *Id.* at 1012.

Defendants' related argument that the Court should dismiss the President as a defendant "because the President is immune from injunctive and declaratory relief," ECF 186 at 13, should be rejected for the same reasons this Court previously rejected this argument made by Defendants in opposition to Plaintiffs' original motion for a preliminary injunction. *Kingdom*, 2025 WL 1568238, at *16. Plaintiffs seek only declaratory relief against the President. As this Court previously observed, "Courts in this District, and the D.C. Circuit, have previously affirmed the issuance of declaratory relief involving the President." *Id.* at *16 (collecting cases). The cases Defendants cite are inapposite. *Haitian Bridge All. v. Biden*, 2026 WL 627405 (D.D.C. Mar. 6,

---

[1] The savings clause language in the EO that it "shall be implemented consistent with applicable law and subject to the availability of appropriations," EO 14168 § 8(b), is irrelevant: "It is no answer to [a] facial challenge [to an Executive Order] to say that the saving clause requires [agencies] to follow the law while following the President's order." *League of United Latin Am. Citizens v. Exec. Off. of President*, 808 F. Supp. 3d 29, 67 (D.D.C. 2025).

2026), did not concern a challenge to an Executive Order of the President, and *Doe 2 v. Trump*, 319 F. Supp. 3d 539 (D.D.C. 2018), was decided in a context where, like in *Newdow*, the President's "discretionary acts" were "the focus of th[e] lawsuit," *id.* at 540–41.

**II.    Defendants Fail To Show the Absence of a Genuine Issue of Material Fact As To Plaintiffs' Eighth and Fifth Amendment Claims and Discovery Is Needed As To Both.**

**A.    Defendants fail to meet their burden on Plaintiffs' Eighth Amendment claim.**

Defendants fail to meet their burden of establishing the absence of any genuine issue of material fact as to Plaintiffs' constitutional claims as required to prevail on their motion for summary judgment. *See generally* Pls.' Statement of Facts. The evidence before this Court on Plaintiffs' pending motion for an updated preliminary injunction shows that in fact, Plaintiffs are likely to succeed on the merits of their Eighth Amendment claim, meaning that summary judgment for Defendants would necessarily be inappropriate. At a minimum, the record supporting the pending motion for an updated preliminary injunction reflects significant and genuine issues of material fact that preclude summary judgment in favor of Defendants. *See* Pls.' Statement of Facts ¶¶ 6-78 (detailing multiple material facts asserted by Defendants that are disputed by Plaintiffs based on evidence that is already in the record). Furthermore, the evidentiary record is still being developed: Defendants have yet to respond to Plaintiffs' first set of discovery requests that Plaintiffs served on April 21, 2026, many of which relate to evidence that will further support Plaintiffs in proving their Eighth Amendment claim at final judgment. And Plaintiffs have detailed fact issues that they will explore through discovery and that are relevant to Plaintiffs' disputes of facts Defendants incorrectly presented as being undisputed in their view. *See, e.g.*, Pls.' Statement of Facts ¶¶ 15-18, 20-50, 52-78. Defendants therefore fall far short of meeting their burden for summary judgment, especially at this pre-discovery juncture.

11

In response to Defendants' arguments regarding the Eighth Amendment's requirements and the evidence Defendants rely on in support of their assertions, Plaintiffs incorporate in full and by reference their arguments in their motion for an updated preliminary injunction (ECF 179-1 at 24-33) and in their Reply demonstrating that the Program Statement offends the Eighth Amendment. ECF 194 at 7-20. In sum, summary judgment in favor of Defendants is inappropriate because they have not met their burden to show there is no genuine issue of material fact as to their (incorrect) assertion that "it is better to treat gender dysphoria through individualized treatment plans with . . . psychotherapy, psychoeducational group interventions, trauma treatment, and psychotropic medication" as the sole options available for treatment rather than provide hormone therapy and social accommodations to treat gender dysphoria when clinically indicated, as BOP has done for years before the EO. ECF 186 at 16.

Plaintiffs dispute that any of Defendants' so-called evidence is credible. But at a minimum, in the context of Defendants' motion for summary judgment, where Defendants bear a "heavy burden of establishing that the merits of his case are so clear[ly] [in their favor]," *Taxpayers Watchdog, Inc.*, 819 F.2d at 297, there is no doubt that all of Defendants' claimed evidence—including the declaration submitted by Dr. Kaliebe in support of Defendants and the articles they cite, ECF 186 at 16-17—are disputed by Plaintiffs with countervailing evidence, including the "substantial body of research and clinical experience [showing] gender-affirming care—including hormone therapy and social transition—to be effective in treating gender dysphoria," ECF 194 at 7, to which Plaintiffs cite and which is backed by multiple expert declarations submitted in support of Plaintiffs, including by a psychiatrist with over 30 years of experience caring for people with gender dysphoria, ECF 7-2 (First Decl. of Dr. Dan H. Karasic), an endocrinologist with extensive experience caring for people with gender dysphoria, ECF 179-3 (Decl. of Dr. Ole-Petter Hamnvik),

12

and a former national administrator for BOP, ECF 7-3 (First Thompson Decl.), ECF 179-4 (Second Thompson Decl.), ECF 193-2 (Third Thompson Decl.). *See also* Pls.' Statement of Disputed Material Facts ¶¶ 1-2, 6, 9-10, 12.

