**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

ALISHEA KINGDOM, *et al.*,

Plaintiffs,

v.

DONALD J. TRUMP, *et al.*,

Defendants.

Civ. A. No. 25-691 (RCL)

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

I.    The Court Lacks Jurisdiction Over Plaintiffs' Claims Challenging the 2025
      Memoranda and EO 14,168 ................................................................................................3

II.   The 2026 Policy Complies with the Eighth Amendment ...............................................6

III.  The 2026 Policy Complies with the APA.........................................................................8

IV.   The 2026 Policy Complies with Equal Protection .......................................................11

V.    Plaintiffs' Rehabilitation Act Claim Fails......................................................................13

CONCLUSION.............................................................................................................................14

## TABLE OF AUTHORITIES

**CASES**

*Anderson v. Crouch*,
169 F.4th 474 (4th Cir. 2026),
*r'hg en banc denied by* No. 22-1927, 2026 WL 1782288 (4th Cir. May 29, 2026) ...................................12

*Armstrong v. Exceptional Child Center, Inc.*,
575 U.S. 320 (2015) .........................................................................................................................13

*Associated Builders & Contractors E. Pa. Chapter Inc v. Cnty. of Northampton*,
808 F. App'x 86 (3d Cir. 2020) ........................................................................................................12

*Bldg. & Constr. Trades Dep't, AFL-CIO v. Allbaugh*,
295 F.3d 28 (D.C. Cir. 2002) ...............................................................................................................5

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) .............................................................................................................................3

*Clifford v. Pena*,
77 F.3d 1414 (D.C. Cir. 1996) .................................................................................................... 10, 11

*Cmty. for Creative Non-Violence v. Lujan*,
908 F.2d 992 (D.C. Cir. 1990) .............................................................................................................3

*Collins v. Yellen*,
594 U.S. 220 (2021) .............................................................................................................................9

*Convertino v. U.S. Dep't of Just.*,
684 F.3d 93 (D.C. Cir. 2012) ...............................................................................................................2

*Crete Carrier Corp. v. E.P.A.*,
363 F.3d 490 (D.C. Cir. 2004) .............................................................................................................5

*CTS Corp. v. EPA*,
759 F.3d 52 (D.C. Cir. 2014) ...............................................................................................................3

*Davis v. District of Columbia*,
925 F.3d 1240 (D.C. Cir. 2019) ...........................................................................................................2

*Delta Const. Co. v. E.P.A.*,
783 F.3d 1291 (D.C. Cir. 2015) ...........................................................................................................5

*Dep't of Com. v. New York*,
588 U.S. 752 (2019) .............................................................................................................................9

*Doe v. Blanche*,
   172 F.4th 901 (D.C. Cir. 2026)...................................................................................................8

*Doe v. Northrop Grumman Sys. Corp.*,
   418 F. Supp. 3d 921 (N.D. Ala. 2019)......................................................................................14

*DSSC v. Trump*,
   --- F. Supp. 3d ----, 2026 WL 1487833 (D.D.C. May 28, 2025),
   *appeal filed* No. 26-5193 (D.C. Cir. June 4, 2026).....................................................................4

*Duncan v. Jack Henry Assocs., Inc.*,
   617 F. Supp. 3d 1011 (W.D. Mo. 2022)....................................................................................13

*F.C.C. v. Beach Commc'ns, Inc.*,
   508 U.S. 307 (1993)..........................................................................................................11, 12, 13

*F.C.C. v. Prometheus Radio Project*,
   592 U.S. 414 (2021)...................................................................................................................10

*Forest Cnty. Potawatomi Cmty. v. United States*,
   330 F. Supp. 3d 269 (D.D.C. 2018)..........................................................................................10

*Franklin v. Massachusetts*,
   505 U.S. 788 (1992).....................................................................................................................3

*Free Speech Coal., Inc. v. Paxton*,
   606 U.S. 461 (2025)...................................................................................................................11

*Gibson v. Collier*,
   920 F.3d 212 (5th Cir. 2019).......................................................................................................6

*Hoffer v. Fla. Dep't of Corr.*,
   973 F.3d 1263 (11th Cir. 2020)...................................................................................................6

*Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*,
   284 F. Supp. 2d 15 (D.D.C. 2003).............................................................................................3

*Jagers v. Federal Crop Ins. Corp.*,
   758 F.3d 1179 (10th Cir. 2014)...................................................................................................9

*Kincaid v. Williams*,
   600 U.S. ---, 143 S. Ct. 2414 (2023).........................................................................................13

*Kosilek v. Spencer*,
   774 F.3d 63 (1st Cir. 2014).........................................................................................................6

*Lujan v. Defs. of Wildlife*,
   504 U.S. 555 (1992).....................................................................................................................4

*Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*,
 463 U.S. 29 (1983) ...............................................................................................................10

*Muscarello v. Ogle Cnty. Bd. of Comm'rs*,
 610 F.3d 416 (7th Cir. 2010) ................................................................................................12

*Nat'l Pub. Radio, Inc. ("NPR") v. Trump*,
 ---F. Supp. 3d ---, 2026 WL 877434 (D.D.C. 2026) .............................................................4

