**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

ALISHEA KINGDOM, et al.,

        Plaintiffs,

    v.

DONALD J. TRUMP, et al.,

        Defendants.

Case No. 1:25-cv-00691-RCL

**PLAINTIFFS' MOTION FOR DISCOVERY
REGARDING PROGRAM STATEMENT 5260.01**

**TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................................... 1

II.     BACKGROUND ............................................................................................................. 1

III.    ARGUMENT .................................................................................................................. 3

    A.      Plaintiffs Are Entitled to Discovery on Their Constitutional and Rehabilitation
        Act Claims. ........................................................................................................ 4

    B.      Plaintiffs are also entitled to discovery on their APA claims ............................... 9

        i.      Defendants' reliance on extra-record evidence entitles Plaintiffs to
            discovery ................................................................................................ 9

        ii.     Defendants' intentional failure to include all records in their possession
            relevant to their decision entitles Plaintiffs to discovery ......................... 10

        iii.    Defendants' bad faith entitles Plaintiffs to discovery .............................. 12

IV.     CONCLUSION ............................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.M.Q.A. v. Lugo*,
2026 WL 1587419 (E.D. Cal. June 3, 2026) ............................................................................13

*AFL-CIO v. Dep't of Lab.*,
2026 WL 1470287 (D.D.C. May 26, 2026)...............................................................................10

*Air Transp. Ass'n of Am., Inc. v. Nat'l Mediation Bd.*,
663 F.3d 476 (D.C. Cir. 2011)...................................................................................................12

*All. for Nat. Health U.S. v. Sebelius*,
714 F. Supp. 2d 48 (D.D.C. 2010) ..............................................................................................6

*Amfac Resorts, L.L.C. v. U.S. Dep't of the Interior*,
143 F. Supp. 2d 7 (D.D.C. 2001) .........................................................................................11, 12

*Amgen Inc. v. Hargan*,
285 F. Supp. 3d 397 (D.D.C. 2017) .............................................................................................3

*Axiom Res. Mgmt., Inc. v. United States*,
564 F.3d 1374, 1380 (Fed. Cir. 2009), *aff'd*, 887 F.3d 501 (D.C. Cir. 2018) ...........................4

*Baker v. District of Columbia*,
326 F.3d 1302 (D.C. Cir. 2003)...................................................................................................7

*Baker v. United States*,
127 F.3d 1081 (Fed. Cir. 1997)...................................................................................................9

*Bar MK Ranches v. Yuetter*,
994 F.2d 735 (10th Cir. 1993) ...................................................................................................11

*Bellion Spirits, LLC v. United States*,
335 F. Supp. 3d 32 (D.D.C. 2018) ..............................................................................................6

*Bos. All. of Gay, Lesbian, Bisexual & Transgender Youth v. U.S. Dep't of Health
& Hum. Servs.*,
557 F. Supp. 3d 224 (D. Mass. 2021) .......................................................................................5, 7

*Butte County, California v. Chaudhuri*,
197 F. Supp. 3d 82 (D.D.C. 2016) ..............................................................................................4

*Cal. v. U.S. Dep't of Homeland Sec.*,
612 F. Supp. 3d 875 (N.D. Cal. 2020) .........................................................................................5

*Citizens for Resp. & Ethics in Wash. v. Fed. Election Comm'n*,
   2024 WL 2110141 (D.D.C. May 10, 2024)................................................................12

*Citizens to Pres. Overton Park, Inc. v. Volpe*,
   401 U.S. 402 (1971)................................................................4

*Cook County v. Wolf*,
   461 F. Supp. 3d 779 (N.D. Ill. 2020) ................................................................5, 7

*Dep't of Com. v. New York*,
   588 U.S. 752 (2019)................................................................12

*Doe v. Mullin*,
   2026 WL 1983721 (N.D. Ill. July 9, 2026)................................................................8

*Env't Def. Fund, Inc. v. Blum*,
   458 F. Supp. 650 (D.D.C. 1978)................................................................10

*Farmer v. Brennan*,
   511 U.S. 825 (1994)................................................................7

*Grill v. Quinn*,
   2012 WL 174873 (E.D. Cal. Jan. 20, 2012) ................................................................5

*Hill Dermaceuticals, Inc. v. Food & Drug Admin.*,
   709 F.3d 44 (D.C. Cir. 2013)................................................................3

*Mayor & City Council of Balt. v. Trump*,
   429 F. Supp. 3d 128 (D. Md. 2019)................................................................5

*McKoy v. Spencer*,
   2019 WL 400615 (D.D.C. Jan. 31, 2019)................................................................4

