**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ALISHEA KINGDOM, et al.,

Plaintiffs,

v.

DONALD J. TRUMP, et al.,

Defendants.

Case No. 1:25-cv-00691-RCL

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF DISCOVERY**

This Court should grant Plaintiffs' motion for discovery regarding the Program Statement (ECF 235). Plaintiffs have demonstrated that (1) their constitutional and Rehabilitation Act claims require the discovery of evidence beyond the administrative record to enable judicial review of those claims, and (2) the standard for established exceptions to the bar on discovery in Administrative Procedure Act ("APA") cases has been met.

## I. Plaintiffs' Motion for Discovery on the Program Statement is Properly Before the Court.

### A. The Court's April Discovery Scheduling Order did not decide this issue

Defendants put forward a novel argument that the parties' respective proposed discovery schedules, ECF 141 (Defs.' Proposed Disc. Schedule) & ECF 144 (Pls.' Proposed Disc. Schedule), constitute substantive motions regarding the "propriety of Program Statement discovery" such that the Court's April 3, 2026 discovery scheduling order ("April Discovery Scheduling Order") (ECF 163) decided the issue and a motion for "reconsideration" would be necessary. ECF 241 ("Opp.")

at 3. This strains credulity. Plaintiffs did not mention Program Statement discovery at all in their proposed schedule, and certainly never argued that the Court's February 19 Order (ECF 123) permitted discovery regarding BOP's new policy. Rather, Plaintiffs merely pointed out that the Court "grant[ed] Plaintiffs' motion for a discovery scheduling order under Fed R. Civ. P. 16(b) and LCvR 16.3, denie[d] Defendants' motion for exemption from LCvR 16.3, and 'grant[ed] discovery on Plaintiffs' APA and constitutional claims' without limitations," disagreeing with Defendants' "characterization of the Court's [February 19, 2026] order" as only requiring "rather limited" discovery. ECF 144 at 1-2 n.1 (quoting ECF 123 at 2).

The February 19 Order pertained to Plaintiffs' original motion for discovery, which was regarding the only BOP policy that existed at the time: the Implementing Memoranda. ECF 123 at 1 (granting "Plaintiffs' Motion for a Scheduling Order Setting Discovery Schedule, Dkt. No. 87"); ECF 87 (Pls.' Mot. for Disc. Scheduling Order). The February 19 Order granted Plaintiffs discovery on the Implementing Memoranda based on Defendants' "failure to timely produce the administrative record" for the Implementing Memoranda. The order separately required Defendants to produce the administrative record for the "new BOP policy," which had only been issued earlier the same day (also the same day as oral argument regarding the original discovery motion), within twenty-one days. ECF 123 at 2; *see also* ECF 119 (setting status conference for Feb. 19, 2026); ECF 125 (Program Statement). Likewise, the April discovery order pertained only to the discovery dispute that had been already adjudicated and did not make any determinations as to discovery regarding the Program Statement.

Even if the April discovery order had decided the issue of Program Statement discovery (which it did not), a motion for reconsideration of such an order would be governed by Rule 54(b), not Rule 59(e), as a discovery order is not a "judgment," Fed. R. Civ. P. 59(e), but is instead an

"order … that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties … and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities," Fed. R. Civ. P. 54(b), "as justice requires," *Commodity Futures Trading Comm'n v. Trade Exch. Network Ltd.*, 117 F. Supp. 3d 22, 28 (D.D.C. 2015) (quoting *Capitol Sprinkler Inspection, Inc. v. Guest Servs., Inc.*, 630 F.3d 217, 227 (D.C. Cir. 2011)); *accord Moore v. Johnson*, 303 F.R.D. 105, 106 (D.D.C. 2014) (applying the 54(b) standard to a motion to reconsider an order denying government defendants' request to reopen discovery). Here, however, Plaintiffs do not ask the Court to reconsider its prior interlocutory orders regarding discovery as to the EO and Implementing Memoranda,[1] but rather ask the Court to determine for the first time whether discovery beyond the administrative record as to the Program Statement is warranted, an issue that had not previously been submitted to the Court, let alone decided "on the merits." *McLaughlin v. Holder*, 864 F. Supp. 2d 134, 141 (D.D.C. 2012) (quoting *Capitol Sprinkler Inspection*, 630 F.3d at 227) (cleaned up).

