**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

ALISHEA KINGDOM, et al.,

Plaintiff,

v.

DONALD J. TRUMP, et al.,

Defendants.

No. 1:25-cv-00691 (RCL)

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO COMPEL RESPONSES AND PRODUCTIONS TO DISCOVERY REQUESTS**

For the following reasons, the Court should grant Plaintiffs' Motion to Compel Responses and Productions to Discovery Requests (ECF No. 243)[1] ("Motion"). Defendants' Response to the Motion, ECF No. 254, ("Defendant's Response" or "Defs. Resp."), fails to rebut Plaintiffs' arguments, conflates several key issues, and is predicated on misplaced authority and self-serving references to arguments advanced in its pending motions.

## ARGUMENT

### I. Defendants' Pending Summary Judgment and Stay Motions Do Not Suspend Their Discovery Obligations.

Defendants have ignored their discovery obligations and attempt to justify doing so by pointing to their motions for summary judgment and to stay discovery filed after Plaintiffs served written Discovery Requests pursuant this Court's Order granting discovery. Defendants cite no authority that arguments made in pending motions relieve a party of their discovery obligations absent an order stating as much from the court.

[1] Defendants' Response to the Motion cites to the Motion as "ECF No. 235" which is Plaintiffs' Motion for Discovery of the Program Statement, presumably erroneously.

All the cases Defendants cite to support that proposition are inapposite and pertain to contexts in which the government is entitled to immunity from litigation. In *Loumiet v. United States,* 225 F. Supp. 3d 79 (D.D.C. 2016), the court granted a temporary stay of requests for production of documents served after defendants moved to dismiss the complaint until it decided the qualified immunity question raised in the motion. "The basic thrust of the qualified-immunity doctrine is to free officials from the concerns of litigation, including 'avoidance of disruptive discovery.'" *Loumiet*, 225 F. Supp. 3d at 82 (quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 685 (2009)); *see also id*. ("[I]f the defendant does plead the immunity defense, the district court should resolve that threshold question before permitting discovery[.]") (quoting *Crawford–El v. Britton*, 523 U.S. 574, 598 (1998)).

Defendants' reliance on *Davis v. United States,* 196 F. Supp. 3d 106 (D.D.C. 2016) and *Macharia v. United States*, 334 F.3d 61 (D.C. Cir. 2003) are misplaced for the same reason. Both cases involved the Federal Tort Claims Act—a statutory waiver of sovereign and qualified immunity. The quotes Defendants cite stand for the proposition that while jurisdictional discovery may be appropriate for determining exceptions to sovereign immunity, merits discovery by contrast is not warranted until the sovereign immunity question is answered. Defs. Resp. at 3.

No immunity issues are at play, here. Neither the cases nor the quotes offered by Defendants stand for the proposition that merits discovery is stayed (or should be stayed) if Defendants file a motion challenging subject matter jurisdiction.[2]

[2] Defendants say that Plaintiffs have "forfeited any claim that they need further discovery to respond to Defendants' jurisdictional arguments." Defs. Resp. at 5 (internal quotations and citation omitted). First, this argument is not relevant to the present Motion to Compel, which relates to discovery that the Court had already ordered prior to Defendants' Motion for Summary Judgment. Second, as explained in more detail in Plaintiffs' Reply in Support of Discovery, ECF No. 246 at 3–4, Plaintiffs have not forfeited or waived any discovery rights by not filing a motion under Rule 56(d) in response to Defendants' motion for summary judgment. The fact that

## II. Defendants Fail to Object to Plaintiffs' Discovery Requests.

"When the opposing party refuses to respond to a discovery request, the burden shifts to the opposing party to show that the movant's request is burdensome, overly broad, vague or outside the scope of discovery." *United States v. Kellogg Brown & Root Servs.*, Inc., 284 F.R.D. 22, 27 (D.D.C. 2012) (citation omitted). "The grounds for objecting to an interrogatory must be stated with specificity," Fed. R. Civ. P. 33(b)(4), and objections to requests for production must "state with specificity the grounds for objecting to the request, including the reasons," Rule 34(b)(2)(B).

Defendants failed to provide a response identifying which requests they object to and explaining their grounds for objecting. And none of the general arguments in Defendants' Response satisfies the specificity required by Rules 33 and 34. As this Court has found, general objections to discovery requests, "without more, fail to satisfy [a party's] burden under the Federal Rules of Civil Procedure to justify [its] objections to discovery." *Convertino v. United States Dep't. of Just.*, 565 F. Supp. 2d 10, 13 (D.D.C. 2008) (overruling generally asserted objections allegedly applicable to all discovery responses because they were not sufficiently specific to enable the court to evaluate "the specific nature or amount of material being withheld on the basis of the general objections.")

