**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ALISHEA KINGDOM, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, et al.,<br><br>Defendants. | No. 1:25-cv-00691-RCL |

**JOINT MOTION TO DIRECT NOTICE TO CLASS MEMBERS**

The parties jointly file this motion for an order directing to all class members notice of the Court's June 17, 2026, preliminary injunction (ECF 215). Attached to this motion are Plaintiffs' Proposed Order with Plaintiffs' proposed form of notice in English (Exhibit A) that has been translated into Spanish (Exhibit B) and Defendants' Proposed Order with Defendants' proposed form of notice in English (Exhibit A) that has been translated into Spanish (Exhibit B).[1]

Plaintiffs previously filed a motion for an order directing notice to the class of the Court's June 3, 2025, classwide preliminary injunction. ECF 156. That motion was fully briefed and remains pending. ECF 164 (Defendants' response); ECF 167 (Plaintiffs' reply). The dispute in that motion involves notice to incoming inmates. The parties incorporate by reference and in full their arguments from the prior motion herein.

The parties agree on the relief sought in this motion except the following two issues:

1. The parties agree on the language in Plaintiffs' proposed form of notice (Exhibits A and B) *except* for the portion of the notice describing the Program Statement. For just that portion, Defendants' proposed form of notice contains

[1] For ease of identification, Defendants' Proposed Order and attached Exhibits show the differences between Defendants' proposal and Plaintiffs' proposal in redline.

different language.

2. The parties agree on Plaintiffs' proposed order *except* for the provision on Defendants providing electronic or paper copies of the notice to new class members. For just that provision, Defendants' proposed order contains different language.

The latter issue was fully briefed in conjunction with Plaintiffs' prior motion, and the parties incorporate by reference and in full their respective arguments on that issue. ECF 156 (Pls. Mot.) at 5-6; ECF 164 (Defs. Response) at 2-4; ECF 167 (Pls. Reply) at 1-4.

On the former issue, the parties' differing views on the proposed form of notice are as follows:

The language Plaintiffs propose for describing the Program Statement is:

> "In February 2026, BOP released Program Statement 5260.01, Management of Inmates with Gender Dysphoria, which bans all social accommodations, prohibits starting hormones to treat gender dysphoria for people not already receiving it, and requires people already receiving hormones for gender dysphoria to receive individualized tapering plans that involve reducing hormones with the goal of stopping them—in some cases, stopping the hormones quickly or immediately—depending on how long they have been receiving hormones and other factors."

Defendants' proposed language, by contrast, is:

> "In February 2026, BOP released Program Statement 5260.01, Management of Inmates with Gender Dysphoria, which bans all social accommodations and prohibits starting hormones to treat gender dysphoria for people not already receiving it. In instances when an inmate is previously and currently diagnosed with gender dysphoria and is currently receiving hormones to address gender dysphoria, the Multidisciplinary Review Team shall review and approve or disapprove the tapering plan submitted by the Primary Care Provider for all such inmates. Each tapering plan shall consider the appropriate factors, such as the duration the inmate has been receiving hormones to address gender dysphoria, the initial rationale for receiving the hormone intervention, the response by the inmate to the intervention, and whether the inmate has undergone sex trait modification surgery. For inmates that have recently begun receiving hormones to address gender dysphoria, the Primary Care Provider shall develop a tapering plan that includes a rapid discontinuation of the hormone intervention. For inmates that have

> been receiving hormones to address gender dysphoria for an extended period of time, the Primary Care Provider shall develop a tapering plan that includes an appropriately paced discontinuation of the hormone intervention. For inmates who (1) are post sex trait modification surgery or (2) have been receiving hormones to address gender dysphoria for an extended period of time and develop severe physiological and psychological withdrawal effects from tapering, it may not be appropriate in all cases for the initial tapering plan to include cessation of hormones."

**Plaintiffs' position** is that their proposed language describes the Program Statement accurately and in sufficient detail while being clear, concise, and using "plain, easily understood language." Fed. R. Civ. P. 23(c)(2)(B). Although the requirements of Federal Rule of Civil Procedure 23(c)(2)(B) governing class certification notices are not mandatory in Rule 23(b)(2) classes, they nonetheless are instructive and provide useful criteria by which to judge the reasonableness of Plaintiffs' proposed notice and notice distribution plan. Rule 23(c)(2)(B) states that the "[t]he notice must clearly and concisely state in plain, easily understood language," among other things, "the nature of the action" and "the class claims, issues, or defenses."

Defendants' proposed language, by contrast, is neither clear nor concise and uses language that will not be easily understood by class members. For example, class members are unlikely to understand based on Defendants' proposed language that the purpose of the Program Statement is to reduce with the intention of discontinuing hormone therapy for everyone already receiving hormones in part because it uses the phrases "tapering" and "cessation" without explanation, which are terms that class members are unlikely to readily understand mean stopping or reducing. In addition, Plaintiffs' proposed description is more accurate to the plain text and goals of the Program Statement than Defendants' proposed language, which risks the improper impression that the Program Statement is less than a categorical ban on hormone therapy and social accommodations to treat gender dysphoria. Defendants accuse Plaintiffs' proposed language of hormones in some cases being stopped "quickly or immediately" as injecting argument and being

unfaithful to the Program Statement, but as this Court recognized, the Program Statement itself states that "[f]or those who have 'recently begun receiving hormones,' the tapering plan will include 'a rapid discontinuation' of hormones." ECF 216 (Mem. Op.) at 11 (quoting ECF 125 (Program Statement) § 5(c)(ii) at 8).