Where the crux of Defendants' argument rests on material facts that are in dispute between the parties—namely, whether the Program Statement's ban on gender-affirming treatment such as hormone therapy and social accommodations deprives at least some individuals with gender dysphoria in BOP custody of medically necessary care—summary judgment must be denied. *See, e.g.*, *Caldwell v. Caesar*, 150 F. Supp. 2d 50, 56–57 (D.D.C. 2001) (denying the defendants' motion for summary judgment on prisoner's Eighth Amendment claim where "[t]here are numerous material facts in dispute").

In addition to failing to meet their burden, Defendants' motion for summary judgment is premature because discovery has not yet been conducted. Plaintiffs have identified in their Statement of Facts fact issues for which discovery is needed, including communications among BOP healthcare providers about the change in BOP policy regarding hormone therapy and social accommodations; deposing Defendants' declarants and BOP officials who were involved in the provision of hormone therapy and social accommodations to people with gender dysphoria in BOP custody under the pre-EO policy, including regarding whether the pre-EO policy ameliorated individuals' distress from gender dysphoria; deposing BOP officials who were part of developing the Program Statement about the basis for deciding to abandon BOP's prior policy regarding the provision of hormone therapy and social accommodations; and other topics. *See* Pls.' Statement of Facts ¶¶ 15-18, 20-50, 52-78.

13

**B.      Defendants fail to meet their burden on Plaintiffs' Fifth Amendment claim.**

Defendants' argument for summary judgment on Plaintiffs' equal protection claim under the Fifth Amendment fails because Defendants fail to show the absence of any genuine issue of material fact and because Plaintiffs have not yet obtained discovery for facts relevant to this claim.

As a threshold matter, Plaintiffs reserve all rights to argue that heightened scrutiny applies to Plaintiffs' equal protection claim. Even assuming for purposes of Defendants' motion and for the sake of argument that rational basis review applies, that analysis does not take place in a factual vacuum. As discussed above and in Plaintiffs' motion for an updated preliminary injunction and their Reply, the evidence before the Court even in this pre-discovery stage demonstrates that BOP did not genuinely consider evidence to determine an appropriate policy for treatment of gender dysphoria, as opposed to reverse engineering its stated rationale to reach a predetermined outcome mandated by the EO. ECF 179-1 at 34-36; ECF 194 at 20-23.

Summary judgment on this claim is also inappropriate because Plaintiffs are likely to uncover relevant facts in discovery. "Where the existence of a rational basis for legislation whose constitutionality is attacked depends upon facts beyond the sphere of judicial notice, such facts may properly be made the subject of judicial inquiry." *United States v. Carolene Products, Co.*, 304 U.S. 144, 153 (1938); *see also Heller v. Doe*, 509 U.S. 312, 321 (1993) ("[E]ven the standard of rationality . . . must find some footing in the realities of the subject addressed by the legislation."); *Plyler v. Doe*, 457 U.S. 202, 228-29 (1982) (rejecting asserted rationale after noting that "[t]here is no evidence in the record" supporting it); *Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 464 (1981) ("[P]arties challenging legislation under the Equal Protection Clause may introduce evidence supporting their claim that it is irrational.").

"[E]ven in the ordinary equal protection case calling for the most deferential of standards, [the Court] insist[s] on knowing the relation between the classification adopted and the object to be attained." *Romer v. Evans*, 517 U.S. 620, 632 (1996). "By requiring that the classification bear a rational relationship to an independent and legitimate legislative end," courts "ensure that classifications are not drawn for the purpose of disadvantaging the group burdened by the law." *Id.* at 633; *see also United States v. Windsor*, 570 U.S. 744, 770 (2013); *U.S. Dep't of Agric. v. Moreno,* 413 U.S. 528, 534-35 (1973). Even when a law has an ostensibly legitimate purpose, "[t]he [government] may not rely on a classification whose relationship to an asserted goal is so attenuated as to render the distinction arbitrary or irrational." *City of Cleburne, Tex. v. Cleburne Living Center*, 473 U.S. 432, 446-47 (1985); *see also, e.g., Eisenstadt v. Baird,* 405 U.S. 438, 448-49 (1972) (invalidating contraceptive ban for unmarried persons on rational basis review because "the effect of the ban on distribution of contraceptives to unmarried persons has at best a marginal relation to the" objective of deterring premarital sex); *Talbott v. United States*, ____ F.4th ____, 2026 WL 1532205, at *17 (D.C. Cir. June 1, 2026) (Wilkins, J., controlling opinion on this point) (government classifications that are "'divorced from any factual context from which we c[an] discern a relationship to legitimate state interests'" violate equal protection) (quoting *Romer*, 517 U.S. at 635).

Consistent with these principles, if BOP categorically bans a treatment that it knows is improving the health of some of its patients without causing any countervailing harms for BOP, that is not rationally related to any conceivable government interest. Therefore, discovery regarding whether the contested care has improved the health of some people in BOP custody, whether BOP officials knew about this fact, and whether the provision of the care caused any

15

security or other concerns during the many years that the former policy was in place, is relevant to whether the new policy rationally furthers any legitimate government interest.