*Nat'l Ass'n of the Deaf v. Trump*,
 808 F. Supp. 3d 150 (D.D.C. 2025), *appeal filed*, No. 25-5401 (D.C. Cir. Nov. 13, 2025).................13

*Nat'l Urban League v. Trump*,
 783 F. Supp. 3d 61 (D.D.C. 2025) .........................................................................................4

*Newdow v. Roberts*,
 603 F.3d 1002 (D.C. Cir. 2010) .............................................................................................3

*Olivares v. Transp. Sec. Admin.*,
 819 F.3d 454 (D.C. Cir. 2016) ..................................................................................... 10, 11

*Parker v. Strawser Constr., Inc.*,
 307 F. Supp. 3d 744 (S.D. Ohio 2018) .................................................................................13

*Reno v. Flores*,
 507 U.S. 292 (1993) ........................................................................................................ 7, 8

*Sherley v. Sebelius*,
 644 F.3d 388 (D.C. Cir. 2011) ...............................................................................................7

*Sherley v. Sebelius*,
 689 F.3d 776 (D.C. Cir. 2012) ...............................................................................................9

*Sierra Club v. Costle*,
 657 F.2d 298 (D.C. Cir. 1981) ...............................................................................................9

*Swan v. Clinton*,
 100 F.3d 973 (D.C. Cir. 1996) ...............................................................................................3

*Texas v. E.P.A.*,
 726 F.3d 180 (D.C. Cir. 2013) ...............................................................................................5

*Transp. Div. of the Int'l Assoc. of Sheet Metal, Air, Rail & Transp. Workers v. Fed. R.R. Admin.*,
 10 F.4th 869 (D.C. Cir. 2021) ...............................................................................................3

*Trump v. Am. Fed'n Gov't Emps.*,
 606 U.S. ---, 145 S. Ct. 2635 (2025) ................................................................................ 4, 9

*Trump v. Hawaii,*
  585 U.S. 667 (2018) ..............................................................................................................12

*Trump v. Orr,*
  146 S. Ct. 44 (2025) .............................................................................................................12

*United States v. Salerno,*
  481 U.S. 739 (1987) ...............................................................................................................7

*United States v. Skrmetti,*
  605 U.S. 495 (2025) ................................................................................................. 1, 11, 12

*Wannall v. Honeywell, Inc.,*
  775 F.3d 425 (D.C. Cir. 2014) ..............................................................................................3

*West Virginia v. B.P.J.,*
  609 U.S. ----, 2026 WL 1868739 (June 30, 2026)........................................................... 1, 3, 6

*Williams v. Kincaid,*
  45 F.4th 759 (4th Cir. 2022)................................................................................................13

## STATUTES

29 U.S.C. § 705(20)(F)(i) .........................................................................................................13

## RULES

Fed. R. Civ. P. 1 .......................................................................................................................3

Fed. R. Civ. P. 56 ............................................................................................................. 1, 2, 4

## EXECUTIVE ORDERS

EO 13,202.................................................................................................................................5

EO 14,168.........................................................................................................................*passim*

"[T]he Judiciary must be cautious about swooping in and invalidating laws" that were enacted "under circumstances of 'medical and scientific uncertainty.'" *West Virginia v. B.P.J.*, 609 U.S. ----, 2026 WL 1868739, at *15 (June 30, 2026) (quoting *United States v. Skrmetti*, 605 U.S. 495, 522 (2025)). Rather, in circumstances of "serious debate and disagreement," courts should defer to "the considered policy judgments of the lawmakers who have scrutinized the medical evidence and scientific data before them[] and have made a reasoned decision." *Id.* For good reason: so long as there are "'open questions regarding basic factual issues before medical authorities and other regulatory bodies,' there is 'little basis for judicial responses in absolute terms.'" *Id.* (quoting *Skrmetti*, 605 U.S. at 525). Here, in this case involving "medical and scientific uncertainty" that has given rise to "serious debate and disagreement," the Court must heed the Supreme Court's holding, defer to BOP's "reasoned decision" set forth in the 2026 Policy, and enter judgment in Defendants' favor.

As Defendants demonstrated in their opening brief, Defs.' Mot. For Summ. J., ECF No. 187 ("Defs.' Mem."), Defendants are entitled to summary judgment because (1) Plaintiffs lack standing to challenge Executive Order (EO) 14,168 and even if they have standing, the Court lacks jurisdiction to enjoin EO 14,168; and (2) Plaintiffs' Eighth Amendment, Administrative Procedure Act (APA), Equal Protection, and Rehabilitation Act challenges to the 2026 Policy fail as a matter of law. Defs.' Mem. at 10–41. Moreover, Plaintiffs' challenges to the superseded implementing memoranda are moot, *id.* at 14, which Plaintiffs have conceded, Prelim. Inj. Reply, at 3 n.1, ECF No. 194.