*Miccosukee Tribe of Indians of Fla. v. United States*,
   2010 WL 337653 (S.D. Fla. Jan. 22, 2010) ................................................................5

*Nat'l Ass'n of Postal Supervisors v. U.S. Postal Serv.*,
   2023 WL 5221367 (D.D.C. Aug. 15, 2023) ................................................................6, 7

*Nat'l Med. Enters., Inc. v. Shalala*,
   826 F. Supp. 558 (D.D.C. 1993)................................................................4

*New York v. U.S. Dep't of Com.*,
   351 F. Supp. 3d 502 (S.D.N.Y. 2019), *aff'd in part and rev'd in part on other grounds*, 588 U.S. 752 (2019)................................................................5

*Nuclear Energy Inst., Inc. v. Env't Prot. Agency*,
   373 F.3d 1251 (D.C. Cir. 2004)................................................................4

*Porter v. Califano,*
    592 F.2d 770 (5th Cir. 1979) ...................................................................................5, 7

*P.R. Pub. Hous. Admin. v. U.S. Dep't of Hous. & Urb. Dev.,*
    59 F. Supp. 2d 310 (D.P.R. 1999)...............................................................................5

*Rydeen v. Quigg,*
    748 F. Supp. 900, 906 (D.D.C. 1990) .....................................................................5, 7

*Saget v. Trump,*
    375 F. Supp. 3d 280 (E.D.N.Y. 2019) ........................................................................13

*Saratoga Dev. Corp. v. United States,*
    21 F.3d 445 (D.C. Cir. 1994)......................................................................................12

*Sirmans v. Caldera,*
    27 F. Supp. 2d 248 (D.D.C. 1998) ..........................................................................9, 10

*Sokaogon Chippewa Cmty. (Mole Lake Band of Lake Super. Chippewa) v.
    Babbitt,*
    961 F. Supp. 1276 (W.D. Wis. 1997) ........................................................................13

*Stand Up for Cal.! v. U.S. Dep't of Interior,*
    315 F. Supp. 3d 289 (D.D.C. 2018)............................................................................12

*In re Subpoena Duces Tecum Served on the Off. of the Comptroller of the
    Currency,*
    156 F.3d 1279 (D.C. Cir. 1998) ...................................................................................7

*Talbott v. United States,*
    176 F.4th 720 (D.C. Cir. 2026)....................................................................................7

*Texas v. Biden,*
    2021 WL 4552547 (N.D. Tex. July 19, 2021) ...........................................................5, 7

*Theodore Roosevelt Conservation P'ship v. Salazar,*
    616 F.3d 497 (D.C. Cir. 2010)...............................................................................10, 11

*United Farm Workers v. Noem,*
    2025 WL 1490131 (E.D. Cal. May 23, 2025) .............................................................5, 6

*Walter O. Boswell Mem'l Hosp. v. Heckler,*
    749 F.2d 788 (D.C. Cir. 1984)......................................................................................3

**Statutes**

5 U.S.C. § 706(2)(B)...............................................................................................................6

Rehabilitation Act ...........................................................................................................3, 4, 9

**Other Authorities**

U.S. Const. amend. I ..............................................................................................................4

U.S. Const. amend. V...................................................................................................3, 4, 6

U.S. Const. amend. VIII...........................................................................................3, 4, 7, 8

U.S. Const. amend. XIV .............................................................................................4, 6, 7

Executive Order 14168 ...............................................................................................3, 12

Local Civil Rule 7(m) ......................................................................................................1

Local Civil Rule 7(n) .......................................................................................................1

Program Statement 5260.01 .................................................................................... *passim*

## I.    INTRODUCTION

On February 19, 2026, this Court "grant[ed] discovery on Plaintiffs' Administrative Procedure Act ("APA") and constitutional claims based solely on Defendants' failure to timely produce the administrative record as required by Rule 7(n)." ECF 123. Plaintiffs propounded discovery requests on Defendants pursuant to that order and this Court's subsequent discovery scheduling order (ECF 163) on April 21, 2026, to which Defendants have yet to respond. Plaintiffs now respectfully move for discovery with respect to the Bureau of Prisons' ("BOP") Program Statement 5260.01 ("the Program Statement"), which was not in effect when Plaintiffs initially moved for discovery. Although Defendants have produced an administrative record for the Program Statement, Plaintiffs nevertheless are entitled to discovery because (1) they raise non-APA constitutional and statutory claims that are factually and legally distinct from their APA arbitrary-and-capricious claim, requiring the Court to apply completely different standards of review, and (2) even as to Plaintiffs' APA arbitrary-and-capricious claim, discovery is warranted because Defendants have introduced and relied upon extra-record evidence themselves, have intentionally skewed the record, and there is a prima facie showing of bad faith in the agency's promulgation of the Program Statement.[1]