B. Rule 56 does not bar Plaintiffs' motion

Defendants implicitly argue that Plaintiffs' decision not to file a motion for discovery under Rule 56(d) constitutes a waiver of their right to move for discovery as to the Program Statement. *See* Opp. at 1, 4, 10-11. This is incorrect. Plaintiffs' ability to seek Rule 26 discovery regarding the Program Statement is fully preserved and unaltered by the requirements of Rule 56. Plaintiffs did not need to move under Rule 56(d) in opposing Defendants' motion for summary judgment because Defendants failed to meet their burden on summary judgment, as demonstrated in Plaintiffs' opposition pointing to genuine issues of material fact even on the existing record. *See*

[1] Indeed, Plaintiffs have moved to compel Defendants to comply with the April discovery order. *See* ECF 243 (Pls.' Mot. to Compel Disc.).

ECF 219 at 11; ECF 219-1 at ¶¶ 6-78. Plaintiffs are entitled to discovery to pursue their claims to final judgment.

Defendants fundamentally misconstrue the function of Rule 56(d) and ordinary Rule 26 discovery.[2] Rule 56 governs summary judgment motions, which are typically "inappropriate" to grant "without first giving [plaintiffs] a chance to conduct discovery[.]" *Americable Int'l, Inc. v. Dep't of Navy*, 129 F.3d 1271, 1274 (D.C. Cir. 1997); *see also First Chicago Int'l*, 836 F.2d at 1380 ("[S]ummary judgment is proper only after the plaintiff has been given adequate time for discovery."). Indeed, "[i]n the typical Rule 56(d) case discovery has already been taken, so the question is whether the nonmovant is entitled to *further* discovery to oppose a summary judgment motion." *Jeffries v. Barr*, 965 F.3d 843, 870 (D.C. Cir. 2020) (Pillard, J., concurring and dissenting in part) (emphasis added) (citing *U.S. ex rel. Folliard v. Gov't Acquisitions, Inc.*, 764 F.3d 19, 23 (D.C. Cir. 2014); *Convertino v. U.S. Dep't of Just.*, 684 F.3d 93, 97 (D.C. Cir. 2012)). Here, Plaintiffs have now reasonably moved for discovery on the Program Statement given Defendants' position that Plaintiffs are not entitled to discovery at all in this case. Plaintiffs' ability to defeat Defendants' motion for summary judgment is distinct from, and in no way precludes, their entitlement to further merits discovery to meet their burden of proof for final adjudication.

[2] Even under the ambit of Rule 56, the D.C. Circuit has made clear that the requirement of Rule 56(d), formerly Rule 56(f), that the party opposing summary judgment file a formal affidavit "specifying the facts it hoped to adduce by further discovery, and how any facts so adduced would be material" may be "excused" when "other documents filed by the plaintiff—such as opposing motions and outstanding discovery requests—sufficed to alert the district court of the need for further discovery and thus served as the functional equivalent of an affidavit." *First Chicago Int'l v. United Exch. Co.*, 836 F.2d 1375, 1380 (D.C. Cir. 1988) (citations omitted); *accord Butler v. Schapiro*, 839 F. Supp. 2d 252, 258-59 (D.D.C. 2012) (denying summary judgment where "no discovery ha[d] taken place yet in [the] case," despite lack of 56(d) affidavit, based on plaintiff "identif[ying] individuals she wishe[d] to depose in order to prove" her employment discrimination claim). In this case, Plaintiffs have explained in detail, both in opposition to Defendants' pre-discovery motion for summary judgment and herein, their need for further discovery. *See generally* ECF 219 & 219-1.