Rather than advancing any specific objections to any of Plaintiffs' actual requests, Defendants suggest that Plaintiffs' Discovery Requests seek information beyond the scope of this Court's April 3rd Order, specifically, about the Program Statement. *See* Defs. Resp. at 2, n. 1. But nowhere do Plaintiffs argue that their Motion pertains to discovery regarding the Program Statement, for which Plaintiffs have made a separate motion. *See* ECF No. 235. Indeed, all of Plaintiffs' Written Discovery requests at issue in the Motion fit squarely within the discovery

---

Plaintiffs did not need discovery to show a dispute of material fact to defeat summary judgment does not mean they are not entitled to discovery to prove their case.

ordered by this Court; into "[t]he development and implementation of Executive Order 14168 and the original BOP Implementing Memoranda." ECF No. 163 at 1; *see* Motion at 4–7 (explaining the relevance of Plaintiffs Discovery Requests to development and implementation of the Executive Order and Implementing Memoranda).

Specifically, Defendants argue that because Plaintiffs' claims against the implementing memoranda are no longer live, Plaintiffs' Discovery Requests related to them are no longer relevant, despite this Court already finding that "the original policy is relevant to a challenge to any policy that supersedes it," ECF No. 123 at 2. *See* Defs. Resp. at 3–4, 7. Rule 26(b)(1) permits discovery "relevant to the parties 'claims and defenses, *even if it is not the direct subject of Plaintiff's suit*." *Kersey v. Washington Metro. Area Transit Auth.*, 2005 WL 8169212, at *2 (D.D.C. Aug. 1, 2005) (emphasis added). The Court issued the April 3rd Order authorizing discovery on the Implementing Memoranda after being aware that the Implementing Memoranda had been superseded by the Program Statement. Defendants' position, if accepted, would mean that the inclusion of the Implementing Memoranda in the Court's April 3rd Order was meaningless and authorized no actual discovery at all.

"Absent good cause, untimely objections to requests for production and interrogatories may be deemed waived." *Campaign Legal Ctr. v. Iowa Values*, 710 F. Supp. 3d 35, 52 (D.D.C. 2024). Defendants' counter-argument to waiver rests entirely on their theory that they do not have an obligation to engage in discovery ordered by this Court while any jurisdictional arguments remain pending. *See* Defs. Response at 7, n.3. As explained above, this argument is unavailing. *See supra*, Section I. Having failed to establish good cause for refusing to lodge proper, timely objections, Defendants have waived any objections.

### III. Defendants' Assertion of Executive Privilege Concerning Discovery Related to the EO Does Not Relieve Defendants of their Discovery Obligations.

Defendants assert that "[d]iscovery regarding the EO" is "inappropriate" because, they say, "[t]he requested information likely implicates executive privilege including the Presidential Communications Privilege." Defs. Resp. at 6. As an initial matter, the vast majority of the discovery requests made by Plaintiffs—all of which Defendants refuse to respond to—seek information about topics that clearly do not implicate executive privilege. Plaintiffs' Discovery Requests seek, among other things, the medical and grievance records of Plaintiffs and select class members (RFP Nos. 2–4), information related to BOP's disbanded Transgender Executive Counsel (Interrogatory No. 2 & RFP No. 7), information related to any security and administration concerns with providing gender affirming health care to people in BOP custody (Interrogatory No. 3), and "manuals, policies, guidelines, memoranda, bulletins, instructions, directives, or other publications …related to the provision of Gender Affirming Health Care in BOP Custody" (Interrogatory No. 5), none of which are about the EO. Only three of Plaintiffs' requests even mention the EO.[3]

With respect to those three requests, Defendants may not simply refuse to respond to discovery requests by making the blanket assertion that "[t]he requested information likely implicates" a privilege. Defs. Resp. at 6. Defendants are required to file a written response and identify "with specificity" which requests or parts of requests they believe seek privileged information, produce all non-privileged responsive documents, and provide non-privileged answers to interrogatories. F.R.C.P. 33 (2) and (4), 34 (2)(B) and (C).

---

[3] *See* Interrogatory No. 1 ("Identify all Persons who participated in, contributed to, and/or were otherwise involved in the development, drafting, creation, and/or enactment of: (1) the Executive Order …"); RFP No. 6 ("All guidelines, memoranda, bulletins, instructions, directives, or other similar communications related to the issuance of, compliance with, and/or implementation of (1) the Executive Order, …"); RFP No. 8 ("All Documents Related to the drafting, dissemination, interpretation, and enforcement of the Executive Order …").

Defendants' reliance on *Cheney v. United States*, 542 U.S. 367 (2004), is unavailing. There, the government had sought to limit the scope of discovery in the district court, not evade it altogether, and the Court emphasized that the discovery requested was "overly broad," "unbounded in scope," and "ask[ed] for everything under the sky." *Id.* at 386–88. The Court noted that when courts are "asked to enforce against the Executive Branch unnecessarily broad subpoenas," there are options available to narrow the request without requiring the executive branch to bear the burden of going through a large number of documents to determine if privileged. *Id.* at 390. Here, Plaintiffs' Discovery Requests related to the EO are narrow and calculated to target information highly relevant to the claims and defenses in this case. *See* Motion at 4–7. Indeed, they only pursue discovery soundly within the confines of what this Court ordered pertaining to the "development and implementation of the Executive Order and Implementing Memoranda." ECF No. 163 at 1.