Given the routine challenges class counsel experience in being able to schedule calls or otherwise communicate with class members, it is imperative that the notice convey information that is accurate *and* readily understandable. The level of detail in Defendants' proposed description of the Program Statement is unnecessary and likely to cause confusion, as class members do not need to know the details of how tapering plans would be developed under the Program Statement, particularly given that Defendants are enjoined from enforcing the Program Statement while this litigation proceeds under this Court's preliminary injunction.

**Defendants' position.** Plaintiffs incorrectly contend that Defendants' proposed language is unclear, overly technical, and risks confusing class members. Defendants' proposal uses the Program Statement's actual text for a reason: it is the most accurate, neutral, and legally appropriate description of the policy at issue. The Program Statement, not Plaintiffs' characterization of it, is what governs this litigation, and the notice should reflect the policy as written. Plaintiffs insist that terms such as "tapering" and "cessation" are too difficult for class members to understand. That argument is both speculative and overstated. The Program Statement uses these terms because they are precise clinical and policy terms, and Defendants' proposed notice mirrors that precision. Plaintiffs' preferred language emphasizing that hormones may be stopped "quickly or immediately" is not part of the Program Statement and injects argumentative, prejudicial, and inflammatory wording into what should be a neutral notice. The notice is not the place to litigate the merits, and Plaintiffs' attempt to insert an overly interpretive description only

risks confusing class members and misrepresenting the actual policy. Moreover, Plaintiffs' claim that the policy is a "categorical ban" is not supported by the text of the Program Statement. Their proposed language therefore runs a significant risk of misleading class members into believing the policy is more sweeping than it is. Defendants' approach avoids this problem by adhering to the actual, authoritative language of the policy, ensuring that all class members receive information that is accurate and not distorted by either side's litigation posture. Finally, Plaintiffs' argument that class members will struggle to understand the notice ignores the core principle that clarity comes from accuracy, not oversimplification or argumentative rephrasing. Using the policy's own terminology promotes consistency, avoids creating misunderstandings about obligations or rights, and respects the Court's preliminary injunction without describing the Program Statement in non-neutral phrasing that serve only Plaintiffs' strategic aims. The Court should therefore adopt Defendants' proposed language, which provides the most neutral, accurate, and appropriate description of the Program Statement and preserves the integrity of the Rule 23 notice process.

## CONCLUSION

The parties generally agree to provide notice to the class of the June 17, 2026, preliminary injunction. According to Plaintiffs, the Court should enter the proposed order attached herein entitled "Plaintiffs' Proposed Order." According to Defendants, the Court should enter the proposed order attached herein entitled "Defendants' Proposed Order."

Dated: October 23, 2026

Respectfully submitted,

/s/ Aditi Shah
Aditi Shah, D.C. Bar No. 90033136
Michael Perloff, D.C. Bar No. 1601047
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF THE DISTRICT OF COLUMBIA
529 14th Street NW, Suite 420
Washington, D.C. 20045
Tel: 202-457-0800
ashah@acludc.org
mperloff@acludc.org

Li Nowlin-Sohl (*pro hac vice*)
Leslie Cooper (*pro hac vice*)
Shana Knizhnik, DDC Bar ID 120840
James D. Esseks (*pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Tel: 212-549-2500
lnowlin-sohl@aclu.org
lcooper@aclu.org
sknizhnik@aclu.org
jesseks@aclu.org

Shawn Thomas Meerkamper (*pro hac vice*)
Megan Z. F. Noor (*pro hac vice*)
Dale Melchert (*pro hac vice*)
TRANSGENDER LAW CENTER
P.O. Box 70976
Oakland, CA 94612
Tel: 510-587-9696
shawn@transgenderlawcenter.org
megan@transgenderlawcenter.org
dale@transgenderlawcenter.org

Lynly S. Egyes (pro hac vice)
TRANSGENDER LAW CENTER
594 Dean Street, Suite 11
Brooklyn, NY 11238
Tel: 510-587-9696
lynly@transgenderlawcenter.org

BRETT A. SHUMATE
Assistant Attorney General

Marianne F. Kies
Assistant Branch Director

/s/ M. Jared Littman
M. JARED LITTMAN
ELIZABETH B. LAYENDECKER
Trial Attorneys
U.S. Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, NW
Washington D.C. 20005
Jared.littman2@usdoj.gov

*Counsel for Defendants*

David C. Fathi* (*pro hac vice*)
Maria V. Morris, D.C. Bar No. 1697904
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
915 15th Street, N.W.
Washington, D.C. 20005
Tel: 202-393-4930
dfathi@aclu.org
mmorris@aclu.org
*Not admitted in D.C.;
practice limited to federal courts.

Corene T. Kendrick (pro hac vice)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
425 California St., Ste. 700
San Francisco, CA 94104
Tel: 202-393-4930
ckendrick@aclu.org

*Counsel for Plaintiff Class*