The Supreme Court has also explained that an asserted justification for a government policy does not survive even rational basis review when the same purported concern applies to other groups that are not similarly targeted by the government. *Cleburne*, 473 U.S. at 449-50 (striking down a zoning law prohibiting homes for developmentally disabled adults under rational basis review after rejecting government's asserted concerns about flooding and density because those rationales failed to explain the decision to single out this one group while allowing other multiple-resident facilities that presented the same concerns). Here, Plaintiffs need to conduct discovery into whether BOP categorically denies medically necessary treatment for other medical conditions, and if so, for what reasons, which would be relevant to Plaintiffs' equal protection claim.

Finally, the Supreme Court has applied "careful consideration" rational basis review when there is reason to suspect that a classification was motivated by animus. *Windsor,* 570 U.S. at 770 ("In determining whether a law is motivated by an improper animus or purpose, discriminations of an unusual character especially require careful consideration.") (cleaned up); *Lawrence v. Texas,* 539 U.S. 558, 580 (2003) (O'Connor, J., concurring in the judgment) ("When a law exhibits such a desire to harm a politically unpopular group, we have applied a more searching form of rational basis review to strike down such laws under the Equal Protection Clause."); *Vance v. Bradley,* 440 U.S. 93, 97 (1979) (rational basis review is deferential "absent some reason to infer antipathy"). Accordingly, discovery into the motivations behind BOP's new policy and the EO may lead to evidence relevant to Plaintiffs' equal protection claim. And the D.C. Circuit has recently recognized that the Trump Administration has adopted policies that are based on invidious discrimination against transgender people. *See Talbott*, 2026 WL 1532205, at *17 (Wilkins, J.,

16

controlling opinion on this point) ("we have direct evidence in this case that animus motivated the classifications in the [transgender military ban policy]"). Accordingly, discovery into the motivations behind BOP's new policy and the EO may lead to evidence relevant to Plaintiffs' equal protection claim.

### III.    Defendants Fail To Show that the Administrative Record Entitles them to Summary Judgment on Plaintiffs' APA Arbitrary and Capricious Claim.

Defendants' arguments for summary judgment on Plaintiffs' APA arbitrary and capricious claim fails for the reasons identified by this Court in its June 17, 2026 decision granting Plaintiffs' motion for an updated preliminary injunction on the ground that "Plaintiffs are likely to succeed on the merits of their APA claim." ECF 216 at 15. Plaintiffs also incorporate in full and by reference their arguments on their APA arbitrary and capricious claim in their motion for an updated preliminary injunction, ECF 179-1 at 33-42, and in their Reply, ECF 194 at 20-23. In short, as this Court determined, BOP failed to follow the APA standard of review, which requires that agencies engage in "reasoned decisionmaking," *S. Cal. v. U.S. Postal Serv.*, 134 F. Supp. 3d 311, 316, 319-27 (D.D.C. 2015), because it entirely failed to consider evidence about its experience under its prior policy and practice of providing gender-affirming care for years before the EO, and the materials it relied on are facially deficient and instead show that the Program Statement was preordained and pretextual. *See Motor Vehicle Manufacturers Ass'n of the United States, Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (agency action is arbitrary and capricious if agency "entirely failed to consider an important aspect of the problem"); *see also* ECF 216 at 17-25 (holding that Plaintiffs are likely to succeed on the merits of their APA arbitrary and capricious claim because "the government failed to seriously consider its own experience providing gender-affirming care to inmates for years under its prior policy" (*id.* at 21), "the Program Statement does not follow from the evidence in the record," (*id.* at 23), and "the Program

17

Statement appears to be pretextual," (*id.* at 25)).Defendants' argument for summary judgment independently fails because the administrative record is insufficient such that Plaintiffs are entitled to seek supplementation of the administrative record and/or extra-record discovery for purposes of their APA arbitrary and capricious claim. Plaintiffs will seek this relief in a separate motion, where they will explain in greater detail their bases for seeking such relief. For purposes of Defendants' pre-discovery motion for summary judgment, it suffices not only that their administrative record fails to support their argument but also that the administrative record they have produced is inadequate. This Court held as much in an earlier case that also involved APA and non-APA claims for relief. In *America First Legal Foundation v. Cardona*, 630 F. Supp. 3d 170 (D.D.C. 2022), this Court denied summary judgment where the case "never proceeded to discovery" and where—like here—the defendants relied on declarations on which the plaintiffs did not yet have a chance to take discovery. *Id.* at 186-87 ("[I]t would be unfair to rely on that declaration to grant summary judgment to defendants on the mandamus claims since plaintiffs have not had a chance to take discovery.").