Plaintiffs' primary argument in opposition is that Defendants' summary judgment motion is "premature" because discovery has not been completed. Pls.' Opp'n at 1, ECF No. 219. As Defendants explained in their reply in support of their motion to stay discovery, Defs.' Stay Reply, ECF No. 229, Plaintiffs' argument is unpersuasive. The timing of Defendants' motion is consistent with Federal Rule of Civil Procedure 56(b) ("a party may file a motion for summary judgment at any time until 30 days after the close of all discovery"). And while in a non-APA case, some pre-discovery summary judgment motions cannot be decided without factual development, Defendants have produced an extensive administrative record that allows the Court's resolution of Defendants' summary judgment motion not only as to the APA claims, but also the closely related constitutional

challenges to agency action.   Indeed, Plaintiffs acknowledge that the Court could proceed to decide the motion, *see* Pls.' Opp'n at 30, and choose to substantively respond to Defendants' motion without pursuing relief under Rule 56(d).  *See* Fed. R. Civ. P. 56(d) (permitting court to grant certain relief "[i[f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition [to summary judgment]); *see also Convertino v. U.S. Dep't of Just.*, 684 F.3d 93, 100–01 (D.C. Cir. 2012) (specifying the requisite contents of a Rule 56(d) declaration).  At bottom, when a party "fails to oppose summary judgment . . . with a Rule 56(d) declaration," Plaintiffs "forfeit[] any claim" that they need further discovery to respond.  *Davis v. District of Columbia*, 925 F.3d 1240, 1255 (D.C. Cir. 2019).

Further, the discovery that the Court permitted in this case, *see* ECF No. 163, is not necessary to decide Defendants' summary judgment motion.  The Court allowed discovery only into EO 14,168 and the 2025 implementing memoranda because Defendants did not produce an administrative record for the memoranda.  *Id.*  But Plaintiffs have abandoned their claims related to the 2025 implementing memoranda.   Prel. Inj. Reply, at 3 n.1.   And Defendants have raised substantial jurisdictional arguments with respect to Plaintiffs' challenge to EO 14,168, which should be decided before discovery proceeds on that claim given significant separation of powers concerns.  *See* Defs.' Mot. to Stay Disc., ECF No. 190; Defs.' Stay Reply.  Notably, the Court appropriately did not allow discovery into the 2026 Policy, which is the focus of Plaintiffs' Eighth Amendment challenge.  Instead, the Court ordered Defendants to file the administrative record, ECF No. 123, which Defendants did in March 2026, ECF No. 151.  It is thus misleading for Plaintiffs to claim that "many of [their discovery requests] relate to evidence that will further support Plaintiffs in proving their Eighth Amendment claim at final judgment."  Pls.' Opp'n at 11.

To the extent Plaintiffs hint future discovery into the 2026 Policy, the Court has already denied it, instead directing Defendants to file the administrative record.   ECF Nos. 123, 163.   In the intervening three months since Defendants produced the administrative record, Plaintiffs have not sought extra-record discovery, nor can they fit within the narrow exceptions to the record review rule. *See CTS Corp. v. EPA*, 759 F.3d 52, 64 (D.C. Cir. 2014); *Cmty. for Creative Non-Violence v. Lujan*, 908

F.2d 992, 997–98 (D.C. Cir. 1990); *see also Transp. Div. of the Int'l Assoc. of Sheet Metal, Air, Rail & Transp. Workers v. Fed. R.R. Admin.*, 10 F.4th 869, 878–79 (D.C. Cir. 2021) (agency's designation of the administration record is entitled to a "presumption of . . . regularity" and rejecting "allegations of bias" as basis to overcome presumption).

As the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1). Defendants' motion for summary judgment is thus ripe for disposition, and there being no dispute of any material facts, the Court should defer to BOP's "reasoned decision," *B.P.J.*, 2026 WL 1868739, at *15, and grant summary judgment in Defendants' favor as to all claims.

## I.     The Court Lacks Jurisdiction Over Plaintiffs' Claims Challenging the 2025 Memoranda and EO 14,168

Defendants explained in their opening brief that Plaintiffs lack standing to challenge the superseded 2025 memoranda implementing EO 14,168. Defs.' Mem. at 11–13, 14. Plaintiffs have since withdrawn their challenge to the memoranda. Prel. Inj. Reply, at 3 n.1.

Defendants also argued in their opening brief that, pursuant to *Franklin v. Massachusetts*, 505 U.S. 788, 827 (1992), the Court does not have jurisdiction to enjoin the EO itself. Defs.' Mem. at 1–2, 13. Plaintiffs do not respond to this argument and therefore the Court should treat it as conceded too. *E.g.*, *Wannall v. Honeywell, Inc.*, 775 F.3d 425, 428 (D.C. Cir. 2014); *Hopkins v. Women's Div., Gen. Bd. of Glob. Ministries*, 284 F. Supp. 2d 15, 25 (D.D.C. 2003). Indeed, Plaintiffs now state that they "seek only declaratory relief against the President," Pls.' Opp'n at 10, which is also not permitted, *see Newdow v. Roberts*, 603 F.3d 1002, 1012–13 (D.C. Cir. 2010); *Swan v. Clinton*, 100 F.3d 973, 976–77 n.1 (D.C. Cir. 1996); Defs.' Mem. at 13. In the end, Plaintiffs' attempt to enjoin enforcement of the EO is an attempt to enjoin BOP's implementation of the EO, and the agency action—here, the 2026 Policy—is the focus of judicial review.