## II.    BACKGROUND

Following the preliminary injunction entered by this Court on June 3, 2025 (ECF 68), the parties briefed whether Plaintiffs are entitled to discovery on their claims, as detailed in Plaintiffs' and Defendants' initial cross-motions for and in opposition to discovery. ECF 84, 87, 102, 103, 104, 105. This Court granted "discovery on Plaintiffs' APA and constitutional claims" based on

---

[1] Pursuant to Local Civil Rule 7(m), Plaintiffs' counsel conferred with Defendants' counsel, which informed Plaintiffs' counsel that Defendants oppose this motion.

the lack of an administrative record ("AR") for BOP's 2025 Implementing Memoranda ("Implementing Memoranda"). ECF 123 at 1. In its order, the Court rejected Defendants' argument that the issuance of a superseding policy relieved them of their obligation to produce an administrative record for the Implementing Memoranda, holding that "the original policy is relevant to a challenge to any policy that supersedes it." *Id.* at 2. After the parties disagreed regarding the scope of that order and submitted competing discovery schedule proposals, ECF 141 & 144, the Court issued a discovery schedule on April 3, 2026, ECF 163. Plaintiffs submitted requests for written discovery to Defendants on April 21, 2026; as of the date of this filing, Defendants have not responded to those requests or provided any discovery pursuant to this Court's April 3 order.  *See* ECF 163.

On April 29, 2026, Plaintiffs filed a Supplemental Complaint, *see* ECF 182, and motion for updated preliminary injunction, *see* ECF 179, to address the Program Statement, which this Court granted on June 17, 2026, ECF 215 ("Updated PI Order") & 216 ("Mem. Op."). In response to Plaintiffs' motion for an updated preliminary injunction, Defendants filed a combined opposition, *see* ECF 186, and motion for summary judgment, *see* ECF 187, in which Defendants introduced and relied heavily on a declaration by BOP Medical Director Elizabete Stahl, *see* ECF Nos. 186-3, 187-3 ("Stahl Declaration"), which was not part of the administrative record. Defendants also moved on May 14, 2026 to stay discovery pending disposition of their motion for summary judgment, ECF 190, which is now fully briefed.

In its opinion granting the updated preliminary injunction, the Court concluded that Plaintiffs were likely to succeed in their APA challenge to the Program Statement based on the fact that (1) BOP did not properly consider its own experience providing gender-affirming care under its own prior policy, (2) the Program Statement is objectively unreasonable given the

2

evidence before BOP, and (3) the Program Statement is pretextual and was reverse engineered to implement EO 14168. Mem. Op. at 17-25. With respect to the AR, the Court concluded that BOP did not consider "relevant evidence" in its possession "of the efficacy and safety of gender-affirming care in correctional facilities—its own experience providing this care to inmates diagnosed with gender dysphoria for nearly a decade." Mem. Op. at 19. The Court concluded that the post hoc declaration of Dr. Stahl, "dated May 12, 2026—nearly three months after BOP formally announced the Program Statement," "cannot be credited" as it offered "[p]ost-hoc rationalizations during litigation." *Id.* at 21. Crucially, the Court concluded that BOP "does not invoke . . . evidence" regarding the operation and efficacy of its prior policy allowing gender-affirming care "anywhere in the administrative record." *Id.* at 21.

### III. ARGUMENT

Plaintiffs are entitled to discovery in this case for two reasons. First, Plaintiffs raise non-APA claims under the Eighth Amendment, Fifth Amendment, and the Rehabilitation Act of 1973, to which the record rule in APA cases does not apply. Second, even as to Plaintiffs' APA arbitrary-and-capricious claim, discovery is plainly warranted given that Defendants themselves have introduced and relied upon extra-record evidence (the Stahl Declaration), and Defendants' actions, both in the compilation of the AR and in promulgating the Program Statement itself, demonstrate a prima facie showing of bad faith by Defendants.