C. Plaintiffs' motion is timely

Defendants claim that Plaintiffs' motion is untimely but fail to identify any deadline that was missed or any other basis to deem the motion untimely. They assert that that there have been "four months of unexplained delay" following the April discovery order. Opp. at 4. Even if that four-month period were "unexplained," that would not make the motion untimely. But there is an explanation. On April 29, 2026, Plaintiffs filed a supplemental complaint, ECF 182, and motion for updated preliminary injunction, ECF 179, to encompass the Program Statement. Before pursuing discovery related to the Program Statement, Plaintiffs were awaiting responses to their discovery requests related to the EO and Implementing Memoranda, which could affect the scope of any subsequent discovery requests. But as described in Plaintiffs' recently filed Motion to Compel Discovery, ECF 243, despite having been served written discovery requests on April 21, 2026, over four months ago, Defendants have failed to comply. Instead, they filed a premature motion for summary judgment, ECF 187, and a motion to stay discovery, ECF 190, which Plaintiffs have opposed, ECF 218 & ECF 219, as well as a motion to stay the preliminary injunction pending appeal both in this Court, ECF 222, and subsequently in the D.C. Circuit, *see* Mot. to Stay Pending Appeal, *Kingdom v. Trump*, No. 26-5236 (D.C. Cir. appeal docketed June 23, 2026). Defendants have made clear that they are unwilling to respond to the pending discovery requests while their motion to stay discovery is pending, despite the fact that the Court has not relieved them of their obligation to do so. *See* ECF 243, at 3, 7.

Given the lack of deadline for seeking discovery, the role of Defendants' own actions in delaying the previously ordered discovery, and the other filings and motions in this case since the April Discovery Scheduling Order, Defendants' argument that Plaintiffs' motion is untimely fails.

## II. Discovery Is Warranted for Plaintiffs' Constitutional and Rehabilitation Act Claims.

As in their briefing regarding the original discovery dispute in this case, Defendants misstate the standard for discovery in non-APA claims brought alongside APA challenges to federal agency action. As this Court has explained, because "the purpose of admitting extra-record evidence is to secure effective judicial review," discovery may be permitted following a "determination that extra-record evidence will aid in effective adjudication of [Plaintiffs'] claims." *Nat'l Ass'n of Postal Supervisors v. United States Postal Serv.*, No. 1:19-CV-2236-RCL, 2023 WL 5221367, at *6 (D.D.C. Aug. 15, 2023) (citing *Bellion Spirits, LLC v. United States*, 335 F. Supp. 3d 32, 38 (D.D.C. 2018)). That requires not only a determination of whether a challenge is to "the substance" of an agency's decision, *Bellion Spirits*, 335 F. Supp. 3d at 43, but also an examination of whether that decision was in fact made "based on an evaluation of [the administrative] record," *id.* at 44, as well as "the substantive rule[s] of decision applicable to the non-APA claim[s] to determine the evidentiary scope of [the court's] review of [those] claim[s]." *Nat'l Ass'n of Postal Supervisors*, 2023 WL 5221367, at *9 (citing *Bellion Spirits*, 335 F. Supp. 3d at 43-44). Where "extra-record evidence may be relevant" to specific claims "and may aid the Court in effectively adjudicating those claims under the substantive decision rules," discovery is permitted. *Id.*

Defendants assert that discovery on Plaintiffs' constitutional claims is unnecessary because the administrative record produced by BOP to support the Program Statement contains "all documents and materials directly or indirectly considered by agency decision-makers and includes evidence contrary to the agency's position." Opp. at 6 (quoting *Amgen Inc. v. Hargan*, 285 F. Supp. 3d 397, 404 (D.D.C. 2017)). But "[m]erely saying this does not make it so." *Conservation Force v. Jewell*, 160 F. Supp. 3d 194, 204 (D.D.C. 2016). As this Court already held, BOP "preordained its decision" based on an Executive Order, "reverse engineered a policy to justify the

same outcome," and then "disregarded significant evidence in its possession to reach the EO's mandated result." ECF 216 ("Mem. Op.") at 23-24.

But even if that were not the case, and the administrative record did contain all of the significant evidence in BOP's possession, that would not mean that Plaintiffs are denied the opportunity to take discovery on their non-APA claims. The substantive rules of decision for Plaintiffs' non-APA claims do not turn on what evidence the agency considered. Plaintiffs' Eighth Amendment claim turns on the actual facts regarding whether a policy requiring that individuals with gender dysphoria in BOP custody be stripped of gender-affirming care puts them at substantial risk of serious harm and whether BOP was subjectively aware of that risk. *See* ECF 235 ("Mot.") at 7. Their Equal Protection claim turns on whether the government has a sufficient justification for removing this care and whether the policy was enacted for the improper purpose of disadvantaging the affected group. *See id*. at 8. And their Rehabilitation Act claim turns on whether the policy subjects Plaintiffs and class members to disparate and discriminatory treatment based on their gender dysphoria diagnosis. *See id.* at 9. *See also* ECF 179-1 at 24-33; ECF 219, at 11-17, 19-28. There is no basis to limit the universe of evidence available to Plaintiffs to prove these claims to the materials hand picked by Defendants to include in the administrative record. Indeed, there are no documents in the administrative record relevant to Defendants' subjective knowledge, intent, or purpose with regard to the Program Statement or the impact of gender-affirming care—which the Program Statement rescinds—on Plaintiffs' and class members' health. Such evidence is highly relevant to Plaintiffs' constitutional and Rehabilitation Act claims[3] and