Not only does Defendants' blanket assertion of "likely" privilege lack the specificity required by the Rules, but the executive and presidential communications privileges, like any judicially recognized privilege, are not without limitation. "[T]he principles underlying the presidential communications privilege limit its reach to documents and other communications 'solicited and received' by the Office of the President, and thus do not extend to agency documents that are not submitted for Presidential consideration." *Judicial Watch, Inc. v. Dep't of Just.*, 365 F.3d 1108, 1112 (D.C. Cir. 2004) (quoting *In re Sealed Case*, 121 F.3d 729, 752 (D.C. Cir. 1997)). The executive privilege "is not to be lightly invoked. There must be a formal claim of privilege, lodged by the head of the department which has control over the matter, after actual personal consideration by that officer." *United States v. Reynolds*, 345 U.S. 1, 7–8 (1953) (footnotes omitted). Wholesale refusals to produce any documents or information on the basis of executive

privilege, even those that may not be privileged, undermine the assertion. *United States v. Navarro*, 182 F.4th 1005, 1017–25 (D.C. Cir. 2026) (rejecting former presidential advisor's assertion of executive privilege in response to a congressional subpoena where he unilaterally asserted the privilege without reviewing the contents of the subpoena, which included requests for information related to publicly disclosed information).

Defendants fail to assert that any of the information sought was "solicited and received by the Office of the President," *Judicial Watch, Inc.*, 365 F.3d at 1112 (quotation omitted), or that anyone who could properly assert executive privilege, namely "the head of the department which has control over the matter," *Reynolds*, 345 U.S. at 8, has even reviewed Plaintiffs' Discovery Requests, as Defendants do not even mention any specific Discovery Request in their response. Contrary to Defendants' invitation, "[a] court … cannot simply take a defendant at his word that the President invoked privilege because doing so would impermissibly tangle separation-of-powers lines." *Navarro*, 182 F.4th at 1019. Given the truth-seeking cost, "[e]vid△ntiary privileges in litigation are not favored, and even those rooted in the Constitution must give way in proper circumstances." *Herbert v. Lando,* 441 U.S. 153, 175 (1979) (footnote omitted).

Defendants' position is that this Court should excuse them from Plaintiffs' discovery requests on the basis that they "likely" implicate executive privilege, before even providing a response lodging their objections to specific requests such that the Court could properly assess the merit of their assertions of privilege. This flies in the face of the Federal Rules of Civil Procedure and, if permitted, would allow government defendants to evade reasonable discovery requests.

**CONCLUSION**

For the foregoing reasons, Plaintiffs' Motion to Compel Responses and Productions to Discovery Requests should be granted.

Dated: September 16, 2026

Respectfully Submitted:

Li Nowlin-Sohl


Li Nowlin-Sohl* (*pro hac vice*)
Leslie Cooper (*pro hac vice*)
Shana Knizhnik, DDC Bar ID 120840
James D. Esseks (*pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel: 212-549-2500
lnowlin-sohl@aclu.org
lcooper@aclu.org
sknizhnik@aclu.org
jesseks@aclu.org

David C. Fathi† (*pro hac vice*)
Maria V. Morris, D.C. Bar No. 1697904
Elisa C. Epstein† (*pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
915 15th Street, N.W.
Washington, D.C. 20005
Tel: 202-393-4930
dfathi@aclu.org
mmorris@aclu.org
eepstein@aclu.org

Corene T. Kendrick (*pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
425 California St., Ste. 700
San Francisco, CA 94104
Tel: 202-393-4930
ckendrick@aclu.org

Aditi Shah, D.C. Bar No. 90033136
Michael Perloff, D.C. Bar No. 1601047
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF THE DISTRICT OF COLUMBIA
529 14th Street NW, Suite 420
Washington, D.C. 20045
Tel: 202-457-0800
ashah@acludc.org
mperloff@acludc.org

Shawn Thomas Meerkamper (*pro hac vice*)
Megan Z. F. Noor (*pro hac vice*)
Dale Melchert (*pro hac vice*)
TRANSGENDER LAW CENTER
P.O. Box 70976
Oakland, CA 94612
Tel: 510-587-9696
shawn@transgenderlawcenter.org
megan@transgenderlawcenter.org
dale@transgenderlawcenter.org

Lynly S. Egyes (*pro hac vice*)
TRANSGENDER LAW CENTER
594 Dean Street, Suite 11
Brooklyn, NY 11238
Tel: 510-587-9696
lynly@transgenderlawcenter.org


*Counsel for Plaintiff class*

* *Not admitted in New York*
† *Not admitted in D.C.; practice limited to federal courts*