Defendants tacitly admit that additional evidence is needed; in arguing for summary judgment on Plaintiffs' arbitrary and capricious claim, Defendants submit and rely on a declaration from BOP's Medical Director (Dr. Elizabete Stahl) that is not in the administrative record, *see* ECF 216 at 20-21 (noting that Dr. Stahl's declaration does not appear in the administrative record), and on which Plaintiffs have not yet been able to take any discovery, even though at a minimum they are entitled to depose Defendants' declarants and obtain the documents on which they relied to form their opinions. *See Sirmans v. Caldera*, 27 F. Supp. 2d 248, 251 (D.D.C. 1998) (where defendant relied on affidavits outside the administrative record in their motion for summary judgment, stating that "[t]he defendant simply cannot have it both ways" and holding that

18

"Plaintiffs are entitled to discovery relating to all materials outside of the administrative record on which defendant relies in its motion for summary judgment"). Defendants' argument for summary judgment as to Plaintiffs' APA arbitrary and capricious claim therefore independently fails for the insufficiency of the administrative record and lack of discovery at this stage.

IV.   **Defendants Fail To Show that Plaintiffs' Rehabilitation Act Claim Fails as a Matter of Law.**

Defendants make three arguments with respect to Plaintiffs' claim under Section 504 of the Rehabilitation Act of 1973. First, they contend that Plaintiffs cannot bring a claim under Section 504 because it does not imply a private right of action. Second, they argue that gender dysphoria is not a qualifying disability within the meaning of the Rehabilitation Act. And third, they argue that Plaintiffs' claim fails on the merits because BOP has not treated Plaintiffs differently because of their disability. Each argument fails.

A.   **Section 504 of the Rehabilitation Act is enforceable because it implies a private right of action.**

As this Court recently held in another case, "[t]he Rehabilitation Act's text and structure create a private cause of action." *Nat'l Ass'n of the Deaf v. Trump*, 808 F. Supp. 3d 150, 158–60 (D.D.C. 2025). The statutory provision on which Plaintiffs rely contains quintessential rights-creating language: it states that "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination . . . under any program or activity conducted by any Executive agency." 29 U.S.C. § 794(a). The Supreme Court has held that such language creates a private cause of action. *See, e.g.*, *Cannon v. Univ. of Chicago*, 441 U.S. 677, 689-90 (1979); *Alexander v. Sandoval*, 532 U.S. 275, 288 (2001) (explaining that the "'rights-creating' language" was "critical to the Court's analysis in *Cannon*"). It therefore is unsurprising that both Judge Ali and Chief Judge

19

Boasberg have held that Section 504 implies a private right of action. *Nat'l Ass'n of the Deaf*, 808 F. Supp. 3d at 153, 160 (Ali, J.); *Nat'l Ass'n of the Deaf v. Trump*, 486 F. Supp. 3d 45, 53–57 (D.D.C. 2020) (Boasberg, C.J.).[2]

Defendants' argument to the contrary relies on an *expressio-unius* inference premised on the fact that Section 504 provides express remedies to enforce its prohibition of discrimination against federal agencies acting as employers and against recipients of federal funds, but not against federal programs conducted by federal agencies, as here. ECF 186 at 37-39. Specifically, Section 505 of the Rehabilitation Act provides that the "remedies, procedures, and rights" available under Title VII and Title VI shall be available to individuals who bring Section 504 claims against the federal government as an employer and against recipients of federal funding, respectively. 29 U.S.C. § 794(a)(1)-(2). Judge Ali persuasively determined last November that Defendants' inference "is not apt . . . for two reasons." *Nat'l Ass'n of the Deaf*, 808 F. Supp. 3d at 160–61. First, there is an "obvious reason" for Congress's omission of an express remedy for claims against federal agencies that discriminate in their own programs: "the statutory schemes section 505 incorporated from Title VII and Title VI are schemes that address discrimination by employers and by federal funding recipients, respectively; they do not apply to discrimination in government

---

[2] Although Judge McFadden found otherwise in *Mathis v. United States Parole Comm'n*, 749 F. Supp. 3d 8 (D.D.C. 2024), as explained in greater detail below, *infra* pp. 22-25, he nonetheless held that Section 504 was judicially enforceable under the Court's inherent equitable authority. *Mathis*, 749 F. Supp. 3d at 17. Judge Moss's decision in *SAI v. Dep't of Homeland Sec.*, 149 F. Supp. 3d 99 (D.D.C. 2015), does not help Defendants here: the plaintiff in *SAI* challenged the U.S. Department of Homeland Security's handling of administrative complaints about disability discrimination, not disability discrimination itself; in fact, the government in *SAI* argued that "Section 504 implies a private right of action to sue for injunctive relief in federal court for violations of that section that is not dependent on administrative exhaustion," *Nat'l Ass'n of the Deaf*, 486 F. Supp. 3d at 55 (quoting government's reply in support of motion to dismiss in *SAI*). Judge Moss therefore reached his conclusion in the context of deciding that "the cause of action [in the circumstances of that case] arises under the APA." 149 F. Supp. 3d at 113.

programming." *Id.* at 160-61. Second, their argument "overlooks that, in addition to expanding remedies for certain violations of the statute, Congress specified that attorney's fees would be available in 'any action or proceeding to enforce or charge a violation of a provision of this subchapter.'" *Id.* at 161 (quoting 29 U.S.C. § 794a(b)).