3

*National Public Radio, Inc.* ("*NPR*") *v. Trump*, ---F. Supp. 3d ---, 2026 WL 877434 (D.D.C. 2026), is distinguishable, even assuming the ruling does not contravene separation of powers, which it does. Pls.' Opp'n at 9–10.  In *NPR*, an EO ended federal funding for NPR and PBS.  *NPR*, 2026 WL 877434, at *18.  The agencies had not taken any action to implement the EO.  *Id.*  Plaintiffs argued that it was the EO itself that was causing them harm and thus sought to enjoin enforcement of the EO.  *Id.*  The Court determined that the EO itself—regardless of agency implementation on a grant-by-grant basis—was injuring them because of the unlawful "loss of opportunity . . . guaranteed by statute."  *Id.*  In contrast, EO 14,168 never caused Plaintiffs the asserted harm in the first place because it merely provided policy directives to BOP, including the directive that any "implement[tion]" must be "consistent with applicable law," EO 14,168 § 8(b), and any alleged harm necessarily flows from BOP's action, *i.e.*, the 2026 Policy.  Unlike *NPR*, if BOP had not acted pursuant to the EO, then there would be no harm to Plaintiffs because the EO is not self-executing and requires implementation, which BOP did.  *See Trump v. Am. Fed'n Gov't Emps.*, 606 U.S. ---, 145 S. Ct. 2635, 2635 (2025); *DSSC v. Trump*, --- F. Supp. 3d ----, 2026 WL 1487833, at *5 (D.D.C. May 28, 2025) (finding no standing to challenge EO itself because it "'requires nothing from Plaintiffs . . . because it is not aimed at them but instead tells only the agencies to do something'" (quoting *Nat'l Urban League v. Trump*, 783 F. Supp. 3d 61, 79 (D.D.C. 2025)), *appeal filed* No. 26-5193 (D.C. Cir. June 4, 2026).

In addition to the flaws in Plaintiffs' response regarding the Court's jurisdiction over enjoining the EO, Plaintiffs improperly shifted the burden of proving standing to Defendants.  *See* Pls.' Opp'n at 8.  Plaintiffs "bear[] the burden of establishing the[] elements" of standing.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).  At the summary judgment stage, Plaintiffs must "set forth by affidavit or other evidence specific facts" establishing standing, including showing a causal connection between their asserted injury, such that the injury is "fairly traceable to the challenged action"; and that it is "likely, as opposed to merely speculative that the injury will be redressed by a favorable decision."  *Id.* at 555, 560–61 (citation modified).  The burden shifts to Defendants to show that "there is no genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), only if Plaintiffs can satisfy their initial burden of providing specific facts establishing standing.

4

Plaintiffs have not satisfied their burden of setting forth specific facts that EO 14,168 is causing them injury or that a favorable court decision will redress their asserted injury—namely the purportedly unlawful deprivation of "gender affirming" care. *See* Prel. Inj. Reply at 4–7; Pls.' Opp'n at 9–11.  EO 14,168 itself caused no harm.  Section 4(c) of EO 14,168 directs the Attorney General to "ensure that [BOP] revises its policies concerning medical care to be consistent with this order," and "that no Federal funds are expended for any medical procedure, treatment, or drug for the purpose of conforming an inmate's appearance to that of the opposite sex."  EO 14,168 § 4(c). Because the EO had to be "implemented consistent with applicable law," *id.* § 8(b), there is nothing inherently unlawful about the EO; just the opposite.  And even if the Court enjoined enforcement of the EO it would not redress Plaintiffs' injury because the 2026 Policy exists independently and will independently cause the asserted harm once it goes into effect.  Plaintiffs thus cannot establish causation or redressability as to EO 14,168.  *See Delta Const. Co. v. E.P.A.*, 783 F.3d 1291, 1296–97 (D.C. Cir. 2015) (per curiam); *Texas v. E.P.A.*, 726 F.3d 180, 198 (D.C. Cir. 2013) (holding that plaintiffs had no standing when they challenged an agency rule instead of the self-executing statute that was causing the purported harm); *Crete Carrier Corp. v. E.P.A.*, 363 F.3d 490, 494 (D.C. Cir. 2004) (no standing where entry of relief plaintiffs sought would not affect alleged harm because consent decree caused same injury as challenged rule).  Notably, Plaintiffs did not address any of this binding D.C. Circuit caselaw.

Plaintiffs attempt to distinguish the savings clause case, *Building & Construction Trades Department, AFL-CIO v. Allbaugh*, 295 F.3d 28, 33 (D.C. Cir. 2002), on the grounds that the EO in that case, EO 13,202, "lack[s] . . . clear commands" and thus the saving clause was relevant there but not here  Prelim Inj. Reply at 6–7.  Untrue.  EO 13,202 provides: "to the extent permitted by law, no federal agency, . . . may either require bidders or contractors to enter, or prohibit them from entering, into a project labor agreement." *Bld. & Constr. Trades Dep't, AFL-CIO*, 295 F.3d at 29.  This is precisely the same type of "command[]" as EO 14,168; it directs certain agency action so long as consistent with law.  And in any event, unlike the district court cases that Plaintiffs cite, Prelim. Inj. Mem. at 6, ECF No. 179-1, Plaintiffs cannot contend that the EO 14,168 savings clause was toothless; as

5

Defendants demonstrated the agency took care to ensure that the 2026 Policy complies with the Eighth Amendment and the APA, among other applicable laws.