The so-called "record rule" in APA cases ensures "a reviewing court . . . ha[s] before it neither more nor less information than did the agency when it made its decision." *Hill Dermaceuticals, Inc. v. Food & Drug Admin.*, 709 F.3d 44, 47 (D.C. Cir. 2013) (quoting *Walter O. Boswell Mem'l Hosp. v. Heckler*, 749 F.2d 788, 792 (D.C. Cir. 1984)). It is meant to prevent "post hoc rationalizations," "consideration of facts and arguments that were not presented to the

3

decision-maker," and "the Court substituting its judgment for that of the agency." *Amgen Inc. v. Hargan*, 285 F. Supp. 3d 397, 404 (D.D.C. 2017) (first citing *Walter O. Boswell Mem'l Hosp*, 749 F.2d at 792; then citing *Nuclear Energy Inst., Inc. v. Env't Prot. Agency*, 373 F.3d 1251, 1297-98 (D.C. Cir. 2004); and then citing *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971)). In other words, the record rule prevents courts from "using new evidence to 'convert the "arbitrary and capricious" standard into effectively de novo review.'" *Butte County, California v. Chaudhuri*, 197 F. Supp. 3d 82, 91 (D.D.C. 2016) (quoting *Axiom Res. Mgmt., Inc. v. United States*, 564 F.3d 1374, 1380 (Fed. Cir. 2009)), *aff'd*, 887 F.3d 501 (D.C. Cir. 2018).

These purposes inform courts' decisions on whether to permit discovery in cases involving claims in addition to an APA arbitrary-and-capricious claim. They also inform decisions about the applicability of well-established exceptions to the record rule in APA cases, including where the agency has relied on extra-record evidence, omitted evidence in its possession that bears on the issue it decided, or has engaged in bad faith in explaining its rationale to the Court. For the reasons explained below, discovery is warranted here both because Plaintiffs' non-APA claims require the Court to evaluate evidence beyond the administrative record (*infra* Section III.A) and because this case comes within settled exceptions to the APA record rule (*infra* Section III.B).

### A. Plaintiffs Are Entitled to Discovery on Their Constitutional and Rehabilitation Act Claims

Plaintiffs' claims under the Eighth Amendment, the Equal Protection Clause (as applied to the federal government under the Fifth Amendment), and the Rehabilitation Act warrant discovery independent from and in addition to the administrative record associated with the BOP's Program Statement 5260.01. When a constitutional claim is brought alongside an APA claim, it may warrant exception from the record rule that normally bars discovery beyond the administrative record for APA claims. *See McKoy v. Spencer*, 2019 WL 400615, at *10-12 (D.D.C. Jan. 31, 2019)

4

(permitting discovery on plaintiff's First Amendment claims brought alongside appeal of Navy adverse credentialing decision that "resemble APA claims"); *Nat'l Med. Enters., Inc. v. Shalala*, 826 F. Supp. 558, 565 n.11 (D.D.C. 1993) (permitting the consideration of extra-record declaration on equal protection claim because "[c]hief among [the exceptions to the record rule is] a court's review of a constitutional claim"); *Rydeen v. Quigg*, 748 F. Supp. 900, 906 (D.D.C. 1990) (holding that courts "need not accord deference to the agency's decisions in regard to [the] constitutional challenges because the courts, not agencies, are experts on constitutional issues" and therefore the court "may consider the additional affidavits . . . even though they were not before the agency upon administrative review" (citing *Porter v. Califano,* 592 F.2d 770, 780 n.15 (5th Cir. 1979)), *aff'd*, 937 F.2d 623 (Fed. Cir. 1991); *see also United Farm Workers v. Noem*, 2025 WL 1490131, at *3-6 (E.D. Cal. May 23, 2025); *Bos. All. of Gay, Lesbian, Bisexual & Transgender Youth v. U.S. Dep't of Health & Hum. Servs.*, 557 F. Supp. 3d 224, 244-45 (D. Mass. 2021); *Texas v. Biden*, 2021 WL 4552547, at *3-4 (N.D. Tex. July 19, 2021); *Cal. v. U.S. Dep't of Homeland Sec.*, 612 F. Supp. 3d 875, 895-98 (N.D. Cal. 2020); *Cook County v. Wolf*, 461 F. Supp. 3d 779, 794-95 (N.D. Ill. 2020); *New York v. U.S. Dep't of Com.*, 351 F. Supp. 3d 502, 667-69 (S.D.N.Y. 2019), *aff'd in part and rev'd in part on other grounds*, 588 U.S. 752 (2019); *Grill v. Quinn*, 2012 WL 174873, at *2-5 (E.D. Cal. Jan. 20, 2012); *Miccosukee Tribe of Indians of Fla. v. United States*, 2010 WL 337653 at *2 (S.D. Fla. Jan. 22, 2010); *P.R. Pub. Hous. Admin. v. U.S. Dep't of Hous. & Urb. Dev.*, 59 F. Supp. 2d 310, 327-28 (D.P.R. 1999).