[3] As detailed in Plaintiffs' opposition to Defendants' motion for summary judgment, Defendants' argument that the "Rehabilitation Act fails at the threshold because there is no private right of action and gender dysphoria is not a protected disability," Opp. at 6-7, is incorrect. *See* ECF 218 at 19-28.

necessary for "effective judicial review" of them. *Nat'l Ass'n of Postal Supervisors*, 2023 WL 5221367, at *6, 9.

Contra Defendants' characterizations, these non-APA claims do not "fundamentally overlap" with their APA arbitrary-and-capricious claim because both the legal standards and proof required for them are entirely different. Opp. at 7-8 (quoting *Chiayu Chang v. United States Citizenship & Immigr. Servs.*, 254 F. Supp. 3d 160, 162 (D.D.C. 2017)). Nor are Plaintiffs "unsuccessful part[ies] to agency action" alleging "constitutional violations in order to trade in the APA's restrictive procedures for the more evenhanded ones of the Federal Rules of Civil Procedure." *Id.* at 5-6 (quoting *Chiayu Chang*, 254 F. Supp. 3d at 161-62 (internal quotations omitted). In *Chiayu Chang*, plaintiffs challenged visa denials under the APA as arbitrary and capricious and under the Constitution as "irrational and arbitrary." 254 F. Supp. 3d at 162 (quoting plaintiffs' brief). Here, in contrast, the question of whether BOP supplied a legitimate "'reasoned analysis for the change' in its position," *United Student Aid Funds, Inc. v. Devos*, 237 F. Supp. 3d 1, 5 (D.D.C. 2017) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 42 (1983)), such that their action was not arbitrary and capricious under the APA, is an entirely different question from than whether the policy satisfies the requirements of the Eighth Amendment, the Equal Protection Clause, and the Rehabilitation Act discussed above. Because these claims are "factually and legally distinct," Mot. at 1, 6-9, they require discovery beyond the cherry-picked administrative record produced by Defendants.

## III. Discovery Is Warranted for Plaintiffs' APA Claims.

Defendants' arguments regarding Plaintiffs' right to discovery as to their APA claims likewise fail.

A. Post Hoc Extra-Record Evidence

First, Defendants argue that the Stahl declaration does not constitute "improper post hoc extra-record evidence, … because the declaration did not seek to provide new reasons for BOP's decision," but rather merely "rebut[s] Plaintiffs' unfounded claim that BOP had ignored their experience with the prior policy." Opp. at 10. (internal quotations omitted). But Dr. Stahl's seven-page declaration is much more than "merely explanatory of the original record." *Id.* (quoting *Olivares v. Transp. Sec. Admin.*, 819 F.3d 454, 464 (D.C. Cir. 2016)). It gives her own purported subjective assertions regarding the healthcare outcomes under BOP's prior policy, *see* ECF 187-3 at ¶ 13 (noting that she "rarely saw any sustained mental health improvement in [her] patients"), provides subjective analysis and assertions regarding the purported bases of BOP's decision to adopt the policy, *see id.* at ¶¶ 10-11 (describing Dr. Stahl's purported determinations regarding the trustworthiness of WPATH's standards of care and BOP's reliance thereupon), and makes broad statements regarding the non-existence of evidence demonstrating the benefits of gender-affirming care in BOP's possession based on the lack of validated instruments to measure its efficacy, *see id.* at ¶ 13. These are plainly "new rationalizations" that seek to provide additional support for the Program Statement beyond the administrative record. *Olivares v. Transp. Sec. Admin.*, 819 F.3d 454, 464 (D.C. Cir. 2016). Furthermore, whether categorized as "justifications" or "explanations," these assertions are not in the administrative record, and Plaintiffs are entitled to vet them through discovery, including depositions of the individuals referenced by Dr. Stahl and of Dr. Stahl herself.