The cases Defendants rely on are non-binding and inapposite. The cases they cite concern regulatory challenges,[3] and in at least one of them, the plaintiffs could bring claims under the APA, *SAI v. Dep't of Homeland Sec.*, 149 F. Supp. 3d 99, 112, 115 (D.D.C. 2015), which Plaintiffs already have here in addition to their freestanding Rehabilitation Act claim. ECF 182 (Suppl. Compl.) Count 4, ¶ 199 (alleging Program Statement is in excess of BOP's "statutory authority or short of statutory right and not in accordance with law because it violates the Rehabilitation Act"). Defendants do not dispute that this Court has authority to adjudicate Plaintiffs' Rehabilitation Act claim under the APA. Nor do the cases Defendants cite in support of their assertion that "if Congress intends to create a private right of action, it should expressly do so in the statute," ECF 186 at 37, apply in this case. The primary case Defendants rely on, *Ziglar v. Abassi*, 582 U.S. 120 (2017), concerned the categorically different context of claims for *money damages* rather than *injunctive relief*, as here. *Abbassi* dealt with the now-"disfavored" *Bivens* doctrine to recognize implied rights of action for money damages, not equitable relief. *Abassi*, 582 U.S. at 131 (referring to *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1999)). This distinction is

---

[3] *See Nat'l Ass'n of the Deaf*, 486 F. Supp. 3d at 56 (distinguishing *Cousins v. Sec'y of the U.S. Dep't of Transp.*, 880 F.2d 603 (1st Cir. 1989) and *Clark v. Skinner*, 937 F.2d 123, 125–27 (4th Cir. 1991), two of the cases Defendants cite, on the ground that they "dealt with Executive agencies' acting as a regulator, as opposed to in a substantive capacity"). The court in *Moya v. U.S. Dep't of Homeland Sec.*, 975 F.3d 120 (2d Cir. 2020), likewise held that the Rehabilitation act did not imply a private right of action "against executive agencies as regulators," *id.* at 128, and *Doe v. Spahn*, 2025 WL 1305360 (D.D.C. May 6, 2025), dealt with "internal guidelines" employed by the Peace Corps and individual determinations by the agency, where Judge Nichols held that plaintiffs could challenge their individual denials under the APA, *id.* at *1, 5.

21

important because there are different sets of "concerns" that manifest "when the judicial inquiry comes in the context of a claim seeking money damages rather than a claim seeking injunctive or other equitable relief." *Abbasi*, 582 U.S. at 142. The claims are also historically different: as discussed in greater detail below, unlike money damages claims, there is a long history, tracing back to England, showing that there is no need for a cause of action—express or implied—for individuals to seek equitable relief against government officials for violating federal law. *See Mathis v. U.S. Parole Comm'n*, 749 F. Supp. 3d 8, 24 (D.D.C. 2024) (distinguishing *Abbassi* from plaintiffs' claim for injunctive relief under Section 504 on the ground that *Abbassi* "only addressed the judiciary's power to create and enforce a cause of action for damages against federal officials in order to remedy a constitutional violation" and "[i]ts talk of damages for constitutional violations does not disturb the long history of equitable remedies available for violations of federal law by federal officials") (cleaned up).

Defendants accordingly fail to show that Plaintiffs lack an implied right of action under the Rehabilitation Act.

### B.    Alternatively, Section 504 of the Rehabilitation Act is enforceable under this Court's inherent equitable power to enjoin violations of federal law.

Alternatively, even if this Court were to adopt Defendants' contention that the Rehabilitation Act does not imply a private right of action, the Court has authority under its inherent equitable power to enjoin violations of federal law. The Supreme Court confirmed this in *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320 (2015). Writing for the Court with no dissent on this point, Justice Scalia held that "federal courts may in some circumstances grant injunctive relief against state [and federal] officers who are violating, or planning to violate, federal law" even in the absence of a private right of action. *Id.* at 326. Such equitable authority "reflects a long history of judicial review of illegal executive action, tracing back to England" and "is a

22

judge-made remedy." *Id.* at 327. Indeed, history shows that no statutory cause of action is needed to invoke a court's equity jurisdiction. *See* Samuel Bray & Paul Miller, *Getting into Equity*, 97 Notre Dame L. Rev. 1763, 1798-99 (2022); *id.* at 1774 ("A plaintiff might have a statutorily specified right to sue in equity, but no one would ever have thought that she had to have a statutorily specified right. Equity was in the background, and it was always there.").

Although this equitable power "is subject to express and implied statutory limitations," *Armstrong*, 575 U.S. at 327, no such express or implied limitation exists here. A statute "should not [be] construe[d] . . . to displace courts' traditional equitable authority absent the 'clearest command,' or an 'inescapable inference' to the contrary." *Miller v. French*, 530 U.S. 327, 340 (2000) (quoting, in turn, *Califano v. Yamasaki*, 442 U.S. 682, 705 (1979), and *Porter v. Warner Holding Co.*, 328 U.S. 395, 398 (1946)). Nothing in the text or scheme of the Rehabilitation Act suggests that Congress intended to preclude judicial review of Plaintiffs' Rehabilitation Act claim.