In sum, Plaintiffs lack standing to challenge EO 14,168 and even if they have standing, the Court lacks jurisdiction to enjoin the EO.

## II.    The 2026 Policy Complies with the Eighth Amendment

Defendants demonstrated in their opening brief that Plaintiffs' Eighth Amendment claim fails as a matter of law because, pursuant to the 2026 Policy, BOP is not being deliberately indifferent to the medical needs of inmates with gender dysphoria, and, at most, there is a difference in opinion about the provision of medical care, which does not constitute an Eighth Amendment violation. Defs.' Mem. at 14–27.  Plaintiffs protest that there is a genuine issue of material fact as to whether the 2026 Policy is "better" than Plaintiffs' preferred "gender affirming" approach. Pls.' Opp'n at 12.  But under the Eighth Amendment, the relevant question is not which form of medical care is "better"; the Eighth Amendment "proscribes only medical care so unconscionable as to fall below society's minimum standards of decency." *Kosilek v. Spencer*, 774 F.3d 63, 96 (1st Cir. 2014) (en banc).  The care need not be "perfect, the best obtainable, or even very good." *Hoffer v. Fla. Dep't of Corr.*, 973 F.3d 1263, 1277 (11th Cir. 2020) (citation omitted).  Thus, if Defendants show that "a genuine debate exists within the medical community about the necessity or efficacy of ["gender affirming"] care," *Gibson v. Collier*, 920 F.3d 212, 220 (5th Cir. 2019), then Defendants are entitled to judgment as a matter of law because it necessarily shows that the medical care does not fall below the society's minimum standards of decency. *See* Defs.' Mem. at 14–27.  It is irrelevant that Plaintiffs "dispute[]" Defendants' evidence or have presented purported "countervailing evidence" about the efficacy and harms "gender affirming care." Pls.' Opp'n at 12.  Because of the "medical and scientific uncertainty" surrounding "gender-affirming" care and the "serious debate and disagreement" about how to treat it, the Court must defer to "the considered policy judgments of [BOP] who ha[s] scrutinized the medical evidence and scientific data before [it] and have made a reasoned decision" set forth in the 2026 Policy. *See B.P.J.,* 2026 WL 1868739, at \*15 (quotation marks omitted).

6

As BOP explained, it determined that the "gender affirming" care advocated by Plaintiffs is fraught with serious risks and is uncertain to deliver any benefits, especially in the correctional context. Defs.' Mem. at 16. This is particularly the case after BOP determined that the WPATH guidelines, upon which BOP previously heavily relied in formulating its policy on "gender affirming" care, are flawed in numerous respects. *Id.* at 17. And Dr. Kaliebe's recommended approach to treatment of gender dysphoria—based not just on his clinical experience but on extensive review of studies relevant to the treatment of gender dysphoria—is consistent with that of many other medical experts and providers. *Id.* at 17–19. Defendants cited to supporting journal articles, BOP Medical Director Dr. Stahl's declaration, and cases where courts also assessed that there is a reasonable disagreement in the medical community as to how to treat gender dysphoria. *Id.* at 16–24.

Plaintiffs then argue that "summary judgment must be denied" because "the Program Statement's ban on gender-affirming treatment such as hormone therapy and social accommodations deprives at least some individuals with gender dysphoria in BOP custody of medically necessary care." Pls.' Opp'n at 13. This argument is mismatched with the relief that they seek—to permanently enjoin the 2026 Policy, in what amounts to a facial challenge to the 2026 Policy. Suppl. Compl. at 17, ECF No. 182. Plaintiffs "do not challenge [the 2026 Policy's] application in a particular instance" as the Policy "ha[s] not yet been applied in a particular instance" due to this Court's pre-implementation preliminary injunctions. *Reno v. Flores*, 507 U.S. 292, 300 (1993). "To prevail in such a facial challenge," Plaintiffs "must establish that no set of circumstances exists under which the [Policy] would be valid," *id.* at 301 (quoting *United States v. Salerno*, 481 U.S. 739, 745 (1987)), not that "at least some individuals" will be deprived of medically necessary care as Plaintiffs allege here. "The fact that the [Policy] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid[.]" *Salerno*, 481 U.S. at 745. That is, "it is not enough for . . . Plaintiffs to show the [Policy] could be applied unlawfully" to some inmates, *Sherley v. Sebelius*, 644 F.3d 388, 397 (D.C. Cir. 2011), which is all that Plaintiffs attempt to show, *see* Pls.' Opp'n at 15; Karasic Decl. ¶¶ 28, 66, 68, 69, 83, ECF No. 7-2.