As Plaintiffs previously explained, ECF 87 & ECF 102, the relevant inquiry as to whether constitutional claims brought alongside an APA arbitrary-and-capricious claim merit independent discovery is a "fact-specific" approach that considers "the particular facts of the claims involved and the discovery requested." *Cal.*, 612 F. Supp. 3d at 895-96; *see also Mayor & City Council of*

5

*Balt. v. Trump*, 429 F. Supp. 3d 128, 139 (D. Md. 2019) (surveying authority and concluding that "the welter of cases underlines the need for a flexible approach, tailored to the facts and claims of the case"). There is no "bright line or categorical rule." *Bellion Spirits, LLC v. United States*, 335 F. Supp. 3d 32, 43 (D.D.C. 2018). Rather, as this Court has previously explained, courts must "look[] to the substantive rule of decision applicable to the non-APA claim to determine the evidentiary scope of its review of that claim." *Nat'l Ass'n of Postal Supervisors v. U.S. Postal Serv.*, 2023 WL 5221367, at *9 (D.D.C. Aug. 15, 2023) (citing *Bellion Spirits*, 335 F. Supp. 3d at 43-44). When the "applicable principles of substantive law" determine that "extra-record evidence [is] irrelevant," the record rule applies and discovery beyond the administrative record is impermissible. *Id.* However, when "extra-record evidence may be relevant" to specific non-APA claims "and may aid the Court in effectively adjudicating those claims under the[ir] substantive decision rules," discovery is appropriate. *Id.*

Plaintiffs' Eighth Amendment, Equal Protection Clause, and Rehabilitation Act claims are legally and factually independent from their arbitrary-and-capricious claim under the APA and require the application of entirely different standards, as well as the development of different facts, than those found in the administrative record. *See United Farm Workers*, 2025 WL 1490131, at *3 (finding that "additional discovery" was "necessary to develop the factual record" for plaintiffs' "independent" Fourth and Fifth Amendment claims against U.S. Border Patrol (quoting *Yocom v. U.S. Citizenship & Immigr. Servs.*, 2025 WL 886957, at *3 (S.D. Cal. Mar. 21, 2025))). Such distinction favors granting Plaintiffs discovery on the non-APA claims, and it is of no moment that Plaintiffs have brought both freestanding constitutional claims, *see* Compl. ¶¶ 96-117 (Counts I and II), and APA claims alleging that Agency Defendants' actions are "contrary to constitutional right," *id.* ¶¶ 124-29 (Count IV) (quoting 5 U.S.C. § 706(2)(B)), because this court's "role" in

6

"mak[ing] an independent assessment of constitutional issues" is the "same 'whether the plaintiff sues directly under the Constitution or under [the APA],'" *All. for Nat. Health U.S. v. Sebelius*, 714 F. Supp. 2d 48, 59 n.20 (D.D.C. 2010) (alteration in original) (quoting *Rydeen*, 748 F. Supp. at 905 n.8). Indeed, courts have found exception from the record rule appropriate in cases in which plaintiffs alleged constitutional violations via the APA, *see, e.g.*, *Porter*, 592 F.2d at 771-72, 780-82; *Bos. All. of Gay, Lesbian, Bisexual & Transgender Youth*, 557 F. Supp. 3d at 244-45; via standalone constitutional claims, *see, e.g.*, *Rydeen*, 748 F. Supp. at 906; *Cook County*, 461 F. Supp. 3d at 794-95; or—as Plaintiffs have done in this case—via both, *see, e.g.*, *Biden*, 2021 WL 4552547, at *3-4.

Here, the "substantive rule[s] of decision" applicable to Plaintiffs' constitutional claims are different from the standard applicable to Plaintiff's APA arbitrary-and-capricious claim. *Nat'l Ass'n of Postal Supervisors*, 2023 WL 5221367, at *9. As a general matter, under the APA's arbitrary-and-capricious standard of review, "the actual subjective motivation of agency decision-makers is immaterial as a matter of law—unless there is a showing of bad faith or improper behavior." *In re Subpoena Duces Tecum Served on the Off. of the Comptroller of the Currency*, 156 F.3d 1279, 1279-80 (D.C. Cir. 1998). By contrast, Plaintiffs' claims under the Eighth Amendment and Equal Protection Clause implicate the subjective knowledge, intent, and purpose of the relevant decision-makers, as well as the health and safety risks of the Program Statement to class members. *See, e.g.*, *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003) (indicating that Eighth Amendment claims require proof of "subjective knowledge of the serious medical need and [a] reckless[] disregard[] [of] the excessive risk to inmate health or safety from that risk" (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994))); *Talbott v. United States*, 176 F.4th 720, 746 (D.C. Cir. 2026) (explaining that policies put forward based on "stated reason[s]"