Defendants are correct that *Sirmans v. Caldera*, 27 F. Supp. 2d 248 (D.D.C. 1998), involved a motion for discovery in the context of summary judgment motions, but nothing about the court's analysis permitting discovery to respond to defendants' use of extra-record declarations in that case was limited to summary judgment. As here, defendants premised their argument against discovery on "the sanctity of the administrative record," which this Court rejected,

permitting discovery "relating to all materials outside of the administrative record on which defendant relie[d]," and refusing to "limit the depth and breadth of discovery" to opposition to defendants' summary judgment motion. *Id.* at 251. Further, as described above, Plaintiffs *have* submitted an opposition to Defendants' summary judgment motion detailing the issues of material fact that exist under the current record, including a Statement of Facts with specific record citations, ECF 218-1; 219-1, while also describing the merits discovery still necessary to pursue their claims to final judgment, thus "alert[ing]" the Court "of the need for further discovery." *First Chicago Int'l*, 836 F.2d at 1380; *see also* Plaintiffs' Opposition to Defendants' Motion for Summary Judgment, ECF 219 at 18-19 (describing the need for discovery in response to the Stahl declaration).

*AFL-CIO v. Department of Labor*, on the other hand, did involve Rule 26 discovery, although in the context of agency actions that were not "memorialize[d]," and thus did not create a "traditional administrative record." 2026 WL 1470287, at *3 (D.D.C. May 26, 2026). The APA's "prohibition on *post hoc* rationalizations," however, applies in all APA cases, regardless of whether they "are raised in court by those appearing on behalf of the agency or by agency officials themselves." *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 23 (2020). BOP's reliance on Dr. Stahl's *post hoc* declaration is itself a basis for discovery.

B. Incomplete Administrative Record

Defendants' argument that BOP included in the administrative record its written policies *prior* to the Executive Order is unavailing. This Court has already found that BOP erred by excluding relevant evidence in its possession from the administrative record regarding "its own experience providing [gender-affirming] care to inmates diagnosed with gender dysphoria for nearly a decade." Mem. Op. at 19. The absence of any "meaningful[] discuss[ion]" of BOP's years of experience providing this care, its impact on patient health, and whether it caused security

issues, demonstrates the incompleteness of the administrative record. Mem. Op. at 19-20. Nor do Dr. Stahl's *post hoc* justifications for not including this evidence excuse its obvious omission from the administrative record. *See* Part III(A), *supra*. Defendants' reliance on *Amfac Resorts, L.L.C. v. U.S. Dep't of the Interior*, 143 F. Supp. 2d 7, 13 (D.D.C. 2001), *see* Opp. at 13, fare no better. Unlike in that case, Plaintiffs here are not arguing that the fact that some non-record documents support their position means the record is incomplete. *Cf. Amfac Resorts*, 143 F. Supp. 2d at 13. Rather, Plaintiffs argue that an entire category of what the Court recognized is relevant information—BOP's experience providing gender affirming care and its impact on patient health and security--is missing. The declaration of former BOP official, Dr. Cathy Thompson, makes clear that this information is available to BOP. *See* ECF 179-4 (Second Thompson Decl.) & 193-2 (Third Thompson Decl.).

Defendants mistakenly suggest that Plaintiffs' arguments regarding the omission from the record of information regarding the formulation and issuance of the Executive Order and 2025 Implementing Memoranda as well as relevant evidence in BOP's possession regarding its own experience providing gender-affirming care under the prior policy, constitute an argument for "supplementation of the record," rather than for discovery. Opp. at 11. However, extra-record *discovery*, not merely supplementation of the record, "may be granted when a 'party makes a significant showing … that it will find material in the agency's possession [indicative] of … an incomplete record." *Stand Up for California! v. United States Dep't of Interior*, 315 F. Supp. 3d 289, 293 (D.D.C. 2018) (quoting *Air Transp. Ass'n of Am., Inc. v. Nat'l Mediation Bd.*, 663 F.3d 476, 487 (D.C. Cir. 2011)). This "correct legal standard," *Air Transp. Ass'n of Am.*, 663 F.3d at 487, does not require an articulation of "what about the Executive Order or implementing memoranda is 'adverse' to the 2026 Policy." Opp. at 12. Rather, the intentional omission from the

administrative record of these categories of information, which (as already determined by this Court) "has great pertinence to the proceeding in question," *Theodore Roosevelt Conservation P'ship v. Salazar*, 616 F.3d 497, 515 (D.C. Cir. 2010) (quoting *Env't Def. Fund, Inc. v. Blum*, 458 F. Supp. 650, 661 (D.D.C. 1978)), satisfies this standard.