Defendants do not argue that the Rehabilitation Act expressly precludes judicial review of Plaintiffs' claim. The Supreme Court has recognized two instances in which a statute implicitly precludes equitable review: (1) where there is "a detailed and exclusive remedial scheme," *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 647 (2002), and (2) where the statute provides an alternative remedy **and** the right at issue is "judicially unadministrable," *Armstrong*, 575 U.S. at 328. As Judges Ali and McFadden held, no such implicit preclusion exists here. *Nat'l Ass'n of the Deaf*, 808 F. Supp. at 162; *Mathis*, 749 F. Supp. 3d at 24. There is no detailed and exclusive remedial scheme for Plaintiffs' claim: if this Court determines that there is no implied right of action under the Rehabilitation Act, Congress would have prescribed no remedy at all for Plaintiffs, much less an "exclusive" one that would render enforcement via courts' inherent equitable power "inconsistent with" a "'detailed'" and "limited" "'remedial scheme'" that "Congress had

23

prescribed." *Verizon Md.*, 535 U.S. at 647 (emphasis added) (quoting *Seminole Tribe v. Florida*, 517 U.S. 44 (1996)). Even though Plaintiffs have a claim under the APA, the APA is nothing like the statute in *Seminole Tribe*—one of the few examples where a statute provided such intricate and exclusive procedures as to reflect Congressional intent to displace courts' traditional equitable powers. The Indian Gaming Regulatory Act at issue in *Seminole Tribe* contained an "intricate enforcement scheme" under which a tribe and a state at odds over a tribal gaming regulation would submit dueling proposals to a mediator and then, if the state did not accept the mediator's chosen proposal, the Secretary of the Interior would prescribe rules. *See id.* at 50. The APA, by contrast, "do[es] not limit or repeal additional requirements imposed by statute or otherwise recognized by law." 5 U.S.C. § 559. Indeed, the Supreme Court has relied on its inherent equitable power to enjoin ultra vires action even where the APA was available as an alternative. *See Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 585 (1952); *see also* Jonathan R. Siegel, *Suing the President: Nonstatutory Review Revisited*, 97 Colum. L. Rev. 1612, 1666 (1997) ("Nothing in the APA purports to be exclusive or suggests that the creation of APA review was intended to preclude any other applicable form of review.").

The second path does not apply here either. For that path, *Armstrong* requires both an alternative remedy **and** that the right at issue be judicially unadministrable. 575 U.S. at 328 (holding that an alternative remedy "might not, *by itself*, preclude the availability of equitable relief . . . [b]ut it does so when combined with the judicially unadministrable nature of [the statute's] text"). To be judicially unadministrable, the statutory right must be sufficiently "broad[]" such that it imposes a "judgment-laden standard" and one for which Congress would want to "make the agency remedy that it provided exclusive" to achieve "expertise, uniformity," and other such benefits. *Id.* (cleaned up). At a minimum, here, the right Plaintiffs seek to enforce is not judicially

unadministrable. It is not like the Medicaid Act provision at issue in *Armstrong*, which required states that offer a particular healthcare service to "provide such methods and procedures" regarding "utilization" and "payment" as "necessary to safeguard against unnecessary utilization of such care and services and to assure that payments are consistent with efficiency, economy, and quality of care and are sufficient to enlist enough providers." 42 U.S.C. § 1396a(a)(30)(A), quoted in *Armstrong*, 575 U.S. at 323. The Court found this requirement "judicially unadministrable" because "[i]t is difficult to imagine a requirement broader and less specific." *Armstrong*, 575 U.S. at 328. By contrast, the Rehabilitation Act's prohibition on disability discrimination is neither too broad nor nonspecific for judicial enforcement—as reflected in the regular enforcement of the Rehabilitation Act (regardless of the precise cause of action invoked) in this Circuit. *See, e.g.*, *Nat'l Ass'n of the Deaf*, 808 F. Supp. at 167 (granting preliminary injunction to enforce the Rehabilitation Act against executive agencies for failing to provide American Sign Language interpretation during White House press briefings); *Mathis*, 749 F. Supp. 3d 8, 26 (D.D.C. 2024) (granting preliminary injunction to enforce the Rehabilitation Act against federal officials who failed to accommodate supervisees with disabilities); *Am. Council of the Blind v. Paulson*, 463 F. Supp. 2d 51, 63 (D.D.C. 2006) (enforcing the Rehabilitation Act against the Secretary of the Treasury for discrimination as to currency design), *aff'd*, 525 F.3d 1256 (D.C. Cir. 2008); *Lane v. Pena*, 867 F. Supp. 1050, 1074-75 (D.D.C. 1994) (granting injunction against the U.S. Merchant Marine Academy for violating the Rehabilitation Act), *vacated in part on other grounds as explained in Lane v. Pena*, 518 U.S. 187, 190 (1996).

Thus, even if this Court were to agree with Defendants on their implied right of action argument, it can enforce Section 504 of the Rehabilitation Act pursuant to its inherent equitable power, as two Judges of this Court have already determined.

      C.      **Defendants fail to show that gender dysphoria is not a qualified disability within the meaning of the Rehabilitation Act.**

Defendants' other arguments attack Plaintiffs' Rehabilitation Act claim on the merits. First, they contend that Plaintiffs' claim fails because gender dysphoria is not a disability protected by the Rehabilitation Act. ECF 186 at 39-41. Defendants' only basis for their assertion is that the Rehabilitation Act excludes from its definition of "individual with a disability" certain conditions such as "*gender identity disorders* not resulting from physical impairments." *Id.* at 39 (quoting 29 U.S.C. § 705(20)(F)(i)).