7

Indeed, Plaintiffs and class members have different degrees of gender dysphoria, have been on cross-sex hormones for varying periods of times (some have never even been on hormones), have responded differently to psychotherapeutic interventions and psychotropic medications, have underwent various sex trait modification surgeries, have responded differently to tapering in the past, and so on.  And on top of the differences among Plaintiffs, the 2026 Policy treats Plaintiffs differently in terms of their tapering plans, some of whom tapering "may not be appropriate . . . for the initial tapering plan to include cessation of hormones."  2026 Policy, at 8.  BOP designed the Policy to improve Plaintiffs' conditions, but even assuming Plaintiffs are right that the Policy could expose some of them to harm, they have not shown that all or even most of them will be harmed, much less suffer harm that rises to the level of an Eighth Amendment violation.  Given the differences between the Plaintiffs and how the 2026 Policy would be applied to them individually, Plaintiffs cannot show that there is "no set of circumstances" under which the Policy would clear the Eighth Amendment threshold.  *See Reno*, 507 U.S. at 301.  Therefore, Plaintiffs' facial Eighth Amendment challenge fails as a matter of law.

The categorical, pre-implementation challenge to the 2026 Policy precludes the Court from assessing the Policy's impact on the individual Plaintiffs under the Eighth Amendment.  *See id.* at 300–01 (explaining that pre-implementation challenge prevented required findings of fact and existence of any record).  As the D.C. Circuit recently made clear, it is impermissible for the Court to lump Plaintiffs together and make categorical, speculative Eighth Amendment determinations in the way that Plaintiffs urge the Court to do.  *Doe v. Blanche*, 172 F.4th 901, 916 (D.C. Cir. 2026).  The Court should therefore grant summary judgment in favor of Defendants on Plaintiffs' Eighth Amendment claim.

## III.    The 2026 Policy Complies with the APA

Plaintiffs continue to insist that the 2026 Policy was "preordained" and "reverse engineered" to achieve the President's desired outcome.

But as the Supreme Court has explained, courts "may not set aside an agency's policymaking decision solely because it might have been influenced by political considerations or prompted by an

8

Administration's priorities." *Dep't of Com. v. New York*, 588 U.S. 752, 781 (2019). "Agency policymaking is not a 'rarified technocratic process, unaffected by political considerations or the presence of Presidential power.'" *Id.* (quoting *Sierra Club v. Costle*, 657 F.2d 298, 408 (D.C. Cir. 1981)). Any "internal political pressure" or "desire to reach a particular result" does not render the result invalid under the APA where "objective evidence [adequately] support[s] the agency's conclusion." *Jagers v. Federal Crop Ins. Corp.*, 758 F.3d 1179, 1185-86 (10th Cir. 2014). Agencies are allowed (and indeed required) to act based on Presidential policy priorities, so long as they ultimately take actions grounded in legitimate rationales that are reasonably supported.

Indeed, it is necessary for the proper functioning of the Executive Branch that agencies follow Presidential policy directions. The Constitution requires that the President have authority to ensure that agencies act "in accordance with the policies that the people presumably elected the President to promote." *Collins v. Yellen*, 594 U.S. 220, 252 (2021). And the President clearly may issue directions to agencies concerning actions within their authority. *See, e.g.*, *Am. Fedn of Gov't Emps.*, 145 S. Ct. 2635 (mem.); *id.* (Sotomayor, J., concurring). Accordingly, agencies lack discretion to "disregard an Executive Order," and "must implement the President's policy directives to the extent permitted by law." *Sherley v. Sebelius*, 689 F.3d 776, 784 (D.C. Cir. 2012). It is thus perfectly proper for political officials to "come into office with policy preferences" and "work with staff attorneys to substantiate the legal basis for a preferred policy," *Department of Com.*, 588 U.S. at 783, provided that the resulting action is reasonable and reasonably explained.

BOP has never asserted that the Policy was issued without regard to the EO. Rather, BOP has consistently acknowledged that the EO is one reason it reconsidered its approach. *See, e.g.*, AR-000001, 000005, ECF No. 186-1. The Policy and administrative record invoke the EO and expressly explain that it "supports [BOP's] policy." 2026 Policy, at 5–6; *see* AR-000001, 000005. BOP additionally explained, however, that even absent any Presidential directive on the subject, it still would have adopted the Policy as a matter of "BOP's own independent judgment." AR-000005; *see* 2026 Policy, at 5–6. An agency's decision cannot qualify as "pretextual" where the allegedly concealed purpose expressly appears on the face of the action.

Contrary to Plaintiffs' assertion, the APA standard of review is more than "slightly different" from the Rule 56 standard. Pls.' Opp'n at 9. The standard set forth in Rule 56 "does not apply because of the limited role of a court in reviewing the administrative record." *Forest Cnty. Potawatomi Cmty. v. United States*, 330 F. Supp. 3d 269, 278 (D.D.C. 2018) (citation omitted). The arbitrary or capricious standard of review is "narrow." *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). So long as the agency "examine[s] the relevant data and articulate[s] a satisfactory explanation for its action," the agency's action clears arbitrary and capricious review. *Id.*; *see also F.C.C. v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). For the reasons stated in Defendants' opening brief, Plaintiffs' arbitrary and capricious APA claim fails under this standard. Defs.' Mem. at 28–33.