that are "pretextual" and are instead "premised, at least in part, on a non-legitimate state interest to harm the politically unpopular group of transgender persons" violate Equal Protection, even under rational basis review (citing *Kelo v. City of New London*, 545 U.S. 469, 491 (2005) (Kennedy, J., concurring))); *see also Doe v. Mullin*, 2026 WL 1983721, at *3 (N.D. Ill. July 9, 2026) ("[T]he reasoning underlying the record rule and its applications is a poor fit for constitutional claims that turn on government intent . . . .").

The administrative record does not contain documents relevant to Defendants' subjective knowledge, intent, or purpose with regard to the Program Statement or the impact of gender-affirming care—which the Program Statement would rescind—on Plaintiffs' and class members' health. As described below, the AR omits such evidence and instead promulgates pretextual bases for the Program Statement. Moreover, even if the AR did contain documents referencing the impact of gender-affirming care on Plaintiffs' and class members' health and statements about the knowledge of BOP decision-makers related to the risks of rescinding this care, a self-serving and incomplete collection of evidence chosen by BOP to justify its policy is not a basis to deny Plaintiffs the opportunity to take discovery to probe and test those assertions. Bringing an APA claim does not amount to forfeiture of relevant discovery related to other claims that have different legal standards.

The discovery Plaintiffs seek on BOP's Program Statement regarding Plaintiffs' non-APA claims demonstrates its relevance and necessity. Specifically, on the Eighth Amendment claim, "Plaintiffs seek discovery . . . to establish that BOP officials had 'subjective knowledge' that denying gender-affirming care to Plaintiffs would expose inmates to a serious risk of harm." ECF 87 at 22; *see also* ECF 102 at 3. Regarding the Equal Protection claim, "Plaintiffs also seek [discovery] . . . to show that both the Executive Order and [Program Statement] implementing it

8

fail any level of equal protection scrutiny, because they are not substantially, or even rationally, related to any legitimate government interest, and were motivated by discriminatory animus." ECF 87 at 23; *see also* ECF 102 at 4-6 (explaining how discovery is appropriate under any level of equal protection scrutiny). And "Plaintiffs similarly request discovery with respect to their Rehabilitation Act claim to demonstrate the disparate and discriminatory treatment of Plaintiffs and class members on the basis of their gender dysphoria diagnoses." ECF 87 at 24. Because evidence from those medical and mental health professionals is necessary for Plaintiffs' non-APA claims and would aid this Court in its evaluation of those claims, discovery is required.

### B. Plaintiffs Are Also Entitled to Discovery on Their APA Claims

#### i. *Defendants' reliance on extra-record evidence entitles Plaintiffs to discovery*

"Plaintiffs are entitled to discovery relating to all materials outside of the administrative record on which defendant relies in its motion for summary judgment." *Sirmans v. Caldera*, 27 F. Supp. 2d 248, 251 (D.D.C. 1998). In Defendants' combined motion for summary judgment (ECF 187) and opposition (ECF 186) to Plaintiffs' motion for an updated preliminary injunction (ECF 179), Defendants introduced and relied heavily on the Stahl Declaration, *see* ECF 186-3 & 187-3, which was not part of the administrative record. Defendants maintain that the Stahl Declaration "reflects BOP's decision-making process when formulating the 2026 Policy," ECF 187 at 19, citing only to the declaration (and not the AR) for Defendants' contention that BOP did not ignore its prior experience providing gender-affirming care when medically necessary, or the experience of BOP patients who received such care, in formulating the Program Statement, *see id.* at 43. Defendants also rely on the Stahl Declaration for their contentions about the bases of BOP decision-makers' decision to adopt the policy. *See, e.g., id.* at 28, 30, 31, 37-38.