C. Bad faith

Perhaps wisely, Defendants do not seriously engage with Plaintiffs' argument that BOP engaged in bad faith in its underlying pretextual decision, and instead baldly assert that "Plaintiffs cross the line in accusing the government" of such action. Opp. at 14. But Plaintiffs have not asserted bad faith lightly and certainly do not do so merely based on "disagree[ment] with the 2026 Policy." Opp. at 14. Rather, the record that already exists in this case, even without the benefit of discovery, "suggests, at least preliminarily, that the [agency's] actions were predetermined and influenced by factors not relevant to its consideration" of the evidence regarding gender-affirming care. *New York v. Salazar*, 701 F. Supp. 2d 224, 243 (N.D.N.Y. 2010).

"Although a court can require plaintiffs to present significant evidence of wrongdoing before allowing them to conduct extra-record discovery, it cannot require them to come forward with conclusive evidence of political improprieties at a point when they are seeking to discover the extent of those improprieties." *Sokaogon Chippewa Cmty. (Mole Lake Band of Lake Superior Chippewa) v. Babbitt*, 961 F. Supp. 1276, 1281 (W.D. Wis. 1997); *see also Moody Hill Farms Ltd. P'ship v. U.S. Dep't of Interior, Nat. Park Serv.*, 1996 WL 474209, at *4 (S.D.N.Y. Aug. 20, 1996) (noting that "strength of the bad faith allegation" sufficient to warrant extra-record discovery "may vary from case to case," and holding that facts giving rise to "an inference of bad faith" were sufficient to support extra-record discovery). Here, Plaintiffs' preliminary showing, already accepted by this Court, that the Program Statement "is pretextual, preordained, and reverse engineered in response to this litigation to implement EO 14168's directives," Mem. Op. at 23, is

itself sufficient to meet this *prima facie* standard. As a result, this Court should grant discovery on Plaintiffs' APA claims.

## IV. Conclusion

For these reasons as well as those articulated in Plaintiffs' Motion for Discovery Regarding the Program Statement (ECF 235), Plaintiffs' motion should be granted.

Dated: August 28, 2026

Respectfully submitted,

*/s/ Shana Knizhnik*
Li Nowlin-Sohl (*pro hac vice*)
Leslie Cooper (*pro hac vice*)
Shana Knizhnik, D.D.C. Bar No. 120840
James D. Esseks (*pro hac vice*)
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel: 212-549-2500
lnowlin-sohl@aclu.org
lcooper@aclu.org
sknizhnik@aclu.org
jesseks@aclu.org

Michael Perloff, D.C. Bar No. 1601047
Aditi Shah, D.C. Bar No. 90033136
ACLU Foundation of the District of Columbia
529 14th Street NW, Suite 420
Washington, D.C. 20045
Tel: 202-457-0800
mperloff@acludc.org
ashah@acludc.org

David C. Fathi (*pro hac vice*) *
Maria V. Morris, D.C. Bar. No. 1697904
Elisa C. Epstein (*pro hac vice*) *
American Civil Liberties Union Foundation
915 15th Street, N.W.
Washington, D.C. 20005
Tel: 202-393-4930
dfathi@aclu.org
mmorris@aclu.org
eepstein@aclu.org

Corene T. Kendrick (*pro hac vice*)
American Civil Liberties Union Foundation
425 California St., Ste. 700
San Francisco, CA 94104
Tel: 202-393-4930
ckendrick@aclu.org

Shawn Thomas Meerkamper (*pro hac vice*)
Megan Z. F. Noor (*pro hac vice*)
Dale Melchert (*pro hac vice)*
Transgender Law Center
P.O. Box 70976
Oakland, CA 94612
Tel: 510-587-9696
shawn@transgenderlawcenter.org
megan@transgenderlawcenter.org
dale@transgenderlawcenter.org

Lynly S. Egyes (*pro hac vice*)
Transgender Law Center
594 Dean Street, Suite 11
Brooklyn, NY 11238
Tel: 510-587-9696
lynly@transgenderlawcenter.org

*Counsel for Plaintiff Class*

**Not admitted in D.C.; practice limited to federal courts.*