The Fourth Circuit has persuasively rejected Defendants' argument in the context of a discrimination claim under the Americans with Disabilities Act ("ADA"), which Defendants admit is textually similar to the Rehabilitation Act and Defendants acknowledge that "courts rely on cases construing these provisions [in the ADA and the Rehabilitation Act] 'interchangeabl[y].'" *Id.* at 39 (citation omitted) (alteration in original). In *Williams v. Kincaid*, the Fourth Circuit acknowledged that "the ADA excludes from its protection anything falling within the plain meaning of 'gender identity disorders,' as that term was understood 'at the time of its enactment.'" 45 F.4th 759, 769 (4th Cir. 2022). It nevertheless concluded that "nothing in the ADA, then or now, compels the conclusion that gender dysphoria constitutes a 'gender identity disorder' excluded from ADA protection" and that "as a matter of statutory construction, gender dysphoria is not a gender identity disorder." *Id.* This is because when the ADA was adopted in 1990, "the medical community did not acknowledge gender dysphoria either as an independent diagnosis or as a subset of any other condition," even though it did "recognize a class of other disorders that it characterized as 'gender identity disorders.'" *Id.* at 767. The then-current version of the Diagnostic and Statistical Manual of Mental Disorders (DSM) stated that the "essential feature" of a gender identity disorder was "an incongruence between assigned sex (i.e., the sex that is recorded on the birth certificate) and gender

26

identity," defining the "clinical problem" as the "discordant gender identity." *Id.* (citations omitted). Although the DSM included "persistent and recurrent discomfort and a sense of inappropriateness about one's assigned sex" as a symptom of a gender identity disorder, ECF 186 at 40, key to the definition of a gender identity disorder was that it "marked being transgender as a mental illness." *Williams*, 45 F.4th at 767.

In 2013, the American Psychiatric Association ("American Psych. Ass'n") removed "gender identity disorders" from the DSM and added the diagnosis of "gender dysphoria," which is defined by the "clinically significant distress" an individual suffers when they experience "an incongruence between their gender identity and their assigned sex," ***not*** by the incongruence itself. *Id.* Contrary to Defendants' contention, gender dysphoria is not "simply a subset of gender identity disorders." ECF 186 at 40. As the Fourth Circuit explained:

> [T]he [American Psych. Ass'n's] removal of the "gender identity disorder" diagnosis and the addition of the "gender dysphoria" diagnosis to the DSM-5 reflected a significant shift in medical understanding. The obsolete diagnosis focused solely on cross-gender identification; the modern one on clinically significant distress. The DSM-5 itself emphasizes this distinction, explaining that the gender dysphoria diagnosis "focuses on dysphoria as the clinical problem, not identity per se." DSM-5 at 451. Put simply, while the older DSM pathologized the very existence of transgender people, the recent DSM-5's diagnosis of gender dysphoria takes as a given that being transgender is not a disability and affirms that a transgender person's medical needs are just as deserving of treatment and protection as anyone else's.

*Williams*, 45 F.4th at 769. In sum, incongruence between an individual's assigned sex and gender identity does not qualify an individual for a diagnosis of gender dysphoria as it could for a gender identity disorder diagnosis under earlier versions of the DSM—and that difference demonstrates that the Rehabilitation Act's exclusion of "gender identity disorders not resulting from physical impairments" does not cover gender dysphoria. 29 U.S.C. § 705(20)(F)(i). Defendants' only other argument, that the exclusion of "other sexual behavior disorders" applies, fails for the same reason:

27

Defendants may wish gender dysphoria were considered a sexual behavior disorder, but the medical community, the American Psych. Ass'n, and DSM disagree, and it is those sources whose definition counts, not Defendants' political or personal convictions.

> **D.    Defendants fail to show the absence of a genuine issue of material fact as to the merits of Plaintiffs' Rehabilitation Act claim.**

Lastly, Defendants contend that Plaintiffs lose on the merits because, in their view, they are not treating Plaintiffs differently from other individuals in BOP custody on the basis of their disability. Instead, they assert that "BOP will not be providing certain treatment to Plaintiffs because BOP has determined that those interventions are not medically necessary to address gender dysphoria." ECF 186 at 40-41. Defendants' argument rests on a genuine issue of material fact that is strongly contested between the parties: whether hormone therapy and social accommodations are medically necessary to address gender dysphoria. Plaintiffs' evidence that is already before this Court with respect to the pending motion for an updated preliminary injunction demonstrates that it is, and Plaintiffs will be able to bolster that evidence with the benefit of discovery, which has not yet occurred. Because Defendants fall far short of meeting their burden to establish that hormone therapy and social accommodations are not medically necessary, this Court should deny summary judgment in Defendants' favor. *See, e.g.*, *Cano v. S.C. Dep't of Corr.*, 2025 WL 2919054, at *28 (D.S.C. June 16, 2025), *report and recommendation adopted in part, rejected in part*, 2025 WL 2608137 (D.S.C. Sept. 9, 2025) (denying summary judgment in favor of South Carolina Department of Corrections on plaintiff's Rehabilitation Act claim because there was a "genuine issue of fact as to whether hormone therapy is medically necessary for [p]laintiff" and "[a] reasonable factfinder could find that SCDC discriminates against [p]laintiff on the basis of her gender dysphoria by requiring her to pay for care that is medically necessary, while providing the same care (hormone therapy) to other inmates who do not have gender dysphoria, without

28

requiring them to pay for it").