Plaintiffs wrongly criticize Defendants for submitting Dr. Stahl's declaration in support of Defendants' summary judgment motion. Pls.' Opp'n at 18. "[T]here is nothing improper in receiving declarations that merely illuminate reasons obscured but implicit in the administrative record." *Clifford v. Pena*, 77 F.3d 1414, 1418 (D.C. Cir. 1996) (citations modified). Likewise, "*post-hoc* account[s]" in the form of declarations that "furnish[] an explanation of the administrative action that is necessary to facilitate effective judicial review" are not problematic under the APA. *Olivares v. Transp. Sec. Admin.*, 819 F.3d 454, 464 (D.C. Cir. 2016). So long as the declaration "contains no new rationalizations" and "is merely explanatory of the original record," the court may consider it in assessing an APA claim. *Id.* (citations omitted).

Here, the fact that Dr. Stahl completed her declaration after certification of the administrative record does not mean that it constitutes impermissible post-hoc rationalization. As Dr. Stahl explained, she submitted the declaration "to respond to certain factual assertions Plaintiffs made in the motion for updated preliminary injunction" regarding criticisms of the administrative record—namely that, in issuing the 2026 Policy, BOP (1) ignored that BOP doctors' prior determination that "gender affirming" care was necessary for Plaintiffs and (2) did not consider its own experience providing "gender affirming" care under the prior policy. Stahl Decl. ¶¶ 4, 5, 15, ECF No. 186-3. BOP was entitled to explain to the Court that Plaintiffs' statements were "mislead[ing]," *id.* ¶ 6, and "not accurate," *id.* ¶ 15. Dr. Stahl's declaration discusses contemporaneous reasons for BOP's change

10

in policy, namely WPATH's diminished credibility and evidence about the harms and efficacy of "gender-affirming" interventions—which are all in accord with the administrative record—and that BOP did contemporaneously consider its experiences under the old policy. *Id.* at 2–6. These are not impermissible post-hoc rationalizations; they are contemporaneous explanations for the administrative record and they correct inaccuracies asserted by Plaintiffs so as to "facilitate effective judicial review." *See Olivares*, 819 F.3d at 464; *see also Clifford*, 77 F.3d at 1418. Notably, Dr. Stahl submitted a declaration in August 2025 for another case (about seven months before the administrative record in this case was complete) that echoes the same statements made in her more recent declaration, Stahl Decl. (Aug. 19, 2025), ECF No. 186-3, at 9–20, so Plaintiffs' arguments about post-hoc rationalizations are unconvincing. The Court should consider Dr. Stahl's declaration, and regardless, should grant judgment in Defendants' favor on the APA claim.

## IV.    The 2026 Policy Complies with Equal Protection

The Court should grant summary judgment in Defendants' favor on Plaintiffs' Equal Protection claim as well. Plaintiffs concede that at least for the purposes of their opposition to Defendants' motion, rational-basis review controls. Pls.' Opp'n at 14. Yet Plaintiffs take the extraordinary position that the 2026 Policy does not meet this "exceedingly deferential" standard, *Free Speech Coal., Inc. v. Paxton*, 606 U.S. 461, 469 (2025), which, in Plaintiffs' telling, precludes BOP from "categorically ban[ning] a treatment that it [purportedly] knows is improving the health of some of its patients without causing any countervailing harms for BOP." Pls.' Opp'n at 15. But as the administrative record clearly indicates, BOP no longer believes "gender affirming" care is beneficial on balance. More importantly, rational basis review asks only whether "there is 'any reasonably conceivable state of facts that could provide a rational basis for the classification.'" *Skrmetti*, 605 U.S. at 522 (quoting *F.C.C. v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993)). "Where there exist 'plausible reasons' for the relevant government action, '[the Court's] inquiry is at an end.'" *Id.* (quoting *Beach Comm'ns*, 508 U.S. at 313–14).

Here, BOP set forth several legitimate reasons for the 2026 Policy, and each is sufficient to establish a rational basis for upholding the Policy. Defs.' Mem. at 36–37. For example, in BOP's

11

judgment, the uncertainty about the efficacy and necessity of sex trait modification interventions to address gender dysphoria and the well-documented side effects and long-term risks of such treatment counsel against providing such interventions in favor of other more established, effective treatments, such as psychotherapy. AR-000001–4; AR-000005–8; AR-002607–45.  BOP's concerns provide a rational basis for the 2026 Policy.  *See Anderson v. Crouch*, 169 F.4th 474, 491 (4th Cir. 2026) (citing *Skrmetti*, 605 U.S. at 522–23, which states that Tennessee's finding that harmful effects associated with "gender affirming" treatment are not fully known provided a rational basis for the policy), *r'hg en banc denied by* No. 22-1927, 2026 WL 1782288 (4th Cir. May 29, 2026).  "It is not irrational" for BOP to prohibit certain interventions that are "arguably ineffective and dangerous procedures and allocate its limited resources to [providing] other treatments" that it reasonably believes are more effective and less dangerous.  *Id.* at 492.  Indeed, "[t]he Supreme Court's decision in *Skrmetti* forecloses any argument to the contrary."  *Id.*  Plaintiffs have chosen not to address *Skrmetti* or *Anderson*.  Pls.' Opp'n at 14–17.[1]  The 2026 Policy passes rational-basis review and thus the Court should enter judgment in Defendants' favor on this claim.