9

Defendants cannot "have it both ways" by relying on extra-record evidence but arguing to foreclose "discovery based on the sanctity of the administrative record." *Sirmans*, 27 F. Supp. 2d at 251. The government's use of and reliance on the Stahl Declaration "open[s] the door" to discovery, testing the assertions made therein. *Baker v. United States*, 127 F.3d 1081, 1088 (Fed. Cir. 1997). "Allowing . . . [a]gencies to leverage the facts available to them by submitting new declarations, while prohibiting plaintiffs from probing any of the factual bases for those declarations, risks significant prejudice to plaintiffs," as it would "den[y] plaintiffs a fair opportunity to respond fully to [the agencies'] exercise of authority." *AFL-CIO v. Dep't of Lab.*, 2026 WL 1470287, at \*4 (D.D.C. May 26, 2026). Plaintiffs must be permitted to "mitigate the prejudice" caused by Defendants' use of post hoc extra-record evidence, *id.*, and are thus entitled to "discovery legitimately related to the issues raised in" the Stahl Declaration, *Sirmans*, 27 F. Supp. 2d at 251.

### ii. *Defendants' intentional failure to include all records in their possession relevant to their decision entitles Plaintiffs to discovery*

"[A]n agency may not 'skew the record for review in its favor by excluding from that record information in its own files which has great pertinence to the proceeding in question.'" *Theodore Roosevelt Conservation P'ship v. Salazar*, 616 F.3d 497, 515 (D.C. Cir. 2010) (quoting *Env't Def. Fund, Inc. v. Blum*, 458 F. Supp. 650, 661 (D.D.C. 1978)). This rule addresses an important loophole, preventing agencies from ignoring adverse information in their files and then, by omitting those facts from the administrative record, preventing those facts from ever reaching a court's view.

These concerns apply here. First, BOP did not include in the AR any information regarding the formulation and issuance of the Executive Order and the 2025 Implementing Memoranda. This Court already held that information regarding the "original policy is relevant to a challenge to any

policy that supersedes it." ECF 123 at 2. Second, as this Court previously concluded, the administrative record omits "relevant evidence" in its possession "of the efficacy and safety of gender-affirming care in correctional facilities—its own experience providing this care to inmates diagnosed with gender dysphoria for nearly a decade." Mem. Op. at 19. Despite BOP's guidelines permitting this care over that time period, as well as "a Transgender Clinical Care Team made up of physicians, pharmacists, and social workers," and "a Transgender Executive Council" that "included senior correctional leaders from BOP's Women and Special Populations Branch as well as BOP's senior psychologist, psychiatrist, security expert, and medical administrator," "the government does not meaningfully discuss this experience anywhere in the 43-page Policy Memo supporting the Program Statement." *Id.* at 19-20 (quotations omitted). The experiences of these officials and any records they prepared are plainly material to the challenged policy and within the agency's possession.

The Stahl Declaration puts the issue in particularly sharp relief. Dr. Stahl's extra-record testimony characterizes the experience of BOP staff with the prior policy. Beyond opening the door to that issue as discussed *supra*, the government's reliance on testimony on this point illustrates its materiality—and therefore the incompleteness of an AR that omits it. Because "the complete administrative record 'should include all materials that might have influenced the agency's decision,'" *id.* (quoting *Amfac Resorts, L.L.C. v. U.S. Dep't of the Interior*, 143 F. Supp. 2d 7, 12 (D.D.C. 2001) (internal quotation omitted)), that information should have been included as part of the Program Statement Administrative Record.

There can be no dispute that the sum of such evidence missing from the AR "might have influenced the agency's decision" and thus should have been included in the administrative record. *Amfac Resorts*, 143 F. Supp. 2d at 12. BOP's intentional omission of such information constitutes

a deliberate distortion of the record and is plainly improper, *see Theodore Roosevelt Conservation P'ship*, 616 F.3d at 515, and is sufficient to "overcome the standard presumption that the 'agency properly designated the Administrative Record.'" *Amfac Resorts*, 143 F. Supp. 2d at 12 (quoting *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 740 (10th Cir. 1993)). This evidence of intentional distortion of the administrative record is itself sufficient to warrant discovery.