**V.    Defendants' Motion To Stay Discovery Pending Disposition of Their Motion for Summary Judgment Should Be Denied.**

Defendants' motion to stay discovery should be denied because they lack good cause for such a stay. The "decision whether to stay discovery is committed to the sound discretion of the district court judge" and "[a] court deciding a contested motion to stay 'must weigh competing interests and maintain an even balance.'" *United States v. Honeywell Int'l, Inc.*, 20 F. Supp. 3d 129, 131 (D.D.C. 2013) (quoting, in turn, *White v. Fraternal Order of Police,* 909 F.2d 512, 517 (D.C. Cir. 1990) and *Bridgeport Hosp. v. Sebelius,* 2011 WL 862250, at *1 (D.D.C. Mar. 10, 2011)). The party moving for the stay "bears the burden of establishing its need," *Clinton v. Jones*, 520 U.S. 681, 708 (1997), and "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to some[one] else," *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936).

Defendants fail to meet their burden. Their efficiency arguments depend on them winning their motion for summary judgment, which they cannot in part because no discovery has occurred yet. Defendants cannot reasonably dispute the existence of genuine issues of material fact with respect to Plaintiffs' claims, including on a key factual question that the parties strongly dispute: whether gender-affirming healthcare, specifically hormone therapy and social accommodations, is medically necessary to treat gender dysphoria for some people. Defendants do not identify any specific efficiency or justice gains that would result by further delaying Plaintiffs from being able to obtain the further evidence they require for final judgment on their claims. The undue prejudice a stay of discovery would cause Plaintiffs is exacerbated by the lengthy delay in Plaintiffs' ability to obtain discovery at all—it has been almost a year since Plaintiffs first began discussing discovery with Defendants, this Court issued its discovery schedule order on April 3, 2026, due to

29

Defendants' refusal to engage in any discovery or provide an administrative record; and Defendants have still not responded to Plaintiffs' discovery requests.

Conversely, proceeding with discovery while this Court decides Defendants' motion for summary judgment will not harm Defendants. Plaintiffs served their first set of discovery requests on Defendants on April 21, and Defendants have had ample time to respond—surpassing the 30-day default deadline under the Federal Rules of Civil Procedure. Defendants' concerns related to Executive privilege assertions for some of Plaintiffs' discovery requests may appropriately be addressed in the context of a motion for a protective order or discovery disputes raised with the Court if the parties are unable to resolve these issues on their own—not in the context of Defendants' motion to stay discovery. They do not supply good cause for this Court to stay discovery all together while it decides Defendants' motion.

## CONCLUSION

This Court should deny Defendants' motion for summary judgment and motion to stay discovery pending resolution of their motion for summary judgment. Proposed orders for each motion are attached.

Dated: June 17, 2026

Respectfully submitted,

David C. Fathi† (*pro hac vice*)
Maria V. Morris, D.C. Bar No. 1697904
Elisa C. Epstein† (*pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th Street, N.W.
Washington, D.C. 20005
Tel: 202-393-4930
dfathi@aclu.org
mmorris@aclu.org
eepstein@aclu.org

       /s/ Aditi Shah
Aditi Shah, D.C. Bar No. 90033136
Michael Perloff, D.C. Bar No. 1601047
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF THE DISTRICT OF
COLUMBIA
529 14th Street NW, Suite 722
Washington, D.C. 20045
Tel: 202-457-0800
ashah@acludc.org
mperloff@acludc.org

Corene T. Kendrick (*pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION

Shawn Thomas Meerkamper (*pro hac vice*)
Megan Z. F. Noor (*pro hac vice*)

30

FOUNDATION
425 California St., Ste. 700
San Francisco, CA 94104
Tel: 202-393-4930
ckendrick@aclu.org

Li Nowlin-Sohl* (*pro hac vice*)
Leslie Cooper (*pro hac vice*)
Shana Knizhnik, DDC Bar ID 120840
James D. Esseks (*pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel: 212-549-2500
lnowlin-sohl@aclu.org
lcooper@aclu.org
sknizhnik@aclu.org
jesseks@aclu.org

Dale Melchert (*pro hac vice*)
TRANSGENDER LAW CENTER
P.O. Box 70976
Oakland, CA 94612
Tel: 510-587-9696
shawn@transgenderlawcenter.org
megan@transgenderlawcenter.org
dale@transgenderlawcenter.org

Lynly S. Egyes (*pro hac vice*)
TRANSGENDER LAW CENTER
594 Dean Street, Suite 11
Brooklyn, NY 11238
Tel: 510-587-9696
lynly@transgenderlawcenter.org

* *Not admitted in New York*
† *Not admitted in D.C.; practice limited to federal courts*

*Counsel for Plaintiff class**

---

* Counsel wish to express their appreciation to ACLU paralegal Samantha Weaver, ACLU intern Alanna Goldstein, and Transgender Law Center intern Sophia Caranicas for their assistance in the preparation of this brief.