It makes no difference that Plaintiffs now argue that "animus" motivated the 2026 Policy.  As explained above, the Policy does not "'lack[] any purpose other than a bare . . . desire to harm a politically unpopular group.'"  *Trump v. Orr*, 146 S. Ct. 44, 46 (2025) (quoting *Trump v. Hawaii*, 585 U.S. 667, 705 (2018)).  Because the Policy has "a legitimate grounding" in the interests discussed above, "quite apart from any [animus]," the Court "must accept that independent justification."  *Hawaii*, 585 U.S. at 706.  And no discovery into the "motivations behind" the 2026 Policy will make a difference because under rational-basis review, allegations that something else (*e.g.*, animus) "actually motivated" the policy "is entirely irrelevant for constitutional purposes."  *Beach Commc'ns*, 508 U.S. at 315.

---

[1]    Discovery about whether "gender affirming" care "has improved the health of some inmates" would not undo Defendants' plausible reasons.  *See* Pls.' Opp'n at 15; *Associated Builders & Contractors E. Pa. Chapter Inc v. Cnty. of Northampton*, 808 F. App'x 86, 90 (3d Cir. 2020) (disagreement with a conceivable basis does not warrant discovery); *Muscarello v. Ogle Cnty. Bd. of Comm'rs*, 610 F.3d 416, 423 (7th Cir. 2010) (whether ordinance satisfies the rational basis test is "a pure question of law").

## V.   Plaintiffs' Rehabilitation Act Claim Fails

Defendants explained in their opening brief that the Rehabilitation Act does not provide Plaintiffs with a private right of action.  Defs.' Mem. at 37–41.  The government has appealed the case that Plaintiffs rely on in support of their private right of action position, *Nat'l Ass'n of the Deaf v. Trump*, 808 F. Supp. 3d 150 (D.D.C. 2025), *appeal filed*, No. 25-5401 (D.C. Cir. Nov. 13, 2025).  Plaintiffs' position is in the minority.  Defs.' Mem. at 38–39.

Plaintiffs urge the Court to exert its "inherent equitable power" to create a right of action even though Congress did not.  Pls.' Opp'n at 22–25.  But the Supreme Court's decision in *Armstrong v. Exceptional Child Center, Inc.*, 575 U.S. 320 (2015), clearly precludes such judge-made cause of action.  Like *Armstrong*, the Rehabilitation Act "implicitly precludes private enforcement" of the Rehabilitation Act in the federal programs' context, *see* Defs.' Mem. at 37–39, and Plaintiffs "cannot, by invoking [the Court's] equitable powers, circumvent Congress's exclusion of private enforcement," *Armstrong*, 575 U.S. at 328.

On the merits, the Fourth Circuit in *Williams v. Kincaid* is wrong because the decision is not consistent with the text of the Rehabilitation Act.  The Rehabilitation Act excludes from its definition of "individual with a disability" an individual with "transvestism, transsexualism, pedophilia, exhibitionism, voyeurism, *gender identity disorders* not resulting from physical impairments, or other sexual behavior disorders." 29 U.S.C. § 705(20)(F)(i) (emphasis added); *see also* Defs.' Mem. at 39; *Williams v. Kincaid*, 45 F.4th 759, 780–90 (4th Cir. 2022) (Quattlebaum, J., dissenting); *Kincaid v. Williams*, 600 U.S. ---, 143 S. Ct. 2414, 2414–19 (2023) (Alito, J., dissenting from denial of certiorari); *Parker v. Strawser Constr., Inc.*, 307 F. Supp. 3d 744, 754 (S.D. Ohio 2018) (surveying cases and finding that "[t]he majority of federal cases have concluded" that the ADA excludes from its protection "both disabling and non-disabling gender identity disorders that do not result from a physical impairment"); *Duncan v. Jack Henry Assocs., Inc.*, 617 F. Supp. 3d 1011, 1056–57 (W.D. Mo. 2022) (concluding that ADA's exclusion of gender identity disorders "encompass[ed] Plaintiff's diagnosis of gender dysphoria"); *Doe v. Northrop Grumman Sys. Corp.*, 418 F. Supp. 3d 921, 930 (N.D. Ala. 2019) (same).  Gender dysphoria clearly falls within the scope of that exclusion.

13

**CONCLUSION**

For these reasons and for the reasons explained in Defendants' opening brief, the Court should grant Defendants' motion and enter judgment in Defendants' favor as to all claims.

Dated: July 8, 2026                          Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

MARIANNE F. KIES
Assistant Branch Director

/s/ *M. Jared Littman*
M. JARED LITTMAN
ELIZABETH B. LAYENDECKER
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington D.C. 20005
Jared.littman2@usdoj.gov

14