### iii.   Defendants' bad faith entitles Plaintiffs to discovery

Additionally, Plaintiffs are entitled to discovery on their APA claims because they have made "a significant showing—variously described as a strong, substantial, or prima facie showing—that [they] will find material in the agency's possession indicative of bad faith or an incomplete record." *Air Transp. Ass'n of Am., Inc. v. Nat'l Mediation Bd.*, 663 F.3d 476, 487 (D.C. Cir. 2011) (quoting *Air Transp. Ass'n of Am., Inc. v. Nat'l Mediation Bd.*, No. 10-0804, slip op. at 3 (D.D.C. June 4, 2010)), . This exception to the record rule applies in situations where "without discovery the administrative record cannot be trusted." *Saratoga Dev. Corp. v. United States*, 21 F.3d 445, 458 (D.C. Cir. 1994). Thus, discovery is required when an agency acts in bad faith in "compiling the record" by intentionally providing an incomplete or distorted record. *Citizens for Resp. & Ethics in Wash. v. Fed. Election Comm'n*, 2024 WL 2110141, at *9 (D.D.C. May 10, 2024) ("*CREW*"). For the reasons discussed above, the agency did just that. Independently, when "existing evidence support[s] a prima facie showing that the [agency's] rationale was pretextual," extra-record discovery is warranted under the bad faith exception to the record rule. *Dep't of Com. v. New York*, 588 U.S. 752, 782 (2019). Plaintiffs have made that prima facie showing as well. Indeed, this Court has already concluded that Plaintiffs are likely to succeed on the merits of their APA claim on the ground that the Program Statement "is pretextual, preordained, and reverse engineered in response to this litigation to implement EO 14168's directives," Mem. Op. at 23.

Because Plaintiffs have made a "prima facie showing" that BOP decision-makers acted with "unalterably closed minds," *Air Transp. Ass'n*, 663 F.3d at 487, "prejudged the matter" and "fabricated their post-hoc rationale," *CREW*, 2024 WL 2110141, at \*10, "discovery into the [agency's] decision-making process" is justified, *Air Transp. Ass'n*, 663 F.3d at 488; *see also*, *e.g.*, *Stand Up for Cal.! v. U.S. Dep't of Interior*, 315 F. Supp. 3d 289, 298 (D.D.C. 2018) (finding that "combination of circumstances" established prima facie showing of bad faith); *A.M.Q.A. v. Lugo*, 2026 WL 1587419, at \*8 (E.D. Cal. June 3, 2026) (holding that pretextual agency action reverse engineered to achieve predetermined outcome warranted extra-record discovery); *Saget v. Trump*, 375 F. Supp. 3d 280, 343-44 (E.D.N.Y. 2019) (finding "significant evidence based on hard facts [that] the Government's decision was pretextual" and "reverse engineered," thus providing a sufficient "preliminary showing" to allow extra-record discovery); *Sokaogon Chippewa Cmty. (Mole Lake Band of Lake Super. Chippewa) v. Babbitt*, 961 F. Supp. 1276, 1280 (W.D. Wis. 1997) (evidence of "improper political influence" of agency decision-making may be sufficient to "allow plaintiffs an opportunity to further uncover evidence of that influence" in the form of extra-record discovery).

## IV.   CONCLUSION

For the reasons stated above, Plaintiffs are entitled to discovery on the Program Statement.


Dated: July 31, 2026                                      Respectfully submitted,


13

/s/*Shana Knizhnik*
Li Nowlin-Sohl (*pro hac vice*)
Leslie Cooper (*pro hac vice*)
Shana Knizhnik, D.D.C. Bar No. 120840
James D. Esseks (*pro hac vice*)
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel: 212-549-2500
lnowlin-sohl@aclu.org
lcooper@aclu.org
sknizhnik@aclu.org
jesseks@aclu.org

David C. Fathi (*pro hac vice*) *
Maria V. Morris, D.C. Bar. No. 1697904
Elisa C. Epstein (*pro hac vice*) *
American Civil Liberties Union Foundation
915 15th Street, N.W.
Washington, D.C. 20005
Tel: 202-393-4930
dfathi@aclu.org
mmorris@aclu.org
eepstein@aclu.org

Corene T. Kendrick (*pro hac vice*)
American Civil Liberties Union Foundation
425 California St., Ste. 700
San Francisco, CA 94104
Tel: 202-393-4930
ckendrick@aclu.org

Michael Perloff, D.C. Bar No. 1601047
Aditi Shah, D.C. Bar No. 90033136
ACLU Foundation of the District of Columbia
529 14th Street NW, Suite 420
Washington, D.C. 20045
Tel: 202-457-0800
mperloff@acludc.org
ashah@acludc.org

Shawn Thomas Meerkamper (*pro hac vice*)
Megan Z. F. Noor (*pro hac vice*)
Dale Melchert (*pro hac vice)*
Transgender Law Center
P.O. Box 70976
Oakland, CA 94612
Tel: 510-587-9696
shawn@transgenderlawcenter.org
megan@transgenderlawcenter.org
dale@transgenderlawcenter.org

Lynly S. Egyes (*pro hac vice*)
Transgender Law Center
594 Dean Street, Suite 11
Brooklyn, NY 11238
Tel: 510-587-9696
lynly@transgenderlawcenter.org

*Counsel for Plaintiff Class*

**Not admitted in D.C.; practice limited to*
*federal courts.*

14